## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EVANSTON INSURANCE COMPANY** | § | |
| **Ten Parkway North** | § | |
| **Deerfield, Illinois 66015** | § | |
| **Plaintiff** | § | |
| | § | **CIVIL ACTION** |
| **v.** | § | |
| | § | |
| **CGT LAW GROUP INTERNATIONAL LLP** | § | |
| **101 Constitution Avenue, NW, Suite 900** | § | |
| **Washington, D.C.** | § | |
| | § | |
| **MAURICIO CELIS** | § | |
| **500 North Water Street, 8th Floor** | § | |
| **South Tower** | § | |
| **Corpus Christi, Texas 78471** | § | |
| | § | |
| **T. CHRISTOPHER PINEDO** | § | |
| **500 North Water Street, 8th Floor** | § | |
| **South Tower** | § | |
| **Corpus Christi, Texas 78471** | § | |
| | § | |
| **DOUGLAS RAY GWYTHER** | § | |
| **500 North Water Street, 8th Floor** | § | |
| **South Tower** | § | |
| **Corpus Christi, Texas 78471** | § | |
| | § | |
| **RAUL TAPIA** | § | |
| **101 Constitution Avenue NW, Suite 900** | § | |
| **Washington, D.C.** | § | |
| | § | |
| **JAMES H. HADA** | § | |
| **500 North Water Street, 8th Floor** | § | |
| **South Tower** | § | |
| **Corpus Christi, Texas 78471** | § | |
| | § | |
| **THOMAS GUAJARDO** | § | |
| **1001 North Central Avenue, No. 600** | § | |
| **Phoenix, Arizona 85004** | § | |
| **Defendants** | § | |

## ORIGINAL COMPLAINT

Plaintiff, Evanston Insurance Company ("Evanston"), files its Original Complaint against Defendants, CGT Law Group International LLP, Mauricio Celis, T. Christopher Pinedo, Douglas Ray Gwyther, Raul Tapia, James H. Hada, and Thomas Guajardo, and would respectfully show the Court as follows:

## I.
## PARTIES

1.     Plaintiff, Evanston Insurance Company ("Evanston") is an insurance company incorporated under the laws of the State of Illinois with its principal place of business at Ten Parkway North, Deerfield, Illinois 60015.

2.     Defendant, CGT Law Group International LLP ("CGT"), is a limited liability partnership organized under the law of the District of Columbia with its principal place of business at 101 Constitution Avenue NW, Suite 900, Washington D.C.

3.     Defendant Mauricio Celis, is a Texas resident, and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

4.     Defendant, T. Christopher Pinedo, is a Texas resident, and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

5.     Defendant, Douglas Ray Gwyther, is a Texas resident, and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

6.     Defendant, Raul Tapia is a District of Columbia resident, and may be served with process at 101 Constitution Avenue NW, Suite 900, Washington D.C.

7.     Defendant, James H. Hada is a Texas resident, and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

8.    Defendant, Thomas Guajardo is an Arizona resident, and may be served with process at 1001 North Central Avenue, No. 600, Phoenix, Arizona 85004.

## II.
## JURISDICTION AND VENUE

9.    The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because Evanston and Defendants are citizens of different States, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.    This Court has personal jurisdiction over CGT pursuant to D.C. Code § 13-422 because CGT is incorporated and maintains its principal place of business in the District of Columbia.

11.    This Court has personal jurisdiction over Defendants Mauricio Celis, T. Christopher Pinedo, Douglas Ray Gwyther, Raul Tapia, James H. Hada, and Thomas Guajardo because Evanston's claims arise out of business transacted by them in the District of Columbia.

12.    Venue is proper under 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.

## III.
## NATURE OF THE CASE

13.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, et seq. and Rule 57 of the Federal Rules of Civil Procedure. Additionally, Evanston also seeks monetary damages in this action.

14.    Evanston issued two Professional Liability Insurance Policies to CGT (the "Policies") [Exhibits 2 and 4]. Defendant CGT is the named insured under the Policies; Defendant Celis is CGT's principal partner and only "capital" partner; and the other individual Defendants are or were partners or employees of CGT.

15.    CGT has tendered three lawsuits filed against it in Texas State courts to Evanston for a defense under the Policies. Evanston is currently defending CGT and the individual defendants under the Policies in the three lawsuits that have been tendered to Evanston. A fourth lawsuit was also filed against CGT and Defendant Celis, which lawsuit has not been tendered to Evanston for a defense.

16.    Evanston seeks to rescind both Policies it issued to CGT, because those Policies were obtained through material misrepresentations in that CGT falsely represented in the application forms for both Policies that Defendant Celis, CGT's principal partner with absolute and financial control over CGT, was a lawyer and admitted to practice in Mexico [Exhibits 1 and 3]. In the alternative, Evanston seeks a judicial determination of its rights and obligations under the Policies with respect to the three lawsuits tendered for coverage and the fourth lawsuit not tendered to Evanston by CGT. Evanston also asks the Court to order the Defendants to reimburse Evanston for any costs and expenses incurred by Evanston with respect to the defense of any of the Defendants.

## IV.
## BACKGROUND FACTS

17.    CGT, organized under the laws of the District of Columbia, was formed on November 1, 2005 with the purpose to engage in the practice of law. Defendant Celis is CGT's principal partner and only "capital" partner with absolute and financial control over CGT. CGT's website referred to Mr. Celis as an "attorney at law," and further stated that he is a "licensed attorney in Mexico." *See* Exhibits 10 and 11.

18.    During December 2005, CGT submitted a policy application to Evanston, in which application CGT represented that Mr. Celis is a lawyer and had been practicing full time as a lawyer for six years. *See 2005 Policy Application* hereto attached as Exhibit 1. Based on

these representations, Evanston issued a Lawyers Professional Liability Insurance Policy to CGT effective December 7, 2005 to December 7, 2006 (the "2005-06 Policy"). *See 2005-06 Policy* hereto attached as Exhibit 2.

19.    During October 2006, CGT submitted another policy application to Evanston, in which application CGT represented that Mr. Celis is a lawyer and had been practicing full time as a lawyer for seven years. *See 2006 Policy Application* hereto attached as Exhibit 3. Based on these representations, Evanston issued a Lawyers Professional Liability Insurance Policy to CGT effective December 7, 2006 to December 7, 2007 (the "2006-07 Policy"). *See 2006-07 Policy* hereto attached as Exhibit 4.

20.    During November 2006, a lawsuit was filed in a Texas State Court against Defendants CGT, Celis, and Pinedo styled as *Cause No: 6,349; Gonzales & Associates et.al.; v. Chris Pinedo et al.;* in the 49th Judicial District Court of Zapata County, Texas (the "Gonzales lawsuit"). *See Third Amended Petition* attached as Exhibit 5. In the Third Amended Petition filed on May 30, 2007, the plaintiffs in the *Gonzales* lawsuit allege that CGT is a sham corporation, and that CGT, Celis, and Pinedo engaged in the unauthorized practice of law. Evanston is currently defending Defendants CGT, Celis, and Pinedo under the 2005-06 Policy in the *Gonzales* lawsuit.

21.    During October 2007, a second lawsuit was filed in a Texas State Court against Defendants CGT, Celis, Pinedo, Gwyther, and Tapia styled as *Cause No: 07-62218-1; Paloma Steele v. CGT Law Group et al.;* in the County Court of Nueces County, Texas (the "Steele lawsuit"). *See Plaintiff's Original Petition* attached as Exhibit 6. The plaintiffs in the *Steele* lawsuit allege that Mr. Celis is not a lawyer and that the Defendants are engaged in the

unauthorized practice of law. Evanston is currently defending Defendants CGT, Celis, Pinedo, Gwyther, and Tapia under the 2006-07 Policy in the *Steele* lawsuit.

22.     On November 29, 2007 a third lawsuit was filed in a Texas State court against Defendants CGT, Celis, Gwyther, Pinedo, Hada, and Guajardo styled as *Unauthorized Practice of Law Committee v. Mauricio Celis et al.;* in the District Court of Nueces County, Texas (the "UPL" lawsuit). *See Plaintiff's Original Petition* attached as Exhibit 7. The *UPLC* lawsuit alleges that Mr. Celis is not a lawyer, and that CGT is an illegal partnership which was formed for an illegal purpose - the unauthorized practice of law. The lawsuit further alleges that CGT and the individual defendants named in the lawsuit engaged in the unauthorized practice of law.

23.     On October 24, 2007, a fourth lawsuit was filed in a Texas State court by the Texas Attorney General against Defendants CGT and Celis in a Texas State court styled as *The State of Texas v. CGT Law Group International LLP et al.,* in the 419th District Court of Travis County, Texas (the "AG" lawsuit). *See Plaintiff's Original Petition and Plaintiff's First Amended Emergency Motion for Temporary Restraining Order* and related documents attached as Exhibit 8. That lawsuit alleges that CGT and Mr. Celis have engaged in the illegal and unauthorized practice of law, and that CGT has permitted a "non lawyer" - Mr. Celis - to share in legal fees and referral fees paid to CGT. That lawsuit has not been tendered to Evanston for a defense.

24.     During a court hearing in the Gonzales case in Texas on May 30, 2007, Mr. Celis testified under oath that he had a law degree from the Universidad Regio Montana in Monterrey, Mexico. *See Testimony of Mauricio Celis* hereto attached as Exhibit 9 at pages 50-51.

25.    During November 2007, a grand jury in Nueces County, Texas, indicted Mr. Celis on 10 criminal charges, including seven counts of holding himself out as a lawyer, and one count of aggravated perjury (relating to Mr. Celis' alleged false evidence under oath at the May 30, 2007 court hearing that he has a law degree).

26.    When Evanston issued the **Lawyers** Professional Liability Policies to CGT, Evanston relied on the information contained in the policy applications, which stated that Defendant Celis, CGT's principal partner with absolute and financial control over CGT, was a lawyer, admitted in Mexico, who had practiced full time for at least six years [Exhibits 1 and 3].

27.    The Defendants knew that Evanston was relying upon the false statements in the policy applications in considering whether to issue the Policies. This information was relevant and material to Evanston's underwriting decisions because it affected the likelihood of litigation and the risk of a loss covered under the Policies.

28.    In reliance upon the false material misrepresentations that Mr. Celis was a lawyer, Evanston issued the Policies to CGT.

29.    Evanston should not be required to defend or indemnify the Defendants for any loss they have incurred or might incur now or in the future. The Policies were issued only as a result of CGT's false representations, and would not have been issued had Evanston known the true facts. As a result, Evanston is entitled to rescind the Policies and to have them declared *void ab initio* due to the false representations made during the underwriting and negotiating process for the Policies.

30.    Evanston thus files this action seeking rescission of the Policies issued by it to CGT, and a declaration that both Policies are *void ab initio*. In the alternative, Evanston seeks an award that the Defendants are not entitled to coverage under the Policies against the

allegations in the *Gonzales, Steele, UPLC,* and *AG* lawsuits. Evanston also seeks an award of the actual damages sustained by Evanston because of the Defendants' misrepresentations.

## V.
## THE INSURANCE POLICIES ISSUED TO CGT

31.     Evanston issued a Lawyers Professional Liability Insurance Policy number LA 803756 to CGT effective December 7, 2005 to December 7, 2006 [Exhibit 2]. Evanston also issued a Lawyers Professional Liability Insurance Policy number LA 804111 to CGT effective December 7, 2006 to December 7, 2007 [Exhibit 4]. The Policies each provide for a limit of liability for each Claim of $2,000,000 and in the aggregate. The Policies provide coverage for Acts, which term is defined to mean "the performance of or omission of a duty or obligation by the Insured while rendering legal advice or legal services for others."

## VI.
## THE POLICY APPLICATIONS

### A.     Policy Language Regarding the Policy Applications

32.     The Policies each contain a "Condition Precedent" at page 1, which provides that "[a]s conditions precedent to the availability of any coverage under this policy, …the application attached hereto and made a part hereof and all information in whatever form communicated by the Insured to the company must be accurate." [Exhibits 2 and 4 at page 1]. The Policies also provide in the Other Conditions section that "the Insured agrees that the statements in the policy are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations…" [Exhibits 2 and 4 at page 7].

33.     The policy applications form part of the Policies. Both the policy applications contain warranties in which the insured states that "I warrant to the insurer, …that the information contained herein is true and that it shall be the basis of the policy of insurance and

deemed incorporated therein, should the insurer evidence its acceptance of this application by issuance of a policy." [Exhibits 1 and 3].

**B.    The Misrepresentations in the Policy Applications**

34.    In CGT's "Application for Lawyers Professional Liability Insurance" dated December 7, 2005 for the 2005-06 Policy [Exhibit 3 at page 4 and blank CGT letterhead attached to application], CGT made the following representations, which are all false:

- Mr. Celis is a lawyer;
- Mr. Celis is a member in good standing of the Mexico Bar;
- Mr. Celis was admitted to the Mexico Bar in 2000;
- Mr. Celis has practiced as a lawyer on a full time basis for six years;
- Mr. Celis is "licensed in Mexico" [See blank letterhead attached to application].

35.    In CGT's "Application for Lawyers Professional Liability Insurance" dated October 16, 2006 for the 2006-07 Policy [Exhibit 4 at page 4], CGT made the following representations, which are all false:

- Mr. Celis is a lawyer;
- Mr. Celis is a member in good standing of the Mexico Bar;
- Mr. Celis was admitted to the Mexico Bar in 2000;
- Mr. Celis has practiced as a lawyer on a full time basis for seven years.

**VII.**
**CAUSES OF ACTION**

**Count I**

**Request for Declaratory Judgment and Judicial Rescission of**
**Evanston's 2005-06 and 2006-07 Policies**

36.    Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

37.    Pursuant to D.C. Code § 31-4314, proof that an application for insurance contains a false statement which was made with intent to deceive or materially affected either the

acceptance of the risk or the hazard assumed by the insurer, is sufficient to defeat a claim under an insurance policy.

38.    CGT's representations in the 2005-06 and 2006-07 policy applications set forth in paragraphs 34 and 35 above, were all false.

39.    The false representations were made with the intent to deceive Evanston and to induce Evanston into issuing the Policies; alternatively the false representations materially affected either the acceptance of the risk or the hazard assumed by Evanston.

40.    The false representations were material to the risk that Evanston assumed in issuing the Policies to CGT.

41.    Evanston relied upon the false representations in deciding whether to issue the Policies to CGT.

42.    Evanston would not have issued the Policies if it had known that one or more of the statements set forth in paragraphs 32 and 33 above were false.

43.    Accordingly, Evanston is entitled to a judicial rescission of the two Evanston Policies.

44.    Evanston is prepared to return the premiums CGT paid for the 2005-06 Policy and the 2006-07 Policy upon rescission of the Policies; alternatively, Evanston is willing to tender the premium amount into the registry of this court while this action is pending.

## Count II

### Request for Declaratory Judgment that the 2006-07 Policy Does Not Provide Coverage For the Defendants Against the Allegations in the Lawsuits

45.    Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

46.    To the extent that the Court does not declare that the 2006-07 Policy is rescinded and *void ab initio*, Evanston seeks in the alternative a declaration that the 2006-07 Policy does not provide coverage for the Defendants against the allegations in the *Gonzales, Steele, UPLC,* and *AG* lawsuits, and that Evanston therefore owes no duty to defend and indemnify the Defendants under the 2006-07 Policy against the allegations in those lawsuits.

47.    The common thread in all four lawsuits is that Defendant CGT was formed in the District of Columbia for illegal purposes:  the practice of law and the control of a law firm by a non-lawyer - Defendant Celis; to allow lawyers to conspire with a non-lawyer to engage in a pattern of conduct which constitutes the unauthorized practice of law in Texas and other States; to circumvent unauthorized practice of law restrictions in Texas and other States; and to allow lawyers to accept referrals and share legal fees with a non-lawyer.

48.    Both the 2005-06 and 2006-07 Policies provide that "two or more claims arising out of a single Act …or a series of related Acts…shall be treated as a single Claim," and that "all such Claims whenever made shall be considered first made on the date on which the earliest Claim arising out of such Act… was first made…" [Exhibit 2 at page 6].

49.    All four of the lawsuits arise out of a single Act or a series of related Acts and should therefore be treated as a single Claim, and considered first to be made on the date on which the earliest Claim arising out of such Act was first made.

50.    The earliest Claim arising out of the Defendants' alleged unauthorized practice of law was made in the *Gonzales* lawsuit, which was made on October 30, 2006 during the 2005-06 Policy period.

51.     Accordingly, the Claims in the *Gonzales, Steele, UPLC*, and *AG* lawsuits are treated as a single Claim (hereinafter referred to as the "Claim"), and considered first to be made during the 2005-06 Policy period.

52.     Evanston is therefore entitled to a declaratory judgment that the 2006-07 Policy does not provide coverage for the Defendants against the allegations in the *Gonzales, Steele, UPLC,* and *AG* lawsuits.

53.     However, even if the Court finds that the Claims in the *Gonzales, Steele, UPLC*, and *AG* lawsuits should not be treated as a single Claim, and that the Claims in the *Steele, UPLC*, and *AG* lawsuits were made during the 2006-07 Policy period, coverage is not available for those lawsuits under the 2006-07 Policy for the same reasons coverage is not available under the 2005-06 Policy, as set forth in Count III below.

## Count III

### Request for Declaratory Judgment that the 2005-06 Policy Does Not Provide Coverage For the Defendants Against the Allegations in the Lawsuits

54.     Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

55.     As stated in paragraph 49 above, the *Gonzales, Steele, UPLC*, and *AG* lawsuits must be treated as a single Claim, and considered first to be made during the 2005-06 Policy period.

56.     To the extent that the Court does not declare that the 2005-06 Policy is rescinded and *void ab initio*, Evanston seeks in the alternative a declaration that the 2005-06 Policy does not provide coverage for the Defendants against the allegations in the *Gonzales, Steele, UPLC,* and *AG* lawsuits – the Claim - and that Evanston therefore owes no duty to defend and indemnify the Defendants under the 2005-06 Policy against the allegations in those lawsuits.

**A.**     **The Requirements of the 2005-06 Policy's Insuring Agreement Have Not**
           **Been Satisfied Relating to the Lawsuits**

57.     The 2005-06 Policy provides coverage for Acts, which term is defined to mean "the performance of or omission of a duty or obligation by the Insured while rendering legal advice or legal services for others."

58.     The *Gonzales, Steele, UPLC,* and *AG* lawsuits do not contain allegations that the Defendants are liable for any malpractice due to their performance of or omissions of duties or obligations by them while rendering legal advice or services for others. To the contrary, the essence of the allegations in the lawsuits are that Defendant CGT was formed for the illegal practice of law; to allow lawyers to conspire with a non-lawyer to engage in the unauthorized practice of law; to allow a non-lawyer to practice law and to manage a law firm; and to allow lawyers to accept referrals and share legal fees with a non-lawyer. The primary reasons for the filing of the lawsuits are an attempt to close down CGT and to recover the legal fees CGT received.

59.     Because the requirements of the 2005-06 Policy's insuring agreement have not been satisfied, the 2005-06 Policy does not provide coverage for the Defendants in the *Gonzales, Steele, UPLC,* and *AG* lawsuits.

**B.**     **The Prior Acts Exclusion Bars Coverage For the Lawsuits**

60.     Even if any of the lawsuits arguably involves an Act, as defined in the 2005-06 Policy, the Policy contains a Prior Acts exclusion, which excludes coverage for <u>any</u> Claim based upon, arising out of, or in <u>any</u> way involving any Act happening prior to December 7, 2005 [Exh. 2, Endorsement 2].

61.     The common theme in all four lawsuits is that Defendant CGT was created and registered for the purpose to engage in the unauthorized practice of law under the complete

control of a non-lawyer and to allow other lawyers to accept referrals and share legal fees with a non-lawyer.

62.     Accordingly, Defendants' wrongful acts commenced when CGT was formed on November 1, 2005.

63.     Because Defendants engaged in the unauthorized practice of law before December 7, 2005, the Claim involves an act happening prior to December 7, 2005, for which the Policy does not provide coverage.

**C.     In the Alternative, the Prior Knowledge Exclusion Bars Coverage For the Lawsuits**

64.     Alternatively to B. above, the 2005-06 Policy does not provide coverage if, prior to the effective date of the Policy, any Insured was aware of any facts or circumstances from which a reasonable person would have anticipated a Claim  [Exhibit 2 at page 2].

65.     The lawsuits allege that Defendant CGT was formed in the District of Columbia for illegal purposes:   the practice of law and the control of a law firm by a non-lawyer - Defendant Celis; to allow lawyers to conspire with a non-lawyer to engage in a pattern of conduct which constitutes the unauthorized practice of law in Texas and other States; to circumvent unauthorized practice of law restrictions in Texas and other States; and to allow lawyers to accept referrals and share legal fees with a non-lawyer.

66.     CGT was formed on November 1, 2005, prior to the inception of the 2005-06 Policy on December 7, 2005.  *See CGT Partnership Agreement* attached as Exhibit 1 to the Petition filed in the UPLC lawsuit attached hereto as Exhibit 7.

67.     Because CGT's principal partner, Defendant Celis, is not a lawyer and the Defendants engaged in the unauthorized practice of law before December 7, 2005, the

Defendants were, prior to the effective date of the 2005-06 Policy, aware of facts or circumstances from which a reasonable person would have anticipated a Claim.

68.    Accordingly, the 2005-06 Policy does not provide coverage for the Defendants against the allegations in the *Gonzales, Steele, UPLC, and AG* lawsuits.

**D.    Mr. Celis Does Not Qualify as an Insured and CGT Does Not Qualify as an Insured For Any Liability it May Incur for Mr. Celis' Acts in the Lawsuits**

69.    The 2005-06 Policy affords coverage for any lawyer that is a partner, officer, director, of counsel or employee of CGT, but only for Claims arising out of legal advice or legal services rendered on behalf of CGT.  The Policies also provide coverage for any present or former employee of CGT solely while acting on behalf of CGT.

70.    Because Mr. Celis is neither a lawyer, nor an employee of CGT, Mr. Celis does not qualify as an insured under the 2005-06 Policy.

71.    The 2005-06 Policy affords coverage for CGT, but only for Claims arising out of or legal advice or services provided on behalf of CGT by any other insured.

72.    Because Mr. Celis is not an insured, CGT does not qualify as an insured under the 2005-06 Policy for liability it incurs arising out of legal advice or services provided on behalf of CGT by Mr. Celis.

73.    The 2005-06 Policy therefore does not provide coverage for Mr. Celis against the allegations in the *Gonzales, Steele, UPLC, and AG* lawsuits, and coverage is not provided under that Policy for CGT against any liability it incurs in those lawsuits because of Mr. Celis' acts.

**E.    The Claim Does Not Allege Damages**

74.    The Claim alleges that the Defendants are not entitled to the legal fees and profits they received because the Defendants were engaged in the unauthorized practice of law and shared fees with a non-lawyer.  Accordingly, one of the primary reasons for the filing of the

lawsuits is an attempt to recover the legal fees and profits CGT received. The Claim therefore seeks disgorgement of fees and profits received by the Defendants, punitive damages and civil penalties, and the imposition of a constructive trust, and restraining orders and injunctions.

75.    The 2005-06 Policy provides that the term "Damages" mean "the monetary portion of any judgment, award, or settlement, and does not include the restitution of consideration and expenses paid to the Insured for services or judgments or awards uninsurable by law, and punitive or exemplary damages, or any damages which are a multiple of compensatory damages, statutory treble damages, or fines, penalties or sanctions. [Exhibit 2 at page 1].

76.    Accordingly, the relief sought in the Claim does not constitute "Damages" as that term is defined in the 2005-06 Policy, and that policy therefore does not provide coverage for the Claim.

**F.    Coverage For the Payment of, Division of, or Apportionment of Legal Fees is Excluded**

77.    The 2005-06 Policy excludes coverage for any Claim based upon or arising out of a contract for, or other right relating to, payment of or division of legal fees or fee apportionment.

78.    The Claim alleges that the Defendants have asserted an interest in other lawyers' legal fees, and that the Defendants have attempted to steal, extort, and illegally obtain attorney's fees from other lawyers.

79.    Accordingly, the 2005-06 Policy does not provide coverage for the Claim.

**Count IV**

**Request for Declaratory Judgment that CGT is Not Entitled to An
Extended Reporting Period**

80.     Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

81.     The 2006-07 Policy provides that if Evanston cancels or non-renews the Policy, CGT, for an additional charge, shall have the right to extend the period during which Claims must be first made and reported.  [Exhibit 3 at page 4].

82.     Because Evanston is entitled to the rescission of the 2006-07 Policy, Evanston requests the Court to declare that CGT is not entitled to an Extended Reporting Period under the 2006-07 Policy.

83.     To the extent that the Court does not declare that the 2006-07 Policy is rescinded and *void ab initio*, Evanston asserts that CGT is not entitled to an Extended Reporting Period under the 2006-07 Policy because of its breach of Policy provisions.

84.     The 2006-07 Policy provides that CGT has the right to an Extended Reporting Period if cancellation or non-renewal does not result from CGT's non payment of premium and/or deductible or other non-compliance with the terms and conditions of the Policy.

85.     The 2006-07 Policy contains a "Condition Precedent" at page 1, which provides that "[a]s conditions precedent to the availability of any coverage under this policy, …the application attached hereto and made a part hereof and all information in whatever form communicated by the Insured to the company must be accurate."  [Exhibits 2 and 4 at page 1]. The 2006-07 Policy also provides in the Other Conditions section that "the Insured agrees that the statements in the policy are personal representations, that they shall be deemed material and

that this policy is issued in reliance upon the truth of such representations…" [Exhibits 2 and 4 at page 7].

86.    Evanston's non-renewal of the Policy results from CGT's non-compliance with the above terms and conditions of the Policy in that CGT made misrepresentations to Evanston in the Policy application.  Accordingly, CGT is not entitled to an Extended Reporting Period.

## Count V

## Fraudulent Misrepresentation and Fraudulent Inducement

87.    Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

88.    CGT's representations in the 2005-06 and 2006-07 policy applications set forth in paragraphs 34 and 35 above that Mr. Celis is a lawyer, were all false.

89.    The false representations were material to Evanston's decision to issue the Policies.

90.    At the time the representations were made, Defendants knew that the representations were false or made the representations recklessly, as a positive assertion, without knowledge of their truth.

91.    Defendants made the false representations with the intent to deceive Evanston and to induce Evanston into issuing the Policies.

92.    Evanston actually and justifiably relied on the false representations to its detriment in deciding to issue the Policies.

93.    The false representations were material to the risk underwritten by Evanston, and if Evanston had known the true facts, Evanston would not have issued the Policies.

94.    Accordingly, Evanston is entitled to rescission and/or cancellation of the Policies from their inception.

95.    Evanston has also suffered damages as a result of the Defendants' false representations in the amount of costs and expenses incurred by Evanston with respect to the defense of the Defendants.

96.    Evanston is therefore also entitled to an order that the Defendants is obliged to reimburse Evanston for any and all defense costs and expenses paid by Evanston on behalf of any of the Defendants.

## Count VI

## Negligent Misrepresentation

97.    Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

98.    CGT's representations in the 2005-06 and 2006-07 policy applications set forth in paragraphs 34 and 35 above that Mr. Celis is a lawyer, were all false.

99.    The false representations were material to Evanston's decision to issue the Policies.

100.    In deciding to issue the Policies, Evanston reasonably relied on one or more of the false representations.

101.    The false representations were material to the risk underwritten by Evanston, and if Evanston had known the true facts, Evanston would not have issued the Policies.

102.    The false statements were made in violation of a duty to exercise reasonable care.

103.    Accordingly, Evanston is entitled to rescission and/or cancellation of the Policies from their inception.

104.    Evanston has also suffered damages as a result of the Defendants' false representations in the amount of costs and expenses incurred by Evanston with respect to the defense of the Defendants.

105.    Evanston is therefore also entitled to an order that the Defendants is obliged to reimburse Evanston for any and all defense costs and expenses paid by Evanston on behalf of any of the Defendants.

## Count VII

### Unjust Enrichment

106.    Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

107.    Evanston has, at its own expense, conferred a benefit upon the Defendants, to the extent of costs and expenses incurred on behalf of the Defendants.

108.    By permitting Evanston to pay for the costs associated with its defense and to make the Settlement Payment on its behalf, the Defendants have retained and appreciated these benefits.

109.    For the reasons set forth in this Complaint, the Defendants were not entitled to this benefit.

110.    Under the circumstances, good conscience requires that the Defendants make restitution to Evanston in an amount equivalent to the costs and expenses Evanston has paid or incurred with respect to the defense of any of the Defendants'.

111.    Evanston is therefore entitled to judgment against the Defendants for the amount of the defense costs and expenses that Evanston has paid with respect to any and all Defendants.

## Count VIII

## Attorney's Fees

112.    Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

113.    It has been necessary for Evanston to retain the law firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP to represent its interests in pursuing this action. Accordingly, Evanston is entitled to collect from Defendants its reasonable attorneys' fees and expenses incurred in prosecuting this action. Therefore, Evanston respectfully requests this Court to award to it its reasonable and necessary attorneys' fees, as well as all costs of court, incurred in prosecuting this action.

## IX
## RELIEF REQUESTED

Plaintiff Evanston Insurance Company respectfully requests that judgment be entered in its favor and against the Defendants:

(A)    Declaring that Lawyers Professional Liability Insurance Policy number LA 803756 issued by Evanston Insurance Company to CGT Law Group International LLP effective December 7, 2005 to December 7, 2006 is rescinded and *void ab initio.*

(B)    Declaring that Lawyers Professional Liability Insurance Policy number LA 804111 issued by Evanston Insurance Company to CGT Law Group International LLP effective December 7, 2006 to December 7, 2007 is rescinded and *void ab initio.*

(C)    Alternatively, declaring that:

(1)    the 2005-06 Policy does not provide coverage for Defendants against the allegations in the *Gonzales, Steele, UPLC, and AG* lawsuits and that Evanston therefore

owes no duty to defend and indemnify them under the Policy against the allegations in those lawsuits.

(2) the 2006-07 Policy does not provide coverage for Defendants against the allegations in the *Gonzales, Steele, UPLC, and AG* lawsuits and that Evanston therefore owes no duty to defend and indemnify them under the Policy against the allegations in those lawsuits.

(D)    Declaring that CGT is not entitled to an Extended Reporting Period under the 2006-07 Policy.

(E)    Awarding Evanston Insurance Company reimbursement of all costs it has incurred in connection with the defense of any of the Defendants in this case.

(F)    Awarding Evanston Insurance Company its reasonable and necessary attorney's fees and expenses in prosecuting this lawsuit, court costs, and pre-judgment and post-judgment interest.

(G)    Awarding Evanston Insurance Company such other and further relief, both at law and in equity, to which it may show itself to be justly entitled.

Respectfully submitted,

By: _____
William Gandy (Bar No. 491153)
Jason R. Waters (Bar No. 491066)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22102
Phone: 703-245-9300
Fax: 703-245-9301
E-mail: william.gandy@wilsonelser.com

ATTORNEYS FOR PLAINTIFF
EVANSTON INSURANCE COMPANY

EXHIBIT 1

EXHIBIT 1

# EXHIBIT 1

EXHIBIT 1

EXHIBIT 1

220317.1

ML1 0684-40Glen    Phone Sent Caller: 847-572-6228    To: Lisa Stringer         Date: 7/18/2008 Time: 8:28:34 AM                    Page 4 of 12



**SHAND MORAHAN & COMPANY, INC.**
1 on Parkway North, Deerfield, IL 60015
(847) 572-5656 Fax (847) 572-5137
Underwriting Manager
A Markel Company

○ **DEERFIELD INSURANCE COMPANY**
○ **EVANSTON INSURANCE COMPANY**
○ **ESSEX INSURANCE COMPANY**
○ **MARKEL AMERICAN INSURANCE COMPANY**
○ **MARKEL INSURANCE COMPANY**

## APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE
### (Claims Made and Reported Basis)

**APPLICANT'S INSTRUCTIONS:**
1 Answer all questions. If more details are required, please attach a separate sheet.
2 Application must be signed and dated by owner, partner or officer.
3 PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.
(PLEASE TYPE OR PRINT)

1. __APPLICANT INFORMATION__

    a  Full name of applicant: C G T LAW GROUP INTERNATIONAL, LLP

    b  Principal business premise address: 101 CONSTITUTION AVENUE NW, SUITE 900
       (Street)                                                    (County)
       WASHINGTON D.C.                              20001
       (City)                    (State)              (Zip)

    c  Please list any secondary locations on a separate sheet and include number of lawyers at each location.
       **COMPLETE THE INSURED SUPPLEMENT**

    d  (i)  Number of attorneys                    4

       (ii)  Number of Paralegals or law clerks

       (iii) Number of clerical or support staff    3

       (iv) Other-please describe
       1 - CPA / CONTROLLER

    e  Specify if: [✓] Partnership    [ ] Corporation    Year established: Limited Liability Partnership - 2005

2. __BUSINESS OPERATIONS__

    a  List on separate attachments the names of all predecessor firms whose assets and liabilities the Firm assumed during
       the past 10 years, include the name(s) of the firm(s), the year established, the number of lawyers, and the location. NONE

    b  Does the firm share or lease space with any other firm or entity?.................................................... [ ] Yes [✓] No
       If so, please advise of the entity' name and the specific circumstances on a separate attachment.

    c  Please advise of any foreign affiliated or associated firms and provide a detailed narrative of the name of the
       relationship on a separate attachment.

    d  Provide corporate brochure(s) and/or firm resume.

    e  (i)  Does any member of the Firm while rendering legal services also provide investment counselor
       services or provide tax opinions on tax shelters?................................................................ [ ] Yes [✓] No
       If yes, please describe the nature of the services provided and the types of clients to which
       such services are provided on separate attachment.

       (ii) Does any member of the firm on behalf of its clients perform legal services involving the
       formation or sale of syndications or limited partnerships?................................................... [ ] Yes [✓] No
       If yes, on separate attachment, describe services performed and details, including number
       of formed during the past two years, total dollar amount of each and the nature of the
       investment.

SM 4115-01 1/02                    Page 1 of 8

No. 7 SalioFAltteon    From: Ben Gaies 847-972-6229    To: Lisa Stringer    Date: 7/18/2003 Time: 9:22:34 AM    Page 6 of 12

f.  Indicate the approximate percentage of gross billable dollars from practice devoted to

| | | | | |
|---|---|---|---|---|
| Admiralty/Maritime ____ % | Corporate (general) ____ % | Real Estate | |
| Anti-Trust/Trade Reg. ____ % | Corp. Mergers/Acquisitions ____ % | Closings ____ % | |
| Banking ____ % | Criminal ____ % | Escrow/Title ____ % | |
| Bankruptcy ____ % | Domestic Relations ____ % | Syndication/Development ____ % | |
| BI/PI Defendants ____ % | Entertainment ____ % | Securities Law* | |
| BI/PI Plaintiffs | Estate/Probate/Trust ____ % | Federal SEC ____ % | |
| Anticipated fees per case | International Law ____ % | State ____ % | |
| less than $25,000 ____ % | Labor ____ % | Private Placements ____ % | |
| Anticipated fees per case | Litigation: | Bonds ____ % | |
| greater than or equal to | Plaintiff ____ % | Taxation | |
| $25,000 _100_ % | Defense ____ % | Preparation ____ % | |
| Collection/ | Municipal ____ % | Opinions ____ % | |
| Repossession ____ % | Oil and Gas ____ % | Other** ____ % | |
| Communications ____ % | Public Utilities ____ % | | |
| Copyright/Patent/TM ____ % | | | |

TOTAL INCOME:    100%

\* Complete Securities Supplement.
** Over 5% Specify.

g.  Are any major changes foreseen in the percentage shown in question (f) for the current fiscal year? .... [ ] Yes [✓] No
If yes, please provide narrative details on a separate attachment.

h.  Specify the firm's total gross revenues:

Last fiscal year    From ____ to ____    Gross Revenues $ NA – NEW FIRM
NEXT YEAR Estimate current fiscal year:    From 01/01/06 to 12/31/06    Gross Revenues $ 3,000,000

i.  Is any lawyer listed in the Insured Supplement serving as a director, officer or partner of or
exercising any fiduciary control over any entity other than the firm? ...... ........ .......    [✓] Yes [ ] No
If yes, complete the Outside Interests Supplement

REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

j.  Other than those positions referenced in question (i), does the firm or any lawyer or employee of
the firm ever invest in the business of a client? ...... .... ..... ...... ..... ...... .....    [ ] Yes [✓] No
If yes, please provide on separate attachment full details of such relationship.

REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

k.  Except as listed in question i and j, does the firm or any of its members engage in any occupation,
business or profession other than the practice of law? ...... ...... ...... ...... ...... .....    [ ] Yes [✓] No
If yes, please provide narrative details on a separate attachment.

l.  (i)  Are custodial accounts (i.e., money, securities and other property held on behalf of clients)
audited by an independent, outside auditor? ...... ...... ...... ...... ...... ..... .....    [ ] Yes [✓] No

    (ii) Are two signatures required for all withdrawals of funds from custodial accounts? ...... .....    [✓] Yes [ ] No

m.  With respect to the total of all custodial accounts other than retainer fees, what is the average dollar amount and the
maximum dollar amount held or maintained on behalf of the firm's clients?
Average: $ 1000    Maximum: $ 250,000

n.  Does the firm maintain a fidelity bond covering all employees? ...... ...... ...... ...... .....    [ ] Yes [✓] No

o.  (i)  Please describe by separate attachment the firm's procedures for the acceptance of new
business including conflict of interest checks and who has the authority to accept new
business.    [ ] Yes [✓] No
    Applied For

    (ii) Does the firm make use of engagement letters with its new clients? ...... ...... ...... .....    [✓] Yes [ ] No

No.) 3-5641-POChen    Phone? Ext; Entre: 847-578-8329    To: Lisa Stringer    Date: 7/16/2008 Time: 8:36:34 AM    Page 4 of 17

**3. HISTORY**

a. Over the past five years, has the Firm opened or closed any branch office or had a single loss of 25% or more of the lawyers of the Firm?......... N/A — NEW FIRM ...... [ ] Yes [ ] No
If yes, please provide details by separate attachment.

b. (i) Has the firm or any predecessor firm or any lawyer listed in the Insured Supplement ever had any insurance company or Lloyd's decline, cancel, refuse to renew or accept only on special terms any professional liability insurance?...................... [ ] Yes [✓] No
If yes, please explain: _____

(ii) Has any lawyer listed in the Insured Supplement ever been the subject of a reprimand or disciplinary action or refused admission to the Bar?.............. [ ] Yes [✓] No
If yes, please explain on a separate attachment.

(iii) During the past seven years, has any professional liability claim or suit been made against any lawyer listed in the Insured Supplement or against the firm or any predecessor firm?...... [ ] Yes [✓] No
If yes, a SUPPLEMENTAL CLAIM INFORMATION form must be completed for each claim.

(iv) After inquiry, does the firm or any person proposed for this insurance have knowledge of any incident, circumstance, act, error, omission or personal injury which may give rise to a claim? .... [ ] Yes [✓] No
If yes, provide a complete description of each on a separate attachment. It is agreed that if there be knowledge of any such incident, circumstance, error, omission or personal injury, any claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance.

c. Please provide a list by separate attachment of all clients that represent 5% or more of the firm's total billable dollars or contribute $1,000,000 or more to the firm's income annually. N/A

d. List lawyers professional liability insurance carried for each of the past five years. IF NONE, STATE NONE

| Inception From | Expiration To | Insurance Company | Policy No. | Limit of Liability | Deductible | Premium |
|---|---|---|---|---|---|---|
| From___ | To___ | | | | | |
| From___ | To___ | N/A — NEW FIRM | | | | |
| From___ | To___ | | | | | |
| From___ | To___ | | | | | |
| From___ | To___ | | | | | |

NOTICE TO APPLICANT: The coverage applied for is SOLELY AS STATED IN THE POLICY, which provides coverage on a "CLAIMS MADE" basis for ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD unless the extended reporting period option is exercised in accordance with the terms of the policy.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information or conceals, for the purpose of misleading, information concerning any fact thereto commits a fraudulent insurance act, which is subject to criminal and civil penalties.

WARRANTY: I warrant to the Insurer, that I understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Insurer evidence its acceptance of this application by issuance of a policy. I authorize the release of claim information from any prior insurer to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015.

CGT Law Group International LLP
_____
Name of Applicant

PARTNER
_____
Title (Officer, partner, etc.)

_____
Signature of Applicant

12-7-05
_____
Date

SIGNING this application does not bind the Applicant or the Insurer or the Underwriting Manager to complete the insurance but one copy of this application will be attached to the policy, if issued.

SM 4115-01 1/02                    Page 3 of 8

# INSURED SUPPLEMENT
## APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE

Indicate the names of all lawyers who are presently officers, partners, employed lawyers, of counsels or retired partners of the Firm and complete the requested information for each lawyer. Please note that coverage responds only for acts performed on behalf of the firm.

| Name of Lawyers | Designation  O - Officer  P - Partner  E - Employed Lawyers  OC - Of Counsel  RP - Retired Partner | Member of Management Committee or Governing Body (Yes/No) | Year Admitted to Bar | Years of Full-Time Practice | Specialty, if any | Member in Good Standing of the Following State Bar(s) |
|---|---|---|---|---|---|---|
| Mauricio Celis | Partner | Yes | 2000 | 6 | | Mexico |
| Douglas Gwyther | Partner | Yes | 1998 | 7 | | Texas |
| Raul Tapia | Partner | Yes | 1977 | 29 | | Washington D.C. *California |
| Thomas A. Gunjarro | Employed Lawyer | No | 1977 | 29 | | Texas - Arizona |

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT Law Group International, LLP
Name of Applicant*

Title  PARTNER

Signature of Applicant

Date  12-7-05

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02

Page 4 of 8

No.1 Sch/T/AGen    Phone: San Cales 847-572-8229    To: Lisa Stringer          Sale: 7/18/2009 Time: 9:23:56 AM.                    Page 6 of 12

**OUTSIDE INTERESTS SUPPLEMENT**
**APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE**

FIRM: CGT LAW GROUP INTERNATIONAL, LLP

| Name of Lawyer | Name of Business | Position Held | Nature of Business | % of Equity Interest Individual | Firm & All Lawyers and Their Spouses and Immediate Family Members Combined | Client of Applicant (Yes/No) | D&O Insurance (Yes/No) |
|---|---|---|---|---|---|---|---|
| MAURICIO CELIS | TAPATIO Inc | OWNER | AIR CHARTER | 50% | — | NO | YES |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

CGT LAW GROUP INTERNATIONAL, LLP
Name of Applicant*

Signature of Applicant*

Title: PARTNER

Date: 12-7-05

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02                                    Page 5 of 8

## SECURITIES SUPPLEMENT
## APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE

### (Complete Only If the Firm does Securities Offerings, Private Placements or Bond Work)

FIRM   CGT LAW GROUP INTERNATIONAL , LLP

1   Indicate the approximate amount of billable dollars derived from securities (exempt and non-exempt work including federal SEC, state securities, private placements and bonds: $ ___N/A___

2   Briefly describe your SEC practice qualifications including whether any lawyers of the Firm involved in such activities have in the past been SEC staff members, practiced before the SEC or been cautioned or disqualified by the SEC.  Provide narrative by separate attachment.        N/A

3   (a) Indicate by a check those procedures employed by the Firm in security (exempt and non-exempt) matters including private placements and bonds:

Investigate client                              N/A         Check on federal reporting systems

convictions                                    _____                                                     for prior criminal

Investigate other participants                 _____      Court/regulatory investigation          _____

Investigate other professionals                _____      SEC filings filed and in order           _____

Checklist                                      _____      Check on tax opinion                     _____

On-site inspections                            _____      Render tax opinion                       _____

Review of corporate character                  _____      Check on prior injunctive actions in the SEC _____

Check on feasibility study                     _____

(b) If the firm uses procedures other than those listed in 3(a) above, please describe by separate attachment.

4.   Using the chart on the following page, list securities offerings (exempt and non-exempt), private placements and bond offerings handled in the past two years including the year, name of insurer, type of transaction, type of business, underwriter, accountant, dollar size of offering and party represented by Firm.

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT LAW GROUP INTERNATIONAL, LLP                    PARTNER
Name of Applicant*                                  Title

~~(signature)~~                                     12-7-05
Signature of Applicant*                             Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.





**SHAND MORAHAN & COMPANY, INC.**
Ten Parkway North, Deerfield, IL 60015
(847)-272-5000  Fax (847) 572-5137
Underwriting Manager
A Markel Company

- **DEERFIELD INSURANCE COMPANY**
- **EVANSTON INSURANCE COMPANY**
- **ESSEX INSURANCE COMPANY**
- **MARKEL AMERICAN INSURANCE COMPANY**
- **MARKEL INSURANCE COMPANY**

### SUPPLEMENTAL CLAIM INFORMATION FOR LAWYERS' PROFESSIONAL LIABILITY INSURANCE
(Claims Made and Reported Basis)

**APPLICANT'S INSTRUCTIONS:**
1. Answer all questions. If more details are required, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. This form is to be completed by Applicant who has been involved in any claim or suit or aware of an incident which may give rise to a claim.
4. Complete one form for each claim or incident.
5. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.
(PLEASE TYPE OR PRINT)

**APPLICANT INFORMATION**

a. Firm Name: _____ N/A _____
b. Claimant Name: _____
c. Name of Individual(s) at Firm Involved in Claim: _____
d. Indicate whether _____ Claim/Suit, or _____ Incident
e. Date of alleged error: _____ Date of claim: _____
f. Additional defendants: _____
g. IF CLOSED: Total Loss Paid including Deductible: $ _____
   Indicate whether _____ Court judgment, or _____ Out of court settlement
   IF PENDING: Claimant's settlement demand?         $ _____
   Defendant's offer for settlement?        $ _____
   Insurer's loss reserve?                  $ _____
   Deductible?                              $ _____
   Is claim in Suit?    [ ] Yes [ ] No  If yes, Amount asked in summons? $ _____
h. Name of Insurer: _____
i. Description of claim: (Provide enough information to allow evaluation, and use reverse side if additional space is required.)
   (i) Alleged act, error or omission upon which Claimant bases claim: _____

   (ii) Description of case and events: _____

   (iii) Description of the type and extent of injury or damage allegedly sustained: _____

j. Firm's evaluation of likelihood of liability. _____
k. Explain what action has been taken by the firm to prevent recurrence of the same type of claim _____
I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

C&T LAW GROUP INTERNATIONAL, LLP        PARTNER
Name of Applicant*                       Title (Officer, partner, etc.)

                                         12-7-05
Signature of Applicant*                  Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02                 Page 8 of 8

**CGT LAW GROUP INTERNATIONAL, LLP**

Question 2  0 (l)
New Clients and conflict of interest checks:

The firm maintains a management committee. There are three partners on this committee. All new clients are subject to approval by the firms management committee. Any lawyer generating new business is required to associate with a partner with specific expertise in the matter prior to proposing new business to the management committee.

The firm maintains a conflict of interest system on computer. All cases are maintained on a computer database. Conflict checks are reviewed at inception of all new cases. The conflict of interest systems reviews the following information: client name, opposing party, client subsidiaries, client principals, opposing counsel, outside interests of firm personnel and names of parties whose representation was declined.

All lawyers in the firm, regardless of practice area or geographical location are able to access all conflict data held by the firm in their conflict search. All potential conflicts are always referred to the management committee.

Where representation is continued subject to conflict waivers, the firm maintains a written Policy requiring the waiver to clearly show (1) the conflicting parties the nature of the conflict (2) show how it could affect the representation and (3) show how the client was advised to consider consulting another Law Firm either about the conflict and/or the original matter prior to signing the waiver.



Law Group International, LLP

**Mauricio R. Celis**
Licensed in Mexico

**D. R. Gwyther, Jr.**
Licensed in Texas

**Raul R. Tapia**
Licensed in
Washington, D.C.
& California

**T. Anthony
Guajardo**
Licensed in Arizona
& Texas

**CORPUS CHRISTI OFFICE**
500 N. Water Street
8ᵗʰ Floor South Tower
Corpus Christi, Texas 78471
361.884.6201 t  361.884.6207 Fax
info@cgtlaw.com  |  www.cgtlaw.com
800.365.5004 Toll Free

**WASHINGTON OFFICE**
101 Constitution Ave., NW
Suite 903
Washington, D.C. 20001
202.742.4446 t  202.742.4422 Fax
info@cgtlaw.com  |  www.cgtlaw.com
800.365.5004 Toll Free

**SHAND MORAHAN & COMPANY, INC.**
Ten Parkway North, Deerfield, IL 60015
(847) 572-6000  Fax (847) 572-6157
Underwriting Manager
A Markel Company

- ○ DEERFIELD INSURANCE COMPANY
- ○ EVANSTON INSURANCE COMPANY
- ○ ESSEX INSURANCE COMPANY
- ○ MARKEL AMERICAN INSURANCE COMPANY
- ○ MARKEL INSURANCE COMPANY

**BI PLAINTIFF FIRMS**
**PERTINENT INFORMATION NEEDED**

1. Use of engagement/retention letter - send sample. ~~behalf master~~ English version - See Attached

2. Procedure used if firm declines services to client. Do they advise of status? Telephone call by Attorney, followed By letter (sent certified mail and regular mail). Client(s) always notified of relevant statute of limitations and/or statutes of repose (if applicable)

3. Percentage of settlement firm takes as fees. (25-50%) varies depending on value of case, Venue, Appeal,

4. Types of cases - i.e., medical malpractice, asbestos, personal injury, wrongful death. Personal injury, wrongful death, product Liability, automotive defects, commercial trucking accidents, limited business litigation.

5. Docket - request narrative describing controls.
   a) New File - How does initial answer date get on system? By whom? Attorney notifies paralegal or clerk who enters it on case master information sheet in computer and paper files
   b) What control (or who) checks to see if suit is filed? Attorney in charge of case and paralegal.

6. Does the firm advertise? [X] Yes [ ] No. If so, in what medium? Yellowpages, website, office brochure, limited direct mailings to clients, former clients.

7. Does the firm take referral cases in state, out of state? [X] Yes [ ] No. If so, approximately how many per year? New firm - expect 10-20 referred cases in first year.

8. Does the firm refer cases to other firms? [X] Yes [ ] No. Approximately how many per year? New Firm - expect to refer 40-70 cases out to other firms in first year.

I/We understand that the information submitted herein becomes part of my/our professional liability application and is subject to the same representations and conditions.

D. R. Gwynther, Jr.
Name of Applicant

Signature of Applicant*

Partner
Title (Officer, partner, etc.)

12/07/05
Date

MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.
SM6288  3/02

## INSURED SUPPLEMENT
### APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE

Indicate the names of all lawyers who are presently officers, partners, employed lawyers, of counsels or retired partners of the Firm and complete the requested information for each lawyer.  Please note that coverage responds only for acts performed on behalf of the firm.

| Name of Lawyers | Designation O - Officer P - Partner E - Employed Lawyers OC - Of Counsel RP - Retired Partner | Member of Management Committee or Governing Body (Yes/No) | Year Admitted to Bar | Years of Full-Time Practice | Specialty, if any | Member in Good Standing of the Following State Bar(s) |
|---|---|---|---|---|---|---|
| Thomas Christopher Pinedo | E | No | 1988 | 18 | | Texas, Michigan, California |
| NOTE: Mr Pinedo is an employed lawyer added to our firm. | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT Law Group International, LLP
Name of Applicant*

Title  PARTNER

Signature of Applicant

Date  6-26-06

**\*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.**

SM 4115-01  1/02

EXHIBIT 2

EXHIBIT 2

# EXHIBIT 2

EXHIBIT 2

EXHIBIT 2

# **EVANSTON INSURANCE COMPANY**

**MARKEL®**

| | |
|---|---|
| Policy No. | LA-803756 |
| Prev. No. | NEW |
| Prod. No. | 21235 |

## DECLARATIONS - LAWYERS PROFESSIONAL LIABILITY INSURANCE

Claims Made and Reported policy. This policy provides coverage for only those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE TERMS OF THIS POLICY. Please review the policy carefully.

THIS POLICY MAY CONTAIN PROVISIONS THAT REDUCE THE LIMITS OF LIABILITY STATED IN THE POLICY BY THE COSTS OF LEGAL DEFENSE AND PERMIT CLAIM EXPENSES TO BE APPLIED AGAINST THE DEDUCTIBLE.

1.  **NAMED INSURED:** CGT LAW GROUP INTERNATIONAL, LLP

2.  **ADDRESS OF NAMED INSURED:**
    101 CONSTITUTION AVENUE, NW, SUITE 900,
    Washington, DC 20001

3.  **POLICY PERIOD:** From December 7, 2005 To December 7, 2006
    12:01 A.M. Standard Time at address of Named Insured stated above.

4.  **LIMITS OF LIABILITY:**

    | | |
    |---|---|
    | Each Claim: | $ 2,000,000 |
    | Policy Aggregate: | $ 2,000,000 |

5.  **DEDUCTIBLE:**

    | | |
    |---|---|
    | Each Claim: | $    25,000 |

6.  **PREMIUM:** $    48,360.00

7.  If the Firm meets the eligibility requirements of THE COVERAGE 4, the PREMIUM FOR THE EXTENDED REPORTING PERIOD FOR A 12 MONTH PERIOD IS 150% of the applicable full annual premium hereunder.

8.  **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

    | | |
    |---|---|
    | 1. EIC 4115-01 | 25% Minimum Earned Premium Endorsement |
    | 2. EIC 4436 | Prior Acts Exclusion |
    | 3. ZZ-44003-02 | Certified Acts of Terrorism Exclusion |

ALL CLAIMS TO BE REPORTED DIRECTLY TO

Shand Morahan & Company, Inc.
Ten Parkway North, Suite 100
Deerfield, Illinois 60015
Phone: (847) 572-6000, Fax (847) 572-6338

*Michael A. Rozenberg*
Authorized Representative

Policy Form: EIC 1507-3 4/93
Dec: EIC 1507-2 8/02
Date Printed: December 21, 2005



## EVANSTON INSURANCE COMPANY

**Endorsement**

| | |
|---|---|
| Named Insured: | Policy No.: LA-803756 |
| CGT LAW GROUP INTERNATIONAL, LLP | Endorsement No.: 1 |
| | Effective Date: December 7, 2005 |

### 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other provisions of the policy shall apply and remain unchanged.

_Michael A. Rosenberg_
Authorized Representative

EIC 4115-01 2/03



## EVANSTON INSURANCE COMPANY

### Endorsement

| | |
|---|---|
| Named Insured: | Policy No.:  LA-803756 |
| CGT LAW GROUP INTERNATIONAL, LLP | Endorsement No.:  2 |
| | Effective Date:  December 7, 2005 |

### PRIOR ACTS EXCLUSION
#### (use with EIC 1507)

In consideration of the premium paid, it is hereby understood and agreed that Section THE EXCLUSIONS is amended by the addition of the following exclusion:

     to any Claim based upon, arising out of, or in any way involving any Act or Personal Injury happening prior to December 7, 2005.

---

All other provisions of the policy shall apply and remain unchanged.

_Michael A. Rozenberg_
Authorized Representative

EIC 4436 5/04



# EVANSTON INSURANCE COMPANY

## Endorsement

| | |
|---|---|
| Named Insured:<br>CGT LAW GROUP INTERNATIONAL, LLP | Policy No.:   LA-803756<br>Endorsement No.:   3<br>Effective Date:   December 7, 2005 |

### CERTIFIED ACTS OF TERRORISM EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any claim or portion thereof based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance of Act of 2002 (Pub.L. 107-297) or any amendments thereto or any regulations promulgated thereunder. The federal Terrorism Risk Insurance of Act of 2002 sets forth the following criteria for a Certified Act of Terrorism:

1.    The act resulted in aggregate losses in excess of $5 million; and

2.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other provisions of the policy shall apply and remain unchanged.

_Michael A. Rosenberg_
Authorized Representative

ZZ-44003-02



## EVANSTON INSURANCE COMPANY

MARKEL®

---

### Endorsement

| | |
|---|---|
| Named Insured: | Attached to and forming |
| CGT LAW GROUP INTERNATIONAL, LLP | a part of Policy No.:     LA-803756 |
| | Endorsement No.:     4 |
| | Effective Date of Endorsement:   July 26, 2006 |

---

### ADDITIONAL INSURED ENDORSEMENT

In consideration of $4,137 additional premium, it is hereby understood and agreed that effective July 26, 2006, Thomas Christopher Pinedo is hereby added as an Insured under this policy.

---

All other provisions of the policy shall apply and remain unchanged.

_Michael A. Rosenberg_
Authorized Representative


**EVANSTON INSURANCE COMPANY**

## Endorsement

| Named Insured:<br>CGT LAW GROUP INTERNATIONAL, LLP | Attached to and forming<br>a part of Policy No.: | LA-803756 |
|---|---|---|
| | Endorsement No.: | 5 |
| | Effective Date of Endorsement: | June 26, 2006 |

### ADDITIONAL INSURED ENDORSEMENT

It is hereby understood and agreed that Endorsement No. 4 is deleted in its entirety and replaced as follows:

In consideration of $5,062 additional premium, it is hereby understood and agreed that effective June 26, 2006, Thomas Christopher Pinedo is hereby added as an Insured under this policy.

All other provisions of the policy shall apply and remain unchanged.

_Michael A. Rosenberg_
Authorized Representative

## Lawyers Professional Liability Insurance Policy

**CONDITIONS PRECEDENT**

As conditions precedent to the availability of any coverage under this policy, the payment of the premium must be made when due, and the application attached hereto and made a part hereof and all information in whatever form communicated by The Insured to the Company must be accurate. Subject to this policy's Declarations and all the terms of this insurance, the Company and The Insured agree as follows:

**DEFINITIONS**

Wherever used in this policy the following words and phrases shall be defined as set forth below:

**Act:** The performance of or omission of a duty or obligation by The Insured while rendering legal advice or legal services for others.

**Claim:** A demand received by The Insured for Damages.

**Claim Expenses:** Subject to Company approval which shall not be unreasonably withheld, all reasonable fees, costs and expenses resulting directly from the investigation, adjustment, defense and appeal of a Claim. Provided, however, Claim Expenses do not include: salary charges of regular employees or officials of the Company; fees and expenses of supervisory counsel retained by the Company; salaries or compensation of any individual or entity identified within THE INSURED.

**Damages:** The monetary portion of any judgment, award or settlement and does not include:

   (a)   punitive or exemplary damages, any damages which are a multiple of compensatory damages, statutory treble damages, or fines, penalties or sanctions including, but not limited to, fines awarded pursuant to Rule 11 of the Federal Rules of Civil Procedure; or

   (b)   the restitution of consideration and expenses paid to The Insured for services or goods; or

   (c)   judgments or awards deemed uninsurable by law.

**Of Counsel:** Any lawyer or professional corporation or any lawyer who is an employee of such professional corporation who is specifically identified on the application as "Of Counsel," but solely with respect to acts on behalf of The Firm.

**The Firm:** The entity listed in the Declarations as "Named Insured".

**Personal Injury:** False arrest, false imprisonment, malicious prosecution, malicious abuse of process, wrongful detention, wrongful entry or eviction or other invasion of private occupancy, libel, slander or breach of privacy by The Insured all while rendering legal advice or legal services for others.

**Policy Period:** The period from the inception date of this policy to the policy expiration date as stated in the Declarations or the policy's earlier termination date, if any.

**Extended Reporting Period:** Whenever used in this policy means the period of coverage described in THE COVERAGE 4., which if purchased, incepts on the effective date of cancellation or non-renewal of this policy and expires upon the completion of the number of months indicated in the Declarations as "Policy Period" or at any earlier termination date effected pursuant to THE COVERAGE 4. (e).

**Predecessor Firm:** Any legal entity which was engaged in the practice of law to whose financial assets and liabilities the Firm is the majority successor in interest and which is designated in the application as a predecessor firm.

**COMPANY DESIGNEE**

With respect to notices required to be given to the Company as provided for in INSURED DESIGNEE, THE COVERAGE 3. and 4., CLAIMS 1. and OTHER CONDITIONS 2. and 6., the Company has appointed Shand Morahan and Company, Inc., Ten Parkway North, Deerfield, Illinois 60015 to be the exclusive representative of the Company for the purpose of receiving such notices. All notices required by this Policy shall be made in writing to the Company Designee.

**INSURED DESIGNEE**

The attorney signing the application which is attached to the Policy shall be deemed the Insured Designee. The Insured Designee for this policy shall be the sole representative of The Insured.

The Firm or the Insured Designee may change the Insured Designee at any time. The Company must be advised in writing of any change in the Firm's Designee as soon as practicable after such change. In the event of the failure of the Firm to advise the Company, any notice or communication transmitted by the Company to the attorney signing the attached application shall be sufficient notice and shall be deemed notice to the Firm.

**THE INSURED**

**Insured,** wherever used in this policy means:

1.    The entity listed in the Declarations as "Named Insured", such entity to be known as the "Firm" but only for Claims arising out of legal advice or legal services provided on behalf of the Firm or any Predecessor Firm by any other Insured; and

2.    Any lawyer or professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

3.    Any lawyer who is an employee of a professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

4.    Any lawyer or professional corporation who is a former partner, officer, director, Of Counsel or employee of the Firm or any Predecessor Firm or of any professional corporation but only for Claims arising out of the legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

5.    Any other present or former employee of the Firm or any Predecessor Firm or of any professional corporation insured by this policy solely while acting on behalf of the Firm or any Predecessor Firm; and

   6. As respects the liability of The Insured as otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of The Insured as defined in Items 1. through 5. above in the event of death, incapacity or bankruptcy.

**THE COVERAGE**

1.    **Professional Liability Claims Made and Reported Coverage:**

The Company shall pay on behalf of The Insured, subject to the limits of liability, sums in excess of the deductible amount which The Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE PROVISION OF CLAIMS 1:

(a)    because of any Act; or

(b)    because of any Personal Injury,

PROVIDED ALWAYS THAT such Act or Personal Injury happens,

(aa)    during the Policy Period; or

(bb)    prior to the Policy Period provided that, on or prior to the effective date of this policy, no Insured was aware of any facts or circumstances from which a reasonable person would have anticipated a Claim;

PROVIDED FURTHER THAT no other policy which provides insurance for such liability or Claim resulting from such Act or Personal Injury is available to the Insured whether or not the available limits of liability of any such other insurance are sufficient to pay any such liability or claim or whether or not the deductible provisions and amount of any such other insurance are different from

this policy, unless such other insurance is written only as specific excess insurance over the limits of liability provided by this policy.

Subject to all other terms and conditions of this policy, when The Insured renders services as an administrator, conservator, executor, guardian, trustee, The Insured's Acts in such capacity shall be deemed for the purpose of this section to be the performance of legal services for others, provided that this coverage shall not apply to any loss sustained by The Insured as the beneficiary or distributee of any trust or estate.

2.    **Defense, Investigation and Settlement of Claims:**

The Company shall investigate and defend any Claim to which coverage under this policy applies pursuant to the following provisions:

(a)    Claim Expenses incurred in investigating and defending such Claim shall be included within the per claim policy limit of liability set forth in the Declarations and shall not be in addition thereto. Such Claim Expenses shall reduce the available limit of liability. THE COMPANY SHALL NOT BE OBLIGATED TO PAY ANY DAMAGES OR TO DEFEND OR TO CONTINUE TO DEFEND ANY CLAIM OR TO PAY CLAIM EXPENSES AFTER THE LIMIT OF THE COMPANY'S LIABILITY HAS BEEN TENDERED TO THE INSURED OR INTO THE COURT OR EXHAUSTED BY PAYMENT(S) OF DAMAGES AND/OR CLAIM EXPENSES.

(b)    Selection of defense counsel shall be made by the Company. Provided, however, that if the law of the state of the Firm's domicile (as designated on the Declarations page) allows the Insured to control the selection of counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which The Insured may designate counsel who shall act solely in the interest of The Insured, and The Insured agrees to direct such defense counsel to cooperate with the Company. Such cooperation shall include:

(1)    Providing on a regular basis, not less frequently than every six months, written reports on claimed Damages potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

(2)    Providing any other reasonable information requested and fully itemized billing on a periodic basis;

(3)    Cooperating with the Company and The Insured in resolving any discrepancies;

and the fees and costs incurred by such counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be included within the policy limit of liability and not in addition thereto. Such Claim Expenses shall reduce the available limit of liability.

(c)    The Insured shall cooperate with the Company in the defense, investigation and settlement of any Claim. The Insured will assist the Company in effecting any rights of indemnity, contribution or apportionment available to The Insured or the Company. Upon the Company's request, The Insured shall: (i) submit to examination and interview by a representative of the Company, under oath if required; (ii) attend hearings, depositions and trials; (iii) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (iv) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without charge to the Company.

(d)    The Insured shall not, with respect to any Claim covered under this policy, except at The Insured's personal cost, make any payment, admit liability, settle Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without prior written Company approval. Any costs and expenses incurred by The Insured prior to The Insured giving written notice of the Claim to the Company shall be borne by The Insured and will not constitute satisfaction of the deductible either in whole or in part.

(e)    The Company shall not settle any Claim without the consent of the Insured Designee. If, however, the Insured Designee shall refuse to consent to any settlement recommended by

the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company shall not be obligated to pay Claim Expenses incurred subsequent to such refusal. Furthermore, the Company's liability for such Claim shall not exceed the amount for which the Claim could have been so settled and Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of the section LIMITS OF LIABILITY.

3.   **Discovery of Potential Claims:**

If, during the Policy Period, The Insured first becomes aware of any Act or Personal Injury for which a Claim might reasonably be expected to be made for which insurance is otherwise provided by this policy and gives written notice of such Act or Personal Injury which is received by the Company during the Policy Period, then any Claim subsequently made arising out of that Act or Personal Injury shall be considered to have been made on the date such written notice is received by the Company.

Such written notice shall include a description of:

1)    the specific Act or Personal Injury; and

2)    the injury or damage that has or may reasonably result from 1) above; and

3)    the circumstances by which The Insured first became aware of 1) and 2) above.

The Insured shall cooperate fully with the Company as set forth in THE COVERAGE 2., Defense, Investigation and Settlement of Claims, and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in this policy as applicable to a Claim.

4.   **Extended Reporting Period:**

If the Company cancels or non-renews this policy, the Firm, for an additional premium charge, shall have the right to extend the period during which Claims must be first made and reported to apply to CLAIMS FIRST MADE AGAINST THE INSURED DURING THE PERIOD OF MONTHS INDICATED IN THE DECLARATIONS immediately following the effective date of such cancellation or non-renewal and REPORTED IN ACCORDANCE WITH CLAIMS 1., provided:

(a)   The Extended Reporting Period applies only to Acts or Personal Injuries committed prior to the effective date of cancellation or non-renewal of this policy which are otherwise covered by this policy; and

(b)   Cancellation or non-renewal does not result from the Firm's non-payment of premium and/or deductible or other non-compliance with the terms and conditions of the policy; and

(c)   Written notice of intent to exercise this option and the premium for the Extended Reporting Period is received by the Company from the Firm within ten (10) days of the effective date of cancellation or non-renewal. This premium shall be calculated at the percentage stated in the Declarations of the full annual premium of the policy; and

(d)   The full annual premium of this policy and any deductibles that are due have been paid by the Firm; and

(e)   The coverage afforded by this Extended Reporting Period shall terminate immediately when the Firm purchases a lawyers professional liability policy providing coverage in whole or in part for Acts or Personal Injuries committed prior to the end of the Policy Period. If coverage is so terminated, the Company shall refund pro rata any unearned premium charged for the Extended Reporting Period coverage; otherwise, the premium for the Extended Reporting Period shall be fully earned at the time of payment; and

(f)   The quotation of a different premium and/or deductible and/or limits of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this policy provision; and

(g)   The exercise of this Extended Reporting Period Option shall not in any way increase or be in addition to the limits of liability set forth in the Declarations.

EIC 1507-3 4/93                          Page 4

**THE EXCLUSIONS**

**The policy does not apply:**

(a)  to payment of Damages arising out of a judgment or award against an individual or entity identified in THE INSURED section of the policy who has been finally adjudicated to have committed an intentionally dishonest or fraudulent Act; however, notwithstanding the forgoing, the Company, subject to the Limits of Liability and other terms and conditions, will pay Claim Expenses for any such Claim, and shall not exclude coverage to the Firm or to any other Insured who is not so adjudged to have committed such Act as described above. This policy shall then pay only in excess of the deductible and in excess of the full extent of the capital and assets in the Firm of any such individual or entity who was so adjudged to have committed such Act as described above, and any other personal assets of such individual or entity recovered by the Firm shall inure, to the extent of the amount paid by this policy, to the benefit of the Company,

(b)  to any Claim made by an Insured or any individual or entity acting on behalf of any Insured.

(c)  to any Claim resulting from the rendering of legal advice or legal services for any individual or entity where such individual or entity either holds an ownership interest in or is considering acquiring an ownership interest in a business enterprise, pension, profit sharing, mutual or investment fund or trust;

1)  which, at the time such advice or services were rendered, was more than 5% owned, controlled, managed or operated by any single individual or entity or any combination of individuals or entities within THE INSURED, alone or in conjunction with any spouse or any other immediate family member of any individual or entity identified within THE INSURED; or

2)  for which any individual or entity identified within THE INSURED serves or served at the time such advice or services were rendered as an officer, director, partner, manager or employee or as a trustee in bankruptcy;

(d)  to any Claim arising out of The Insured's capacity as a public official or an employee of a governmental body, subdivision or agency unless The Insured is deemed to be such solely because The Insured has rendered legal advice or legal services to such governmental body and the remuneration for such legal advice or legal services inures to the benefit of the Firm;

(e)  to any Claim for bodily injury, sickness, disease or death of any person, or injury to or destruction of any tangible property or loss of use resulting therefrom;

(f)  to any Claim based on or arising out of the rendering of investment advice by any Insured in connection with the purchase or sale of any investment or property, including but not limited to securities, real property, syndications, limited partnerships, commodities or franchises; or to any claim based on or arising out of any Insured's services or capacity as a securities broker, dealer, financial planner, investment advisor, accountant, real estate broker or real estate agent;

(g)  to any Claim based upon or arising out of a contract for, or other right relating to, payment of or division of fees or fee apportionment;

(h)  to any Claim based on or arising out of discrimination of any kind by any Insured including but not limited to discrimination on the basis of race, national origin, creed, religion, age, sex, sexual orientation, health disability or marital status or to any claim arising out of alleged or actual wrongful termination.

With the exception of THE EXCLUSIONS (a) hereinabove, any fact pertaining to any one or more Insured(s) which determines the applicability of THE EXCLUSIONS hereinabove shall apply to each and every individual or entity identified within THE INSURED and the Company shall not be required to defend or indemnify any Claim arising out of alleged Acts or claim for Damages for which no coverage applies pursuant to THE EXCLUSIONS or any other terms of this Policy.

**TERRITORY**

The Insurance afforded applies worldwide.

EIC 1507-3 4/93                                    Page 5

## LIMITS OF LIABILITY

**1.    Limit of Liability--Each Claim:**

The liability of the Company for the combined total of Damages and Claim Expenses for each Claim FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1., shall not exceed the amount stated in the Declarations for "each Claim."

**2.    Limit of Liability--Policy Aggregate:**

Subject to 1. Limit of Liability--Each Claim, the liability of the Company for the combined total of Damages and Claim Expenses shall not exceed the amount stated in the Declarations as "aggregate" as a result of all Claims FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1.

**3.    Deductible:**

Except as set forth in the following paragraph, the deductible amount stated in the Declarations shall be applicable to the combined total of Damages and Claim Expenses for each Claim.

Deductible payment or portions thereof shall be paid by the Firm within 30 days of demand.

**4.    Multiple Insureds, Claims and Claimants:**

The inclusion of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the limits of liability and deductible. Two or more Claims arising out of a single Act or Personal Injury or a series of related Acts or Personal Injuries shall be treated as a single Claim. All such Claims whenever made shall be considered first made on the date on which the earliest Claim arising out of such Act or Personal Injury was first made and all such Claims are subject to the same limit of liability and deductible.

## CLAIMS

**1.    Insured's Duties in the Event of Claim:**

As a condition precedent to the availability of coverage under this policy The Insured's duties in the event of a Claim shall be as follows:

(a)    If suit is brought or arbitration is instituted against The Insured, then The Insured shall immediately forward to the company, directed to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015, every demand, notice, summons or other process received by The Insured or their representative; and

(b)    If any Claim, other than a suit or arbitration proceeding, is made, then The Insured shall give as soon as practicable, written notice to the Company containing particulars sufficient to identify The Insured and claimant and full information with respect to the time, place and circumstances of the Claim; and

(c)    In any event any Claim or suit made or arbitration instituted against The Insured during the Policy Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN SIXTY (60) DAYS AFTER THE EXPIRATION OF THE POLICY PERIOD; and

(d)    In any event any Claim made or suit made or arbitration instituted against The Insured during the purchased Extended Reporting Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN TEN (10) DAYS AFTER THE EXPIRATION OF THE EXTENDED REPORTING PERIOD.

**2.    Subrogation and Indemnity:**

(a)    In the event of payment for Damages or Claim Expenses under the policy, the Company shall be subrogated to all of The Insured's rights of recovery against any person or organization. Any recovery shall be used to pay: first, subrogation expenses; second, payments in excess of the deductible by The Insured; third, payments by an excess insurer; fourth, payments made by a primary insurer; and, last reimbursement of The Insured's deductible.

EIC 1507-3 4/93                                Page 6

(b)   If the Company makes any payment of Claim Expenses or Damages as a result of the final adjudication that an intentionally dishonest or fraudulent Act has been committed, then the Company shall have the right to indemnification of such payments from the individual or entity so adjudged, including any individual or entity identified in THE INSURED section of the policy.

**3.    False or Fraudulent Claims:**

If any individual or entity identified within THE INSURED commits fraud in presenting or maintaining any Claim, the Company at its sole option may void:

(a)   this insurance with respect to such Claim; and/or

(b)   this insurance as to such individual or entity from the date such Claim is presented or maintained; and/or

(c)   this policy in its entirety; and/or

(d)   this insurance from the date such Claim is presented or maintained.

**OTHER CONDITIONS**

**1.    Application:**  By acceptance of this policy, The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between The Insured and the Company, or any of its agents, relating to this insurance.

**2.    Firm Changes:**  Any of the following changes in the Firm which occur during the Policy Period must be reported to the Company within sixty (60) days of such change:

(a)   any change of 20% or more in the total number of lawyers in the Firm;

(b)   any new involvement in any single practice specialty anticipated to produce 5% or more of the Firm's gross billable dollars;

A premium adjustment and/or revision of limits, deductible, and/or coverage may be required by the Company as a result of such change. A return of premium due to a mid-term reduction in staff is not available under the policy. Mid-term charges for increase in staff in excess of 20% may apply.

**3.    Changes:**  Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy or stop the Company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**4.    Non-Payment of Deductible:**  If, within thirty (30) days of demand by the Company, the Insured fails to pay any or all of the Deductible which the Insured has become obligated to pay, the Company has the right to institute binding arbitration against the Insured unless otherwise prohibited by the laws of the state governing the Policy. The arbitration fees and costs of both parties shall be borne by the Insured; however, should the Insured prevail in arbitration, the Company shall pay the fees and costs.

**5.    Assignment:**  Assignment of any interest under this policy shall not bind the Company unless its consent is endorsed hereon.

**6.    Integration of Document:**  All provisions of this policy are intended to be read together as one integrated document. No provision nor any part thereof is intended to be separable from the balance of the policy. The meaning of each provision of this policy is created by what is written in such provision and by what is written in the balance of the policy, and the Company issues this policy to The Insured in contemplation of the foregoing method of giving meaning to the policy.

If any provision of this policy is held to be void by a court of competent jurisdiction, then the balance of this policy shall still be interpreted in accordance with the preceding paragraph.

**7.    Cancellation or Non-Renewal:**  This policy may be cancelled by the Firm by the Firm's mailing of written notice to the Company stating when, thereafter, such cancellation shall be effective and by the Firm's surrender of the policy or a valid lost policy release to the Company.

EIC 1507-3 4/93                              Page 7

This policy may be cancelled by the Company or by Shand Morahan & Company, Inc. by mailing to the Firm written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective.

Provided, however, if the Firm does not pay the premium or deductible when due, the Company or Shand Morahan & Company, Inc., may cancel the policy giving the Firm at least ten (10) days written notice of cancellation. If no premium has been paid, cancellation for non-payment of premium shall be as of Policy inception. In the event that the policy is cancelled for non-payment of premium, the Company will not be liable for any Claims made against the Firm.

The Company, or Shand Morahan & Company, Inc., if it intends not to renew this policy, must give written notice to the Firm, mailed at least sixty (60) days prior to the expiration date of this policy.

The effective date of cancellation or non-renewal stated in the notice shall become the end of the Policy Period. Delivery of written notice by the Company or by Shand Morahan & Company, Inc., shall be equivalent to mailing. Should the Firm cancel the policy, the short rate proportion of the premium shall be charged. If the Company or Shand Morahan & Company, Inc., cancels the policy, the earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

8. **Service of Suit:** Except with respect to any policy issued to a Firm domiciled in Illinois, or in any state in which the Company is licensed to transact business, it is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of The Firm will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this Clause constitutes nor should be understood to constitute a waiver of the Company's right to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court, as permitted by the laws of the United States or of any state in the United States. In any suit instituted against it upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Lord Bissell & Brook, whose address is 115 South LaSalle Street, Chicago, Illinois 60603, is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Firm they will enter a general appearance upon the Company's behalf in the event such suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereon hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of The Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**IN WITNESS WHEREOF,** the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

_____
Secretary

_____
President

EIC 1507-3 4/93                                    Page 8

## NUCLEAR ENERGY LIABILITY
## EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies the provisions of this policy.

It is agreed that:

1.  **This policy does not apply:**

    A.  Under any Liability Coverage, to bodily injury or property damage

        (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C.  Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

        (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

        (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

        (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2.  **As used in this endorsement:**

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or by-product material;

    "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

    "nuclear facility" means

        (a) any nuclear reactor,

        (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

EIC 1507-3 4/93                                    Page 9

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

EIC 1507-3 4/93                                    Page 10



**SHAND MORAHAN MARKEL & COMPANY, INC.**
Ten Parkway North, Deerfield, IL 60015
(847) 572-6000 Fax (847) 572-6137
Underwriting Manager
A Markel Company

- **DEERFIELD INSURANCE COMPANY**
- **EVANSTON INSURANCE COMPANY**
- **ESSEX INSURANCE COMPANY**
- **MARKEL AMERICAN INSURANCE COMPANY**
- **MARKEL INSURANCE COMPANY**

### APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE
(Claims Made and Reported Basis)

**APPLICANT'S INSTRUCTIONS:**
1  Answer all questions.  If more details are required, please attach a separate sheet.
2  Application must be signed and dated by owner, partner or officer.
3  PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.
(PLEASE TYPE OR PRINT)

1. **APPLICANT INFORMATION**

   a  Full name of applicant:  C G T LAW GROUP INTERNATIONAL, LLP

   b  Principal business premise address:  101 CONSTITUTION AVENUE NW, SUITE 900
   (Street)                                                    (Country)
   WASHINGTON D.C.                    20001
   (City)                      (State)                (Zip)

   c  Please list any secondary locations on a separate sheet and include number of lawyers at each location.
   COMPLETE THE INSURED SUPPLEMENT

   d  (i)   Number of attorneys                              4

      (ii)  Number of Paralegals or law clerks

      (iii) Number of clerical or support staff              3

      (iv)  Other-please describe
      1 - CPA / CONTROLLER

   e.  Specify if:  [ √ ] Partnership    [ ] Corporation    Year established: Limited Liability Partnership - 2005

2. **BUSINESS OPERATIONS**

   a  List on separate attachments the names of all predecessor firms whose assets and liabilities the Firm assumed during  NONE
   the past 10 years, include the name(s) of the firm(s), the year established, the number of lawyers, and the location

   b.  Does the firm share or lease space with any other firm or entity? ......................................................... [ ] Yes [ √ ] No
   If so, please advise of the entity' name and the specific circumstances on a separate attachment.

   c. Please advise of any foreign affiliated or associated firms and provide a detailed narrative of the name of the
   relationship on a separate attachment.

   d  Provide corporate brochure(s) and/or firm resume.

   e.  (i)  Does any member of the Firm while rendering legal services also provide investment counselor
   services or provide tax opinions on tax shelters? .......................................................................... [ ] Yes [ √ ] No
   If yes, please describe the nature of the services provided and the types of clients to which
   such services are provided on separate attachment.

      (ii)  Does any member of the firm on behalf of its clients perform legal services involving the
   formation or sale of syndications or limited partnerships? ................................................... [ ] Yes [ √ ] No
   If yes, on separate attachment, describe services performed and details, including number
   of formed during the past two years, total dollar amount of each and the nature of the
   investment.

SM 4115-01 1/02                    Page 3 of 8

FILE:7 Sails/PAXXaa    From: Ben Gaines 847-572-8228    To: Lisa Stringer    Date: 7/18/2003 Time: 9:22:34 AM    Page 5 of 12

f.   Indicate the approximate percentage of gross billable dollars from practice devoted to:

| | | |
|---|---|---|
| Admiralty/Maritime _____ % | Corporate (general) _____ % | Real Estate |
| Anti-Trust/Trade Reg _____ % | Corp. Mergers/Acquisitions _____ % | Closings _____ % |
| Banking _____ % | Criminal _____ % | Escrow/Title _____ % |
| Bankruptcy _____ % | Domestic Relations _____ % | Syndication/Development _____ % |
| BI/PI Defendants _____ % | Entertainment _____ % | Securities Law*: |
| BI/PI Plaintiffs: | Estate/Probate/Trust _____ % | Federal SEC _____ % |
| Anticipated fees per case | International Law _____ % | State _____ % |
| less than $25,000 _____ % | Labor _____ % | Private Placements _____ % |
| Anticipated fees per case | Litigation: | Bonds _____ % |
| greater than or equal to | Plaintiff _____ % | Taxation |
| $25,000 _100_ % | Defense _____ % | Preparation _____ % |
| Collection/ | Municipal _____ % | Opinions _____ % |
| Repossession _____ % | Oil and Gas _____ % | Other** _____ _____ % |
| Communications _____ % | Public Utilities _____ % | _____ _____ % |
| Copyright/Patent/TM _____ % | | |

| | |
|---|---|
| | TOTAL INCOME:    100% |

\* Complete Securities Supplement.
\*\* Over 5% Specify.

g.   Are any major changes foreseen in the percentage shown in question (f) for the current fiscal year? ... [ ] Yes [✓] No
If yes, please provide narrative details on a separate attachment.

h.   Specify the firm's total gross revenues:

Last fiscal year    From _____ to _____    Gross Revenues $ _NA – NEW FIRM_

NEXT YEAR Estimate current fiscal year:    From _01/01/06_ to _12/31/06_    Gross Revenues $ _3,000,000_

i.   Is any lawyer listed in the Insured Supplement serving as a director, officer or partner of or
exercising any fiduciary control over any entity other than the firm? ........................................ [✓] Yes [ ] No
If yes, complete the Outside Interests Supplement

REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

j.   Other than those positions referenced in question (i), does the firm or any lawyer or employee of
the firm ever invest in the business of a client? ......................................................................... [ ] Yes [✓] No
If yes, please provide on separate attachment full details of such relationship.

REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

k.   Except as listed in question f and j, does the firm or any of its members engage in any occupation,
business or profession other than the practice of law? .............................................................. [ ] Yes [✓] No
If yes, please provide narrative details on a separate attachment.

l.   (i)  Are custodial accounts (i.e., money, securities and other property held on behalf of clients)
audited by an independent, outside auditor? ...................................................................... [ ] Yes [✓] No

(ii)  Are two signatures required for all withdrawals of funds from custodial accounts? ............... [✓] Yes [ ] No

m.  With respect to the total of all custodial accounts other than retainer fees, what is the average dollar amount and the
maximum dollar amount held or maintained on behalf of the firm's clients?

Average: $ _1000_    Maximum: $ _250,000_

n.   Does the firm maintain a fidelity bond covering all employees? ..................................................... [ ] Yes [✓] No

o.   (i)  Please describe by separate attachment the firm's procedures for the acceptance of new
business including conflict of interest checks and who has the authority to accept new
business.                                                                                                                          [ ] Yes [✓] No
                                                                                                                             Applied For

(ii)  Does the firm make use of engagement letters with its new clients? ..................................... [✓] Yes [ ] No

SM 4115-01  1/02                    Page 2 of 8

From: [illegible]    From? [illegible] Codes: 847-573-8228    To: Lisa Stringer    Date: 7/18/2003 Time: 8:33:54 AM    Page 6 of 17

**3.   HISTORY**

a.   Over the past five years, has the Firm opened or closed any branch office or had a single loss of
      25% or more of the lawyers of the Firm? ......... $N/A$ - NEW FIRM
      If yes, please provide details by separate attachment. .......... [ ] Yes [ ] No

b.   (i)   Has the firm or any predecessor firm or any lawyer listed in the insured Supplement ever had
            any insurance company or Lloyd's decline, cancel, refuse to renew or accept only on special
            terms any professional liability insurance?
            If yes, please explain: _____ [ ] Yes [✓] No

     (ii)   Has any lawyer listed in the insured Supplement ever been the subject of a reprimand or
            disciplinary action or refused admission to the Bar? ......... 
            If yes, please explain on a separate attachment. [ ] Yes [✓] No

     (iii)  During the past seven years, has any professional liability claim or suit been made against any
            lawyer listed in the Insured Supplement or against the firm or any predecessor firm? ......... [ ] Yes [✓] No
            If yes, a SUPPLEMENTAL CLAIM INFORMATION form must be completed for each claim.

     (iv)   After inquiry, does the firm or any person proposed for this insurance have knowledge of any
            incident, circumstance, act, error, omission or personal injury which may give rise to a claim? ......... [ ] Yes [✓] No
            If yes, provide a complete description of each on a separate attachment. It is agreed that if there
            be knowledge of any such incident, circumstance, error, omission or personal injury, any claim
            subsequently emanating therefrom shall be excluded from coverage under the proposed insurance.

c.   Please provide a list by separate attachment of all clients that represent 5% or more of the firm's total billable dollars
      or contribute $1,000,000 or more to the firm's income annually. $N/A$

d.   List lawyers professional liability insurance carried for each of the past five years.   IF NONE, STATE NONE

| Inception From | Expiration To | Insurance Company | Policy No. | Limit of Liability | Deductible | Premium |
|---|---|---|---|---|---|---|
| From_____ | To_____ | | | | | |
| From_____ | To_____ | $N/A$ - NEW FIRM | | | | |
| From_____ | To_____ | | | | | |
| From_____ | To_____ | | | | | |
| From_____ | To_____ | | | | | |

NOTICE TO APPLICANT: The coverage applied for is SOLELY AS STATED IN THE POLICY, which provides coverage on a
"CLAIMS MADE" basis for ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY
PERIOD unless the extended reporting period option is exercised in accordance with the terms of the policy.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance
containing any false information or conceals, for the purpose of misleading, information concerning any fact thereto commits a
fraudulent insurance act, which is subject to criminal and civil penalties.

WARRANTY  I warrant to the Insurer, that I understand and accept the notice stated above and that the information contained
herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the insurer
evidence its acceptance of this application by issuance of a policy. I authorize the release of claim information from any prior
insurer to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015.

_CGT LAW GROUP INTERNATIONAL, LLP_    _PARTNER_
Name of Applicant                                    Title (Officer, partner, etc.)

_____    _12-7-05_
Signature of Applicant                               Date

SIGNING this application does not bind the Applicant or the Insurer or the Underwriting Manager to complete the insurance  but
one copy of this application will be attached to the policy, if issued.

SM 4115-01 1/02                    · Page 3 of 5

## INSURED SUPPLEMENT
## APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE

Indicate the names of all lawyers who are presently officers, partners, employed lawyers, of counsels or retired partners of the Firm and complete the requested information for each lawyer. Please note that coverage responds only for acts performed on behalf of the firm.

| Name of Lawyers | Designation<br>O - Officer<br>P - Partner<br>E - Employed Lawyers<br>OC - Of Counsel<br>RP - Retired Partner | Member of Management Committee or Governing Body (Yes/No) | Year Admitted to Bar | Years of Full-Time Practice | Specialty, if any | Member in Good Standing of the Following State Bar(s) |
|---|---|---|---|---|---|---|
| Mauricio Celis | Partner | Yes | 2000 | 6 | | Mexico |
| Douglas Gwyther | Partner | Yes | 1998 | 7 | | Texas |
| Raul Tapia | Partner | Yes | 1977 | 29 | | Washington D.C<br>* California |
| Thomas A. Guajardo | Employed Lawyer | No | 1977 | 29 | | Texas - Arizona |

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT Law Group International, LLP
**Name of Applicant***

Partner
**Title**

12-7-05
**Date**

**Signature of Applicant**

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02

No 1 Self/Address  Phone: Bao Oders 847-672-8220    To: Lisa Stringer          Date: 7/18/2003 Time: 9:23:04 AM               Page 4 of 17

OUTSIDE INTERESTS SUPPLEMENT
APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE

FIRM: CGT LAW GROUP INTERNATIONAL, LLP

| Name of Lawyer | Name of Business | Position Held | Nature of Business | % of Equity Interest. Individual | Firm & All Lawyers and Their Spouses and Immediate Family Members Combined | Client of Applicant (Yes/No) | D&D Insurance (Yes/No) |
|---|---|---|---|---|---|---|---|
| MAURICIO CELIS | TAPATIO INC | OWNER | AIR CHARTER | 50% | — | NO | YES |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

CGT LAW GROUP INTERNATIONAL, LLP        PARTNER
Name of Applicant*                      Title

                                        12-7-05
Signature of Applicant*                 Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02                    Page 5 of 8

**SECURITIES SUPPLEMENT**
**APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE**

(Complete Only if the Firm does Securities Offerings, Private Placements or Bond Work)

FIRM  CGT LAW GROUP INTERNATIONAL, LLP

1    Indicate the approximate amount of billable dollars derived from securities, exempt and non-exempt work including federal SEC, state securities, private placements and bonds: $ ___N/A___

2    Briefly describe your SEC practice qualifications including whether any lawyers of the Firm involved in such activities have in the past been SEC staff members, practiced before the SEC or been cautioned or disqualified by the SEC. Provide narrative by separate attachment.    N/A

3    (a) indicate by a check those procedures employed by the Firm in security (exempt and non-exempt) matters including private placements and bonds:

| | | | for prior criminal |
|---|---|---|---|
| Investigate client | N/A | Check on federal reporting systems | |
| convictions | _____ | | |
| Investigate other participants | _____ | Court/regulatory investigation | _____ |
| Investigate other professionals | _____ | SEC filings filed and in order | _____ |
| Checklist | _____ | Check on tax opinion | _____ |
| On-site inspections | _____ | Render tax opinion | _____ |
| Review of corporate character | _____ | Check on prior injunctive actions in the SEC | _____ |
| Check on feasibility study | _____ | | |

(b) if the firm uses procedures other than those listed in 3(a) above, please describe by separate attachment.

4.   Using the chart on the following page, list securities offerings (exempt and non-exempt), private placements and bond offerings handled in the past two years including the year, name of insurer, type of transaction, type of business, underwriter, accountant, dollar size of offering and party represented by Firm.

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT LAW GROUP INTERNATIONAL, LLP                    PARTNER
Name of Applicant*                                  Title

_____                    12-7-05
Signature of Applicant*                             Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

NET SATISFACTION    From: Ben Gales 847-572-8223    To: Lisa Stringer                    Date: 7/18/2008 Time: 6:22:34 AM                    Page 13 of 13



| Year | Name of Issuer | Type of Transaction Indicate: P = Private Placement F = Federal Securities S = State Securities B = Bond | Indicate: Primary Offering = 1 Subsequent Offering = 2 | Type of Business | Underwriter | Accountant | Dollar Size of Offering and Description of Security | Indicate Party Represented by Firm: *I = Insurer *U = Underwriter L = Lender IC = Insurance Co. P = Purchaser Others - specify |
|------|----------------|------|------|------|------|------|------|------|
| | | N/A | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

*Indicate by an Asterisk if acting as Bond Counsel.

SM 4115-01  1/02                    Page 7 of 8

NET 34MUP40KBon    Prom: Ben Osler: 947-578-6229    To: Lisa Stringer    Date: 7/18/2005 Time: 8:29:24 AM    Page 13 of 13



**SHAND MORAHAN**
**& COMPANY, INC.**
One Parkway North, Deerfield, IL 60015
(847) 572-6000, Fax (847) 572-6130
Underwriting Manager
A Markel Company

○ **DEERFIELD INSURANCE COMPANY**
○ **EVANSTON INSURANCE COMPANY**
○ **ESSEX INSURANCE COMPANY**
○ **MARKEL AMERICAN INSURANCE COMPANY**
○ **MARKEL INSURANCE COMPANY**

### SUPPLEMENTAL CLAIM INFORMATION FOR
### LAWYERS PROFESSIONAL LIABILITY INSURANCE
### (Claims Made and Reported Basis)

**APPLICANT'S INSTRUCTIONS**
1. Answer all questions. If more details are required, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. This form is to be completed by Applicant who has been involved in any claim or suit or aware of an incident which may give rise to a claim.
4. Complete one form for each claim or incident.
5. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.
(PLEASE TYPE OR PRINT)

**APPLICANT INFORMATION**

a.   Firm Name: _____ N/A _____
b.   Claimant Name: _____
c.   Name of Individual(s) at Firm Involved in Claim: _____
d.   Indicate whether _____ Claim/Suit, or _____ Incident
e.   Date of alleged error: _____ Date of claim: _____
f.   Additional defendants: _____
g.   IF CLOSED: Total Loss Paid including Deductible: $_____
     Indicate whether _____ Court judgment, or _____ Out of court settlement
     IF PENDING: Claimant's settlement demand?     $_____
                 Defendant's offer for settlement?  $_____
                 Insurer's loss reserve?            $_____
                 Deductible?                        $_____
                 Is claim in Suit?     [ ] Yes [ ] No If yes, Amount asked in summons? $_____
h.   Name of Insurer: _____
i.   Description of claim: (Provide enough information to allow evaluation, and use reverse side if additional space is required.)
     (i)  Alleged act, error or omission upon which Claimant bases claim: _____

     (ii) Description of case and events: _____

     (iii) Description of the type and extent of injury or damage allegedly sustained: _____

j.   Firm's evaluation of likelihood of liability: _____
k.   Explain what action has been taken by the firm to prevent recurrence of the same type of claim
I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT LAW GROUP INTERNATIONAL, LLP _____    PARTNER _____
Name of Applicant*                            Title (Officer, partner, etc.)

_____              12-7-05
Signature of Applicant*                       Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02                    Page 8 of 8

**CGT LAW GROUP INTERNATIONAL, LLP**

Question 2  O (l)
New Clients and conflict of interest checks:

The firm maintains a management committee. There are three partners on this committee. All new clients are subject to approval by the firms management committee. Any lawyer generating new business is required to associate with a partner with specific expertise in the matter prior to proposing new business to the management committee.

The firm maintains a conflict of interest system on computer. All cases are maintained on a computer database. Conflict checks are reviewed at inception of all new cases. The conflict of interest systems reviews the following information: client name, opposing party, client subsidiaries, client principals, opposing counsel, outside interests of firm personnel and names of parties whose representation was declined.

All lawyers in the firm, regardless of practice area or geographical location are able to access all conflict data held by the firm in their conflict search. All potential conflicts are always referred to the management committee.

Where representation is continued subject to conflict waivers, the firm maintains a written Policy requiring the waiver to clearly show (1) the conflicting parties the nature of the conflict (2) show how it could affect the representation and (3) show how the client was advised to consider consulting another Law Firm either about the conflict and/or the original matter prior to signing the waiver.



Law Group International, LLP

Mauricio R. Cells
Licensed in Mexico

D. R. Gwyther, Jr.
Licensed in Texas

Raul R. Tapia
Licensed in
Washington, D.C.
& California

T. Anthony
Guajardo
Licensed in Arizona
& Texas

CORPUS CHRISTI OFFICE
500 N. Water Street
5th Floor South Tower
Corpus Christi, Texas 78473
361.884.6201 | 361.884.6207 Fax
info@cgtlaw.com | www.cgtlaw.com
800.368.5004 Toll Free

WASHINGTON OFFICE
101 Constitution Ave., NW
Suite 900
Washington, D.C. 20001
202.742.4446 | 202.742.4422 Fax
info@cgtlaw.com | www.cgtlaw.com
800.368.5004 Toll Free

**SHAND MORAHAN & COMPANY, INC.**
Ten Parkway North, Deerfield, IL 60015
(847) 572-6000 Fax (847) 572-6157
Underwriting Manager
A Markel Company

○ DEERFIELD INSURANCE COMPANY
○ EVANSTON INSURANCE COMPANY
○ ESSEX INSURANCE COMPANY
○ MARKEL AMERICAN INSURANCE COMPANY
○ MARKEL INSURANCE COMPANY

**BI PLAINTIFF FIRMS**
**PERTINENT INFORMATION NEEDED**     *See Attached*

1. Use of engagement/retention letter - send sample. ~~Detailed response~~ *English version*

2. Procedure used if firm declines services to client. Do they advise of statute? *Telephone call by Attorney, followed By letter (Both Certified Mail and Regular Mail). Client(s) always notified of relevant statute of limitations and/or statutes of repose (if applicable)*

3. Percentage of settlement firm takes as fees. *(25-50%) Varies depending on value of case, venue, appeal.*

4. Types of cases - i.e., medical malpractice, asbestos, personal injury, wrongful death. *Personal Injury, wrongful death, product liability, automotive defects, commercial trucking accidents, limited business litigation.*

5. Docket - request narrative describing controls.
   a) New File - How does initial answer date get on system? By whom? *Attorney notifies paralegal or clerk who enters it on case master information sheet in computer and paper files.*
   b) What control (or who) checks to see if suit is filed? *Attorney in charge of case and paralegal.*

6. Does the firm advertise? [X] Yes [ ] No. If so, in what medium? *Yellowpages, website, office brochure, limited direct mailings to clients, former clients.*

7. Does the firm take referral cases in state, out of state? [X] Yes [ ] No. If so, approximately how many per year? *New firm - expect 10-20 referred cases in first year.*

8. Does the firm refer cases to other firms? [X] Yes [ ] No. Approximately how many per year? *New firm - expect to refer 40-70 cases out to other firms in first year.*

I/We understand that the information submitted herein becomes part of my/our professional liability application and is subject to the same representations and conditions.

*D. R. Gwynther, Jr.*
Name of Applicant

*Partner*
Title (Officer, partner, etc.)

Signature of Applicant*

*12/07/05*
Date

MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM6288 3/02

**INSURED SUPPLEMENT**
**APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE**

Indicate the names of all lawyers who are presently officers, partners, employed lawyers, of counsels or retired partners of the Firm and complete the requested information for each lawyer. Please note that coverage responds only for acts performed on behalf of the firm.

| Name of Lawyers | Designation O - Officer P - Partner E - Employed Lawyers OC - Of Counsel RP - Retired Partner | Member of Management Committee or Governing Body (Yes/No) | Year Admitted to Bar | Years of Full-Time Practice | Specialty, if any | Member in Good Standing of the Following State Bar(s) |
|---|---|---|---|---|---|---|
| Thomas Christopher Pinedo    E | | No | 1988 | 18 | | Texas, Michigan, California |
| NOTE: Mr Pinedo is an employed lawyer Added to our firm. | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT Law Group International, LLP
Name of Applicant*

PARTNER
Title

Signature of Applicant

6-26-06
Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02                    Page 4 of 8

EXHIBIT 3

EXHIBIT 3

# EXHIBIT 3

EXHIBIT 3

EXHIBIT 3

220317.1

NET SalisFAXion    From: Ben Gale 847-572-6229    To: Lisa Stinger    Date: 7/18/2006 Time: 9:22:24 AM    Page 4 of 12

**SHAND MORAHAN**
**MARKEL & COMPANY, INC.**
Ten Parkway North, Deerfield, IL 60015
(847) 572-6000 Fax (847) 572-6137
Underwriting Manager
A Markel Company

○ **DEERFIELD INSURANCE COMPANY**
○ **EVANSTON INSURANCE COMPANY**
○ **ESSEX INSURANCE COMPANY**
○ **MARKEL AMERICAN INSURANCE COMPANY**
○ **MARKEL INSURANCE COMPANY**

## APPLICATION FOR LAWYERS PROFESSIONAL LIABILITY INSURANCE
### (Claims Made and Reported Basis)

**APPLICANT'S INSTRUCTIONS:**
1. Answer all questions. If more details are required, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.
(PLEASE TYPE OR PRINT)

1. **APPLICANT INFORMATION**
   a   Full name of applicant: CGT Law Group International LLP
   b   Principal business premise address: 101 Constitution Avenue NW, Suite 900
       _____(Street)_____
       Washington D.C.                          20001
       (City)          (State)        (Zip)          (County)
   c   Please list any secondary locations on a separate sheet and include number of lawyers at each location.
       **COMPLETE THIS INSURED SUPPLEMENT**
   d   (i)   Number of attorneys ............. 6
       (ii)  Number of Paralegals or law clerks ..... 1
       (iii) Number of clerical or support staff ..... 4
       (iv)  Other, please describe: CPA/Controller, Pilots
   e   Specify if:  [✓] Partnership   [ ] Corporation   Year established: _____

2. **BUSINESS OPERATIONS**
   a   List on separate attachment the names of all predecessor firms whose assets and liabilities the Firm assumed during the past 10 years, include the name(s) of the firm(s), the year established, the number of lawyers, and the location.
   b   Does the firm share or lease space with any other firm or entity? ......................................... [ ] Yes [✓] No
       If so, please advise of the entity' name and the specific circumstances on a separate attachment.
   c   Please advise of any foreign affiliated or associated firms and provide a detailed narrative of the name of the relationship on a separate attachment.
   d   Provide corporate brochure(s) and/or firm resume.
   e   (i)   Does any member of the Firm while rendering legal services also provide investment counselor services or provide tax opinions on tax shelters? ......................................... [ ] Yes [✓] No
       If yes, please describe the nature of the services provided and the types of clients to which such services are provided on separate attachment.
       (ii)  Does any member of the firm on behalf of its clients perform legal services involving the formation or sale of syndications or limited partnerships? ......................................... [ ] Yes [✓] No
       If yes, on separate attachment, describe services performed and details, including number of formed during the past two years, total dollar amount of each and the nature of the investment.

SM 4115-01 1/02                          Page 1 of 8

OCT/09/2007/TUE 04:59 PM    CGT LAW GROUP LLP    FAX No. 1-361-882-6701    P. 017

NET SalisFAXtion    From: Natalie Heyden 847-572-6229    To: FINAL APP 8539263    Date: 12/12/2006 Time: 10:55:56 AM    Page 2 of 10

From: Dan Oates 847-572-6229    To: Lisa Stringer    Date: 7/18/2006 Time: 9:22:51 AM    Page 2 of 13

f.  Indicate the approximate percentage of gross billable dollars from practice devoted to:

| | | | | | |
|---|---|---|---|---|---|
| Admiralty/Maritime | ___% | Corporate (general) | ___% | Real Estate | |
| Anti-Trust/Trade Reg. | ___% | Corp. Mergers/Acquisitions | ___% | Closings | ___% |
| Banking | ___% | Criminal | ___% | Escrow/Title | ___% |
| Bankruptcy | ___% | Domestic Relations | ___% | Syndication/Development | ___% |
| BVPI Defendants | ___% | Entertainment | ___% | Securities Law*: | |
| BVPI Plaintiffs: | | Estate/Probate/Trust | ___% | Federal SEC | ___% |
| Anticipated fees per case less than $25,000 | ___% | International Law | ___% | State | ___% |
| | | Labor | ___% | Private Placements | ___% |
| Anticipated fees per case greater than or equal to $25,000 | 100 % | Litigation: | | Bonds | ___% |
| | | Plaintiff | ___% | Taxation | |
| Collection/ Repossession | ___% | Defense | ___% | Preparation | ___% |
| | | Municipal | ___% | Opinions | ___% |
| Communications | ___% | Oil and Gas | ___% | Other** | ___% |
| Copyright/Patent/TM | ___% | Public Utilities | ___% | | ___% |

* Complete Securities Supplement.
** Over 5% specify.

TOTAL INCOME:    100%

g.  Are any major changes foreseen in the percentage shown in question (f) for the current fiscal year?...... [ ] Yes [✓] No
    If yes, please provide narrative details on a separate attachment.

h.  Specify the firm's total gross revenues:
    Last fiscal year:    From 01/01/06 to 12/31/06    Gross Revenues $ 500,000 ESTIMATED
    Estimate current fiscal year:    From 01/01/07 to 12/31/07    Gross Revenues $ 5,000,000

i.  Is any lawyer listed in the Insured Supplement serving as a director, officer or partner of or exercising any fiduciary control over any entity other than the firm?........................................................ [✓] Yes [ ] No
    If yes, complete the Outside Interests Supplement
                    REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

j.  Other than those positions referenced in question (i), does the firm or any lawyer or employee of the firm ever invest in the business of a client?.................................................................................... [ ] Yes [✓] No
    If yes, please provide on separate attachment full details of such relationship.
                    REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

k.  Except as listed in question i and j, does the firm or any of its members engage in any occupation, business or profession other than the practice of law?.................................................................... [ ] Yes [✓] No
    If yes, please provide narrative details on a separate attachment.

l.  (i)  Are custodial accounts (i.e., money, securities and other property held on behalf of clients) audited by an independent, outside auditor?................................................................................ [ ] Yes [✓] No
    (ii)  Are two signatures required for all withdrawal of funds from custodial accounts?...................... [✓] Yes [ ] No

m.  With respect to the total of all custodial accounts other than retainer fees, what is the average dollar amount and the maximum dollar amount held or maintained on behalf of the firm's clients?
    Average: $ 1500    Maximum: $ 1,000,000

n.  Does the firm maintain a fidelity bond covering all employees?........................................................ [ ] Yes [✓] No

o.  (i)  Please describe by separate attachment the firm's procedures for the acceptance of new business including conflict of interest checks and who has the authority to accept new business.
    (ii)  Does the firm make use of engagement letters with its new clients?........................................ [✓] Yes [ ] No

SM 4113-01  1/02    Page 2 of 6

OCT/09/2007/TUE 05:00 PM    CGT LAW GROUP LLP    FAX No. 1-361-882-6701    P. 018

NET SatisFAXtion    From: Natalie Heyden 647-572-6229    To: FINAL APP 3593283    Date: 12/12/2006 Time: 10:55:59 AM    Page 3 of 10

NET SatisFAXtion    From: Joh Ulset 847-572-6226    To: Lisa Slinger    Date: 7/19/2006 Time: 8:38:24 AM    Page 4 of 12

3.  HISTORY

   a. Over the past five years, has the Firm opened or closed any branch office or had a single loss of 25% or more of the lawyers of the Firm?
   If yes, please provide details by separate attachment. ........................................................ [ ] Yes [✓] No

   b. (i) Has the firm or any predecessor firm or any lawyer listed in the insured Supplement ever had any insurance company or Lloyd's decline, cancel, refuse to renew or accept only on special terms any professional liability insurance? .............................................................. [ ] Yes [✓] No
   If yes, please explain.

   (ii) Has any lawyer listed in the insured Supplement ever been the subject of a reprimand or disciplinary action or refused admission to the Bar? ............................................................ [ ] Yes [✓] No
   If yes, please explain on a separate attachment.

   (iii) During the past seven years, has any professional liability claim or suit been made against any lawyer listed in the insured Supplement or against the firm or any predecessor firm? .................... [ ] Yes [✓] No
   If yes, a SUPPLEMENTAL CLAIM INFORMATION form must be completed for each claim.

   (iv) After inquiry, does the firm or any person proposed for this insurance have knowledge of any incident, circumstance, act, error, omission or personal injury which may give rise to a claim? ..... [ ] Yes [✓] No
   If yes, provide a complete description of each on a separate attachment. It is agreed that if there be knowledge of any such incident, circumstance, error, omission or personal injury, any claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance.

   c. Please provide a list by separate attachment of all clients that represent 5% or more of the firm's total billable dollars or contribute $1,000,000 or more to the firm's income annually.    N/A

   d. List lawyers professional liability insurance carried for each of the past five years. IF NONE, STATE NONE.

| Inception From | Expiration To | Insurance Company | Policy No. | Limit of Liability | Deductible | Premium |
|---|---|---|---|---|---|---|
| 10/05 | 10/06 | EVANSTON | LA-803786 | $ 2,000,000 | $ 25,000 | $ 48,360 |
| From | To | | | | | |
| From | To | | | | | |
| From | To | | | | | |
| From | To | | | | | |

NOTICE TO APPLICANT: The coverage applied for is SOLELY AS STATED IN THE POLICY, which provides coverage on a "CLAIMS MADE" basis for ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD unless the extended reporting period option is exercised in accordance with the terms of the policy.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information or conceals, for the purpose of misleading, information concerning any fact therein commits a fraudulent insurance act, which is subject to criminal and civil penalties.

WARRANTY: I warrant to the insurer, that I understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the insurer evidence its acceptance of this application by issuance of a policy. I authorize the release of claim information from any prior insurer to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015.

CGT LAW INTERNATIO NAL LLP                     PARTNER
Name of Applicant                              Title (Officer, partner, etc.)

                                               10-16-06
Signature of Applicant                         Date

SIGNING this application does not bind the Applicant or the Insurer or the Underwriting Manager to complete the insurance, but one copy of this application will be attached to the policy, if issued.

SM 4116-01  1/02                     Page 3 of 6

OCT/09/2007/TUE 05:00 PM    CGT LAW GROUP LLP    FAX No. 1-361-882-6701    P. 019

NET SellsFAXtion    From: Natalie Hoydon 847-572-8229    To: FINAL APP 9633263    Date: 12/12/2000 Time: 10:55:58 AM    Page 4 of 10

From: Josh Guerra (local 847-572-8228    To: Lisa Sumpel    Date: 7/18/2001 Time: 6:25:34 AM    Page 2 of 10

## INSURED SUPPLEMENT
## APPLICATION FOR LAWYERS PROFESSIONAL LIABILITY INSURANCE

Indicate the names of all lawyers who are presently officers, partners, employed lawyers, of counsels or retired partners of the Firm and complete the requested information for each lawyer. Please note that coverage responds only for acts performed on behalf of the firm.

| Name of Lawyers | Designation O - Officer P - Partner E - Employed Lawyers OC - Of Counsel RP - Retired Partner | Member of Management Committee/ Governing Body (Yes/No) | Year Admitted to Bar | Years of Full-Time Practice | Specialty, if any | Member in Good Standing of the Following State Bar(s) |
|---|---|---|---|---|---|---|
| Mauricio Celis | Partner | Yes | 2000 | 7 | | Mexico |
| Douglas R. Gwyther, Jr. | Partner | Yes | 1998 | 8 | | Texas, Washington D.C. |
| Raul R. Tapia | Partner | Yes | 1977 | 29 | | Washington D.C. & California |
| Thomas A. Guerra | Employed Lawyer | No | 1977 | 29 | | Arizona |
| Thomas C. Pinedo | Employed Lawyer | No | 1988 | 18 | | Texas, Michigan & California |
| Jose Valenzuela Hernandez F | | No | 1988 | 18 | | Mexico |
| James Hada | Partner | No | 1989 | 17 | | Texas |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT Law Group International LLP
Name of Applicant*

Partner
Title

_____
Signature of Applicant

10-16-06
Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115.01 1/02

Page 4 of 8

NET SafeFAXtion    From: Glen Vales 847-573-4220    To: Lisa String        Date: 7/10/2001 Time: 9:24:64 AM        Page 6 of 12

## OUTSIDE INTERESTS SUPPLEMENT
## APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE

FIRM: CGT Law Group International, LLP

| Name of Lawyer | Name of Business | Position Held | Nature of Business | Individual | % of Equity Interest — Firm & All Lawyers and Their Spouses and Immediate Family Members Combined | Client of Applicant (Yes/No) | D&O Insurance (Yes/No) |
|---|---|---|---|---|---|---|---|
| Marcello Celis | Tapatio, Inc. | Owner | Advertising | 100% | | No | Yes |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

CGT Law Group International, LLP
Name of Applicant*

Signature of Applicant*

Title    PARTNER

Date    10-16-06

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01 1/02

Page 3 of 8

NET SalisFAXtion    From: Natalie Heyden 047-572-6229    To: FINAL APP 3583203       Date: 12/12/2006 Time: 10:55:50 AM      Page 6 of 10

Date: 7/18/2006 Time: 5:25:54 AM                 Page 6 of 12

## SECURITIES SUPPLEMENT
## APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE

(Complete Only If the Firm does Securities Offerings, Private Placements or Bond Work)

FIRM **CGT LAW GROUP INTERNATIONAL LLP**

1   Indicate the approximate amount of billable dollars derived from securities exempt and non-exempt work including federal
    SEC, state securities, private placements and bonds. $ __NONE__ .

2   Briefly describe your SEC practice qualifications including whether any lawyers of the Firm involved in such activities have **N/A**
    in the past been SEC staff members, practiced before the SEC or been cautioned or disqualified by the SEC.  Provide
    narrative by separate attachment.

3   (a) Indicate by a check those procedures employed by the Firm in security (exempt and non-exempt) matters including
        private placements and bonds:  **NONE**

| | |
|---|---|
| Investigate client | Check on federal reporting systems |
| | |
| convictions | for prior criminal |
| Investigate other participants | Court/regulatory investigation |
| Investigate other professionals | SEC filings filed and in order |
| Checklist | Check on tax opinion |
| On-site inspections | Render tax opinion |
| Review of corporate character | Check on prior injunctive actions in the SEC |
| Check on feasibility study | |

    (b) If the firm uses procedures other than those listed in 3(a) above, please describe by separate attachment.

4.  Using the chart on the following page, list securities offerings (exempt and non-exempt), private placements and bond
    offerings handled in the past two years including the year, name of insurer, type of transaction, type of business,
    underwriter, accountant, dollar size of offering and party represented by Firm.

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the
same representations and conditions.

**CGT LAW GROUP INTERNATIONAL LLP**                **PARTNER**
Name of Applicant*                                  Title

                                                    **10-16-06**
Signature of Applicant*                             Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01 1/02                                     Page 6 of 8



## CGT LAW GROUP INTERNATIONAL, LLP

Question 2  O (I)
New Clients and conflict of interest checks:

The firm maintains a management committee. There are three partners on this committee. All new clients are subject to approval by the firms management committee. Any lawyer generating new business is required to associate with a partner with specific expertise in the matter prior to proposing new business to the management committee.

The firm maintains a conflict of interest system on computer. All cases are maintained on a computer database. Conflict checks are reviewed at inception of all new cases. The conflict of interest systems reviews the following information: client name, opposing party, client subsidiaries, client principals, opposing counsel, outside interests of firm personnel and names of parties whose representation was declined.

All lawyers in the firm, regardless of practice area or geographical location are able to access all conflict data held by the firm in their conflict search. All potential conflicts are always referred to the management committee.

Where representation is continued subject to conflict waivers, the firm maintains a written Policy requiring the waiver to clearly show (1) the conflicting parties the nature of the conflict (2) show how it could affect the representation and (3) show how the client was advised to consider consulting another Law Firm either about the conflict and/or the original matter prior to signing the waiver.

NET SalesFAXtion    From: Natalie Hoyden 847-572-6229    To: FINAL APP 3693268    Date: 12/12/2006 Time: 10:55:50 AM    Page 9 of 10

FAX SalesFAXtion    PFGM San Gates 047-578-0228    To: Lisa Spiegel    Date: 7/10/2006 Time: 9:28:34 AM    Page 11 of 12

**SHAND MORAHAN & COMPANY, INC.**
Ten Parkway North, Deerfield, IL 60015
(847) 572-6000  Fax (847) 572-6137
Underwriting Manager
A Markel Company

○ DEERFIELD INSURANCE COMPANY
○ EVANSTON INSURANCE COMPANY
○ ESSEX INSURANCE COMPANY
○ MARKEL AMERICAN INSURANCE COMPANY
○ MARKEL INSURANCE COMPANY

### SUPPLEMENTAL CLAIM INFORMATION FOR LAWYERS PROFESSIONAL LIABILITY INSURANCE
(Claims Made and Reported Basis)

**APPLICANT'S INSTRUCTIONS:**
1. Answer all questions. If more details are required, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. This form is to be completed by Applicant who has been involved in any claim or suit or aware of an incident which may give rise to a claim.
4. Complete one form for each claim or incident.
5. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.
(PLEASE TYPE OR PRINT)

**APPLICANT INFORMATION**

a. Firm Name: _____  N/A
b. Claimant Name: _____
c. Name of Individual(s) at Firm involved in Claim: _____
d. Indicate whether: _____ Claim/Suit, or _____ Incident
e. Date of alleged error: _____ Date of claim: _____
f. Additional defendants. _____
g. IF CLOSED: Total Loss Paid including Deductible $_____
   Indicate whether _____ Court Judgment, or _____ Out of court settlement
   IF PENDING: Claimant's settlement demand?
   Defendant's offer for settlement?
   Insurer's loss reserve?
   Deductible?
   Is claim in Suit? [ ] Yes [ ] No  If yes, Amount asked in summons? $_____
h. Name of Insurer: _____
i. Description of claim: (Provide enough information to allow evaluation, and use reverse side if additional space is required.)
   (i). Alleged act, error or omission upon which Claimant bases claim: _____
   (ii). Description of case and events: _____
   (iii). Description of the type and extent of injury or damage allegedly sustained: _____
j. Firm's evaluation of likelihood of liability: _____
k. Explain what action has been taken by the firm to prevent recurrence of the same type of claim.

I/we understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT LAW GROUP INTERNATIONAL LLP
Name of Applicant*

PARTNER
Title (Officer, partner, etc.)

10-16-06

Signature of Applicant*    Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02    Page 8 of 9

EXHIBIT 4

EXHIBIT 4

# EXHIBIT 4

EXHIBIT 4

EXHIBIT 4

 **EVANSTON INSURANCE COMPANY**

MARKEL®

| | |
|---|---|
| Policy No. | LA-804111 |
| Prev. No. | LA-803756 |
| Prod. No. | 21235 |

### DECLARATIONS - LAWYERS PROFESSIONAL LIABILITY INSURANCE

Claims Made and Reported policy. This policy provides coverage for only those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE TERMS OF THIS POLICY. Please review the policy carefully.

THIS POLICY MAY CONTAIN PROVISIONS THAT REDUCE THE LIMITS OF LIABILITY STATED IN THE POLICY BY THE COSTS OF LEGAL DEFENSE AND PERMIT CLAIM EXPENSES TO BE APPLIED AGAINST THE DEDUCTIBLE.

1. **NAMED INSURED**: CGT LAW GROUP INTERNATIONAL, LLP

2. **ADDRESS OF NAMED INSURED**:
   101 CONSTITUTION AVENUE, NW, SUITE 900
   WASHINGTON, DC 20001

3. **POLICY PERIOD**: From December 7, 2006 To December 7, 2007
   12:01 A.M. Standard Time at address of Named Insured stated above.

4. **LIMITS OF LIABILITY**:

   Each Claim:                                     $ 2,000,000
   Policy Aggregate:                               $ 2,000,000

5. **DEDUCTIBLE**:

   Each Claim:                                     $     25,000

6. **PREMIUM**:                                     $     51,791.00

7. If the Firm meets the eligibility requirements of THE COVERAGE 4., the PREMIUM FOR THE EXTENDED REPORTING PERIOD FOR A 12 MONTH PERIOD IS 150% of the applicable full annual premium hereunder.

8. **ENDORSEMENTS ATTACHED AT POLICY INCEPTION**:

   1. EIC 4436        Prior Acts Exclusion
   2. EIC 4115-01     25% Minimum Earned Premium Endorsement

ALL CLAIMS TO BE REPORTED DIRECTLY TO

Shand Morahan & Company, Inc.
Ten Parkway North, Suite 100
Deerfield, Illinois 60015
Phone: (847) 572-6000, Fax: (847) 572-6338

Policy Form: EIC 1507-3 4/93
Dec: EIC1507-2 8/02
Date Printed: December 12, 2006

*Michael A. Rosenberg*
Authorized Representative

 **EVANSTON INSURANCE COMPANY**
MARKEL®

## Endorsement

| Named Insured:<br>CGT LAW GROUP INTERNATIONAL, LLP | Attached to and forming<br>a part of Policy No.: | LA-804111 |
|---|---|---|
| | Endorsement No.: | 1 |
| | Effective Date of Endorsement: | December 7, 2006 |

### PRIOR ACTS EXCLUSION
### (use with EIC 1507)

In consideration of the premium paid, it is hereby understood and agreed that Section THE EXCLUSIONS is amended by the addition of the following exclusion:

to any Claim based upon, arising out of, or in any way involving any Act or Personal Injury happening prior to December 7, 2005.

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rozenberg*
Authorized Representative

EIC 4436 5/04



# EVANSTON INSURANCE COMPANY

## Endorsement

| | |
|---|---|
| Named Insured:<br>CGT LAW GROUP INTERNATIONAL, LLP | Attached to and forming<br>a part of Policy No.: **LA-804111**<br>Endorsement No.: **2**<br>Effective Date of Endorsement: **December 7, 2006** |

### 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other provisions of the policy shall apply and remain unchanged.

_Michael A. Rozenberg_
Authorized Representative

EIC 4115-01 2/03

# Lawyers Professional Liability Insurance Policy

## CONDITIONS PRECEDENT

As conditions precedent to the availability of any coverage under this policy, the payment of the premium must be made when due, and the application attached hereto and made a part hereof and all information in whatever form communicated by The Insured to the Company must be accurate. Subject to this policy's Declarations and all the terms of this insurance, the Company and The Insured agree as follows:

## DEFINITIONS

Wherever used in this policy the following words and phrases shall be defined as set forth below:

**Act:** The performance of or omission of a duty or obligation by The Insured while rendering legal advice or legal services for others.

**Claim:** A demand received by The Insured for Damages.

**Claim Expenses:** Subject to Company approval which shall not be unreasonably withheld, all reasonable fees, costs and expenses resulting directly from the investigation, adjustment, defense and appeal of a Claim. Provided, however, Claim Expenses do not include: salary charges of regular employees or officials of the Company; fees and expenses of supervisory counsel retained by the Company; salaries or compensation of any individual or entity identified within THE INSURED.

**Damages:** The monetary portion of any judgment, award or settlement and does not include:

    (a)    punitive or exemplary damages, any damages which are a multiple of compensatory damages, statutory treble damages, or fines, penalties or sanctions including, but not limited to, fines awarded pursuant to Rule 11 of the Federal Rules of Civil Procedure; or

    (b)    the restitution of consideration and expenses paid to The Insured for services or goods; or

    (c)    judgments or awards deemed uninsurable by law.

**Of Counsel:** Any lawyer or professional corporation or any lawyer who is an employee of such professional corporation who is specifically identified on the application as "Of Counsel," but solely with respect to acts on behalf of The Firm.

**The Firm:** The entity listed in the Declarations as "Named Insured".

**Personal Injury:** False arrest, false imprisonment, malicious prosecution, malicious abuse of process, wrongful detention, wrongful entry or eviction or other invasion of private occupancy, libel, slander or breach of privacy by The Insured all while rendering legal advice or legal services for others.

**Policy Period:** The period from the inception date of this policy to the policy expiration date as stated in the Declarations or the policy's earlier termination date, if any.

**Extended Reporting Period:** Whenever used in this policy means the period of coverage described in THE COVERAGE 4., which if purchased, incepts on the effective date of cancellation or non-renewal of this policy and expires upon the completion of the number of months indicated in the Declarations as "Policy Period" or at any earlier termination date effected pursuant to THE COVERAGE 4. (e).

**Predecessor Firm:** Any legal entity which was engaged in the practice of law to whose financial assets and liabilities the Firm is the majority successor in interest and which is designated in the application as a predecessor firm.

## COMPANY DESIGNEE

With respect to notices required to be given to the Company as provided for in INSURED DESIGNEE, THE COVERAGE 3. and 4., CLAIMS 1. and OTHER CONDITIONS 2. and 6., the Company has appointed Shand Morahan and Company, Inc., Ten Parkway North, Deerfield, Illinois 60015 to be the exclusive representative of the Company for the purpose of receiving such notices. All notices required by this Policy shall be made in writing to the Company Designee.

**INSURED DESIGNEE**

The attorney signing the application which is attached to the Policy shall be deemed the Insured Designee. The Insured Designee for this policy shall be the sole representative of The Insured.

The Firm or the Insured Designee may change the Insured Designee at any time. The Company must be advised in writing of any change in the Firm's Designee as soon as practicable after such change. In the event of the failure of the Firm to advise the Company, any notice or communication transmitted by the Company to the attorney signing the attached application shall be sufficient notice and shall be deemed notice to the Firm.

**THE INSURED**

Insured, wherever used in this policy means:

1.  The entity listed in the Declarations as "Named Insured", such entity to be known as the "Firm" but only for Claims arising out of legal advice or legal services provided on behalf of the Firm or any Predecessor Firm by any other Insured; and

2.  Any lawyer or professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

3.  Any lawyer who is an employee of a professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

4.  Any lawyer or professional corporation who is a former partner, officer, director, Of Counsel or employee of the Firm or any Predecessor Firm or of any professional corporation but only for Claims arising out of the legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

5.  Any other present or former employee of the Firm or any Predecessor Firm or of any professional corporation insured by this policy solely while acting on behalf of the Firm or any Predecessor Firm; and

6.  As respects the liability of The Insured as otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of The Insured as defined in Items 1. through 5. above in the event of death, incapacity or bankruptcy.

**THE COVERAGE**

1.  **Professional Liability Claims Made and Reported Coverage:**

    The Company shall pay on behalf of The Insured, subject to the limits of liability, sums in excess of the deductible amount which The Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE PROVISION OF CLAIMS 1:

    (a)   because of any Act; or

    (b)   because of any Personal Injury,

    PROVIDED ALWAYS THAT such Act or Personal Injury happens,

    (aa)   during the Policy Period; or

    (bb)   prior to the Policy Period provided that, on or prior to the effective date of this policy, no Insured was aware of any facts or circumstances from which a reasonable person would have anticipated a Claim;

    PROVIDED FURTHER THAT no other policy which provides insurance for such liability or Claim resulting from such Act or Personal Injury is available to the Insured whether or not the available limits of liability of any such other insurance are sufficient to pay any such liability or claim or whether or not the deductible provisions and amount of any such other insurance are different from

EIC 1507-3 4/93                    Page 2

this policy, unless such other insurance is written only as specific excess insurance over the limits of liability provided by this policy.

Subject to all other terms and conditions of this policy, when The Insured renders services as an administrator, conservator, executor, guardian, trustee, The Insured's Acts in such capacity shall be deemed for the purpose of this section to be the performance of legal services for others, provided that this coverage shall not apply to any loss sustained by The Insured as the beneficiary or distributee of any trust or estate.

2. **Defense, Investigation and Settlement of Claims:**

The Company shall investigate and defend any Claim to which coverage under this policy applies pursuant to the following provisions:

(a) Claim Expenses incurred in investigating and defending such Claim shall be included within the per claim policy limit of liability set forth in the Declarations and shall not be in addition thereto. Such Claim Expenses shall reduce the available limit of liability. THE COMPANY SHALL NOT BE OBLIGATED TO PAY ANY DAMAGES OR TO DEFEND OR TO CONTINUE TO DEFEND ANY CLAIM OR TO PAY CLAIM EXPENSES AFTER THE LIMIT OF THE COMPANY'S LIABILITY HAS BEEN TENDERED TO THE INSURED OR INTO THE COURT OR EXHAUSTED BY PAYMENT(S) OF DAMAGES AND/OR CLAIM EXPENSES.

(b) Selection of defense counsel shall be made by the Company. Provided, however, that if the law of the state of the Firm's domicile (as designated on the Declarations page) allows the Insured to control the selection of counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which The Insured may designate counsel who shall act solely in the interest of The Insured, and The Insured agrees to direct such defense counsel to cooperate with the Company. Such cooperation shall include:

  (1) Providing on a regular basis, not less frequently than every six months, written reports on claimed Damages potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

  (2) Providing any other reasonable information requested and fully itemized billing on a periodic basis;

  (3) Cooperating with the Company and The Insured in resolving any discrepancies;

  and the fees and costs incurred by such counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be included within the policy limit of liability and not in addition thereto. Such Claim Expenses shall reduce the available limit of liability.

(c) The Insured shall cooperate with the Company in the defense, investigation and settlement of any Claim. The Insured will assist the Company in effecting any rights of indemnity, contribution or apportionment available to The Insured or the Company. Upon the Company's request, The Insured shall: (i) submit to examination and interview by a representative of the Company, under oath if required; (ii) attend hearings, depositions and trials; (iii) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (iv) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without charge to the Company.

(d) The Insured shall not, with respect to any Claim covered under this policy, except at The Insured's personal cost, make any payment, admit liability, settle Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without prior written Company approval. Any costs and expenses incurred by The Insured prior to The Insured giving written notice of the Claim to the Company shall be borne by The Insured and will not constitute satisfaction of the deductible either in whole or in part.

(e) The Company shall not settle any Claim without the consent of the Insured Designee. If, however, the Insured Designee shall refuse to consent to any settlement recommended by

the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company shall not be obligated to pay Claim Expenses incurred subsequent to such refusal. Furthermore, the Company's liability for such Claim shall not exceed the amount for which the Claim could have been so settled and Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of the section LIMITS OF LIABILITY.

**3.    Discovery of Potential Claims:**

If, during the Policy Period, The Insured first becomes aware of any Act or Personal Injury for which a Claim might reasonably be expected to be made for which insurance is otherwise provided by this policy and gives written notice of such Act or Personal Injury which is received by the Company during the Policy Period, then any Claim subsequently made arising out of that Act or Personal Injury shall be considered to have been made on the date such written notice is received by the Company.

Such written notice shall include a description of:

1)    the specific Act or Personal Injury; and

2)    the injury or damage that has or may reasonably result from 1) above; and

3)    the circumstances by which The Insured first became aware of 1) and 2) above.

The Insured shall cooperate fully with the Company as set forth in THE COVERAGE 2., Defense, Investigation and Settlement of Claims, and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in this policy as applicable to a Claim.

**4.    Extended Reporting Period:**

If the Company cancels or non-renews this policy, the Firm, for an additional premium charge, shall have the right to extend the period during which Claims must be first made and reported to apply to CLAIMS FIRST MADE AGAINST THE INSURED DURING THE PERIOD OF MONTHS INDICATED IN THE DECLARATIONS immediately following the effective date of such cancellation or non-renewal and REPORTED IN ACCORDANCE WITH CLAIMS 1., provided:

(a)    The Extended Reporting Period applies only to Acts or Personal Injuries committed prior to the effective date of cancellation or non-renewal of this policy which are otherwise covered by this policy; and

(b)    Cancellation or non-renewal does not result from the Firm's non-payment of premium and/or deductible or other non-compliance with the terms and conditions of the policy; and

(c)    Written notice of intent to exercise this option and the premium for the Extended Reporting Period is received by the Company from the Firm within ten (10) days of the effective date of cancellation or non-renewal. This premium shall be calculated at the percentage stated in the Declarations of the full annual premium of the policy; and

(d)    The full annual premium of this policy and any deductibles that are due have been paid by the Firm; and

(e)    The coverage afforded by this Extended Reporting Period shall terminate immediately when the Firm purchases a lawyers professional liability policy providing coverage in whole or in part for Acts or Personal Injuries committed prior to the end of the Policy Period: If coverage is so terminated, the Company shall refund pro rata any unearned premium charged for the Extended Reporting Period coverage; otherwise, the premium for the Extended Reporting Period shall be fully earned at the time of payment; and

(f)    The quotation of a different premium and/or deductible and/or limits of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this policy provision; and

(g)    The exercise of this Extended Reporting Period Option shall not in any way increase or be in addition to the limits of liability set forth in the Declarations.

**THE EXCLUSIONS**

**The policy does not apply:**

(a)  to payment of Damages arising out of a judgment or award against an individual or entity identified in THE INSURED section of the policy who has been finally adjudicated to have committed an intentionally dishonest or fraudulent Act; however, notwithstanding the forgoing, the Company, subject to the Limits of Liability and other terms and conditions, will pay Claim Expenses for any such Claim, and shall not exclude coverage to the Firm or to any other Insured who is not so adjudged to have committed such Act as described above. This policy shall then pay only in excess of the deductible and in excess of the full extent of the capital and assets in the Firm of any such individual or entity who was so adjudged to have committed such Act as described above, and any other personal assets of such individual or entity recovered by the Firm shall inure, to the extent of the amount paid by this policy, to the benefit of the Company,

(b)  to any Claim made by an Insured or any individual or entity acting on behalf of any Insured.

(c)  to any Claim resulting from the rendering of legal advice or legal services for any individual or entity where such individual or entity either holds an ownership interest in or is acquiring an ownership interest in a business enterprise, pension, profit sharing, mutual or investment fund or trust;

    1)  which, at the time such advice or services were rendered, was more than 5% owned, controlled, managed or operated by any single individual or entity or any combination of individuals or entities within THE INSURED, alone or in conjunction with any spouse or any other immediate family member of any individual or entity identified within THE INSURED; or

    2)  for which any individual or entity identified within THE INSURED serves or served at the time such advice or services were rendered as an officer, director, partner, manager or employee or as a trustee in bankruptcy;

(d)  to any Claim arising out of The Insured's capacity as a public official or an employee of a governmental body, subdivision or agency unless The Insured is deemed to be such solely because The Insured has rendered legal advice or legal services to such governmental body and the remuneration for such legal advice or legal services inures to the benefit of the Firm;

(e)  to any Claim for bodily injury, sickness, disease or death of any person, or injury to or destruction of any tangible property or loss of use resulting therefrom;

(f)  to any Claim based on or arising out of the rendering of investment advice by any Insured in connection with the purchase or sale of any investment or property, including but not limited to securities, real property, syndications, limited partnerships, commodities or franchises; or to any claim based on or arising out of any Insured's services or capacity as a securities broker, dealer, financial planner, investment advisor, accountant, real estate broker or real estate agent;

(g)  to any Claim based upon or arising out of a contract for, or other right relating to, payment of or division of fees or fee apportionment;

(h)  to any Claim based on or arising out of discrimination of any kind by any Insured including but not limited to discrimination on the basis of race, national origin, creed, religion, age, sex, sexual orientation, health disability or marital status or to any claim arising out of alleged or actual wrongful termination.

With the exception of THE EXCLUSIONS (a) hereinabove, any fact pertaining to any one or more Insured(s) which determines the applicability of THE EXCLUSIONS hereinabove shall apply to each and every individual or entity identified within THE INSURED and the Company shall not be required to defend or indemnify any Claim arising out of alleged Acts or claim for Damages for which no coverage applies pursuant to THE EXCLUSIONS or any other terms of this Policy.

**TERRITORY**

The Insurance afforded applies worldwide.

EIC 1507-3 4/93        Page 5

**LIMITS OF LIABILITY**

1.  **Limit of Liability--Each Claim:**

    The liability of the Company for the combined total of Damages and Claim Expenses for each Claim FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1., shall not exceed the amount stated in the Declarations for "each Claim."

2.  **Limit of Liability--Policy Aggregate:**

    Subject to 1. Limit of Liability--Each Claim, the liability of the Company for the combined total of Damages and Claim Expenses shall not exceed the amount stated in the Declarations as "aggregate" as a result of all Claims FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1.

3.  **Deductible:**

    Except as set forth in the following paragraph, the deductible amount stated in the Declarations shall be applicable to the combined total of Damages and Claim Expenses for each Claim.

    Deductible payment or portions thereof shall be paid by the Firm within 30 days of demand.

4.  **Multiple Insureds, Claims and Claimants:**

    The inclusion of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the limits of liability and deductible. Two or more Claims arising out of a single Act or Personal Injury or a series of related Acts or Personal Injuries shall be treated as a single Claim. All such Claims whenever made shall be considered first made on the date on which the earliest Claim arising out of such Act or Personal Injury was first made and all such Claims are subject to the same limit of liability and deductible.

**CLAIMS**

1.  **Insured's Duties in the Event of Claim:**

    As a condition precedent to the availability of coverage under this policy The Insured's duties in the event of a Claim shall be as follows:

    (a)  If suit is brought or arbitration is instituted against The Insured, then The Insured shall immediately forward to the company, directed to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015, every demand, notice, summons or other process received by The Insured or their representative; and

    (b)  If any Claim, other than a suit or arbitration proceeding, is made, then The Insured shall give as soon as practicable, written notice to the Company containing particulars sufficient to identify The Insured and claimant and full information with respect to the time, place and circumstances of the Claim; and

    (c)  In any event any Claim or suit made or arbitration instituted against The Insured during the Policy Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN SIXTY (60) DAYS AFTER THE EXPIRATION OF THE POLICY PERIOD; and

    (d)  In any event any Claim made or suit made or arbitration instituted against The Insured during the purchased Extended Reporting Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN TEN (10) DAYS AFTER THE EXPIRATION OF THE EXTENDED REPORTING PERIOD.

2.  **Subrogation and Indemnity:**

    (a)  In the event of payment for Damages or Claim Expenses under the policy, the Company shall be subrogated to all of The Insured's rights of recovery against any person or organization. Any recovery shall be used to pay: first, subrogation expenses; second, payments in excess of the deductible by The Insured; third, payments by an excess insurer; fourth, payments made by a primary insurer; and, last reimbursement of The Insured's deductible.

    (b)    If the Company makes any payment of Claim Expenses or Damages as a result of the final adjudication that an intentionally dishonest or fraudulent Act has been committed, then the Company shall have the right to indemnification of such payments from the individual or entity so adjudged, including any individual or entity identified in THE INSURED section of the policy.

**3.    False or Fraudulent Claims:**

If any individual or entity identified within THE INSURED commits fraud in presenting or maintaining any Claim, the Company at its sole option may void:

    (a)    this insurance with respect to such Claim; and/or

    (b)    this insurance as to such individual or entity from the date such Claim is presented or maintained; and/or

    (c)    this policy in its entirety; and/or

    (d)    this insurance from the date such Claim is presented or maintained.

## OTHER CONDITIONS

**1.    Application:**  By acceptance of this policy, The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between The Insured and the Company, or any of its agents, relating to this insurance.

**2.    Firm Changes:** Any of the following changes in the Firm which occur during the Policy Period must be reported to the Company within sixty (60) days of such change:

    (a)    any change of 20% or more in the total number of lawyers in the Firm;

    (b)    any new involvement in any single practice specialty anticipated to produce 5% or more of the Firm's gross billable dollars;

A premium adjustment and/or revision of limits, deductible, and/or coverage may be required by the Company as a result of such change. A return of premium due to a mid-term reduction in staff is not available under the policy. Mid-term charges for increase in staff in excess of 20% may apply.

**3.    Changes:** Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy or stop the Company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**4.    Non-Payment of Deductible:** If, within thirty (30) days of demand by the Company, the Insured fails to pay any or all of the Deductible which the Insured has become obligated to pay, the Company has the right to institute binding arbitration against the Insured unless otherwise prohibited by the laws of the state governing the Policy. The arbitration fees and costs of both parties shall be borne by the Insured; however, should the Insured prevail in arbitration, the Company shall pay the fees and costs.

**5.    Assignment:** Assignment of any interest under this policy shall not bind the Company unless its consent is endorsed hereon.

**6.    Integration of Document:** All provisions of this policy are intended to be read together as one integrated document. No provision nor any part thereof is intended to be separable from the balance of the policy. The meaning of each provision of this policy is created by what is written in such provision and by what is written in the balance of the policy, and the Company issues this policy to The Insured in contemplation of the foregoing method of giving meaning to the policy.

If any provision of this policy is held to be void by a court of competent jurisdiction, then the balance of this policy shall still be interpreted in accordance with the preceding paragraph.

**7.    Cancellation or Non-Renewal:** This policy may be cancelled by the Firm by the Firm's mailing of written notice to the Company stating when, thereafter, such cancellation shall be effective and by the Firm's surrender of the policy or a valid lost policy release to the Company.

This policy may be cancelled by the Company or by Shand Morahan & Company, Inc. by mailing to the Firm written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective.

Provided, however, if the Firm does not pay the premium or deductible when due, the Company or Shand Morahan & Company, Inc., may cancel the policy giving the Firm at least ten (10) days written notice of cancellation. If no premium has been paid, cancellation for non-payment of premium shall be as of Policy inception. In the event that the policy is cancelled for non-payment of premium, the Company will not be liable for any Claims made against the Firm.

The Company, or Shand Morahan & Company, Inc., if it intends not to renew this policy, must give written notice to the Firm, mailed at least sixty (60) days prior to the expiration date of this policy.

The effective date of cancellation or non-renewal stated in the notice shall become the end of the Policy Period. Delivery of written notice by the Company or by Shand Morahan & Company, Inc., shall be equivalent to mailing. Should the Firm cancel the policy, the short rate proportion of the premium shall be charged. If the Company or Shand Morahan & Company, Inc., cancels the policy, the earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

8. **Service of Suit:** Except with respect to any policy issued to a Firm domiciled in Illinois, or in any state in which the Company is licensed to transact business, it is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of The Firm will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this Clause constitutes nor should be understood to constitute a waiver of the Company's right to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court, as permitted by the laws of the United States or of any state in the United States. In any suit instituted against it upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Lord Bissell & Brook, whose address is 115 South LaSalle Street, Chicago, Illinois 60603, is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Firm they will enter a general appearance upon the Company's behalf in the event such suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereon hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of The Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**IN WITNESS WHEREOF,** the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

_Paul B. Churchel_
Secretary

_Michael A. Rozenberg_
President

# NUCLEAR ENERGY LIABILITY
## EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies the provisions of this policy.

It is agreed that:

1. **This policy does not apply:**

   A. Under any Liability Coverage, to bodily injury or property damage

      (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

   C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

      (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

      (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

      (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2. **As used in this endorsement:**

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means source material, special nuclear material or by-product material;

   "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

   "nuclear facility" means

      (a) any nuclear reactor,

      (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

EIC 1507-3 4/93                     Page 9

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

. (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

EIC 1507-3 4/93                              Page 10

OCT/09/2007/TUE 04:59 PM   CGT LAW GROUP LLP       FAX No. 1-361-882-6701         P. 016

NET SatisFAXtion   From: Natalie Heydon 847-572-0228   To: FINAL APP 3538253        Date: 12/12/2006 Time: 10:55:58 AM       Page 1 of 10

Net SatisFAXtion   From: Ben Geins 847-572-0228   To: Lisa Stringer        Date: 7/18/2006 Time: 9:28:34 AM       Page 4 of 12

**SHAND MORAHAN**
**MARIN & COMPANY, INC.**
Ten Parkway North, Deerfield, IL 60015
(847) 572-6000 Fax (847) 572-6137
Underwriting Manager
A Markel Company

o **DEERFIELD INSURANCE COMPANY**
o **EVANSTON INSURANCE COMPANY**
o **ESSEX INSURANCE COMPANY**
o **MARKEL AMERICAN INSURANCE COMPANY**
o **MARKEL INSURANCE COMPANY**

**APPLICATION FOR LAWYERS PROFESSIONAL LIABILITY INSURANCE**
(Claims Made and Reported Basis)

**APPLICANT'S INSTRUCTIONS:**
1. Answer all questions. If more details are required, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.
(PLEASE TYPE OR PRINT)

1. **APPLICANT INFORMATION**

   a  Full name of applicant: C G T Law Group International LLP

   b  Principal business premise address: 101 Constitution Avenue NW, Suite 900
         (Street)                                   (County)
     Washington, D.C.           20001
      (City)           (State)                           (Zip)

   c  Please list any secondary locations on a separate sheet and include number of lawyers at each location.
                     **COMPLETE THIS INSURED SUPPLEMENT**

   d  (i)  Number of attorneys    6
      (ii)  Number of Paralegals or law clerks    1
      (iii)  Number of clerical or support staff    4
      (iv)  Other-please describe  Chancellor, Pilots

   e  Specify if: [✓] Partnership   [ ] Corporation   Year established: _____

2. **BUSINESS OPERATIONS**

   a  List on separate attachments the names of all predecessor firms whose assets and liabilities the Firm assumed during the past 10 years, include the name(s) of the firm(s), the year established, the number of lawyers, and the location

   b  Does the firm share or lease space with any other firm or entity? ............................................................... [ ] Yes [✓] No
     If so, please advise of the entity' name and the specific circumstances on a separate attachment.

   c. Please advise of any foreign affiliated or associated firms and provide a detailed narrative of the name of the relationship on a separate attachment.

   d  Provide corporate brochure(s) and/or firm resume.

   e  (i)  Does any member of the Firm while rendering legal services also provide investment counselor services or provide tax opinions on tax shelters? ............................................................... [ ] Yes [✓] No
     If yes, please describe the nature of the services provided and the types of clients to which such services are provided on separate attachment.

     (ii)  Does any member of the firm on behalf of its clients perform legal services involving the formation or sale of syndications or limited partnerships? ............................................................... [ ] Yes [✓] No
     If yes, on separate attachment, describe services performed and details, including number of formed during the past two years, total dollar amount of each and the nature of the investment.

SM 4115-01  1/02                Page 1 of 8

OCT/09/2007/TUE 04:59 PM    CGT LAW GROUP LLP    FAX No. 1-361-882-6701    P. 017

NET SailsPAXtion    From: Natalie Heyden 847-572-8229    To: FINAL APP 85332G3    Date: 12/12/2000 Time: 10:55:66 AM    Page 2 of 10

. ..... .... ........    From: .... .... ...-....-....    To: Lisa Stinger    Date: 7/(8/8(x)x Time: 9:22:21 AM    Page 6 of 15

f.  Indicate the approximate percentage of gross billable dollars from practice devoted to:

| | | |
|---|---|---|
| Admiralty/Maritime ___% | Corporate (general) ___% | Real Estate |
| Anti-Trust/Trade Reg. ___% | Corp. Mergers/Acquisition ___% | Closings ___% |
| Banking ___% | Criminal ___% | Escrow/Title ___% |
| Bankruptcy ___% | Domestic Relations ___% | Syndication/Development ___% |
| BI/PI Defendants ___% | Entertainment ___% | Securities Law*: |
| BI/PI Plaintiffs: | Estate/Probate/Trust ___% | Federal SEC ___% |
| Anticipated fees per case less than $25,000 ___% | International Law ___% | State ___% |
| | Labor ___% | Private Placements ___% |
| Anticipated fees per case greater than or equal to $25,000  100 % | Litigation: | Bonds ___% |
| | Plaintiff ___% | Taxation |
| | Defense ___% | Preparation ___% |
| Collection/ | Municipal ___% | Opinions ___% |
| Repossession ___% | Oil and Gas ___% | Other** ___% |
| Communications ___% | Public Utilities ___% | ___% |
| Copyright/Patent/TM ___% | | |

TOTAL INCOME:    100%

\* Complete Securities Supplement.
\** Over 5% specify.

g.  Are any major changes foreseen in the percentage shown in question (f) for the current fiscal year?...... [ ] Yes [✓] No
If yes, please provide narrative details on a separate attachment.

h.  Specify the firm's total gross revenues:
Last fiscal year:    From 01/01/06 to 12/31/06    Gross Revenues $ 500,000  ESTIMATE
Estimate current fiscal year:    From 01/01/07 to 12/31/07    Gross Revenues $ 5,000,000

i.  Is any lawyer listed in the insured Supplement serving as a director, officer or partner of or exercising any fiduciary control over any entity other than the firm?........................................ [✓] Yes [ ] No
If yes, complete the Outside Interests Supplement.

REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

j.  Other than those positions referenced in question (i), does the firm or any lawyer or employee of the firm ever invest in the business of a client?..................................................................... [ ] Yes [✓] No
If yes, please provide on separate attachment full details of such relationship.

REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

k.  Except as listed in question i and j, does the firm or any of its members engage in any occupation, business or profession other than the practice of law?..................................................... [ ] Yes [✓] No
If yes, please provide narrative details on a separate attachment.

l.  (i)  Are custodial accounts (i.e., money, securities and other property held on behalf of clients) audited by an independent, outside auditor?........................................................... [ ] Yes [✓] No
(ii)  Are two signatures required for all withdrawals of funds from custodial accounts?................. [✓] Yes [ ] No

m.  With respect to the total of all custodial accounts other than retainer fees, what is the average dollar amount and the maximum dollar amount held or maintained on behalf of the firm's clients?
Average: $ 1000    Maximum: $ 1,000,000

n.  Does the firm maintain a fidelity bond covering all employees?............................................ [ ] Yes [✓] No

o.  (i)  Please describe by separate attachment the firm's procedures for the acceptance of new business including conflict of interest checks and who has the authority to accept new business.
(ii)  Does the firm make use of engagement letters with its new clients?.................................. [✓] Yes [ ] No

SM 4119-01  1/02    Page 2 of 6

OCT/09/2007/TUE 05:00 PM    CGT LAW GROUP LLP    FAX No. 1-361-882-6701    P. 018

NET SatisFAXtion    From: Natalie Hoyden 847-572-6229    To: FINAL APP 3593283    Date: 12/12/2006 Time: 10.55:59 AM    Page 3 of 10

From: Hall Ulles 847-572-6229    To: Lisa Zilinger    Date: 7/19/2006 Time: 8:28:24 AM    Page 9 of 12

3. HISTORY

   a. Over the past five years, has the Firm opened or closed any branch office or had a single loss of 25% or more of the lawyers of the Firm? ........................................................................ ( ) Yes [√] No
     If yes, please provide details by separate attachment.

   b. (i) Has the firm or any predecessor firm or any lawyer listed in the insured Supplement ever had any insurance company or Lloyd's decline, cancel, refuse to renew or accept only on special terms any professional liability insurance? ................................................................... ( ) Yes [√] No
     If yes, please explain _____

    (ii) Has any lawyer listed in the insured Supplement ever been the subject of a reprimand or disciplinary action or refused admission to the Bar? ............................................................. ( ) Yes [√] No
     If yes, please explain on a separate attachment.

    (iii) During the past seven years, has any professional liability claim or suit been made against any lawyer listed in the insured Supplement or against the firm or any predecessor firm? ............. ( ) Yes [√] No
     If yes, a SUPPLEMENTAL CLAIM INFORMATION form must be completed for each claim.

    (iv) After inquiry, does the firm or any person proposed for this insurance have knowledge of any incident, circumstance, act, error, omission or personal injury which may give rise to a claim? ..... ( ) Yes [√] No
     If yes, provide a complete description of each on a separate attachment. It is agreed that if there be knowledge of any such incident, circumstance, error, omission or personal injury, any claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance.

   c. Please provide a list by separate attachment of all clients that represent 5% or more of the firm's total billable dollars or contribute $1,000,000 or more to the firm's income annually. _N/A_

   d. List lawyers professional liability insurance carried for each of the past five years. IF NONE, STATE NONE.

| Inception From | Expiration To | Insurance Company | Policy No. | Limit of Liability | Deductible | Premium |
|---|---|---|---|---|---|---|
| 11/05 | 12/06 | EVANSTON | LA-803786 | $2,000,000 | $25,000 | $48,360 |
| From____ | To____ | _____ | _____ | _____ | _____ | _____ |
| From____ | To____ | _____ | _____ | _____ | _____ | _____ |
| From____ | To____ | _____ | _____ | _____ | _____ | _____ |
| From____ | To____ | _____ | _____ | _____ | _____ | _____ |

NOTICE TO APPLICANT: The coverage applied for is SOLELY AS STATED IN THE POLICY, which provides coverage on a "CLAIMS MADE" basis for ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD unless the extended reporting period option is exercised in accordance with the terms of the policy.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information or conceals, for the purpose of misleading, information concerning any fact therein commits a fraudulent insurance act, which is subject to criminal and civil penalties.

WARRANTY: I warrant to the insurer, that I understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the insurer evidence its acceptance of this application by issuance of a policy. I authorize the release of claim information from any prior insurer to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015.

CGT LAW INTERNATIO_NAL LLP       PARTNER
Name of Applicant                Title (Officer, partner, etc.)

_____       10-16-06
Signature of Applicant               Date

SIGNING this application does not bind the Applicant or the Insurer or the Underwriting Manager to complete the insurance, but one copy of this application will be attached to the policy, if issued.

SM 4116-01 1/02       Page 3 of 8

NET SellsFAXtion    From: Natalie Heyden 847-572-0229    To: FINAL APP 9639205    Date: 12/12/2006 Time: 10:55:59 AM    Page 4 of 10

--- Phone: (xxx) xxx-xxxx    To) Lie Bring4)    Date: 7/14/2008 Time: 0:20:34 AM    Page 7 of 10

**INSURED SUPPLEMENT**
**APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE**

Indicate the names of all lawyers who are presently officers, partners, employed lawyers, of counsels or retired partners of the Firm and complete the requested information for each lawyer.  Please note that coverage responds only for acts performed on behalf of the firm.

| Name of Lawyers | Designation<br>O - Officer<br>P - Partner<br>C - Employed Lawyers<br>OC - Of Counsel<br>RP - Retired Partner | Member of Management Commission or Governing Body (Yes/No) | Year Admitted to Bar | Years of Full-Time Practice | Specialty, if any | Member in Good Standing of the Following State Bar(s) |
|---|---|---|---|---|---|---|
| Mauricio Celis | Partner | Yes | 2000 | 7 | | Mexico |
| Douglas R. Gwyther Jr. | Partner | Yes | 1998 | 8 | | Texas, Washington D.C. |
| Raul R. Tapia | Partner | Yes | 1977 | 29 | | Washington D.C. & California |
| Thomas A. Guerriero | Employed Lawyer | No | 1977 | 29 | | Arizona |
| Thomas C. Pinedo | Employed Lawyer | No | 1988 | 18 | | Texas, Michigan & California |
| Jose Valenzuela Hernandez E. | | No | 1988 | 18 | | Mexico |
| James Hada | Partner | No | 1989 | 17 | | Texas |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT Law Group International LLP
Name of Applicant

Signature of Applicant

Title: Partner

Date: 10-16-06

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4118.01 1/02

Page 4 of 8

NET SafetFAXtion   From: Natalie Hoyden 847-572-6229   To: FINAL APP 8588268        Date: 12/12/2006 Time: 10:55:50 AM        Page 6 of 10

NET SafetFAXtion   From: (In Vales 847-572-6229   To: Lisa Shiloy        Date: 7/18/2008 Time: 8:39:54 AM        Page 8 of 12

## OUTSIDE INTERESTS SUPPLEMENT
### APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE

FIRM: CGT LAW GROUP INTERNATIONAL, LLP

| Name of Lawyer | Name of Business | Position Held | Nature of Business | % of Equity Interest Individual | Firm & All Lawyers and Their Spouses and Immediate Family Members Combined | Client of Applicant (Yes/No) | D&O Insurance (Yes/No) |
|---|---|---|---|---|---|---|---|
| Marcello Celis | Tapatio, Inc. | Owner | Adminstr. | 100% | | No | Yes |

Name of Applicant: CGT LAW GROUP INTERNATIONAL LLP        Title: PARTNER

Signature of Applicant*        Date: 10-16-06

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4116-01 1/02        Page 5 of 8

OCT/09/2007/TUE 05:00 PM   CGT LAW GROUP LLP        FAX No. 1-361-882-6701        P. 021

NET SatisFAXtion   From: Natalie Hoyden 847-572-0228   To: FINAL APP 3583263        Date: 12/12/2006 Time: 10:55:58 AM        Page 9 of 10

Date: 7/18/2006 Time: 8:23:44 AM        Page 9 of 12

**SECURITIES SUPPLEMENT**
**APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE**

(Complete Only If the Firm does Securities Offerings, Private Placements or Bond Work)

FIRM   CGT LAW GROUP INTERNATIONAL LLP

1  Indicate the approximate amount of billable dollars derived from securities exempt and non-exempt work including federal SEC, state securities, private placements and bonds. $ ___NONE___

2  Briefly describe your SEC practice qualifications including whether any lawyers of the Firm involved in such activities have N/A in the past been SEC staff members, practiced before the SEC or been cautioned or disqualified by the SEC. Provide narrative by separate attachment.

3  (a) Indicate by a check those procedures employed by the Firm in security (exempt and non-exempt) matters including private placements and bonds:   NONE

Investigate client                              Check on federal reporting systems

convictions                                                                for prior criminal

Investigate other participants              Court/regulatory Investigation

Investigate other professionals            SEC filings filed and in order

Checklist                                          Check on tax opinion

On-site inspections                            Render tax opinion

Review of corporate character             Check on prior injunctive actions in the SEC

Check on feasibility study

(b) If the firm uses procedures other than those listed in 3(a) above, please describe by separate attachment.

4  Using the chart on the following page, list securities offerings (exempt and non-exempt), private placements and bond offerings handled in the past two years including the year, name of insurer, type of transaction, type of business, underwriter, accountant, dollar size of offering and party represented by Firm.

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT LAW GROUP INTERNATIONAL LLP              PARTNER
Name of Applicant*                              Title

_____             10-16-06
Signature of Applicant*                          Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01 1/02                          Page 6 of 8

OCT/09/2007/TUE 05:00 PM    CGT LAW GROUP LLP    FAX No. 1-361-882-6701    P. 022

NET SellsFAXtion    From: Natalie Hayden 847-572-0229    To: FINAL APP 8588203    Date: 12/12/2006 Time: 10:55:59 AM    Page 7 of 10



| Year | Name of Issuer | Type of Transaction Indicate: P = Private Placement F = Federal Securities S = State Securities B = Bond | Indicate: Primary. Offering = 1 Subsequent Offering = 2 | Type of Business | Underwriter | Accountant | Dollar Size of Offering and Description of Security | Indicate Party Represented by Firm: I = Issuer U = Underwriter L = Lender IC = Insurance Co. P = Purchaser Others - specify |
|------|---------------|---------|---------|---------|-------------|------------|----------|----------|
| | | N/A | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

*Indicate by an Asterisk if acting as Bond Counsel.

SM 4115-01 1/02

OCT/09/2007/TUE 05:01 PM    CGT LAW GROUP LLP          FAX No. 1-361-882-6701              P. 023

NET SatisFAXtion    From: Natalie Hoydon 047-572-6229    To: FINAL APP 3553269              Date: 12/12/2006 Time: 10:55:58 AM              Page 8 of 10

## CGT LAW GROUP INTERNATIONAL, LLP

Question 2  O (I)
New Clients and conflict of interest checks:

The firm maintains a management committee.  There are three partners on this committee.  All new clients are subject to approval by the firms management committee.  Any lawyer generating new business is required to associate with a partner with specific expertise in the matter prior to proposing new business to the management committee.

The firm maintains a conflict of interest system on computer.  All cases are maintained on a computer database.  Conflict checks are reviewed at inception of all new cases.  The conflict of interest systems reviews the following information: client name, opposing party, client subsidiaries, client principals, opposing counsel, outside interests of firm personnel and names of parties whose representation was declined.

All lawyers in the firm, regardless of practice area or geographical location are able to access all conflict data held by the firm in their conflict search.  All potential conflicts are always referred to the management committee.

Where representation is continued subject to conflict waivers, the firm maintains a written Policy requiring the waiver to clearly show (1) the conflicting parties the nature of the conflict (2) show how it could affect the representation and (3) show how the client was advised to consider consulting another Law Firm either about the conflict and/or the original matter prior to signing the waiver.

NET SolexFAXtion    From: Natalie Hoyden 847-572-6229    To: FINAL APP 35332G8        Date: 12/12/2006 Time: 10:55:50 AM        Page 9 of 10

FAX: SAMFAALION   From: Sen Gates 847-572-6228   To: Lisa Schoall           Date: 7/10/2006 Time: 9:23:34 AM        Page 11 of 12

**SHAND MORAHAN**
**MARSH & COMPANY, INC.**
Ten Parkway North, Deerfield, Il 60015
(847) 572-6600 Fax (847) 572-6137
Underwriting Manager
A Markel Company

- o **DEERFIELD INSURANCE COMPANY**
- o **EVANSTON INSURANCE COMPANY**
- o **ESSEX INSURANCE COMPANY**
- o **MARKEL AMERICAN INSURANCE COMPANY**
- o **MARKEL INSURANCE COMPANY**

## SUPPLEMENTAL CLAIM INFORMATION FOR
## LAWYERS PROFESSIONAL LIABILITY INSURANCE
### (Claims Made and Reported Basis)

**APPLICANT'S INSTRUCTIONS:**
1. Answer all questions. If more details are required, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. This form is to be completed by Applicant who has been involved in any claim or suit or aware of an incident which may give rise to a claim.
4. Complete one form for each claim or incident.
5. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.
(PLEASE TYPE OR PRINT)

**APPLICANT INFORMATION**

a. Firm Name: _____
b. Claimant Name: _____
c. Name of individual(s) at Firm involved in claim: _____
d. Indicate whether: _____ Claim/Suit, or _____ Incident
e. Date of alleged error: _____   Date of claim: _____
f. Additional defendants: _____
g. IF CLOSED: Total Loss Paid Including Deductible $ _____
   Indicate whether _____ Court Judgment, or _____ Out of court settlement
   IF PENDING: Claimant's settlement demand? _____
   Defendant's offer for settlement? _____
   Insurer's loss reserve? _____
   Deductible? _____
   Is claim in Suit? [ ] Yes [ ] No  If yes, Amount asked in summons? $ _____
h. Name of Insurer: _____
i. Description of claim: (Provide enough information to allow evaluation, and use reverse side if additional space is required.)
   (i). Alleged act, error or omission upon which Claimant bases claim: _____
   _____

   (ii) Description of case and events: _____
   _____

   (iii) Description of the type and extent of injury or damage allegedly sustained: _____
   _____

j. Firm's evaluation of likelihood of liability: _____
k. Explain what action has been taken by the firm to prevent recurrence of the same type of claim. _____
I/we understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT LAW GROUP INTERNATIONAL LLP
Name of Applicant*

PARTNER
Title (Officer, partner, etc.)
10-16-06

_____
Signature of Applicant*

_____
Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02                              Page 6 of 6

EXHIBIT 5

EXHIBIT 5

# EXHIBIT 5

EXHIBIT 5

EXHIBIT 5

220317.1

DORA M. RAMOS
DISTRICT CLERK

CAUSE NO. 6,349

| | | |
|---|---|---|
| GONZALEZ & ASSOCIATES LAW FIRM, P.C. and PRISCILLA DE LOS SANTOS | § § § § | IN THE DISTRICT COURT OF |
| | § | FILED |
| | § | ZAPATA COUNTY, TEXAS |
| vs. | § | BY _____ DEPUTY |
| | § | |
| CHRIS PINEDO, MAURICIO CELIS, CGT LAW GROUP INTERNATIONAL, LLP, and OWEN & ASSOCIATES, L.L.P., successor-in-interest to VANCE OWEN d/b/a VANCE OWEN & ASSOCIATES | § § § § § § § | ZAPATA COUNTY, TEXAS |
| | § | 49TH JUDICIAL DISTRICT |

## PLAINTIFF'S THIRD AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT;

GONZALEZ & ASSOCIATES LAW FIRM, P.C., Plaintiff, complains of CHRIS

PINEDO, MAURICIO CELIS, CGT LAW GROUP INTERNATIONAL, L.L.P., and OWEN

& ASSOCIATES, L.L.P., successor-in-interest to VANCE OWEN d/b/a VANCE OWEN

& ASSOCIATES. files this its Third Amended Original Petition, and would show this Court

as follows:

### I. DISCOVERY LEVEL

1.       Plaintiffs plead that this case should be assigned to Discovery Level Three

pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

### II. PARTIES

2.       Defendant, Chris Pineda ("Pineda"), is a resident of Nueces County, Texas

who has already appeared and answered herein.

    3.    Defendant, Mauricio Celis ("Cells"), is a resident of Nueces County, Texas, who has already appeared and answered herein.

    4.    Defendant CGT Law Group International, L.L.P. ("CGT Law Group") is a limited liability partnership existing under the laws of the District of Columbia, and registered with the Texas Secretary of State as a foreign limited liability partnership to do business in the State of Texas.  CGT Law Group has already appeared and answered herein.

    5.    Defendant Owen & Associates, L.L.P., Successor-in-Interest to Vance Owen d/b/a Vance Owen & Associates is currently housed at the same address as CGT Law Group International, L.L.P., 500 N. Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

### III. JURISDICTION AND VENUE

    6.    This Court possesses jurisdiction because the amount in controversy is in excess of the minimum of this Court.

    7.    Venue is proper in Zapata County, Texas because the underlying cause of action existed in Zapata County, the matter is pending in Zapata County, the probate matters is pending in Zapata and the matter has been litigated in Zapata County, Texas. Therefore, all or a substantially all of the events or omissions giving rise to the claim occurred in Zapata County, Texas.

### IV. UNDERLYING FACTS

    8.    Noe De Los Santos, Sr. is the natural father of Priscilla De Los Santos and

Esther Noemi De Los Santos. Noe De Los Santos, Sr. is also the administrator of the Estate of Esther Noemi De Los Santos. Esther Noemi De Los Santos, at the time of her untimely death, was a minor. Priscilla De Los Santos is the natural mother of Carlos Xavier De Los Santos.

9.    On June 23, 2004, Priscilla De Los Santos, Esther Noemi De Los Santos and Carlos Xavier De Los Santos were at the home owned by Defendant Mercado at 5412 Davis Lane, Zapata County, Texas, when a fire began causing the death of Esther Noemi De Los Santos and severely and permanently burning Priscilla De Los Santos and Carlos Xavier De Los Santos. The source/cause of the fire was a lamp designed and/or manufactured by Defendant Ashley.

10.    As a result of the incident, Plaintiff Esther Noemi De Los Santos burned to death and Plaintiffs Noe De Los Santos, Sr., Priscilla De Los Santos and Carlos Xavier De Los Santos sustained severe mental and physical injuries.

11.    As a result of the accident, Noe De Los Santos executed a contract on his behalf and on the behalf of the Priscilla De Los Santos, a minor at the time. A contract was also signed on behalf of the estate of Ester Noemi De Los Santos and Carlos De Los Santos, minors. When Priscilla De Los Santos reached majority age, she signed a contract directly with Plaintiff.

12.    Orders from this Court exist authorizing the Plaintiff to represent all parties. Furthermore, Orders exists from this Court exist forbidding attorneys and their investigators from contacting Priscilla De Los Santos, specifically attorney Chris Pineda who was employed at the time of Order with the Watts Law Firm. At all relevant times

during the underlying litigation, Plaintiff has represented Priscilla De Los Santos.

13.    The underlying case was set for mediation on October 25, 2006. On October 23, 2006, Plaintiff learned that one or more of the Defendants had made contact with Priscilla De Los Santos at various time during the pendency of the underlying lawsuit in violation of Courts' Order. Defendants' unlawful solicitation violated the Texas Rules of Professional Conduct and constitutes tortious interference with Plaintiff's contract with his client.

14.    One or more of the Defendants has also initiated litigation against Plaintiff in other venues, and by way of counterclaim in this venue. Specifically, CGT Law Group, by and through its controlling partner, Mauricio Celis, has asserted an interest in the legal fees generated by Plaintiff from the underlying case. CGT Law Group does not, and never has had, any written contract with Priscilla De Los Santos.

15.    CGT Law Group is a sham company created for the express purpose of soliciting personal injury cases around the world and referring those cases to real lawyers. GCT Law Group's controlling partner, Mauricio Celis, is not a lawyer, yet he holds himself out to the public and to clients as a licensed lawyer. This conduct constitutes fraud, and is misleading and deceptive. Further, Mauricio Celis, who is nothing more than a glorified ambulance chaser, has collected and shared millions of dollars in legal fees off of other people's misery, while engaging in the unauthorized practice of law. Falsely holding oneself out as a lawyer, as does Mauricio Celis, is a third degree felony in the State of Texas. The unauthorized practice of law is a Class A misdemeanor in the State of Texas, unless previously convicted, in which case the offense is third degree felony.

## V. CAUSES OF ACTION

16.    Plaintiff had a valid contract with the Priscilla De Los Santos wherein the Defendants willfully and intentionally interfered with the contract. Such interference has proximately caused Plaintiff great harm.

17.    Defendants have conspired with each other, and possible others, to engage in the unauthorized practice of law, and to steal, extort and illegally obtain attorneys fees from other lawyers including Plaintiff. Defendants' counterclaim in this case is one example of this civil conspiracy whereby Defendants are attempting to illegally extort attorneys fees when they have no basis to do so. All of the Defendants have committed one or more acts in furtherance of the civil conspiracy. Defendants' conduct has proximately caused Plaintiff harm.

18.    Defendants' counterclaim constitutes a frivolous pleading in violation of Rule 13, Texas Rules of Civil Procedure, as well as other applicable law. The counterclaim is groundless, was brought in bad faith, and for purposes of harassment and to extort legal fees from Plaintiff. Defendants are engaged in the unauthorized practice of law and/or are aiding and abetting Defendant Mauricio Celis and Defendant CGT Law Group in the unauthorized practice of law. The counterclaim is an act in furtherance of this conduct. Plaintiff seeks all available and appropriate remedies at law and in equity against those Defendants who are responsible for bringing the frivolous counterclaim.

19.    All conditions precedent have occurred or are satisfied.

## PRAYER

WHEREFORE, Plaintiff prays that Defendants be cited to appear and answer herein,

that this cause be set for trial, and that Plaintiff recover a judgment of and from the Defendants, jointly and severally, for actual damages, special damages, exemplary damages and attorneys fees, together with prejudgment and post judgment interest at the maximum rate as provided by law, costs, and such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

By:  _____

RAYMOND L. THOMAS
State Bar No. 19865350
E-Mail: rthomas@ktglawfirm.com
OSCAR O. GOMEZ
State Bar No. 08115425
E-Mail: ogomez@ktglawfirm.com
KITTLEMAN, THOMAS & GONZALES, LLP
4900-B N. 10th Street
McAllen, Texas  78504
(956) 686-8797
(956) 630-5199 (fax)

JAIME A. GONZALEZ, JR.
State Bar No. 08127600
GONZALEZ & ASSOCIATES LAW FIRM, P.C.
Summit Park North
817 E. Esperanza
McAllen, Texas 78501
(956) 664-0100
(956) 664-1529 (fax)

ATTORNEYS FOR PLAINTIFF
GONZALEZ & ASSOCIATES LAW FIRM, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served in accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure to the following parties on May 30, 2007:

Andrew M. Greenwell                          **Via Certified Mail**
HARRIS & GREENWELL, LLP
1700 Wells Fargo Tower
615 North Upper Broadway
Corpus Christi, Texas  78477-0237

Darrell L. Barger                            **Via Certified Mail**
HARTLINE, DACUS, BARGER, DREYER
      & KERN, L.L.P.
800 North Shoreline
Suite 2000, North Tower
Corpus Christi, Texas 78401

J.A. Canales                                 **Via Certified Mail**
CANALES & SIMONSON, PC
2601 Morgan Avenue
P.O. Box 5624
Corpus Christi, Texas 78465-5624

_____
Raymond L. Thomas
Oscar O. Gomez

EXHIBIT 6

EXHIBIT 6

# EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

220317.1

# IN THE COUNTY COURTS
## OF NUECES COUNTY, TEXAS
### COUNTY COURT AT LAW NUMBER 1

| | | |
|---|---|---|
| PALOMA STEELE | § | CAUSE NO. 07-62218-1 |
| PLAINTIFF | § | |
| | § | |
| VS. | § | |
| | § | |
| CGT LAW GROUP | § | |
| INTERNATIONAL, L.L.P., | § | |
| MAURICIO R. CELIS (CAPITAL | § | |
| PARTNER), T. CHRISTOPHER | § | |
| PINEDO; D.R. GWYTHER, JR. (CC | § | |
| INCOME PARTNER), and RAUL | § | |
| TAPIA (D.C. INCOME PARTNER) | § | |
| DEFENDANTS | § | |

### PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, PALOMA STEELE, hereinafter referred to by name or as Plaintiff, and complains of CGT LAW GROUP INTERNATIONAL, L.L.P., MAURICIO R. CELIS (CAPITAL PARTNER), T. CHRISTOPHER PINEDO, D.R. GWYTHER, JR. (CC INCOME PARTNER), AND RAUL TAPIA (D.C. INCOME PARTNER), hereinafter referred to by names or as Defendants, and for cause of action would respectfully show unto the Court as follows:

### I.

1.    Plaintiff intend that discovery be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

### II.

2.    Plaintiff is an individual residing in Nueces County, Texas.



-1-

3.    Defendant, **CGT LAW GROUP INTERNATIONAL, L.L.P.** is a foreign limited liability partnership organized under the law of the District of Columbia and authorized to do business in the State of Texas and may be served with process through its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

4.    Defendant, **MAURICIO R. CELIS** is an individual residing in Nueces County, Texas and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

5.    Defendant, **T. CHRISTOPHER PINEDO** is an individual residing in Nueces County, Texas and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

6.    Defendant, **D.R. GWYTHER, JR. (CC INCOME PARTNER)** is an individual residing in Nueces County, Texas and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

7.    Defendant, **RAUL TAPIA (D.C. INCOME PARTNER)** is an individual doing business in the State of Texas and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

### III.

8.    Subject matter jurisdiction is proper in this Court because the damages sought are above the minimum jurisdictional limits of this court.

9.    Venue is proper before this Court because the incident which forms the basis of this lawsuit occurred in Nueces County, Texas.

10.    This suit involves multiple defendants. Venue is also proper before this Court under Tex. Civ. Prac. & Rem. Code § 15.005 because all of Plaintiffs' claims against Defendants arise out of

the same transaction, occurrence, or series of transactions or occurrences. Specifically, Plaintiffs sought legal representation from Defendants in Nueces County, and the actionable conduct occurred in Nueces County.

### IV.

11.   On or about January 2007, Plaintiff hired Defendant **CGT LAW GROUP INTERNATIONAL, L.L.P.** to provide legal services. At the time the contract for legal services was signed, Defendant **MAURICIO R. CELIS** represented himself as and held himself out to Plaintiff as an attorney. Furthermore, Plaintiff hired Defendant **CGT LAW GROUP INTERNATIONAL, L.L.P.** with the belief that Defendant **MAURICIO R. CELIS** was an attorney authorized in Texas to represent people. At the time the contract for legal services was signed, Defendants **T. CHRISTOPHER PINEDO, D.R. GWYTHER, JR. (CC INCOME PARTNER),** and **RAUL TAPIA (D.C. INCOME PARTNER)** knew or should have known that Defendant **MAURICIO R. CELIS** was not an attorney licensed or admitted to practice in Texas, but Defendants nevertheless acted in concert with one another to defraud and mislead the Plaintiff into retaining their legal services.

12.   Defendants, **MAURICIO R. CELIS, T. CHRISTOPHER PINEDO, D.R. GWYTHER, JR. (CC INCOME PARTNER),** and **RAUL TAPIA (D.C. INCOME PARTNER)** were, at all relevant times during the course of **CGT LAW GROUP INTERNATIONAL, L.L.P.**'s representation of Plaintiff, officers, directors, agents, employees and shareholders of **CGT LAW GROUP INTERNATIONAL, L.L.P.**

13.   Defendant **MAURICIO R. CELIS, T. CHRISTOPHER PINEDO, D.R. GWYTHER, JR. (CC INCOME PARTNER),** and **RAUL TAPIA (D.C. INCOME PARTNER)** were, at all

relevant times during the course of **CGT LAW GROUP INTERNATIONAL, L.L.P.**'s representation of Plaintiff, employees and agents of **CGT LAW GROUP INTERNATIONAL, L.L.P.** acting in the course and scope of their employment with **CGT LAW GROUP INTERNATIONAL, L.L.P.**

V.

### COUNT 1 – FRAUD AND MISREPRESENTATION

14.    Plaintiffs would show that the Defendants, jointly and severally, both individually and while acting through their employees, agents, servants, representatives, and/or vice principals, at all times within the course and scope of their employment, committed one or more acts of fraud against the Plaintiffs.  More specifically, Defendants knowingly made false representations and knowingly concealed material facts about Defendants' representation of Plaintiffs.

15.    Defendants knowingly made the following misrepresentations to Plaintiffs:

   a.    That Defendants would properly and competently handle Plaintiffs' legal matters;

   b.    That Defendant **MAURICIO R. CELIS** was an attorney authorized to practice in Texas; and

   c.    That Defendants were adequately trained and supervised to handle Plaintiff's legal matters.

16.    The Defendants knowingly concealed from Plaintiffs the fact that Defendant **MAURICIO R. CELIS** was not an attorney authorized to practice in Texas and was committing the unauthorized practice of law.

17.    Plaintiff alleges that each and every one of the representations and instances of misrepresentation and fraudulent concealment concern material facts to the cause of action that, if known to Plaintiff, would have caused her to modify her conduct because it involved information that a reasonable person would attach importance to and be induced to act upon in determining a

-4-

course of action.

18. Plaintiff relied on the Defendants' misrepresentations and fraudulent concealments in making her decision to hire Defendants to represent her in her legal matters. Each and every one of the aforementioned misrepresentations was false and Plaintiff relied upon them to her detriment. Such reliance is the proximate cause of Plaintiff's injuries and damages as described in this pleading.

19. Further, Plaintiff would show that, at the time the misrepresentations and fraudulent concealments were made, Defendants either knew that the representations were false or made the representations recklessly, as a positive assertion, and without knowledge of their truth. Defendants purported to have and, in fact, did have superior knowledge concerning the matters related herein, and made the misrepresentations with the intent that the Plaintiff rely upon them. Specifically, Defendants intended to mislead Plaintiffs through their representations and actions to induce the Plaintiffs to form an attorney/client relationship with Defendants.

20. Plaintiff, in fact, relied on the Defendants' representation and misrepresentations, omissions and fraudulent concealments of material facts and acquiesced in an attorney/client relationship with Defendants.

21. The Plaintiff's reliance on Defendants' representations, misrepresentations, omissions and fraudulent concealments was the proximate cause of the damages and injuries suffered by the Plaintiff. Since the Defendants acted knowingly, their actions were willful and malicious and constitute conduct that would entitle Plaintiff to exemplary damages under the law. Due to Defendants' fraudulent conduct, Plaintiff incurred additional expenses, including, but not limited to, attorneys fees, investigation expenses, and other costs related to the prosecution of this action. These additional costs entitle Plaintiff to request that exemplary damages be awarded against Defendants in a sum within the jurisdictional limits of this court.

-5-

# VI.

## COUNT 2 – CONSPIRACY TO DEFRAUD

22.    As stated in the preceding cause, Plaintiff would show that the Defendants, jointly and severally, both individually and while acting through their employees, agents, servants, representatives, and/or vice principals, at all times within the course and scope of their employment, committed one or more acts of fraud against the Plaintiffs which are outlined in the preceding paragraphs.

23.    Further, Plaintiffs would assert that Defendants **MAURICIO R. CELIS, T. CHRISTOPHER PINEDO, D.R. GWYTHER, JR. (CC INCOME PARTNER), and RAUL TAPIA (D.C. INCOME PARTNER)** were members of a combination of two or more persons whose object was to accomplish an unlawful purpose, namely to defraud Plaintiff and induce her to sign a contract for legal representation.

24.    The Defendants had a meeting of the minds on the object or course of action and one of the members, specifically **MAURICIO R. CELIS**, committed several unlawful, overt acts to further the object or course of action—namely fraudulently representing himself to the Plaintiff as an attorney in order to induce her into signing a contract for legal representation.

25.    As a result of these unlawful acts, Plaintiff suffered injuries and damages. Since the Defendants acted knowingly, their actions were willful and malicious and constitute conduct that would entitle Plaintiff to exemplary damages under the law. Due to Defendants' fraudulent conduct, Plaintiff incurred additional expenses, including, but not limited to, attorneys fees, investigation expenses, and other costs related to the prosecution of this action. These additional costs entitle Plaintiff to request that exemplary damages be awarded against Defendants in a sum in excess of the minimum jurisdictional limits of this court.

-6-

## VII.

## COUNT 3 – BREACH OF FIDUCIARY DUTY

26.     Defendant, **CGT LAW GROUP INTERNATIONAL, L.L.P.**, by and through **T. CHRISTOPHER PINEDO**, owed a fiduciary duty to the Plaintiff through the attorney-client relationship that formed between them.

27.     Defendants breached their fiduciary duty to the Plaintiff by failing to fully and fairly disclose prior to and after the attorney/client relationship was formed that **MAURICIO R. CELIS** was not an attorney.  Furthermore, Defendants took advantage of Plaintiff in the most egregious way for an extended period of time by engaging in an elaborate scheme of deception to lull Plaintiff into the belief that **MAURICIO R. CELIS** was an attorney.

28.     Defendants' breach of their duty to render full and fair disclosure of any and all material facts resulted in both harm to the Plaintiff and a benefit to the Defendants since Defendants collected attorneys fees as a result of their representation of Plaintiff.  This breach of fiduciary duty proximately caused Plaintiff's damages and injuries.

## VIII.

## COUNT 4 – BREACH OF CONTRACT

29.     Plaintiff signed a contract with Defendant to provide legal services.  Plaintiffs and Defendants were in privity throughout the course of the legal representation by **CGT LAW GROUP INTERNATIONAL, L.L.P.** and, during the course of the representation, performed, tendered performance, or were excused from performing their contractual obligations to Defendants.

30.     Defendant **CGT LAW GROUP INTERNATIONAL, L.L.P.**, by and through the actions of its employees, servants, or agents, breached the contract in the following manner:

-7-

a.  By failing to provide Plaintiffs with adequate legal services;

b.  By misrepresenting to Plaintiff that **MAURICIO R. CELIS** was an attorney; and

c.  By engaging in a deceptive scheme to conceal from the Plaintiffs that **MAURICIO R. CELIS** was not an attorney:

31.  Defendants' breach of contract was the proximate cause of Plaintiffs' injuries and damages.

IX.

## COUNT 5 – LEGAL MALPRACTICE

32.  Defendant, **CGT LAW GROUP INTERNATIONAL, L.L.P.**, by and through the actions of its employees, servants, or agents, owed a duty of care to the Plaintiff.

33.  Defendants breached its duty of care to the Plaintiffs by failing to act as reasonable and prudent attorneys would act under the same or similar circumstances. Specifically, Defendants failed to disclose that **MAURICIO R. CELIS** was not an attorney, and engaged in an elaborate scheme of deception to cover-up their wrongdoing.

34.  These negligent acts were the proximate cause of the Plaintiffs' injuries.

X.

## COUNT 6 – CLAIMS AGAINST DEFENDANT CGT LAW GROUP INTERNATIONAL, L.L.P.

### RESPONDEAT SUPERIOR

35.  Plaintiff was injured as a result of the misrepresentations made by **MAURICIO R. CELIS**, who was acting as an agent and employee for **CGT LAW GROUP INTERNATIONAL, L.L.P.**

36.  The misrepresentation was committed while **MAURICIO R. CELIS** was acting within the scope of his employment as director, partner, and shareholder in **CGT LAW GROUP INTERNATIONAL, L.L.P.**; that is, the act was within **MAURICIO R. CELIS'** authority, in

furtherance of Defendant, **CGT LAW GROUP INTERNATIONAL, L.L.P.**'s business, and for the accomplishment of the object for which **MAURICIO R. CELIS** was hired.

## VICE PRINCIPAL LIABILITY

37.    **MAURICIO R. CELIS** acting in his capacity as director, partner, and shareholder in **CGT LAW GROUP INTERNATIONAL, L.L.P.** was as an agent for **CGT LAW GROUP INTERNATIONAL, L.L.P.**, a foreign limited liability partnership, at the time he made the misrepresentation to the Plaintiff.

38.    At the time he committed the tortious conduct, **MAURICIO R. CELIS** was acting as: 1) a corporate officer of **CGT LAW GROUP INTERNATIONAL, L.L.P.**; 2) a person with the authority to employ, direct, and discharge employees of **CGT LAW GROUP INTERNATIONAL, L.L.P.**; 3) a person engaged in the performance of nondelegable or absolute duties of **CGT LAW GROUP INTERNATIONAL, L.L.P.**; or 4) a person to whom **CGT LAW GROUP INTERNATIONAL, L.L.P.** delegated the management of all or part of its business

39.    **MAURICIO R. CELIS'** misrepresentation to the Plaintiff was directly related to **CGT LAW GROUP INTERNATIONAL, L.L.P.**'s business.

### XI.

### DAMAGES

40.    Plaintiff seeks unliquidated damages which are within the jurisdictional limits of this court.

### XII.

### EXEMPLARY DAMAGES

41.    Plaintiff also seeks exemplary damages for harm caused by Defendants' fraud, malice, or gross negligence under Tex. Civ. Prac. & Rem. Code § 41.003(a)(3).

-9-

42.    Plaintiffs also seek exemplary damages for harm resulting from a criminal act under Tex. Civ. Prac. & Rem. Code § 41.005(c) since, as the employer of **MAURICIO R. CELIS**, **CGT LAW GROUP INTERNATIONAL, L.L.P.** is liable for punitive damages because: 1) **CGT LAW GROUP INTERNATIONAL, L.L.P.**, by and through its officers, directors, and employees authorized the doing and manner of the act; 2) **MAURICIO R. CELIS**, acting as an agent for **CGT LAW GROUP INTERNATIONAL, L.L.P.** was employed in a managerial capacity and was acting in the scope of employment; and 3) **CGT LAW GROUP INTERNATIONAL, L.L.P.**, as employer or manager of **MAURICIO R. CELIS**, ratified or approved the act.

43.    Furthermore, Plaintiffs seek exemplary damages in excess of the statutory limitations based on the exception presented in Tex. Civ. Prac. & Rem. Code § 41.008(c) which applies to causes of action that seek recovery of exemplary damages based on conduct described as a felony in the following section of the Penal Code: 1) Section 32.46 (securing execution of a document by deception).

## XIII.

## ATTORNEYS FEES

44.    As a further result of Defendants wrongful conduct, it was necessary to retain the undersigned attorneys to prosecute this claim. Pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, Plaintiffs hereby sue for recovery of their reasonable and necessary attorneys fees from the Defendants. In the event of an appeal, Plaintiffs seek the recovery of additional attorneys fees.

## XIV.

## INTEREST

45.    Plaintiffs further request both pre judgment and post judgment interest on all their damages

-10-

as allowed by law.

### XXV.

### DEMAND FOR JURY TRIAL

46.    Plaintiffs demand a jury trial and tender the appropriate fee with this petition.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED.** Plaintiff requests that the Defendants be cited to appear and answer, and on final trial hereafter, the Plaintiff has judgment against Defendants in an amount in excess of the jurisdictional limits of this Court, together with all pre judgment and post judgment interest as allowed by law, costs of Court, and for such other and further relief to which Plaintiffs may be justly entitled by law and equity, including, but not limited to:

1.     Mental anguish in the past;
2.     Mental anguish in the future;
3.     Pre judgment interest;
4.     Post judgment interest;
5.     Exemplary damages;
6.     Attorneys fees;
7.     Court costs;
8.     Forfeiture of attorneys fees;
9.     Disgorgement of profits
10.    All other relief, in law and equity, to which plaintiffs may be entitled.

Respectfully submitted,

**The Law Offices of Thomas J. Henry**
512 Starr Street
Corpus Christi, Texas 78401
Phone: (361) 985-0600
Fax: (361) 985-0601

By:

Thomas J Henry
State Bar No.: 09484210

-11-

EXHIBIT 7

EXHIBIT 7

# EXHIBIT 7

EXHIBIT 7

EXHIBIT 7

CAUSE NO. _____

| | | |
|---|---|---|
| UNAUTHORIZED PRACTICE OF | § | IN THE DISTRICT COURT |
| LAW COMMITTEE | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | OF NUECES COUNTY, TEXAS |
| | § | |
| MAURICIO R. CELIS, CGT LAW GROUP | § | |
| INTERNATIONAL, LLP, T. CHRISTOPHER | § | |
| PINEDO, JAMES H. HADA, DOUGLAS | § | |
| RAY GWYTHER, JR., THOMAS | § | |
| GUAJARDO, AND VANCE OWEN | § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION

COMES NOW, Unauthorized Practice Law Committee (hereinafter "UPLC"), Plaintiff

herein, complaining of Maurico Celis (hereinafter "Celis"), CGT Law Group International, LLP

(hereinafter "CGT"), T. Christopher Pinedo (hereinafter "Pinedo"), James H. Hada (hereinafter

"Hada"), Douglas Ray Gwyther, Jr. (hereinafter "Gwyther"), Thomas Guajardo (hereinafter

"Guajardo") and Vance Owen (hereinafter "Owen"), Defendants herein, and for cause of action

would respectfully show unto the Court the following:

### I.
### PARTIES

UPLC is a standing committee of the Supreme Court of Texas and a governmental entity

created by the Texas legislature pursuant to *Tex. Gov't Code Ann.* § 81.103 and 81.104 (Vernon

2005); the Committee's members are appointed by the Honorable Supreme Court of the State of

Texas. The Committee is charged with enforcement of the law in prohibiting the unauthorized

practice of law in Texas.

Celis is a Texas resident and may be served with process at 500 North Water Street, 8th

Floor, South Tower, Corpus Christi, Texas 78471.

CGT is an illegal and purported registered Texas Limited Liability Partnership who may be served with process by serving CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

Pinedo is a Texas resident and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

Hada is a Texas resident and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

Gwyther is a Texas resident and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

Guajardo is a nonresident who may be served through the Texas Secretary of State located at 1019 Brazos St., James E. Rudder Bldg., Austin, Texas 78701. Process may then be forwarded to Guajardo at 1001 North Central Avenue No.600, Phoenix, Arizona 85004.

Owen is a Texas resident and may be served with process at 802 North Caranahua Street, Suite 1650, Corpus Christi, Texas 78470.

## II.
## JURISDICTION AND VENUE

The Court has jurisdiction over all the Defendants, except Owen, as each is a member of a partnership doing business in Texas or is registered to do business in Texas. Celis, Pinedo, Hada, Gwyther and Owen are Texas residents.

Venue is proper pursuant to *Tex. Civ. Pract. & Rem Code Ann.* §15.0002(a)(1), (2), and (3).

## III.
## DISCOVERY LEVEL

This is a Level 3 Case.

# IV.
## BACKGROUND

Celis is not licensed to practice law in any jurisdiction. Celis formed CGT to engage in the practice of law. CGT was then registered in Texas for the purpose of the practice of law. A copy of partnership agreement is hereto attached as "Exhibit 1".

Celis, as principal partner with absolute actual and financial control of CGT, took on other participating partners in small percentages. These partners were attorneys licensed in various jurisdictions: Pinedo (Texas), Hada (Texas), Gwyther (Texas), and Guajardo (Texas and Arizona). Celis ran CGT as a lawfirm collecting legal fees by and for CGT with these participating partners. *See Testimony of Maurice Celis* hereto attached as Exhibit 2 pp. 25-30, 34-36, and 40. *See* Affidavit of Raul Tapia hereto attached as Exhibit 3. See e-mail from Chris Pinedo to Mike Dobbs hereto attached as Exhibit 4.

Celis likewise engaged in various acts and practices which constitute the practice of law including representing himself as an attorney, advising persons and law entities of their rights and duties under the law, advising clients to accept and/or reject sums of money for claims they may have, representing himself as a lawyer permitted to practice law in Texas and elsewhere, negotiating and/or making claims on behalf of person and/or entities, charging and receiving fees for legal services, determining which cases to accept or reject and which matters to fund, discussing strategy on legal matters, signing settlement agreements as an attorney, and making demands on others for claims of CGT "clients". Statement of Paloma Steele hereto attached as Exhibit 5. Celis has subsequently been indicted for representing himself as an attorney. Indictments of Celis hereto attached as Exhibit 6.

Pinedo, Hada, Gwyther, and Guajardo shared legal fees with Celis, a nonlawyer, and formed a financial relationship with a nonlawyer to share legal fees and/or practice law in Texas.

PLAINTIFF'S ORIGINAL PETITION – PAGE 3

These Defendants likewise failed to supervise Celis and permitted Celis to control and/or own CGT. *See* Exhibits 1 and 2.

Defendants Celis, CGT, Pinedo, Gwyther, and Hada continue to attempt to circumvent unauthorized practice of law restrictions. Most recently, in a pending lawsuit which was purportedly already settled where CGT had contracted with one or more of the Plaintiffs, Defendants Pinedo, Gwyther, and Hada attempted to have the Plaintiff(s) sign a new fee contract with these three Defendants to avoid an illegal contract and then share legal fees with CGT and/or Celis. Transcript of hearing hereto attached as "Exhibit 7".

Owen formed various financial relationships with Celis for the purpose of sharing legal fees. Owen likewise failed to supervise Celis and consented to Celis practicing law.

## V.
## MAURICIO R. CELIS

UPLC would show that Defendant Celis has engaged and/or continues to engage in acts constituting the unauthorized practice of law.

UPLC would show that Celis is prohibited by the *Tex. Gov't Code Ann.* § 81.101 and 81.102 (Vernon 2005) from engaging in the practice of law in Texas. Nevertheless, Celis has engaged in a pattern of conduct and action which constitutes the practice of law. UPLC says that such acts or practices of Celis of which UPLC complains include:

(1) representing himself as an attorney authorized to practice law in Texas;

(2) contracting with persons to provide legal services, including but not limited to representation of individuals in claims or lawsuits in Texas;

(3) advising, expressly and/or implicitly, persons as to their rights and remedies concerning various matters, claims, and/or lawsuits in Texas;

(4) employing attorneys as employees and/or partners to represent third parties in claims and/or litigation matters;

PLAINTIFF'S ORIGINAL PETITION – PAGE 4

(5) encouraging, advising, and/or offering legal advice expressly or impliedly on pending litigation matters, including discussing litigation strategy;

(6) advising, expressly and/or impliedly, persons of their rights, duties, and privileges under the law in Texas;

(7) generally engaging in the practice of law in Texas;

(8) furnishing legal services to third parties;

(9) collecting and sharing legal fees for matters relating to the practice of law in Texas; and

(10) forming an arrangement with attorneys to share legal fees in Texas.

## VI.
## CGT LAW GROUP INTERNATIONAL L.L.P.

CGT is a purported limited liability partnership created and registered for illegal purposes: the practice of law, the sharing of legal fees, and control of a "lawfirm" by and with a nonlawyer, all in Texas. Celis has acknowledged and admitted he is CGT with complete control. It is Celis through CGT who decides whether to share legal fees with others.

CGT is and/or has engaged in the unauthorized practice of law because of Celis and his conduct. Pinedo, Hada, Gwyther, and Guajardo have aided and abetted CGTs unauthorized practice of law.

## VII.
## OTHER CGT PARTICIPATING PARTNERS

The conduct of Pinedo, Hada, Gywther, and Guajardo demonstrates each has individually and/or collectively aided and abetted the unauthorized practice of law. These attorneys have shared legal fees with Celis.

## VIII.
## OWEN

The conduct of Owen as described above demonstrates aiding and abetting the unauthorized practice of law. Owen has shared legal fees in Texas with Celis.

PLAINTIFF'S ORIGINAL PETITION – PAGE 5

## IX.
## TEMPORARY RESTRAINING ORDER

Plaintiff incorporates all the allegations in Paragraphs I–VIII as if fully set herein.

Plaintiff would show that, but for the immediate intervention by this Court, the consuming public will/have been injured by the acts of the Defendants. In particular, the Defendants have violated statutory provisions which prohibit the unauthorized practice of law and may continue to do so. Additionally, the Defendants will continue to receive monies which are illegal and per se illegal. The violations of these statutes entitle UPLC to a temporary restraining order.

Such evidence in support of the Temporary Restraining Order (hereinafter "TRO") includes but is not limited to:

1. Celis's testimony that he shares legal fees;

2. Celis's testimony that he has complete control over CGT;

3. Celis's indictment for the unauthorized practice of law;

4. The Defendants attempt to wire around their illegal arrangement by attempting to receive legal fees for a matter already settled by having the "client" sign a new fee contract;

5. The CGT website which notes that CGT is a lawfirm and all the members are partners. *See* webcite of the CGT hereto attached as "Exhibit 8";

6. The claim by CGT to collect legal fees in lawsuits including a matter on appeal. See Appellate Brief of CGT hereto attached as "Exhibit 9";

7. The evidence that Celis acted as a lawyer; and

8. CGT and its partners are a purported lawfirm and engaged in the practice of law in Texas.

PLAINTIFF'S ORIGINAL PETITION – PAGE 6

Plaintiff prays the Court enter a TRO pending further hearing and orders by the Court. The TRO should prohibit the Defendants from the following:

    a.    prohibiting CGT from collecting, soliciting, asserting, and/or receiving any fees including legal fees for which it might have any claimed fee interest;

    b.    disbursing any funds from any account of CGT that constitute the receipt of legal fees and/or expenses; however, CGT may disburse purported "clients" share of any monies received.

    c.    Collecting and/or sharing any legal fees with Celis and/or between Celis and any other Defendant regardless of whether it is characterized as any loan and/or expense repayment;

    d.    Destroying, secreting, altering, and/or compromising any financial records of any Defendant including bank account records and income tax records;

    e.    Contracting with persons to represent them with regard to claims and/or causes of action where Celis and/or CGT may receive any financial renumeration regardless of how it is characterized;

    f.    Advising persons as to their rights and advisability of making claims and instituting lawsuits pursue such claims in Texas (Celis and CGT);

    g.    Advising persons of their rights, duties, and privileges under the law in Texas (Celis and CGT);

    h.    Misrepresenting Celis's status and/or authorization to practice law in this State or any other jurisdiction;

    i.    Collecting any legal fees or expenses which will be shared with Celis and/or CGT; and

PLAINTIFF'S ORIGINAL PETITION – PAGE 7

j.     Creating any arrangement in Texas and/or performable in Texas in which legal

fees and expenses will be shared with nonlawyers.

Said temporary restraining order should also be issued to prohibit Defendants Pinedo,

Hada, Gwyther, Guajardo and Owen from aiding and abetting the unauthorized practice as

referenced above.

## X.
## TEMPORARY AND PERMANENT INJUNCTION

Plaintiff incorporates all paragraphs above as if fully set out herein.

Given the Defendants' statutory violations and the protection of the public, Plaintiff is

entitled to a temporary and permanent injunction against these Defendants for the acts and

practices complained of including those in Paragraph IX above.

## XI.
## DISGORGEMENT

For further cause of action Plaintiff incorporates the allegations above and would show

the Court that the Defendants have derived substantial sums of money from their illegal

activities.   The precise amount is not known at this time.   These activities constitute the

unauthorized practice of law and are illegal per se.  Defendants should be required to account for

such monies and profits because of this illegal activity.  Plaintiff requests this Court appoint a

special master to conduct an accounting of the financial affects of Defendants, and that the Court

require Defendants to account for such monies.  Such monies should then be returned to persons

who paid these Defendants' illegal fees and expenses.

## XII
## REQUEST FOR EXPEDITED DISCOVERY

Because of the Defendants' activities and Plaintiff's request for injunction relief, including

a temporary injunction, which requires certain hearings within a limited time frame, Plaintiff

PLAINTIFF'S ORIGINAL PETITION – PAGE 8

requests that the Court shorten time for discovery, giving each side five (5) days to respond to all written discovery, five (5) days for deposition on written questions, and oral depositions on three (3) days notice. UPLC hereby requests that the Court immediately order the depositions of Celis, Pinedo, Gwyther, and Hada and order these Defendants to produce immediately all financial records including bank account records, income tax returns, and any settlement statements of CGT signed by CGT "clients".

WHEREFORE, PREMISES CONSIDERED, UPLC prays the Defendants be cited to appear and answer herein as requested by law and that, upon final hearing thereof:

(1)    UPLC have judgment of and from the Defendants as hereinabove prayed for;

(2)    the Court grant UPLC a Temporary Restraining Order;

(3)    the Court grant UPLC a Permanent and/or Temporary Injunction;

(4)    costs of court; and

(5)    such other and further relief, whether regular or special, in law or in equity, as UPLC shows itself to be justly entitled.

Respectfully submitted,

LAW OFFICE OF MARK A. TICER

By: _____
Mark A. Ticer
State Bar #20018900
3300 Oak Lawn Ave., Suite 700
Dallas, Texas 75219
(214) 219-4220
(214) 219-4220 (FAX)

ATTORNEY FOR PLAINTIFF

PLAINTIFF'S ORIGINAL PETITION – PAGE 9

11/29/2007 15:10 FAX  2142194218          TICER/FELL LAW                    ☑012/012

CAUSE NO. _____

| UNAUTHORIZED PRACTICE OF | § | IN THE DISTRICT COURT |
| LAW COMMITTEE | § | |
|    Plaintiff | § | |
| | § | |
| v. | § | OF NEUCES COUNTY, TEXAS |
| | § | |
| MAURICIO R. CELIS, CGT LAW GROUP | § | |
| INTERNATIONAL, LLP, T. CHRISTOPHER | § | |
| PINEDO, JAMES H. HADA, DOUGLAS | § | |
| RAY GWYTHER, JR., THOMAS | § | |
| GUAJARDO, AND VANCE OWEN | § | _____ JUDICIAL DISTRICT |

## VERIFICATION

| | § | |
| | § | |
| | § | |

BEFORE ME, the undersigned authority, on this day personally appeared Mark A. Ticer,

who, after being duly sworn, stated under oath that he is the attorney for Plaintiff in this action

and that he has read the above Plaintiff's Original Petition; and that every statement contained in

the Plaintiff's Original Petition is within his personal knowledge and is true and correct, or

alternatively, is based on information and belief.

_____
Mark A. Ticer

SUBSCRIBED AND SWORN TO BEFORE ME by the said Affiant this ____ day

of _____, 2007.

VERIFICATION = PLAINTIFF'S ORIGINAL ANSWER - Solo

NOV 29 2007 15:19                                          2142194218        PAGE.12

EXHIBIT 8

EXHIBIT 8

# EXHIBIT 8

EXHIBIT 8

EXHIBIT 8

220317.1

NO. D-1-GN-07-002272

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| CGT LAW GROUP INTERNATIONAL, | § | |
| L.L.P., and MAURICIO R. CELIS, | § | 419th JUDICIAL DISTRICT |
| Defendants | § | |

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND ASSET FREEZE, TEMPORARY INJUNCTION AND PERMANENT INJUNCTION**

TO THE HONORABLE JUDGE OF THIS COURT:

The State of Texas, acting through Texas Attorney General Greg Abbott (the "Attorney General"), on behalf of the State of Texas, complains of CGT Law Group International, L.L.P., and Mauricio Rodriguez Celis ("Defendants"), and for cause of action would show the Court as follows:

**DISCOVERY CONTROL PLAN**

1. Discovery shall be conducted under Level 2 of rule 190.3 of the Texas Rules of Civil Procedure.

**AUTHORITY**

2. The Attorney General sues in the name of the State of Texas under the authority granted by §9.051 (a) (2) of the TEX. BUS. ORG. CODE, whereby the Attorney General is authorized to apply to enjoin a foreign limited liability partnership or its agent from transacting business in Texas if the entity's registration is obtained on the basis of a false or misleading representation. Additionally, the Attorney General sues under §17.47 of the Texas Deceptive Trade Practices – Consumer Protection Act, TEX. BUS. & COM. CODE § 17.41 *et seq.* (West 2002, Supp. 2007) (the "DTPA"),

permitting the Attorney General to bring an action to restrain the use of any method, act or practice declared to be unlawful by TEX. BUS. & COM. CODE § 17.46, where such proceedings are in the public interest.

## DEFENDANTS

3. Defendant CGT Law Group International, L.L.P., ("CGT") is a foreign limited liability partnership registered with the Texas Secretary of State. Defendant CGT has an office in Corpus Christi, Texas and is doing business in the State of Texas. **Defendant CGT may be served with citation and process through its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.**

4. Defendant Mauricio Celis ("Celis") is an individual residing in Corpus Christi, Texas, and is doing business in the State of Texas under his own name and through the purported law firm of "CGT Law Group International." Defendant Celis is the "Capital Partner" of CGT, and therefore is an agent of the partnership. **Defendant Celis may be served with citation and process at his place of business at 500 North Water Street, Corpus Christi, Texas, or at his place of residence at 5938 Oso Parkway, Corpus Christi, Texas.**

## VENUE

5. Venue of this suit is proper in Travis County, Texas, under §9.053 of the TEX. BUS. ORG. CODE, which provides that a suit under §9.051 of the TEX. BUS. ORG. CODE may be brought in Travis County. Further, pursuant to TEX. BUS. & COM. CODE § 17.47 (b), venue lies in Travis County because events giving rise to this action occurred in Travis County and/or because Defendants have done business in Travis County.

## PUBLIC INTEREST FOR DTPA ACTION

6. The Attorney General has reason to believe that the Defendants have engaged and will continue to engage in the unlawful practices set forth below. Accordingly, there is reason to believe that Defendants have caused and will continue to cause immediate and irreparable injury, loss and damage to the State of Texas and to the public, and will also cause adverse effects to legitimate business enterprises which lawfully conduct trade and commerce in the State of Texas.

## TRADE AND COMMERCE

7. Defendants have, at all times described herein, engaged in conduct constituting "trade" and "commerce," as those terms are defined in §17.45(6) of the DTPA.

## NOTICE BEFORE DTPA SUIT NOT GIVEN

8. There is good cause to believe that Defendants would evade service of process, destroy relevant records, and secrete assets if prior notice of this suit were given. Additionally, there is good cause to believe that immediate and irreparable injury, loss, or damage would occur as a result of a delay in seeking injunctive relief enjoining Defendants from continued violations of the DTPA. Namely, they will continue to engage in the unauthorized practice of law and thereby cause immediate and irreparable injury, loss, or damage to persons who receive their services. Specifically, Defendants will continue to solicit customers, give legal services and/or advice to those consumers, and accept fees for those services when they are either not licensed to practice law in the State of Texas or are prohibited from doing so by Texas law. Accordingly, as authorized by § 17.47(a) of the DTPA, the Attorney General has filed this lawsuit without notice to Defendants.

## FACTUAL ALLEGATIONS

9. Defendant CGT is a foreign limited liability partnership that was formed under the laws of District of Columbia Uniform Partnership Act on or about November 1, 2005. On December 15, 2005, CGT filed for registration with the Texas Secretary of State to transact business in the State of Texas. CGT's application for registration stated that the partnership engages in the "provision of legal services."

10. The CGT partnership agreement states that the partners therein have associated together for the purpose of engaging in "multi-jurisdictional general practice of law." Defendant Mauricio Celis is a founding partner of the purported law firm CGT Law Group International, L.L.P., and is named as the 100% "Capital Partner." However, Celis is not licensed to practice law in any jurisdiction in the United States. Moreover, the partnership agreement states that "[a]ll opportunities for legal representation that arise or are presented to a Partner shall be presented to the Capital Partner for acceptance or consideration." The agreement further provides that "no Partner may participate in any legal matter, opportunity, case or referral fee for compensation without the written consent of the Capital Partner," namely Celis.

11. The CGT partnership agreement further provides that the partnership "will engage in the business of practicing law, and certain of its income will be generated directly from receipts or collections from the settlement, referral, forwarding, or judgments rendered in litigation matters or cases in which the Partnership or any of its Partners have an interest." The partnership agreement also states that the partnership "will distribute net profits to the Capital Partner [Celis] at the time and in the amounts determined by the Capital Partner."

12. CGT violates Texas law by permitting a non-lawyer, Celis, to share legal fees that are

paid to CGT. Additionally, CGT and Celis have referred legal matters to other attorneys in Texas, who in turn have paid referral fees to CGT and Celis. These referral fees have been shared with Celis, which is unlawful.

13. Defendant Celis has represented to the public that he is an attorney or is otherwise authorized to practice law in Texas. Further, Celis solicits prospective clients for legal services and refers clients and prospective clients to other lawyers and law firms. These activities constitute the unauthorized practice of law.

14. The name CGT Law Group International, L.L.P., is not named after any individual persons, and therefore is an unlawful trade name for a purported "law firm."

### ACTION FOR VIOLATION OF BUSINESS ORGANIZATIONS CODE

15. In its application for registration to do business in Texas, CGT stated that the partnership engages in the "provision of legal services." Because CGT was not and has not ever been authorized to engage in the practice of law in Texas, CGT's registration was obtained on the basis of a false or misleading representation. Accordingly, the Attorney General hereby sues to enjoin CGT from transacting business in the State of Texas. Likewise, the Attorney General sues to enjoin defendant Celis, as an agent of CGT, from purporting to engage in the practice of law.

### ACTION FOR VIOLATIONS OF THE DTPA

16. The State of Texas and the Attorney General have reason to believe that Defendants, in the course and conduct of trade and commerce, have engaged in and will continue to engage in false, misleading, and deceptive acts and practices unless enjoined by this Court from doing so. Specifically, Defendants have directly and indirectly engaged in the following false, misleading and deceptive acts and practices declared to be unlawful by the DTPA:

A.  advertising, offering or providing a service that constitutes the unauthorized practice of law, and therefore engaging in an act or practice that is false, misleading, or deceptive, in violation of §17.46(a) of the DTPA;

B.  causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of services, in violation of § 17.46(b)(2) of the DTPA, by representing that Defendants' services possess the certification or qualifications necessary to provide legal services to Texas consumers and to refer clients to other lawyers and law firms in exchange for referral fees;

C.  causing confusion or misunderstanding as to affiliation, connection, or association with another in violation of § 17.46(b)(3) of the DTPA, by falsely representing that Defendants may provide legal services to Texas consumers and to refer clients to other lawyers and law firms in exchange for referral fees;

D.  representing that services have sponsorship, approval, or characteristics which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not have, in violation of § 17.46(b)(5) of the DTPA, by falsely representing that Defendants possess the certification or qualifications necessary to provide legal services to Texas consumers and to refer clients to other lawyers and law firms in exchange for referral fees;

E.  representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, in violation of § 17.46(b)(12) of the DTPA, by representing to consumers that Defendants are authorized to provide legal services to Texas consumers, when Defendants are prohibited by law from doing so;

F.  representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, in violation of § 17.46(b)(12), by

representing that Defendants may refer clients to other lawyers and law firms in exchange for referral fees, when Defendants are prohibited by law from doing so;

G. failing to disclose information concerning services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, in violation of § 17.46(b)(24), by failing to disclose to consumers that Defendants are not licensed or permitted to provide legal services to Texas consumers, with the intention of inducing consumers into transactions which they would not have entered into had this information been disclosed; and

H. failing to disclose information concerning services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, in violation of § 17.46(b)(24), by failing to disclose to consumers that Defendants are not licensed or permitted to refer clients to other lawyers and law firms in exchange for referral fees, with the intention of inducing consumers into transactions which they would not have entered into had this information been disclosed.

17. By means of the foregoing unlawful acts and practices, Defendants have acquired money or other property from identifiable persons to whom such money or property should be restored.

## INJURY TO CONSUMERS

18. Defendants have, by means of unlawful acts and practices, obtained money or other property from identifiable persons to whom such money or property should be restored.

## DISGORGEMENT

19. The Defendants' assets are subject to the equitable remedy of disgorgement, which is the forced relinquishment of all benefits that would be unjust for Defendants to retain, including all ill-gotten gains and benefits or profits that result from Defendants putting fraudulently converted property to a profitable use. Defendants should be ordered to disgorge all monies fraudulently taken from individuals and businesses together with all of the proceeds, profits, income, interest and accessions thereto. Such disgorgement should be for the benefit of victimized consumers and the State of Texas.

## CONSTRUCTIVE TRUST

20. A constructive trust should be placed upon all of Defendants' assets in favor of all consumers victimized by Defendants and in favor of the State of Texas until this Court determines the appropriate amount of restitution and disgorgement.

## REPATRIATION OF ASSETS

21. After due notice and a hearing, the court should order that all of Defendants' assets situated outside the jurisdiction of this Court be deposited or repatriated into an appropriate financial institution within the jurisdiction of this Court.

## TRIAL BY JURY

22. Plaintiff herein requests a jury trial pursuant to TEX. R. CIV. P. 216.

## APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION AND PERMANENT INJUNCTION

23. Defendants' unlawful conduct has caused and will continue to cause immediate and irreparable injury, loss and damage to the State of Texas and to the public. Defendants have taken

in large sums of money from consumers in the form of "legal fees" or "attorney's fees." Defendants'

assets are subject to dissipation and secretion and therefore should be frozen pending final trial so

restitution can be made and full and final relief can be awarded at final trial. Accordingly, Plaintiff

requests immediate relief by way of a Temporary Restraining Order and Temporary Injunction to

preserve and protect Defendants' assets from dissipation so that consumers from whom Defendants

illegally took legal fees can receive the restitution to which they are entitled.

  24. In addition, the State brings this action for a temporary restraining order under authority

granted by TEX. BUS. & COM. CODE ANN. § 17.47(a), which states:

> Whenever the consumer protection division has reason to believe that any person is
> engaging in, has engaged in, or is about to engage in any act or practice declared to
> be unlawful by this subchapter, and that the proceedings would be in the public
> interest, the division may bring an action in the name of the state against the person
> to restrain by temporary restraining order, temporary injunction, or permanent
> injunction the use of such method, act or practice.

Accordingly, because the State has shown that the Defendants are engaging in, have engaged in, or

are about to engage in a deceptive trade practice, and that this action is in the public's interest, the

Plaintiff requests immediate relief by way of a Temporary Restraining Order and Temporary

Injunction to enjoin the Defendants from such conduct.

  25. In support of this request for injunctive relief, the State relies upon the attached affidavit

of Mary K. Vinson, and the documents attached thereto. (State's Exhibit 1)

### REQUEST TO CONDUCT DISCOVERY PRIOR TO
### TEMPORARY INJUNCTION HEARING

  26. Plaintiff requests leave of this Court to conduct telephonic, oral, written and other

depositions (containing requests for production) of witnesses prior to any scheduled temporary

injunction hearing and prior to Defendants' answer date. There are a number of consumers and other

witnesses who may need to be deposed prior to any scheduled temporary injunction hearing. Any depositions, telephonic or otherwise, would be conducted with reasonable, shortened notice to Defendants and their attorneys, if known.

### PRAYER

WHEREFORE, because Defendants have engaged in the unlawful acts and practices described above, the Plaintiff prays that Defendants be cited to appear and answer herein, and for the following relief:

A. for civil penalties of $20,000.00 per violation to the State of Texas for violations of the DTPA;

B. for restitution or restoration of all money or other property taken from identifiable persons by means of unlawful acts or practices;

C. for an order from this Court to adjudge that all fines, penalties or forfeitures payable to and for the benefit of the State are not dischargeable under bankruptcy pursuant to 11 U.S.C. §523(a)(7);

D. for attorneys' fees and costs pursuant to TEX. GOV'T CODE ANN. §402.006(c);

E. for pre-judgment interest on all awards of restitution, damages, and civil penalties as provided by law;

F. for an order mandating that Defendants' assets be repatriated into the jurisdiction of this court, that Defendants' assets be subject to disgorgement, and that an equitable lien be placed upon Defendants' property for the benefit of consumer victims;

G. for injunctive relief prohibiting Defendants, Defendants' successors, assigns, officers, agents, servants, employees and attorneys and any other person in active concert or

participation with Defendants from engaging in the following acts or practices:

1. transferring, concealing, withholding, destroying, mutilating, altering, falsifying, or removing from the jurisdiction of this Court any books, records, documents, invoices, or other written materials relating to Defendants' business which are in Defendants' possession, custody, or control, except in response to further orders or subpoenas in this cause;

2. transferring, hypothecating, concealing, encumbering, depleting, modifying, dissipating, or removing from the jurisdiction of this Court any money, stocks, bonds, assets, notes, equipment, funds, accounts receivable, policies of insurance, trust agreements, or other property, real, personal or mixed, wherever situated, belonging to or owned by, in possession of, or claimed by Defendants;

3. giving, providing, or offering advice and counsel to any person legal counsel, until such time as Defendants either become attorneys licensed to practice in the State of Texas, and/or are in compliance with the Texas Disciplinary Rules of Professional Conduct;

4. falsely representing to any person, expressly or by implication, that Defendants can or will provide Texas consumers with legal services;

5. falsely representing that Defendants Celis and CGT may lawfully refer clients to other lawyers and law firms in exchange for referral fees;

6. soliciting, accepting, or contracting with Texas consumers for any type of legal services to consumers, until such time as Defendants are in compliance with the Texas Disciplinary Rules of Professional Conduct;

7. referring clients or prospective clients to other attorneys and law firms in exchange for referrals fees of any kind;

8. advertising legal services of any kind via the internet, radio, TV, electronic broadcast or print (i.e., newspapers, magazines, pamphlets, fliers, etc.) until Defendants have been licensed to practice in the State of Texas, and are in compliance with the Texas Disciplinary Rules of Professional Conduct;

9. failing to disclose to consumers that Defendants are not licensed or permitted to provide legal services to Texas consumers, with the intention of inducing consumers into transactions which they would not have entered into had this information been disclosed;

10. failing to disclose to consumers that Defendants are not licensed or permitted to refer clients to other lawyers and law firms in exchange for referral fees, with the intention of inducing consumers into transactions which they would not have entered into had this information been disclosed; and

H. for any other relief to which the State may be justly entitled under the law.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

JEFF L. ROSE
Deputy First Assistant Attorney General

PAUL D. CARMONA
Chief, Consumer Protection and
Public Health Division
State Bar No. 03824020
Post Office Box 12548
Austin, Texas 78711-2548
(512) 936-1479 (telephone)
(512) 473-8301 (facsimile)

MARY T. HENDERSON
Deputy Chief, Consumer Protection and
Public Health Division
State Bar No. 19713750
Post Office Box 12548
Austin, Texas 78711-2548
(512) 475-4185 (telephone)
(512) 473-8301 (facsimile)

PHILLIP LEDBETTER
Assistant Attorney General
State Bar No. 24041316
Post Office Box 12548
Austin, Texas 78711-2548
(512) 936-1666 (telephone)
(512) 473-8301 (facsimile)

**ATTORNEYS FOR STATE OF TEXAS**

NO. D-1-GV-07-002272

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| CGT LAW GROUP INTERNATIONAL, | § | |
| L.L.P., and MAURICIO R. CELIS, | § | |
| Defendants. | § | 419th JUDICIAL DISTRICT |

**PLAINTIFF'S FIRST AMENDED EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER AND FOR EXPEDITED DISCOVERY**

TO THE HONORABLE JUDGE OF THIS COURT:

The State of Texas, acting through Texas Attorney General Greg Abbott, files this First

Amended Emergency Motion for Temporary Restraining Order and for Expedited Discovery,

complaining of CGT Law Group International, L.L.P., and Mauricio Rodriguez Celis ("Defendants"),

and seeks the entry of a Temporary Restraining Order and Order for Expedited Discovery as set forth

below:

## I. RESTRAINING ORDER IS REQUIRED TO
## PROTECT THE PUBLIC FROM DECEPTIVE PRACTICES

1.     The State of Texas asks this Court to restrain Defendants from the illegal acts of

practicing law without a license.

2.     Defendant Celis has fraudulently solicited clients in personal injury cases, referring

many of these cases for a fee, and has personally profited from these cases even though he is not

licensed to practice law in Texas or anywhere else in the United States.  Accordingly, CGT has

operated illegally by allowing Celis, a non-lawyer, to share legal fees.

3.     Due to the deceptive trade practices and unauthorized legal practice of Defendants,

consumers in Texas have been deceived and bilked out of hundreds of thousands, and possibly

OCT 26 2007 16:43                          512 320 0677         PAGE.02

millions, of dollars. Consumers who turned to Defendants for legal help were induced to pay legal fees or referral fees that Defendants had no legal authority to collect. To the extent Defendant Celis provided purported legal advice and counsel, people who needed a lawyer's help were tricked into taking advice from a non-lawyer. The consumers of Texas need an Order from this Court prohibiting these Defendants from engaging in any further misrepresentations and deceptive practices, and preserving documents and records that will allow improper fees to be refunded to the consumers from whom they were extracted.

4.    Pursuant to this statutory Deceptive Trade Practices Act ("DTPA") cause of action, the State is not required to show imminent risk of irreparable harm in order to secure injunctive relief. *David Jason West, et al. v. State of Texas*, 212.S.W.3d 513, 519 (Tex. App.-Austin 2006). There is, however, reason to believe that Defendants have caused and will continue to cause irreparable injury, loss and damage to the citizens of the State of Texas, and will also cause adverse effects to legitimate business enterprises which lawfully conduct trade and commerce in the State of Texas.

## II. STATUTORY AUTHORITY

5.    This request for a temporary restraining order is filed pursuant to the provisions of the DTPA, and in the interest of protecting consumers from a continuing pattern of illegal and deceptive practices by Defendants. The Attorney General's Office brought this suit, in part, under §17.47 of the Texas Deceptive Trade Practices – Consumer Protection Act, TEX. BUS. & COM. CODE §17.41, *et seq.* (West 2002, Supp. 2007) (the "DTPA"), permitting the Attorney General's Office to bring an action to restrain the use of any method, act or practice declared to be unlawful by TEX. BUS. & COM. CODE §17.46, where such proceedings are in the public interest.

## III. TRADE AND COMMERCE

6.    Defendants have, at all times described herein, engaged in conduct constituting "trade" and "commerce," as those terms are defined in §17.45(6) of the DTPA. They have provided legal services, or participated in or facilitated the provision of legal services.

## IV. FACTUAL ALLEGATIONS IN SUPPORT OF TRO

7.    Defendant CGT is a foreign limited liability partnership that was allegedly formed under the laws of District of Columbia Uniform Partnership Act on or about November 1, 2005. On December 15, 2005, CGT filed for registration with the Texas Secretary of State to transact business in the State of Texas. CGT's application for registration stated that the partnership engages in the "provision of legal services."

8.    The CGT partnership agreement states that the partners therein have associated together for the purpose of engaging in "multi-jurisdictional general practice of law." However, **even though Defendant Mauricio Celis is not licensed to practice law in any jurisdiction in the United States, he is named as the only "Capital Partner" and is given sole responsibility for directing the firm's activities.** The partnership agreement states that "[a]ll opportunities for legal representation that arise or are presented to a Partner shall be presented to the Capital Partner for acceptance or consideration." The agreement further provides that "no Partner may participate in any legal matter, opportunity, case or referral fee for compensation without the written consent of the Capital Partner," namely Celis.

9.    The CGT partnership agreement further provides that the partnership "will engage in the business of practicing law, and certain of its income will be generated directly from receipts or collections from the settlement, referral, forwarding, or judgments rendered in litigation matters or cases in which the Partnership or any of its Partners have an interest." **The partnership**

agreement also states that the partnership "will distribute net profits to the Capital Partner [Celis] at the time and in the amounts determined by the Capital Partner." Aside from small percentages given to the "Income Partners," all legal fees collected by CGT belong to Celis as Capital Partner.

10.    CGT violates Texas law by permitting a non-lawyer, Celis, to share legal fees that are paid to CGT. Additionally, CGT and Celis have referred legal matters to other attorneys in Texas, who in turn have paid referral fees to CGT and Celis. These referral fees have been shared with Celis, which is unlawful.

11.    Defendant Celis has represented to the public that he is an attorney or is otherwise authorized to practice law in Texas. Further, Celis solicits prospective clients for legal services and refers clients and prospective clients to other lawyers and law firms. These activities constitute the unauthorized practice of law.

12.    According to Celis' sworn testimony in other legal proceedings, the name CGT Law Group International, L.L.P., is not named after any individual persons, and therefore is an unlawful trade name under Texas law for a purported "law firm." This group is illegally operating in Texas, in violation of Texas law and in violation of the Texas Rules of Professional Conduct and relevant case law. (See Tex. Gov't Code §81.101, Tex. Discip. Rules of Prof. Conduct §7.01(a); Garcia v. Commission for Lawyer Discipline, 2007 WL 2141246 (Tex.App. - Austin 2007)(lawyer Garcia who provided legal services to third parties under the name Cristo Vive violated the prohibition against practicing under a trade name in Texas).

13.    Accordingly, the Attorney General's Office seeks to restrain and enjoin Defendant Celis, either independently or as an agent of CGT, from purporting to engage in the practice of law. The Office of the Attorney General seeks to immediately restrain and enjoin CGT and Celis from

PLAINTIFF'S FIRST AMENDED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
AND FOR EXPEDITED DISCOVERY                                                                 Page 4

deceiving consumers by representing in any way that Celis is authorized to practice law in the state of Texas. Also, the Office of the Attorney General seeks an Order protecting and preserving all documents and records that could assist in identifying improper legal and referral fees and the consumers to whom they might be returned.

14.    Accordingly, because the State has shown that the Defendants are engaging in, have engaged in, or are about to engage in a deceptive trade practice, and that this action is in the public's interest, the Plaintiff requests immediate relief by way of a Temporary Restraining Order to restrain and enjoin the Defendants from such conduct.

15.    In support of this request for injunctive relief, the State relies upon the Affidavit of Mary K. Vinson, attached to the State's Original Petition, and the documents attached thereto. (State's Exhibit 1).

## V. MOTION FOR EXPEDITED DISCOVERY PRIOR TO TEMPORARY INJUNCTION HEARING

16.    Plaintiff requests leave of this Court to conduct telephonic, oral, written and other depositions (containing requests for production) of witnesses prior to any scheduled temporary injunction hearing and prior to Defendants' answer date. There are a number of consumers and other witnesses who may need to be deposed prior to any scheduled temporary injunction hearing. Any depositions, telephonic or otherwise, would be conducted with reasonable, shortened notice to Defendants and their attorneys, if known.

## PRAYER

WHEREFORE, Plaintiff prays that this Court immediately enter a Temporary Restraining Order, and for such other relief to which the State may be justly entitled under the law.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

JEFF L. ROSE
Deputy First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil Litigation

ROBERT O'KEEFE
Chief, General Litigation Division

PAUL D. CARMONA
Chief, Consumer Protection and
Public-Health Division

JAMES "BEAU" ECCLES
Texas Bar No. 00793668
ROBERT JOHNSON
Texas Bar No. 10786400
JOHN S. LANGLEY
Texas Bar No. 11919250
Assistant Attorneys General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Phone No. (512) 463-2120
Fax No. (512) 320-0667

**ATTORNEYS FOR STATE OF TEXAS**

OCT 25 2007 16:49                    512 320 0677        PAGE.07

10/26/2007  16:48    512 320 0677

## CERTIFICATE OF CONFERENCE

On October 24th, 2007, the State presented its Original Ex Parte Application. Following a brief hearing in which counsel for Defendants complained of insufficient notice, the State withdrew its Ex Parte Application. After extensive efforts to confer, in which counsel for Defendants would not agree to any Order at all, Plaintiff now submits this amended request after giving full notice to Defendants, incorporating the prior filing and Plaintiff's Original Petition by reference as if fully set forth.

ROBERT F. JOHNSON III
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, Robert F. Johnson III, hereby certify that a true and correct copy of the foregoing First Amended Emergency Motion for Temporary Restraining Order and for Expedited Discovery has been served upon Defendants, CGT Law Group International, L.L.P., and Mauricio Rodriguez Celis, by and through their counsel of record Stephen E. McConnico at Scott, Douglass & McConnico, 600 Congress Ave., Ste. 1500, Austin, Texas, 78701, via facsimile to (512) 474-0731 on this 26th day of October, 2007.

ROBERT F. JOHNSON III
Assistant Attorney General

OCT 26 2007 16:50                            512 320 0677        PAGE.08

NO. D-1-GV-07-002272

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| CGT LAW GROUP INTERNATIONAL, | § | |
| L.L.P., and MAURICIO R. CELIS, | § | |
| Defendants | § | 419th JUDICIAL DISTRICT |

## TEMPORARY RESTRAINING ORDER
## AND ORDER FOR EXPEDITED DISCOVERY

On October 24, 2007, Plaintiff, the State of Texas, filed its Original Petition in this cause

seeking a Temporary Restraining Order and Temporary and Permanent Injunction against CGT Law

Group International, L.L.P., and Mauricio R. Celis ("Defendants"). After engaging in efforts to draft

an agreed Order which was rejected by Defendants, Plaintiff reurged its request for a Temporary

Restraining Order by its First Amended Emergency Motion for Temporary Restraining Order and

Motion For Expedited Discovery on October 26, 2007. The Court finds that counsel for the

Defendants was given adequate notice prior to consideration by the Court, and **did / did not** appear

to present argument.

The Court, having considered the evidence and arguments of counsel, finds that Defendants

may be violating §§17.46(a) and (b) of the Texas Deceptive Trade Practices-Consumer Protection

Act, TEX. BUS. & COM. CODE §§17.41 *et. seq.* (DTPA). Further, the Court finds that under this

statutory DTPA cause of action, the State is not required to show imminent risk of irreparable harm

in order to secure injunctive relief. *David Jason West, et al. v. State of Texas*, 212 S.W.3d 513, 519

(Tex. App.–Austin 2006.) This Court nevertheless finds that Defendants' unlawful conduct has

caused and will continue to cause immediate and irreparable injury, loss and damage to the citizens

Page 1

of the State of Texas.

## FACTUAL FINDINGS

It appears to the Court's satisfaction from facts set forth in the Plaintiff's Original Petition and the exhibits and sworn affidavits attached to the original and amended requests for a restraining order, that:

1. Defendant Celis is not licensed to practice law in the State of Texas;

2. On multiple occasions, Defendants have identified Celis as an attorney in documents, stationary, business cards, websites, and other materials distributed in the State of Texas;

3. Defendants have, and unless enjoined will continue to, solicit consumers seeking legal services to enter into contracts wherein Defendants are entitled to a share of legal fees or a referral fee for cases referred to other attorneys, thus harming consumers in the state of Texas;

4. Defendants have, and unless enjoined will continue to, solicit consumers seeking legal services to enter into contracts wherein Defendants are entitled to legal fees for legal services provided by Defendants, thus harming consumers in the state of Texas;

5. By its terms, CGT Law Group International, LLP is a "partnership" in which Celis is the only capital partner entitled to direct the activities of the "partnership" and distribute the legal fees and other funds paid to CGT;

6. Defendant Celis has received, and unless enjoined will continue to receive, referral and other legal fees, even though he is not a licensed attorney;

Unless Defendants are immediately restrained from the prohibited acts described above, Defendants will continue to commit such acts before a hearing can be held on the State of Texas' request for a

Page 2

Temporary Injunction. Furthermore, Defendants will continue to use deceptive tactics and misrepresentations before a Temporary Injunction hearing can be held and a final judgment for restitution can be rendered. Such injury would be irreparable because continued violations of the DTPA may well cause more consumers to lose money through deceptive transactions and injure legitimate, licenced attorneys throughout the state of Texas.

## TEMPORARY RESTRAINING ORDER

1.    IT IS THEREFORE ORDERED that Defendants CGT Law Group International, L.L.P., and Mauricio R. Celis, and their officers, agents, servants, employees, attorneys and any other persons in active concert or participation with them, who receive actual notice of this order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other devise, shall be restrained from engaging in the following acts or practices:

    A. Identifying Defendant Celis as an "attorney" or "lawyer" in any document, communication or advertising;

    B. Representing to any person, expressly or by implication, that Defendant Celis can or will provide consumers with legal services in the State of Texas;

    C. Representing that Defendants CGT and Celis may lawfully refer clients to other lawyers and law firms in exchange for referral fees, if any portion of the referral fee is to be shared, either directly or indirectly, with a non-lawyer;

    D. Advertising legal services of any kind via the internet, radio, TV, electronic broadcast or print (i.e., newspapers, magazines, pamphlets, fliers, etc.) until Defendants are in compliance with the Texas Disciplinary Rules of Professional Conduct – in particular those regarding law firm names and sharing of fees with non-attorneys;

Page 3

E. Failing to disclose to consumers that Defendant Celis is not licensed or permitted to provide legal services to consumers in the State of Texas;

F. Failing to disclose to consumers that Defendant Celis is not licensed or permitted to refer clients to other lawyers and law firms in exchange for referral fees; and

G. Transferring, concealing, destroying, or removing from the State of Texas any books, records, documents, invoices, or other written or electronically-stored information relating to the business of Defendants currently or hereafter in Defendants' possession, custody or control except in response to further orders or subpoenas in this cause

2.    IT IS FURTHER ORDERED that Defendant Mauricio R. Celis, whether acting directly or indirectly, shall be restrained from engaging in the unauthorized practice of law, including but not limited to the following acts or practices:

1. Giving, providing, or offering legal advice and counsel in the State of Texas to any person, until such time as Defendant Celis becomes licensed to practice in the State of Texas;

2. Soliciting, accepting, or contracting in the State of Texas to provide any type of legal services to consumers, or to receive a share of legal fees in exchange for referring the case to a licensed attorney, until such time as Defendant Celis is in compliance with the Texas Disciplinary Rules of Professional Conduct; or

3. Referring clients or prospective clients to other attorneys and law firms in exchange for referral fees of any kind; or

4. Directly or indirectly receiving any legal fee or referral fee, or withdrawing from Defendant CGT any funds that were originally received as legal or referral fees.

Page 4

3.    IT IS FURTHER ORDERED that within five (5) business days following service of this Order, Defendants CGT Law Group International, L.L.P., and Mauricio R. Celis shall:

    A.  Provide the Office of the Attorney General with a full, complete and accurate accounting of all funds, documents, and assets located within or outside the State of Texas, including the balance of any bank accounts, held: (1) by either Defendant; or (2) under their direct control, jointly or singly; and

    B.  Provide the Office of the Attorney General access to Defendants' records and documents held by financial institutions located within or outside of the State of Texas.

4.    IT IS FURTHER ORDERED that any financial or brokerage institution, escrow agent, title company, storage facility, commodity trade company, business entity or person maintaining or having custody or control of any account or other assets of either Defendant which receives actual notice of this Order by personal service or otherwise, shall within five (5) business days of the date of service of this Order, provide to counsel for the Plaintiff and Defendant or account holder a statement or letter setting forth:

    A.  The identification of each account or asset titled in the name, individually or jointly, of Defendants, or held on behalf of, or for the benefit of, Defendants;

    B.  The balance of each such account, or a description and appraisal of the value of such assets, as of the close of business on the day on which the Order is served, and if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other assets were remitted; and

    C.  The identification of any safe deposit box or storage facility that is either titled in the

name individually or jointly, of Defendants, or is otherwise subject to access or control by Defendants.

5.     IT IS FURTHER ORDERED that the Plaintiff shall be granted leave to take telephonic, video, written, and other depositions which may contain requests for production prior to any scheduled temporary injunction hearing and prior to Defendants' answer date.     Reasonable shortened notice shall be provided to the Defendants and their attorneys.

6.     IT IS FURTHER ORDERED that Defendants in this cause be and hereby are commanded forthwith to comply with this Order from the date of entry until and to the fourteenth (14) day after entry or until further order of this Court, whichever is less.

The Clerk of the above-entitled Court shall forthwith issue a Temporary Restraining Order in conformity with the law and the terms of this Order. This Order shall be effective without the execution and filing of a bond as Plaintiff, State of Texas is exempt from such bond under TEX. BUS. & COM. CODE ANN. §17.47(b).

Hearing on the State of Texas' Application for a Temporary Injunction is hereby set for the ____ day of _____, 2007, at _____ o'clock ___. M.

SIGNED this _____ day of _____, 2007 at _____ o'clock.____ m.

_____
JUDGE PRESIDING

Page 6

OCT 26 2007 15:50                                512 320 0677      PAGE.14

EXHIBIT 9                                    EXHIBIT 9

# EXHIBIT 9

EXHIBIT 9                                    EXHIBIT 9

220317.1

1

```
 1                    REPORTER'S RECORD
 2            TRIAL COURT CAUSE NO. 6349
 3  GONZALEZ & ASSOCIATES LAW      )IN THE DISTRICT COURT
    FIRM, P.C. AND PRISCILLA DE LOS)
 4  SANTOS                         )
                                   )
 5          VS.                    )ZAPATA COUNTY, TEXAS
                                   )
 6  CHRIS PINEDO, MAURICIO CELIS,  )
    CGT LAW GROUP                  )
 7  INTERNATIONAL, LLP, AND OWEN & )
    ASSOCIATES, LLP, SUCCESSOR-IN- )
 8  INTEREST TO VANCE OWEN D/B/A   )
    VANCE OWEN & ASSOCIATES        )49TH JUDICIAL DISTRICT
 9

10
         * * * * * * * * * * * * * * * * * *
11          STATUS CONFERENCE AND PLAINTIFF'S
         MOTION TO COMPEL DEFENDANT'S RESPONSE
12            TO DISCOVERY AND FOR SANCTIONS
         * * * * * * * * * * * * * * * * * *
13

14

15              On the 30th day of May 2007, the Hearing

16  on Status Conference and Plaintiff's Motion to Compel

17  Defendant's Response to Discovery and for Sanctions

18  Hearing came on to be heard outside the presence of a

19  jury, in the above-entitled and numbered cause; and

20  the following proceedings were had before the

21  Honorable Gus Strauss, Judge presiding, held in

22  Zapata, Zapata County, Texas:

23

24              Proceedings reported by COMPUTERIZED

25  STENOTYPE MACHINE.
```

COPY

1    get it out, and we'll deal with that.

2                    But we're certainly entitled to the

3    discovery because CGT Law Firm is the one claiming a

4    certain claim against us to recover millions of

5    dollars in legal fees out of my client, yet they don't

6    want us to do any discovery so he can either prove or

7    disprove that they are, in fact -- that they, in fact,

8    have a legal right to even assert a claim in the first

9    place, or whether they are committing a felony before

10   this Court.

11                   THE COURT:  All right.  So what do we

12   need to go -- where do we need to go next?  You-all

13   talk about evidence, talk about further argument, talk

14   about --

15                   MR. THOMAS:  We call Mauricio Celis to

16   the stand.

17                   THE COURT:  All right.  Mr. Celis,

18   before you sit down, if I can ask you to raise your

19   right hand, please.

20                   MAURICIO CELIS,

21   having been first duly sworn, testified as follows:

22                   DIRECT EXAMINATION

23   BY MR. THOMAS:

24        Q.   State your name, please.

25        A.   Mauricio R. Celis.

1    recognize that?

2        A.   Yes, I do.

3        Q.   And this is sort of a bio on you?

4        A.   That is correct.

5        Q.   And here you claim that you are a licensed

6    attorney in Mexico, yet you do not have a cedula; is

7    that correct?

8        A.   That is correct, sir.

9        Q.   All right.  You don't list on here what

10   university you attended, do you?

11       A.   No, I don't, sir.

12       Q.   By the way, what is the law school that you

13   claim that you attended --

14       A.   Universidad Regio Montana.

15       Q.   -- to obtain your law degree?

16       A.   Universidad Regio Montana.  Universidad Regio

17   Montana, Monterrey, Nuevo Leon.

18       Q.   Universidad Autonoma?

19       A.   No.  Regio Montana, Regio Montana.

20       Q.   Regional mountain?

21       A.   You can translate it that way.  I don't think

22   it's --

23       Q.   Regio Montana --

24       A.   Mountainous region, I guess, would be the

25   proper translation, but it's Universidad Regio

1    Montana.

2         Q.   Of Monterrey?

3         A.   Of Monterrey, yeah.

4         Q.   And the years of attendance?

5         A.   '97 to '99.  And I'm back in school right now

6    also.

7         Q.   Where?

8         A.   In the same university.

9         Q.   For what?

10        A.   For a masters.

11        Q.   When did you re-enroll?

12        A.   About a year-and-a-half ago.

13        Q.   So that would have been --

14        A.   December of 2005.

15        Q.   And you received your degree in what month of

16   '99?

17        A.   I think the fall of 1999.

18        Q.   And what is the degree that you claim you

19   received?

20        A.   Licenciado en ciencias jurídicas.  Bachelor

21   of judicial science.

22        Q.   You don't have any of your schooling

23   information on your bio, do you?

24        A.   No, I don't, sir.

25        Q.   Every other lawyer that is featured on your

135

```
1    THE STATE OF TEXAS )

2    COUNTY  OF  ZAPATA )

3                I, Leticia Murillo Escamilla, Deputy

4    Official Court Reporter in and for the 49th District

5    Court of Zapata County, Texas, do hereby certify that

6    the foregoing contains a true and correct

7    transcription of all portions of evidence and other

8    proceedings requested in writing by counsel for the

9    parties to be included in this volume of the

10   Reporter's Record, in the above-styled and numbered

11   cause, all of which occurred in open court or in

12   chambers and were reported by me.

13               I FURTHER CERTIFY that this Reporter's

14   Record of the proceedings truly and correctly reflects

15   the exhibits, if any, offered into evidence.

16               I FURTHER CERTIFY that the total cost

17   for the preparation of this Reporter's Record is

18   $639.50 and will be paid by Petitioner.

19               WITNESS MY OFFICIAL HAND this the 2nd

20   day of July 2007.

21

22   Leticia Murillo Escamilla, Texas CSR No. 4307
     Certification Expires 12/31/07
23   Deputy Court Reporter, 49th District Court
     Bexar County, Texas
24   1903 Harness Lane
     San Antonio, TX  78227  (210) 452-3516
25
```

EXHIBIT 10                              EXHIBIT 10

# EXHIBIT 10

EXHIBIT 10                              EXHIBIT 10

CGT Law Group International, L.L.P. - Attorneys at Law

Page 1 of 1



# CGT

**TOLL FREE: 1-**
**FAX 1-**

## Law Group International, LLP

**Eng**

 Washington D.C. |  Corpus Christi |  Beverly Hills | Phoenix | Mexico, D.F. | Chihuahua, MX

 ■ Attorneys ■ Referral Opportunities ■ Resources ■ News



our team

### Featured Litigation

**Catastrophic Injury and Wrongful Death resulting from;**

- General Automotive Defects
- Roof Crush
- Non-Glazed Automotive Glass
- Stability Defects/Roll Overs
- Tire Defects
- Fuel Fed Auto Fires
- Child Restraint Litigation
- Trucking Accidents
- Pharmaceutical Litigation
- Aviation Accidents
- Premises Litigation
- Workplace Injuries
- Industrial Accidents
- Refinery/Oil Field Negligence
- Fires & Explosions
- Drill Rig Accidents
- House Fires
- Maritime Accidents
- General Negligence
- House/Apartment Fires
- Nursing Home Negligence



### ■ ■ ■ Attorneys at Law

Mauricio R. Celis

Douglas R. Gwyther

Raul R. Tapia

T. Chris Pinedo

James Hobart Hada

Thomas A. Guajardo

Jose Valenzuela Hernandez

Armando Beteta

**EXHIBIT**
P 2

**Back to Home Page**

Design & Hosted by. I

5/29/2007

EXHIBIT 11

EXHIBIT 11

# EXHIBIT 11

EXHIBIT 11

EXHIBIT 11

220317.1

CGT Law Group International, L.L.P. - Mauricio R. Celis - Attorney at Law                    Page 1 of 1

# CGT
## Law Group International, LLP

**TOLL FREE: 1-**
**FAX 1-**

**Eng**



▮ Washington D.C. | ▮ Corpus Christi | ▮ Beverly Hills | ▮ Phoenix | ▮ Mexico, D.F. | ▮ Chihuahua, MX |

▮Attorneys ▮Referral Opportunities ▮Resources ▮News



our team

### Featured Litigation

**Catastrophic Injury and Wrongful Death resulting from:**

- General Automotive Defects
- Roof Crush
- Non-Glazed Automotive Glass
- Stability Defects/Roll Overs
- Tire Defects
- Fuel-Fed Auto Fires
- Child Restraint Litigation
- Trucking Accidents
- Pharmaceutical Litigation
- Aviation Accidents
- Premises Litigation
- Workplace Injuries
- Industrial Accidents
- Refinery/Oil Field Negligence
- Fires & Explosions
- Drill Rig Accidents
- House Fires
- Maritime Accidents
- General Negligence
- House/Apartment Fires
- Nursing Home Negligence

■ ■ ▮ ▮ **Mauricio R. Celis - Attorney at Law**



Download Vcard

Mauricio R. Celis was born in Mexico, raised in S holds dual U.S. and Mexican citizenship. He is a Military veteran having served with honor in the mi the U.S. Navy in the Gulf War. He has been continues to be involved with the investigation, inc accident reconstruction and pre-litigation discovery cases.

He is a licensed attorney in Mexico and is fluent and spoken Spanish. Mauricio is the founding part Law Group International L,L.P. law firm. He founde the intention of providing innocent victims le worldwide. His personal philosophy has always be wherever and whenever help is needed. He has legal practice to helping those victims involved in catastrophic injury and wrongful death been involved in many cases which have resulted significant recoveries for the Firm's cl

Mauricio's service commitment is not limited to only legal matters. He is a known hur has donated hundreds of thousands of dollars to charitable organizations such McDonald House and Driscoll Children's Hospital. In fact, he was directly responsib young boy's life by advocating the need for a heart surgery on a young boy who did n insurance. He is a Board Member of Catholic Charities and is the acting Civil Right LULAC Council Number One. He is also a member of the G.I. Forum of South Texas.

His message to all prospective clients and existing clients is this; "My staff and I will t diligently, and tirelessly on behalf of your case to ensure that justice is found for you."





EXHIBIT
P 3

**Back to Home Page**

Design & Hosted by: I

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| EVANSTON INSURANCE COMPANY | CGT LAW GROUP INTERNATIONAL LLP, MAURICIO CELIS, T. CHRISTOPHER PINEDO, DOUGLAS RAY GWYTHER, RAUL TAPIA, JAMES H. HADA, THOMAS GUAJARDO |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Deerfield, Illinois
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)   Washington, D.C.
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
William G. Gandy, Esquire
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22102
Phone: (703) 245-9300
Fax: (703) 245-9301

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ◉ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ◉ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**     OR     ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ◎ **G.** *Habeas Corpus/ 2255* | ◎ **H.** *Employment Discrimination* | ◎ **I.** *FOIA/PRIVACY ACT* | ◎ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ◎ **K.** *Labor/ERISA (non-employment)* | ◎ **L.** *Other Civil Rights (non-employment)* | ◎ **M.** *Contract* | ◎ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☒ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ◯ 2 Removed from State Court  ◯ 3 Remanded from Appellate Court  ◯ 4 Reinstated or Reopened  ◯ 5 Transferred from another district (specify)  ◯ 6 Multi district Litigation  ◯ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Rescission of Insurance Policies

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ $75,000 +    Check YES only if demanded in complaint

JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒    NO ☐    If yes, please complete related case form.

DATE   December 14, 2007    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

    The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.