## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No: 07-02252 |
| v. | ) | (Judge Roberts) |
| | ) | |
| CGT LAW GROUP INTERNATIONAL LLP, et al. | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MOTION TO STAY

Pursuant to Rule 7(b) of the Federal Rules of Civil Procedure and Local Civil Rule 7,

Defendants CGT Law Group International LLP, Mauricio Celis ("Celis"), T. Christopher Pinedo,

Douglas Ray Gwyther, Raul Tapia, James H. Hada, and Thomas Guajardo (collectively

"Defendants") respectfully move to stay this action until criminal indictments pending against

Celis are resolved.  A memorandum of points and authorities and proposed order accompany this

Motion.

WHEREFORE, Defendants respectfully request the Court to stay the action.

Respectfully submitted,

_____/s/ Philip H. Hecht_____

Philip H. Hecht (DC Bar No. 33286)
 KIRKPATRICK & LOCKHART PRESTON
 GATES ELLIS LLP
 1601 K Street, N.W.
 Washington, D.C.  20006
 Telephone:  (202) 778-9000
 Facsimile: (202) 778-9100
 E-mail: philip.hecht@klgates.com

Counsel for Defendants CGT Law Group International
LLP, Mauricio Celis, T. Christopher Pinedo, Douglas Ray
Gwyther, Raul Tapia, James H. Hada, and Thomas
Guajardo

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EVANSTON INSURANCE COMPANY,    )
       )
Plaintiff,       )
       )     Civil Action No: 07-02252
v.       )     (Judge Roberts)
       )
CGT LAW GROUP INTERNATIONAL LLP,    )
et al.,       )
       )
     Defendants.       )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STAY

Defendants CGT Law Group International LLP ("CGT"), Mauricio Celis ("Celis"), T. Christopher Pinedo ("Pinedo"), Douglas Ray Gwyther ("Gwyther"), Raul Tapia ("Tapia"), James H. Hada ("Hada"), and Thomas Guajardo ("Guajardo") (collectively "Defendants"), by undersigned counsel, hereby respectfully submit this Memorandum in support of their Motion to Stay this action pending the resolution of criminal indictments pending against Celis.

### PRELIMINARY STATEMENT

Under well-established Circuit law and precedents from other jurisdictions, courts hearing actions involving the availability of insurance coverage for underlying claims have discretion to stay the insurance coverage action until the underlying claims are resolved. The rationale for exercising this judicial discretion is to avoid requiring an insured to prove the case against itself in order to secure insurance coverage.  Where an insured has been indicted for serious criminal offenses involving the same issues as the issues involved in the insurance coverage action, a stay is even more appropriate, because allowing the insurance coverage action to proceed would place the insured's Fifth Amendment right at

risk and create a danger of inappropriately expanding criminal discovery against him. The declaratory judgment action filed by Evanston Insurance Company ("Evanston") presents issues that are identical to the issues in the criminal indictments pending against Celis. Litigating those issues now, while the criminal indictments are pending, could improperly require Celis to testify about those issues in the declaratory judgment action, and thereby undermine his criminal defense. For this reason, it is appropriate for this Court to stay the declaratory judgment action until the criminal indictments against Celis have been resolved.

### FACTUAL BACKGROUND

CGT is a limited liability partnership organized under the law of the District of Columbia. Answer, Affirmative Defenses, and Counterclaims at ¶ 17. At the time CGT was formed on November 1, 2005, Celis was a capital partner, Tapia and Gwyther were income partners and Guajardo was an associated attorney. Affidavit of Douglas R. Gwyther, Jr., February 27, 2008, at ¶ 2. Exhibit 1. Hada and Pinedo joined CGT after its formation, and did not sign, affirm or ratify CGT's original partnership agreement, but shared in legal fees generated by their work on specific cases. *Id.*

Evanston issued a Lawyers Professional Liability Insurance Policy to CGT for the policy period December 7, 2005 to December 7, 2006 ("2005 Policy"). Exhibit 2. Evanston also issued a Lawyers Professional Liability Insurance Policy to CGT for the policy period December 7, 2006 to December 7, 2007 ("2006 Policy"). Exhibit 3. Each Policy states, *inter alia*, that Evanston promises to "pay on behalf of The Insured, subject to the limits of liability, sums in excess of the deductible amount which The Insured shall become legally obligated to pay as Damages as a result of Claims first made against the

Insured during the policy period, . . ." and to "investigate and defend any Claim to which coverage under this Policy applies . . . ."  Exhibit 2 at Page 2; Exhibit 3 at Page 2.

In November, 2006, a lawsuit captioned *Gonzales & Associates, et al.  v. Chris Pinedo, et al.;* Cause No: 6,349 (49th Judicial Dist. Ct., Zapata Cty., Texas) ("*Gonzales*") was filed against CGT, Celis, and Pinedo.  Exhibit 4.  *Gonzales* alleges that CGT is a sham corporation and that CGT, Celis and Pinedo engaged in the unauthorized practice of law.

In October, 2007, a second lawsuit captioned *Paloma Steele v. CGT Law Group, et al.*, Cause No: 07-62218-1 (Cty. Ct., Nueces Cty., Texas) ("*Steele*") was filed against CGT, Celis, Pinedo, Gwyther, and Tapia.  Exhibit 5.  *Steele* alleges that Celis is not a lawyer and that the defendants are engaged in the unauthorized practice of law.

On November 29, 2007 a third lawsuit captioned *Unauthorized Practice of Law Committee v. Mauricio Celis, et al.* (Dist. Ct., Nueces Cty., Texas) ("*UPLC*") was filed against Defendants CGT, Celis, Gwyther, Pinedo, Hada, and Guajardo.  Exhibit 6.  *UPLC* alleges that Celis is not a lawyer, and that CGT is an illegal partnership which was formed for an illegal purpose, *viz.*, the unauthorized practice of law.  *UPLC* further alleges that CGT and the defendants engaged in the unauthorized practice of law.

On October 24, 2007, a fourth lawsuit captioned *The State of Texas v. CGT Law Group International LLP, et al.* (419th Dist. Ct., Travis Cty., Texas) ("*AG*") was filed by the Texas Attorney General against CGT and Celis.  Exhibit 7.  *AG* alleges that CGT and Celis have engaged in the illegal and unauthorized practice of law and that CGT has permitted a "non lawyer," Celis, to share in legal fees and referral fees paid to CGT.  On February 26, 2008, the Texas Attorney General filed, and the court granted, an unopposed motion to stay this case pending the resolution of the criminal indictments against Celis.

Agreed Order Staying Proceedings (419th Dist. Ct., Travis Cty., Texas, file Feb. 26, 2008). Exhibit 8.

In addition to the civil matters referenced above, Celis is the subject of three separate indictments filed on November 16, 2007, in Nueces County, Texas, one month before Evanston filed the instant declaratory judgment action. The three indictments contain ten charges. Exhibit 9. One indictment alleges in seven separate counts that Celis falsely held himself out as an attorney. A second indictment alleges that Celis committed theft against the plaintiff in *Steele*, and the criminal charge is based upon the distribution of funds from the underlying settlement in *Steele*. A third indictment alleges that Celis committed perjury by testifying that he had graduated from a college in Mexico.

Specifically, the indictments allege, *inter alia*, that Celis

on or about the 30th day of May 2007, in Nueces County, Texas, did then and there, with intent to deceive and with knowledge of the statement's meaning, make a false statement under oath, namely that he had graduated from the Universidad Regionmontana in Monterrey, Mexico, and such sworn statement being then and there required by law to be made under oath, while the said [ ] Celis was under oath, and such statement was false in that [ ] Celis never graduated from said university, and such statement was made during or in connection with an official proceeding, to wit: a pretrial hearing in cause No. 6349 in the 49th District Court of Zapata County, Texas, styled Gonzales & Associates Law Firm etal vs. Chris Pinedo etal, and said false statement was then and there material to such proceeding in that the questions at the hearing involved the qualifications of [ ] Celis to practice law in Mexico and the false statement dealt with his educational qualifications to practice law in Mexico . . . .

*State of Texas v. Mauricio Celis*, No. 07-CR-4047-E, Exhibit 9; and

on or about November 1, 2005, in Nueces Court, Texas, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: by stating on business letterhead that he was licensed in Mexico, and the defendant was not then and there licensed to practice law in this state, or a foreign country and was not then there in good standing the State Bar of Texas and the state bar or licensing

authority or any state or foreign country where the defendant was licensed
to practice law . . . .

*State of Texas v. Mauricio Celis*, No. 07-CR-4049-E.  Exhibit 9.[1]

Evanston is currently defending CGT, Celis, and Pinedo in *Gonzales* under the 2005

Policy, and is currently defending CGT, Celis, Pinedo, Gwyther, and Tapia in *Steele* and is

defending CGT and Celis in *UPLC* under the 2006 Policy.  *AG* has not been tendered to

Evanston by CGT or Celis for a defense.

Evanston filed its Original Complaint ("Complaint") on December 14, 2007, one

month after Celis was indicted.  In its Complaint, Evanston seeks, *inter alia*, to rescind both

Policies on the grounds that the Policies were obtained through material misrepresentations,

*viz.*, CGT falsely represented in the application forms for the Policies that Celis was a lawyer

and admitted to practice in Mexico.  Complaint Counts I and II at ¶¶ 36-44 & 45-53.  In the

alternative, Evanston seeks a judicial determination of Evanston's rights and obligations under

the 2005 Policy with respect to *Gonzales*, *Steele*, *UPLC* and *AG*.  Complaint Count III at ¶¶

54-79.  Evanston also asks the Court to order the Defendants to reimburse Evanston for any

costs and expenses incurred by Evanston with respect to the defense of any of the Defendants.

Complaint at Counts V, VI and VII at ¶¶ 96, 105 & 111.

Specifically, Evanston alleges that

[i]n CGT's "Application for Lawyers Professional Liability
Insurance" dated December 7, 2005 for the [2005 Policy], CGT made
the following representations, which are all false:

- Mr. Celis is a member in good standing of the Mexico Bar;
- Mr. Celis was admitted to the Mexico Bar in 2000;

---

[1] Evanston explicitly acknowledges that Celis is the subject of pending criminal proceedings: "During November 2007, a grand jury in Nueces County, Texas, indicted Mr. Celis on 10 criminal charges, including seven counts of holding himself out as a lawyer, and one count of aggravated perjury (relating to Mr. Celis' alleged false evidence under oath at the May 30, 2007 court hearing that he has a law degree)."  Complaint ¶ 25.

- Mr. Celis has practiced as a lawyer on a full time basis for six years;
- Mr. Celis is "licensed in Mexico" [See blank letterhead attached to application].

Complaint ¶ 34.  Evanston further alleges that

[i]n CGT's 'Application for Lawyers Professional Liability Insurance' dated October 16, 2006 for the [2006 Policy], CGT made the following representations, which are all false:

- Mr. Celis is a lawyer;
- Mr. Celis is a member in good standing of the Mexico Bar;
- Mr. Celis was admitted to the Mexico Bar in 2000;
- Mr. Celis has practiced as a lawyer on a full time basis for seven years.

Complaint ¶ 35.

The allegations in Evanston's Complaint indisputably involve the same issues as the indictments pending against Celis.  For this reason, Defendants requested that Evanston consent to stay its declaratory judgment action until the criminal indictments against Celis are resolved.  Evanston refused to consent to the stay.

## ARGUMENT

## I.    THE DECISION TO GRANT A STAY IS IN THE COURT'S DISCRETION.

The decision whether to stay a case lies in the discretion of the trial court.  *Securities & Exchange Comm'n v. Dresser*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) ("[A] court may decide in its discretion to stay civil proceedings . . . 'when the interests of justice seem to require such action . . . .'") (*quoting United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970).  Courts routinely exercise their discretion to stay insurance coverage actions pending the outcome of litigation to which the insurance coverage action relates.  *Allstate Ins. Co. v. Harris*, 445 F. Supp. 847, 851 (N.D. Cal. 1987) (courts have "discretion to schedule the declaratory judgment either before or after the [underlying] tort action."); *Hartford Ins. Group v. District Court*, 635 P.2d 1013,

1016 (Colo. 1981) ("substantial discretion [is] vested in trial courts with respect to declaratory judgment actions" and whether they should be stayed); *cf. Maryland Cas. Ins. Co. v. Newpark Towers Assoc.,* 1990 WL 183603 at *3 (D.D.C. 1990) ("Ordinarily, it would be uneconomical as well as vexatious to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties").

Courts are particularly inclined to stay insurance coverage actions brought by an insurer when requested to do so by the insured. *Aetna Cas. & Sur. Co. v. PPG Indus., Inc.*, 554 F. Supp. 290, 292-96 (D. Ariz. 1983) (insured contended that insurer's summary judgment motion on the duty to indemnify should not be decided until the conclusion of the underlying litigation); *National Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp.2d 1109, 1110 (D. Alaska 1998) (insured sought dismissal or stay of insurer's declaratory judgment action pending resolution of underlying litigation); *Morris v. Farmers Ins. Exch.*, 771 P.2d 1206, 1209 (insured argued that insurer's summary judgment motion was premature); *State Farm Fire & Cas. Co. v. Finney*, 770 P.2d 460, 461 (Kan. 1989) (insured sought stay pending outcome of civil tort suit).

Courts typically stay insurance coverage litigation when there is a "risk of inconsistent factual determinations that could prejudice the insured" because the factual issues to be decided in the coverage case are the same as those at issue in the underlying case. *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1162 (Cal. 1993); *see also National Chiropractic Mut. Ins. Co.*, 23 F. Supp.2d at 1124 (court should enter stay where the coverage dispute "will turn on precisely the same factual issues at stake in the underlying tort action").[2]

---

[2] Courts have articulated a number of policy reasons for staying declaratory judgment actions until the proceedings in the underlying case are exhausted:

II.    **STAYING AN INSURANCE DECLARATORY JUDGMENT ACTION IS
ESPECIALLY APPROPRIATE WHEN RELATED CRIMINAL CHARGES ARE
PENDING AGAINST AN INSURED.**

The rationale for staying an insurance coverage declaratory judgment action when

there are pending criminal proceedings involving the same issues is even stronger than in

the case of concurrent civil proceedings.  "[T]he strongest case for deferring civil

proceedings until after completion of criminal proceedings is where a party under

indictment for a serious offense is required to defend a civil or administrative action

involving the same matter."  *Dresser Indus.,* 628 F.2d at 1375-76.  According to the D.C.

Circuit, such parallel proceedings could "undermine the party's Fifth Amendment privilege

against self-incrimination, expand rights of criminal discovery beyond the limits of Federal

Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in

advance of criminal trial, or otherwise prejudice the case."  *Id.* at 1376; *see also Estate of

Gaither ex rel. Gaither v. District of Columbia*, 2005 WL 3272130 (D.D.C. 2005)

(upholding stay where indictment had been returned against defendants); *Jones v. Conte*,

2005 WL 1287017 (N.D. Cal. 2005) (same).

Evanston's declaratory judgment action involves the same issues that are raised in the

criminal indictments of Celis and the issues in this action "will turn on precisely the same factual

---

(1)    The declaratory judgment action was not intended to be used to force the insured to have "dress rehearsal" of an issue to be tried in the main [*i.e.* underlying] case;
(2)    The holding in the declaratory judgment action might inappropriately collaterally estop the parties in the main action as to certain factual issues;
(3)    Such a proceeding would unfairly burden the insured and improperly allow the insurer to wrest control of the litigation from the insured party;
(4)    Such a declaratory judgment would violate the principle of judicial economy;
(5)    Such an action would constitute an unwarranted interference with another court's proceedings; and
(6)    To the extent the declaratory judgment might resolve an issue adversely to the insured, it would be inherently unfair to force the insured to litigation against the insurance company; under those circumstances, rather than obtaining the benefit of the company's resources and expertise in defending against the plaintiff, those resources, for the which the insured had bargained, would be turned against the insured and used to establish his or her liability."  *National Chiropractic Mut. Ins. Co.*, 23 F. Supp.2d at 1122 (citing *Morris*, 771 P.2d at 1211 and A Windt, INSURANCE CLAIMS AND DISPUTES § 804, at 326 (1982)).

issues at stake" in the criminal proceedings involving Celis.  Discovery in this action presents the "risk of inconsistent factual determinations that could prejudice" not only Celis but also CGT and the other insureds under the Policies.  *Montrose Chem. Corp.*, 861 P.2d at 1162. Litigating Evanston's declaratory judgment now would require discovery from Celis that goes to the heart of his defense against the indictments.  *Dresser Indus*, 628 F.2d at 1376. Indeed, both the Texas Attorney General and the *AG* court recognized these dangers by staying that case pending the resolution of the criminal indictments.  Exhibit 8.

The Court therefore should stay Evanston's declaratory judgment action pending the resolution of the indictments.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court stay Evanston's declaratory judgment action until the criminal indictments against Celis are resolved.

Respectfully submitted,


_____/s/ Philip H. Hecht_____
Philip H. Hecht (DC Bar No. 33286)
 KIRKPATRICK & LOCKHART PRESTON
 GATES ELLIS LLP
 1601 K Street, N.W.
 Washington, D.C.  20006
 Telephone:  (202) 778-9000
 Facsimile: (202) 778-9100
 E-mail: philip.hecht@klgates.com

 Counsel for Defendants CGT Law Group International
 LLP, Mauricio Celis, T. Christopher Pinedo, Douglas Ray
 Gwyther, Raul Tapia, James H. Hada, and Thomas
 Guajardo

## CERTIFICATE OF SERVICE

I certify that on March 3, 2008, a copy of the foregoing Defendants' Motion to Stay, Memorandum in Support of Defendants' Motion to Stay, and Proposed Order were filed via electronic case filing system of the United States District Court for the District of Columbia and, accordingly, that the Court will send notice of this filing electronically to:

William Gandy
Jason R. Waters
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22102
Phone: 703-245-9300
Fax: 703-245-9301
E-mail: william.gandy@wilsonelser.com
Attorneys for Plaintiff


                              /s/  Philip H. Hecht
                    Philip H. Hecht
                    KIRKPATRICK & LOCKHART PRESTON
                    GATES ELLIS LLP
                    1601 K Street, N.W.
                    Washington, D.C.  20006
                    Telephone:  (202) 778-9000
                    Facsimile: (202) 778-9100
                    E-mail: philip.hecht@klgates.com

# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EVANSTON INSURANCE COMPANY,     )
                                           )

Plaintiff,                      )
                                         )     Civil Action No: 07-02252

v.                           )

CGT LAW GROUP INTERNATIONAL LLP,   )
et al.,                       )

       Defendants.        )

## AFFIDAVIT OF DOUGLAS R. GWYTHER, JR.

DOUGLAS R. GWYTHER, Jr., being duly sworn, deposes and says upon penalty of perjury thereof:

1.     My name is Douglas R. Gwyther, Jr. I am over eighteen years of age, and I am competent to make this affidavit. The facts herein are of my personal knowledge and are true and correct. I make this affidavit in support of Defendants' Motion to Stay.

2.     At the time CGT Law Group International ("CGT") was formed on November 1, 2005, Mauricio Celis was a capital partner, Raul Tapia and I were income partners and Thomas A. Guajardo was an associated attorney in the Phoenix office. James H. Hada and T. Christopher Pinedo joined CGT after its formation. Mr. Hada and Mr. Pinedo did not sign, affirm or ratify CGT's original partnership agreement. Mr. Hada and Mr. Pinedo shared in legal fees generated by their work on specific cases.

FURTHER, AFFIANT SAYETH NOT.

Douglas R. Gwyther, Jr.

Sworn to, before me, this 27th day of feb., 2008.



Notary Public
My Commission Expires 05-16-10

REGINA CARMONY
Notary Public
STATE OF TEXAS
My Comm. Exp. 05-16-2010

DC 006130 v.1

**Exhibit 2**



# EVANSTON INSURANCE COMPANY

MARKEL*

| | |
|---|---|
| Policy No. | LA-803756 |
| Prev. No. | NEW |
| Prod. No. | 21235 |

## DECLARATIONS - LAWYERS PROFESSIONAL LIABILITY INSURANCE

Claims Made and Reported policy. This policy provides coverage for only those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE TERMS OF THIS POLICY. Please review the policy carefully.

THIS POLICY MAY CONTAIN PROVISIONS THAT REDUCE THE LIMITS OF LIABILITY STATED IN THE POLICY BY THE COSTS OF LEGAL DEFENSE AND PERMIT CLAIM EXPENSES TO BE APPLIED AGAINST THE DEDUCTIBLE.

1.  **NAMED INSURED:** CGT LAW GROUP INTERNATIONAL, LLP

2.  **ADDRESS OF NAMED INSURED:**
    101 CONSTITUTION AVENUE, NW, SUITE 900,
    Washington, DC 20001

3.  **POLICY PERIOD:** From December 7, 2005 To December 7, 2006
    12:01 A.M. Standard Time at address of Named Insured stated above.

4.  **LIMITS OF LIABILITY:**

    | | |
    |---|---|
    | Each Claim: | $ 2,000,000 |
    | Policy Aggregate: | $ 2,000,000 |

5.  **DEDUCTIBLE:**

    | | |
    |---|---|
    | Each Claim: | $    25,000 |

6.  **PREMIUM:** $    48,360.00

7.  If the Firm meets the eligibility requirements of THE COVERAGE 4., the PREMIUM FOR THE EXTENDED REPORTING PERIOD FOR A 12 MONTH PERIOD IS 150% of the applicable full annual premium hereunder.

8.  **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

    | | | |
    |---|---|---|
    | 1. | EIC 4115-01 | 25% Minimum Earned Premium Endorsement |
    | 2. | EIC 4436 | Prior Acts Exclusion |
    | 3. | ZZ-44003-02 | Certified Acts of Terrorism Exclusion |

ALL CLAIMS TO BE REPORTED DIRECTLY TO

Shand Morahan & Company, Inc.
Ten Parkway North, Suite 100
Deerfield, Illinois 60015
Phone: (847) 572-6000, Fax (847) 572-6338

Policy Form: EIC 1507-3 4/93
Dec: EIC1507-2 8/02
Date Printed: December 21, 2005

*Michael A. Rozenberg*
Authorized Representative



# EVANSTON INSURANCE COMPANY

MARKEL®

## Endorsement

| | |
|---|---|
| Named Insured: | Policy No.:  LA-803756 |
| CGT LAW GROUP INTERNATIONAL, LLP | Endorsement No.:  1 |
| | Effective Date:  December 7, 2005 |

### 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other provisions of the policy shall apply and remain unchanged.

_Michael A. Rosenberg_
Authorized Representative

EIC 4115-01 2/03



# EVANSTON INSURANCE COMPANY

MARKEL®

## Endorsement

| | |
|---|---|
| Named Insured: | Policy No.:  LA-803756 |
| CGT LAW GROUP INTERNATIONAL, LLP | Endorsement No.:  2 |
| | Effective Date:  December 7, 2005 |

### PRIOR ACTS EXCLUSION
### (use with EIC 1507)

In consideration of the premium paid, it is hereby understood and agreed that Section THE EXCLUSIONS is amended by the addition of the following exclusion:

   to any Claim based upon, arising out of, or in any way involving any Act or Personal Injury happening prior to December 7, 2005.

All other provisions of the policy shall apply and remain unchanged.

_Michael A. Rozenberg_
Authorized Representative

EIC 4436 5/04

 **EVANSTON INSURANCE COMPANY**
MARKEL®

## Endorsement

| | |
|---|---|
| Named Insured: | Policy No.:  LA-803756 |
| CGT LAW GROUP INTERNATIONAL, LLP | Endorsement No.:  3 |
| | Effective Date:  December 7, 2005 |

### CERTIFIED ACTS OF TERRORISM EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any claim or portion thereof based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance of Act of 2002 (Pub.L. 107-297) or any amendments thereto or any regulations promulgated thereunder. The federal Terrorism Risk Insurance of Act of 2002 sets forth the following criteria for a Certified Act of Terrorism:

1.  The act resulted in aggregate losses in excess of $5 million; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

---

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rosenberg*
Authorized Representative

ZZ-44003-02



# EVANSTON INSURANCE COMPANY

**MARKEL®**

## Endorsement

| | |
|---|---|
| Named Insured:<br>CGT LAW GROUP INTERNATIONAL, LLP | Attached to and forming<br>a part of Policy No.:    LA-803756<br>Endorsement No.:    4<br>Effective Date of Endorsement:    July 26, 2006 |

### ADDITIONAL INSURED ENDORSEMENT

In consideration of $4,137 additional premium, it is hereby understood and agreed that effective July 26, 2006, Thomas Christopher Pinedo is hereby added as an Insured under this policy.

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rosenberg*
Authorized Representative



# EVANSTON INSURANCE COMPANY

## Endorsement

| Named Insured:<br>CGT LAW GROUP INTERNATIONAL, LLP | Attached to and forming<br>a part of Policy No.: | LA-803756 |
|---|---|---|
| | Endorsement No.: | 5 |
| | Effective Date of Endorsement: | June 26, 2006 |

### ADDITIONAL INSURED ENDORSEMENT

It is hereby understood and agreed that Endorsement No. 4 is deleted in its entirety and replaced as follows:

In consideration of $5,062 additional premium, it is hereby understood and agreed that effective June 26, 2006, Thomas Christopher Pinedo is hereby added as an Insured under this policy.

All other provisions of the policy shall apply and remain unchanged.

Michael A. Rosenberg
Authorized Representative

## Lawyers Professional Liability Insurance Policy

### CONDITIONS PRECEDENT

As conditions precedent to the availability of any coverage under this policy, the payment of the premium must be made when due, and the application attached hereto and made a part hereof and all information in whatever form communicated by The Insured to the Company must be accurate. Subject to this policy's Declarations and all the terms of this insurance, the Company and The Insured agree as follows:

### DEFINITIONS

Wherever used in this policy the following words and phrases shall be defined as set forth below:

**Act:** The performance of or omission of a duty or obligation by The Insured while rendering legal advice or legal services for others.

**Claim:** A demand received by The Insured for Damages.

**Claim Expenses:** Subject to Company approval which shall not be unreasonably withheld, all reasonable fees, costs and expenses resulting directly from the investigation, adjustment, defense and appeal of a Claim. Provided, however, Claim Expenses do not include: salary charges of regular employees or officials of the Company; fees and expenses of supervisory counsel retained by the Company; salaries or compensation of any individual or entity identified within THE INSURED.

**Damages:** The monetary portion of any judgment, award or settlement and does not include:

    (a)    punitive or exemplary damages, any damages which are a multiple of compensatory damages, statutory treble damages, or fines, penalties or sanctions including, but not limited to, fines awarded pursuant to Rule 11 of the Federal Rules of Civil Procedure; or

    (b)    the restitution of consideration and expenses paid to The Insured for services or goods; or

    (c)    judgments or awards deemed uninsurable by law.

**Of Counsel:** Any lawyer or professional corporation or any lawyer who is an employee of such professional corporation who is specifically identified on the application as "Of Counsel," but solely with respect to acts on behalf of The Firm.

**The Firm:** The entity listed in the Declarations as "Named Insured".

**Personal Injury:** False arrest, false imprisonment, malicious prosecution, malicious abuse of process, wrongful detention, wrongful entry or eviction or other invasion of private occupancy, libel, slander or breach of privacy by The Insured all while rendering legal advice or legal services for others.

**Policy Period:** The period from the inception date of this policy to the policy expiration date as stated in the Declarations or the policy's earlier termination date, if any.

**Extended Reporting Period:** Whenever used in this policy means the period of coverage described in THE COVERAGE 4., which if purchased, incepts on the effective date of cancellation or non-renewal of this policy and expires upon the completion of the number of months indicated in the Declarations as "Policy Period" or at any earlier termination date effected pursuant to THE COVERAGE 4. (e).

**Predecessor Firm:** Any legal entity which was engaged in the practice of law to whose financial assets and liabilities the Firm is the majority successor in interest and which is designated in the application as a predecessor firm.

### COMPANY DESIGNEE

With respect to notices required to be given to the Company as provided for in INSURED DESIGNEE, THE COVERAGE 3. and 4., CLAIMS 1. and OTHER CONDITIONS 2. and 6., the Company has appointed Shand Morahan and Company, Inc., Ten Parkway North, Deerfield, Illinois 60015 to be the exclusive representative of the Company for the purpose of receiving such notices. All notices required by this Policy shall be made in writing to the Company Designee.

**INSURED DESIGNEE**

The attorney signing the application which is attached to the Policy shall be deemed the Insured Designee. The Insured Designee for this policy shall be the sole representative of The Insured.

The Firm or the Insured Designee may change the Insured Designee at any time. The Company must be advised in writing of any change in the Firm's Designee as soon as practicable after such change. In the event of the failure of the Firm to advise the Company, any notice or communication transmitted by the Company to the attorney signing the attached application shall be sufficient notice and shall be deemed notice to the Firm.

**THE INSURED**

**Insured,** wherever used in this policy means:

1.    The entity listed in the Declarations as "Named Insured", such entity to be known as the "Firm" but only for Claims arising out of legal advice or legal services provided on behalf of the Firm or any Predecessor Firm by any other Insured; and

2.    Any lawyer or professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

3.    Any lawyer who is an employee of a professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

4.    Any lawyer or professional corporation who is a former partner, officer, director, Of Counsel or employee of the Firm or any Predecessor Firm or of any professional corporation but only for Claims arising out of the legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

5.    Any other present or former employee of the Firm or any Predecessor Firm or of any professional corporation insured by this policy solely while acting on behalf of the Firm or any Predecessor Firm; and

6.As respects the liability of The Insured as otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of The Insured as defined in Items 1. through 5. above in the event of death, incapacity or bankruptcy.

**THE COVERAGE**

1.    **Professional Liability Claims Made and Reported Coverage:**

The Company shall pay on behalf of The Insured, subject to the limits of liability, sums in excess of the deductible amount which The Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE PROVISION OF CLAIMS 1:

(a)    because of any Act; or

(b)    because of any Personal Injury,

PROVIDED ALWAYS THAT such Act or Personal Injury happens,

(aa)    during the Policy Period; or

(bb)    prior to the Policy Period provided that, on or prior to the effective date of this policy, no Insured was aware of any facts or circumstances from which a reasonable person would have anticipated a Claim;

PROVIDED FURTHER THAT no other policy which provides insurance for such liability or Claim resulting from such Act or Personal Injury is available to the Insured whether or not the available limits of liability of any such other insurance are sufficient to pay any such liability or claim or whether or not the deductible provisions and amount of any such other insurance are different from

EIC 1507-3 4/93                          Page 2

this policy, unless such other insurance is written only as specific excess insurance over the limits of liability provided by this policy.

Subject to all other terms and conditions of this policy, when The Insured renders services as an administrator, conservator, executor, guardian, trustee, The Insured's Acts in such capacity shall be deemed for the purpose of this section to be the performance of legal services for others, provided that this coverage shall not apply to any loss sustained by The Insured as the beneficiary or distributee of any trust or estate.

2.  **Defense, Investigation and Settlement of Claims:**

The Company shall investigate and defend any Claim to which coverage under this policy applies pursuant to the following provisions:

(a)  Claim Expenses incurred in investigating and defending such Claim shall be included within the per claim policy limit of liability set forth in the Declarations and shall not be in addition thereto. Such Claim Expenses shall reduce the available limit of liability. THE COMPANY SHALL NOT BE OBLIGATED TO PAY ANY DAMAGES OR TO DEFEND OR TO CONTINUE TO DEFEND ANY CLAIM OR TO PAY CLAIM EXPENSES AFTER THE LIMIT OF THE COMPANY'S LIABILITY HAS BEEN TENDERED TO THE INSURED OR INTO THE COURT OR EXHAUSTED BY PAYMENT(S) OF DAMAGES AND/OR CLAIM EXPENSES.

(b)  Selection of defense counsel shall be made by the Company. Provided, however, that if the law of the state of the Firm's domicile (as designated on the Declarations page) allows the Insured to control the selection of counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which The Insured may designate counsel who shall act solely in the interest of The Insured, and The Insured agrees to direct such defense counsel to cooperate with the Company. Such cooperation shall include:

(1)  Providing on a regular basis, not less frequently than every six months, written reports on claimed Damages potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

(2)  Providing any other reasonable information requested and fully itemized billing on a periodic basis;

(3)  Cooperating with the Company and The Insured in resolving any discrepancies;

and the fees and costs incurred by such counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be included within the policy limit of liability and not in addition thereto. Such Claim Expenses shall reduce the available limit of liability.

(c)  The Insured shall cooperate with the Company in the defense, investigation and settlement of any Claim. The Insured will assist the Company in effecting any rights of indemnity, contribution or apportionment available to The Insured or the Company. Upon the Company's request, The Insured shall: (i) submit to examination and interview by a representative of the Company, under oath if required; (ii) attend hearings, depositions and trials; (iii) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (iv) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without charge to the Company.

(d)  The Insured shall not, with respect to any Claim covered under this policy, except at The Insured's personal cost, make any payment, admit liability, settle Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without prior written Company approval. Any costs and expenses incurred by The Insured prior to The Insured giving written notice of the Claim to the Company shall be borne by The Insured and will not constitute satisfaction of the deductible either in whole or in part.

(e)  The Company shall not settle any Claim without the consent of the Insured Designee. If, however, the Insured Designee shall refuse to consent to any settlement recommended by

the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company shall not be obligated to pay Claim Expenses incurred subsequent to such refusal. Furthermore, the Company's liability for such Claim shall not exceed the amount for which the Claim could have been so settled and Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of the section LIMITS OF LIABILITY.

3.    **Discovery of Potential Claims:**

If, during the Policy Period, The Insured first becomes aware of any Act or Personal Injury for which a Claim might reasonably be expected to be made for which insurance is otherwise provided by this policy and gives written notice of such Act or Personal Injury which is received by the Company during the Policy Period, then any Claim subsequently made arising out of that Act or Personal Injury shall be considered to have been made on the date such written notice is received by the Company.

Such written notice shall include a description of:

1)    the specific Act or Personal Injury; and

2)    the injury or damage that has or may reasonably result from 1) above; and

3)    the circumstances by which The Insured first became aware of 1) and 2) above.

The Insured shall cooperate fully with the Company as set forth in THE COVERAGE 2., Defense, Investigation and Settlement of Claims, and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in this policy as applicable to a Claim.

4.    **Extended Reporting Period:**

If the Company cancels or non-renews this policy, the Firm, for an additional premium charge, shall have the right to extend the period during which Claims must be first made and reported to apply to CLAIMS FIRST MADE AGAINST THE INSURED DURING THE PERIOD OF MONTHS INDICATED IN THE DECLARATIONS immediately following the effective date of such cancellation or non-renewal and REPORTED IN ACCORDANCE WITH CLAIMS 1., provided:

(a)    The Extended Reporting Period applies only to Acts or Personal Injuries committed prior to the effective date of cancellation or non-renewal of this policy which are otherwise covered by this policy; and

(b)    Cancellation or non-renewal does not result from the Firm's non-payment of premium and/or deductible or other non-compliance with the terms and conditions of the policy; and

(c)    Written notice of intent to exercise this option and the premium for the Extended Reporting Period is received by the Company from the Firm within ten (10) days of the effective date of cancellation or non-renewal. This premium shall be calculated at the percentage stated in the Declarations of the full annual premium of the policy; and

(d)    The full annual premium of this policy and any deductibles that are due have been paid by the Firm; and

(e)    The coverage afforded by this Extended Reporting Period shall terminate immediately when the Firm purchases a lawyers professional liability policy providing coverage in whole or in part for Acts or Personal Injuries committed prior to the end of the Policy Period. If coverage is so terminated, the Company shall refund pro rata any unearned premium charged for the Extended Reporting Period coverage; otherwise, the premium for the Extended Reporting Period shall be fully earned at the time of payment; and

(f)    The quotation of a different premium and/or deductible and/or limits of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this policy provision; and

(g)    The exercise of this Extended Reporting Period Option shall not in any way increase or be in addition to the limits of liability set forth in the Declarations.

EIC 1507-3 4/93                          Page 4

**THE EXCLUSIONS**

**The policy does not apply:**

    (a)    to payment of Damages arising out of a judgment or award against an individual or entity identified in THE INSURED section of the policy who has been finally adjudicated to have committed an intentionally dishonest or fraudulent Act; however, notwithstanding the forgoing, the Company, subject to the Limits of Liability and other terms and conditions, will pay Claim Expenses for any such Claim, and shall not exclude coverage to the Firm or to any other Insured who is not so adjudged to have committed such Act as described above. This policy shall then pay only in excess of the deductible and in excess of the full extent of the capital and assets in the Firm of any such individual or entity who was so adjudged to have committed such Act as described above, and any other personal assets of such individual or entity recovered by the Firm shall inure, to the extent of the amount paid by this policy, to the benefit of the Company.

    (b)    to any Claim made by an insured or any individual or entity acting on behalf of any Insured.

    (c)    to any Claim resulting from the rendering of legal advice or legal services for any individual or entity where such individual or entity either holds an ownership interest in or is considering acquiring an ownership interest in a business enterprise, pension, profit sharing, mutual or investment fund or trust;

        1)    which, at the time such advice or services were rendered, was more than 5% owned, controlled, managed or operated by any single individual or entity or any combination of individuals or entities within THE INSURED, alone or in conjunction with any spouse or any other immediate family member of any individual or entity identified within THE INSURED; or

        2)    for which any individual or entity identified within THE INSURED serves or served at the time such advice or services were rendered as an officer, director, partner, manager or employee or as a trustee in bankruptcy;

    (d)    to any Claim arising out of The Insured's capacity as a public official or an employee of a governmental body, subdivision or agency unless The Insured is deemed to be such solely because The Insured has rendered legal advice or legal services to such governmental body and the remuneration for such legal advice or legal services inures to the benefit of the Firm;

    (e)    to any Claim for bodily injury, sickness, disease or death of any person, or injury to or destruction of any tangible property or loss of use resulting therefrom;

    (f)    to any Claim based on or arising out of the rendering of investment advice by any Insured in connection with the purchase or sale of any investment or property, including but not limited to securities, real property, syndications, limited partnerships, commodities or franchises; or to any claim based on or arising out of any Insured's services or capacity as a securities broker, dealer, financial planner, investment advisor, accountant, real estate broker or real estate agent;

    (g)    to any Claim based upon or arising out of a contract for, or other right relating to, payment of or division of fees or fee apportionment;

    (h)    to any Claim based on or arising out of discrimination of any kind by any Insured including but not limited to discrimination on the basis of race, national origin, creed, religion, age, sex, sexual orientation, health disability or marital status or to any claim arising out of alleged or actual wrongful termination.

With the exception of THE EXCLUSIONS (a) hereinabove, any fact pertaining to any one or more Insured(s) which determines the applicability of THE EXCLUSIONS hereinabove shall apply to each and every individual or entity identified within THE INSURED and the Company shall not be required to defend or indemnify any Claim arising out of alleged Acts or claim for Damages for which no coverage applies pursuant to THE EXCLUSIONS or any other terms of this Policy.

**TERRITORY**

The Insurance afforded applies worldwide.

EIC 1507-3 4/93                Page 5

## LIMITS OF LIABILITY

**1.    Limit of Liability--Each Claim:**

The liability of the Company for the combined total of Damages and Claim Expenses for each Claim FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1., shall not exceed the amount stated in the Declarations for "each Claim."

**2.    Limit of Liability--Policy Aggregate:**

Subject to 1. Limit of Liability--Each Claim, the liability of the Company for the combined total of Damages and Claim Expenses shall not exceed the amount stated in the Declarations as "aggregate" as a result of all Claims FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1.

**3.    Deductible:**

Except as set forth in the following paragraph, the deductible amount stated in the Declarations shall be applicable to the combined total of Damages and Claim Expenses for each Claim.

Deductible payment or portions thereof shall be paid by the Firm within 30 days of demand.

**4.    Multiple Insureds, Claims and Claimants:**

The inclusion of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the limits of liability and deductible. Two or more Claims arising out of a single Act or Personal Injury or a series of related Acts or Personal Injuries shall be treated as a single Claim. All such Claims whenever made shall be considered first made on the date on which the earliest Claim arising out of such Act or Personal Injury was first made and all such Claims are subject to the same limit of liability and deductible.

## CLAIMS

**1.    Insured's Duties in the Event of Claim:**

As a condition precedent to the availability of coverage under this policy The Insured's duties in the event of a Claim shall be as follows:

(a)    If suit is brought or arbitration is instituted against The Insured, then The Insured shall immediately forward to the company, directed to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015, every demand, notice, summons or other process received by The Insured or their representative; and

(b)    If any Claim, other than a suit or arbitration proceeding, is made, then The Insured shall give as soon as practicable, written notice to the Company containing particulars sufficient to identify The Insured and claimant and full information with respect to the time, place and circumstances of the Claim; and

(c)    In any event any Claim or suit made or arbitration instituted against The Insured during the Policy Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN SIXTY (60) DAYS AFTER THE EXPIRATION OF THE POLICY PERIOD; and

(d)    In any event any Claim made or suit made or arbitration instituted against The Insured during the purchased Extended Reporting Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN TEN (10) DAYS AFTER THE EXPIRATION OF THE EXTENDED REPORTING PERIOD.

**2.    Subrogation and Indemnity:**

(a)    In the event of payment for Damages or Claim Expenses under the policy, the Company shall be subrogated to all of The Insured's rights of recovery against any person or organization. Any recovery shall be used to pay: first, subrogation expenses; second, payments in excess of the deductible by The Insured; third, payments by an excess insurer; fourth, payments made by a primary insurer; and, last reimbursement of The Insured's deductible.

EIC 1507-3 4/93                    Page 6

(b)    If the Company makes any payment of Claim Expenses or Damages as a result of the final adjudication that an intentionally dishonest or fraudulent Act has been committed, then the Company shall have the right to indemnification of such payments from the individual or entity so adjudged, including any individual or entity identified in THE INSURED section of the policy.

**3.    False or Fraudulent Claims:**

If any individual or entity identified within THE INSURED commits fraud in presenting or maintaining any Claim, the Company at its sole option may void:

(a)    this insurance with respect to such Claim; and/or

(b)    this insurance as to such individual or entity from the date such Claim is presented or maintained; and/or

(c)    this policy in its entirety; and/or

(d)    this insurance from the date such Claim is presented or maintained.

## OTHER CONDITIONS

**1.    Application:**  By acceptance of this policy, The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between The Insured and the Company, or any of its agents, relating to this insurance.

**2.    Firm Changes:**  Any of the following changes in the Firm which occur during the Policy Period must be reported to the Company within sixty (60) days of such change:

(a)    any change of 20% or more in the total number of lawyers in the Firm;

(b)    any new involvement in any single practice specialty anticipated to produce 5% or more of the Firm's gross billable dollars;

A premium adjustment and/or revision of limits, deductible, and/or coverage may be required by the Company as a result of such change. A return of premium due to a mid-term reduction in staff is not available under the policy. Mid-term charges for increase in staff in excess of 20% may apply.

**3.    Changes:**  Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy or stop the Company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**4.    Non-Payment of Deductible:**  If, within thirty (30) days of demand by the Company, the Insured fails to pay any or all of the Deductible which the Insured has become obligated to pay, the Company has the right to institute binding arbitration against the Insured unless otherwise prohibited by the laws of the state governing the Policy. The arbitration fees and costs of both parties shall be borne by the Insured; however, should the Insured prevail in arbitration, the Company shall pay the fees and costs.

**5.    Assignment:**  Assignment of any interest under this policy shall not bind the Company unless its consent is endorsed hereon.

**6.    Integration of Document:**  All provisions of this policy are intended to be read together as one integrated document. No provision nor any part thereof is intended to be separable from the balance of the policy. The meaning of each provision of this policy is created by what is written in such provision and by what is written in the balance of the policy, and the Company issues this policy to The Insured in contemplation of the foregoing method of giving meaning to the policy.

If any provision of this policy is held to be void by a court of competent jurisdiction, then the balance of this policy shall still be interpreted in accordance with the preceding paragraph.

**7.    Cancellation or Non-Renewal:**  This policy may be cancelled by the Firm by the Firm's mailing of written notice to the Company stating when, thereafter, such cancellation shall be effective and by the Firm's surrender of the policy or a valid lost policy release to the Company.

This policy may be cancelled by the Company or by Shand Morahan & Company, Inc. by mailing to the Firm written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective.

Provided, however, if the Firm does not pay the premium or deductible when due, the Company or Shand Morahan & Company, Inc., may cancel the policy giving the Firm at least ten (10) days written notice of cancellation. If no premium has been paid, cancellation for non-payment of premium shall be as of Policy inception. In the event that the policy is cancelled for non-payment of premium, the Company will not be liable for any Claims made against the Firm.

The Company, or Shand Morahan & Company, Inc., if it intends not to renew this policy, must give written notice to the Firm, mailed at least sixty (60) days prior to the expiration date of this policy.

The effective date of cancellation or non-renewal stated in the notice shall become the end of the Policy Period. Delivery of written notice by the Company or by Shand Morahan & Company, Inc., shall be equivalent to mailing. Should the Firm cancel the policy, the short rate proportion of the premium shall be charged. If the Company or Shand Morahan & Company, Inc., cancels the policy, the earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

8. **Service of Suit:** Except with respect to any policy issued to a Firm domiciled in Illinois, or in any state in which the Company is licensed to transact business, it is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of The Firm will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this Clause constitutes nor should be understood to constitute a waiver of the Company's right to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court, as permitted by the laws of the United States or of any state in the United States. In any suit instituted against it upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Lord Bissell & Brook, whose address is 115 South LaSalle Street, Chicago, Illinois 60603, is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Firm they will enter a general appearance upon the Company's behalf in the event such suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereon hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of The Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**IN WITNESS WHEREOF,** the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

_____
Secretary

_____
President

EIC 1507-3 4/93                    Page 8

## NUCLEAR ENERGY LIABILITY
## EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies the provisions of this policy.

It is agreed that:

1. **This policy does not apply:**

   A. Under any Liability Coverage, to bodily injury or property damage

      (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

   C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

      (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

      (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

      (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2. **As used in this endorsement:**

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means source material, special nuclear material or by-product material;

   "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

   "nuclear facility" means

      (a) any nuclear reactor,

      (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

EIC 1507-3 4/93                    Page 9

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

EIC 1507-3 4/93                          Page 10

# Exhibit 3

 **EVANSTON INSURANCE COMPANY**

MARKEL®

| | |
|---|---|
| Policy No. | LA-804111 |
| Prev. No. | LA-803756 |
| Prod. No. | 21235 |

## DECLARATIONS - LAWYERS PROFESSIONAL LIABILITY INSURANCE

Claims Made and Reported policy. This policy provides coverage for only those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE TERMS OF THIS POLICY. Please review the policy carefully.

THIS POLICY MAY CONTAIN PROVISIONS THAT REDUCE THE LIMITS OF LIABILITY STATED IN THE POLICY BY THE COSTS OF LEGAL DEFENSE AND PERMIT CLAIM EXPENSES TO BE APPLIED AGAINST THE DEDUCTIBLE.

1.    **NAMED INSURED:** CGT LAW GROUP INTERNATIONAL, LLP

2.    **ADDRESS OF NAMED INSURED:**
        101 CONSTITUTION AVENUE, NW, SUITE 900
        WASHINGTON, DC 20001

3.    **POLICY PERIOD:** From December 7, 2006 To December 7, 2007
        12:01 A.M. Standard Time at address of Named Insured stated above.

4.    **LIMITS OF LIABILITY:**

    Each Claim:                           $ 2,000,000

    Policy Aggregate:               $ 2,000,000

5.    **DEDUCTIBLE:**

    Each Claim:                           $     25,000

6.    **PREMIUM:**                        $     51,791.00

7.    If the Firm meets the eligibility requirements of THE COVERAGE 4., the PREMIUM FOR THE EXTENDED REPORTING PERIOD FOR A 12 MONTH PERIOD IS 150% of the applicable full annual premium hereunder.

8.    **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

    1. EIC 4438        Prior Acts Exclusion
    2. EIC 4115-01    25% Minimum Earned Premium Endorsement

ALL CLAIMS TO BE REPORTED DIRECTLY TO

Shand Morahan & Company, Inc.
Ten Parkway North, Suite 100
Deerfield, Illinois 60015
Phone: (847) 572-6000, Fax: (847) 572-6338

*Michael A. Rozenberg*
Authorized Representative

Policy Form: EIC 1507-3 4/93
Dec: EIC1507-2 8/02
Date Printed: December 12, 2006



## EVANSTON INSURANCE COMPANY

**Endorsement**

| | |
|---|---|
| Named Insured: CGT LAW GROUP INTERNATIONAL, LLP | Attached to and forming a part of Policy No.: LA-804111 |
| | Endorsement No.: 1 |
| | Effective Date of Endorsement: December 7, 2006 |

### PRIOR ACTS EXCLUSION
#### (use with EIC 1507)

In consideration of the premium paid, it is hereby understood and agreed that Section THE EXCLUSIONS is amended by the addition of the following exclusion:

to any Claim based upon, arising out of, or in any way involving any Act or Personal Injury happening prior to December 7, 2005.

All other provisions of the policy shall apply and remain unchanged.

Michael A. Rozenberg
Authorized Representative

EIC 4436 5/04



**EVANSTON INSURANCE COMPANY**

## Endorsement

| | |
|---|---|
| Named Insured:<br>CGT LAW GROUP INTERNATIONAL, LLP | Attached to and forming<br>a part of Policy No.: LA-804111<br>Endorsement No.: 2<br>Effective Date of Endorsement: December 7, 2006 |

### 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rosenberg*
Authorized Representative

EIC 4115-01 2/03

# Lawyers Professional Liability Insurance Policy

## CONDITIONS PRECEDENT

As conditions precedent to the availability of any coverage under this policy, the payment of the premium must be made when due, and the application attached hereto and made a part hereof and all information in whatever form communicated by The Insured to the Company must be accurate. Subject to this policy's Declarations and all the terms of this insurance, the Company and The Insured agree as follows:

## DEFINITIONS

Wherever used in this policy the following words and phrases shall be defined as set forth below:

**Act:** The performance of or omission of a duty or obligation by The Insured while rendering legal advice or legal services for others.

**Claim:** A demand received by The Insured for Damages.

**Claim Expenses:** Subject to Company approval which shall not be unreasonably withheld, all reasonable fees, costs and expenses resulting directly from the investigation, adjustment, defense and appeal of a Claim. Provided, however, Claim Expenses do not include: salary charges of regular employees or officials of the Company; fees and expenses of supervisory counsel retained by the Company; salaries or compensation of any individual or entity identified within THE INSURED.

**Damages:** The monetary portion of any judgment, award or settlement and does not include:

    (a)    punitive or exemplary damages, any damages which are a multiple of compensatory damages, statutory treble damages, or fines, penalties or sanctions including, but not limited to, fines awarded pursuant to Rule 11 of the Federal Rules of Civil Procedure; or

    (b)    the restitution of consideration and expenses paid to The Insured for services or goods; or

    (c)    judgments or awards deemed uninsurable by law.

**Of Counsel:** Any lawyer or professional corporation or any lawyer who is an employee of such professional corporation who is specifically identified on the application as "Of Counsel," but solely with respect to acts on behalf of The Firm.

**The Firm:** The entity listed in the Declarations as "Named Insured".

**Personal Injury:** False arrest, false imprisonment, malicious prosecution, malicious abuse of process, wrongful detention, wrongful entry or eviction or other invasion of private occupancy, libel, slander or breach of privacy by The Insured all while rendering legal advice or legal services for others.

**Policy Period:** The period from the inception date of this policy to the policy expiration date as stated in the Declarations or the policy's earlier termination date, if any.

**Extended Reporting Period:** Whenever used in this policy means the period of coverage described in THE COVERAGE 4., which if purchased, incepts on the effective date of cancellation or non-renewal of this policy and expires upon the completion of the number of months indicated in the Declarations as "Policy Period" or at any earlier termination date effected pursuant to THE COVERAGE 4. (e).

**Predecessor Firm:** Any legal entity which was engaged in the practice of law to whose financial assets and liabilities the Firm is the majority successor in interest and which is designated in the application as a predecessor firm.

## COMPANY DESIGNEE

With respect to notices required to be given to the Company as provided for in INSURED DESIGNEE, THE COVERAGE 3. and 4., CLAIMS 1. and OTHER CONDITIONS 2. and 6., the Company has appointed Shand Morahan and Company, Inc., Ten Parkway North, Deerfield, Illinois 60015 to be the exclusive representative of the Company for the purpose of receiving such notices. All notices required by this Policy shall be made in writing to the Company Designee.

EIC 1507-3 4/93

**INSURED DESIGNEE**

The attorney signing the application which is attached to the Policy shall be deemed the Insured Designee. The Insured Designee for this policy shall be the sole representative of The Insured.

The Firm or the Insured Designee may change the Insured Designee at any time. The Company must be advised in writing of any change in the Firm's Designee as soon as practicable after such change. In the event of the failure of the Firm to advise the Company, any notice or communication transmitted by the Company to the attorney signing the attached application shall be sufficient notice and shall be deemed notice to the Firm.

**THE INSURED**

Insured, wherever used in this policy means:

1. The entity listed in the Declarations as "Named Insured", such entity to be known as the "Firm" but only for Claims arising out of legal advice or legal services provided on behalf of the Firm or any Predecessor Firm by any other Insured; and

2. Any lawyer or professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

3. Any lawyer who is an employee of a professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

4. Any lawyer or professional corporation who is a former partner, officer, director, Of Counsel or employee of the Firm or any Predecessor Firm or of any professional corporation but only for Claims arising out of the legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

5. Any other present or former employee of the Firm or any Predecessor Firm or of any professional corporation Insured by this policy solely while acting on behalf of the Firm or any Predecessor Firm; and

6. As respects the liability of The Insured as otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of The Insured as defined in Items 1. through 5. above in the event of death, incapacity or bankruptcy.

**THE COVERAGE**

1. **Professional Liability Claims Made and Reported Coverage:**

The Company shall pay on behalf of The Insured, subject to the limits of liability, sums in excess of the deductible amount which The Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE PROVISION OF CLAIMS 1:

(a) because of any Act; or

(b) because of any Personal Injury,

PROVIDED ALWAYS THAT such Act or Personal Injury happens,

(aa) during the Policy Period; or

(bb) prior to the Policy Period provided that, on or prior to the effective date of this policy, no Insured was aware of any facts or circumstances from which a reasonable person would have anticipated a Claim;

PROVIDED FURTHER THAT no other policy which provides insurance for such liability or Claim resulting from such Act or Personal Injury is available to the Insured whether or not the available limits of liability of any such other insurance are sufficient to pay any such liability or claim or whether or not the deductible provisions and amount of any such other insurance are different from

EIC 1507-3 4/93                          Page 2

this policy, unless such other insurance is written only as specific excess insurance over the limits of liability provided by this policy.

Subject to all other terms and conditions of this policy, when The Insured renders services as an administrator, conservator, executor, guardian, trustee, The Insured's Acts in such capacity shall be deemed for the purpose of this section to be the performance of legal services for others, provided that this coverage shall not apply to any loss sustained by The Insured as the beneficiary or distributee of any trust or estate.

**2.   Defense, Investigation and Settlement of Claims:**

The Company shall investigate and defend any Claim to which coverage under this policy applies pursuant to the following provisions:

(a)   Claim Expenses incurred in investigating and defending such Claim shall be included within the per claim policy limit of liability set forth in the Declarations and shall not be in addition thereto. Such Claim Expenses shall reduce the available limit of liability. THE COMPANY SHALL NOT BE OBLIGATED TO PAY ANY DAMAGES OR TO DEFEND OR TO CONTINUE TO DEFEND ANY CLAIM OR TO PAY CLAIM EXPENSES AFTER THE LIMIT OF THE COMPANY'S LIABILITY HAS BEEN TENDERED TO THE INSURED OR INTO THE COURT OR EXHAUSTED BY PAYMENT(S) OF DAMAGES AND/OR CLAIM EXPENSES.

(b)   Selection of defense counsel shall be made by the Company. Provided, however, that if the law of the state of the Firm's domicile (as designated on the Declarations page) allows the Insured to control the selection of counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which The Insured may designate counsel who shall act solely in the interest of The Insured, and The Insured agrees to direct such defense counsel to cooperate with the Company. Such cooperation shall include:

(1)   Providing on a regular basis, not less frequently than every six months, written reports on claimed Damages potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

(2)   Providing any other reasonable information requested and fully itemized billing on a periodic basis;

(3)   Cooperating with the Company and The Insured in resolving any discrepancies;

and the fees and costs incurred by such counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be included within the policy limit of liability and not in addition thereto. Such Claim Expenses shall reduce the available limit of liability.

(c)   The Insured shall cooperate with the Company in the defense, investigation and settlement of any Claim. The Insured will assist the Company in effecting any rights of indemnity, contribution or apportionment available to The Insured or the Company. Upon the Company's request, The Insured shall: (i) submit to examination and interview by a representative of the Company, under oath if required; (ii) attend hearings, depositions and trials; (iii) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (iv) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without charge to the Company.

(d)   The Insured shall not, with respect to any Claim covered under this policy, except at The Insured's personal cost, make any payment, admit liability, settle Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without prior written Company approval. Any costs and expenses incurred by The Insured prior to The Insured giving written notice of the Claim to the Company shall be borne by The Insured and will not constitute satisfaction of the deductible either in whole or in part.

(e)   The Company shall not settle any Claim without the consent of the Insured Designee. If, however, the Insured Designee shall refuse to consent to any settlement recommended by

EIC 1507-3 4/93                    Page 3

the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company shall not be obligated to pay Claim Expenses incurred subsequent to such refusal. Furthermore, the Company's liability for such Claim shall not exceed the amount for which the Claim could have been so settled and Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of the section LIMITS OF LIABILITY.

**3.**   **Discovery of Potential Claims:**

If, during the Policy Period, The Insured first becomes aware of any Act or Personal Injury for which a Claim might reasonably be expected to be made for which insurance is otherwise provided by this policy and gives written notice of such Act or Personal Injury which is received by the Company during the Policy Period, then any Claim subsequently made arising out of that Act or Personal Injury shall be considered to have been made on the date such written notice is received by the Company.

Such written notice shall include a description of:

1)   the specific Act or Personal Injury; and

2)   the injury or damage that has or may reasonably result from 1) above; and

3)   the circumstances by which The Insured first became aware of 1) and 2) above.

The Insured shall cooperate fully with the Company as set forth in THE COVERAGE 2., Defense, Investigation and Settlement of Claims, and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in this policy as applicable to a Claim.

**4.**   **Extended Reporting Period:**

If the Company cancels or non-renews this policy, the Firm, for an additional premium charge, shall have the right to extend the period during which Claims must be first made and reported to apply to CLAIMS FIRST MADE AGAINST THE INSURED DURING THE PERIOD OF MONTHS INDICATED IN THE DECLARATIONS immediately following the effective date of such cancellation or non-renewal and REPORTED IN ACCORDANCE WITH CLAIMS 1., provided:

(a)   The Extended Reporting Period applies only to Acts or Personal Injuries committed prior to the effective date of cancellation or non-renewal of this policy which are otherwise covered by this policy; and

(b)   Cancellation or non-renewal does not result from the Firm's non-payment of premium and/or deductible or other non-compliance with the terms and conditions of the policy; and

(c)   Written notice of intent to exercise this option and the premium for the Extended Reporting Period is received by the Company from the Firm within ten (10) days of the effective date of cancellation or non-renewal. This premium shall be calculated at the percentage stated in the Declarations of the full annual premium of the policy; and

(d)   The full annual premium of this policy and any deductibles that are due have been paid by the Firm; and

(e)   The coverage afforded by this Extended Reporting Period shall terminate immediately when the Firm purchases a lawyers professional liability policy providing coverage in whole or in part for Acts or Personal Injuries committed prior to the end of the Policy Period. If coverage is so terminated, the Company shall refund pro rata any unearned premium charged for the Extended Reporting Period coverage; otherwise, the premium for the Extended Reporting Period shall be fully earned at the time of payment; and

(f)   The quotation of a different premium and/or deductible and/or limits of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this policy provision; and

(g)   The exercise of this Extended Reporting Period Option shall not in any way increase or be in addition to the limits of liability set forth in the Declarations.

EIC 1507-3 4/93                      Page 4

**THE EXCLUSIONS**

**The policy does not apply:**

(a) to payment of Damages arising out of a judgment or award against an individual or entity identified in THE INSURED section of the policy who has been finally adjudicated to have committed an intentionally dishonest or fraudulent Act; however, notwithstanding the forgoing, the Company, subject to the Limits of Liability and other terms and conditions, will pay Claim Expenses for any such Claim, and shall not exclude coverage to the Firm or to any other Insured who is not so adjudged to have committed such Act as described above. This policy shall then pay only in excess of the deductible and in excess of the full extent of the capital and assets in the Firm of any such individual or entity who was so adjudged to have committed such Act as described above, and any other personal assets of such individual or entity recovered by the Firm shall inure, to the extent of the amount paid by this policy, to the benefit of the Company,

(b) to any Claim made by an Insured or any individual or entity acting on behalf of any Insured.

(c) to any Claim resulting from the rendering of legal advice or legal services for any individual or entity where such individual or entity either holds an ownership interest in or is considering acquiring an ownership interest in a business enterprise, pension, profit sharing, mutual or investment fund or trust;

   1) which, at the time such advice or services were rendered, was more than 5% owned, controlled, managed or operated by any single individual or entity or any combination of individuals or entities within THE INSURED, alone or in conjunction with any spouse or any other immediate family member of any individual or entity identified within THE INSURED; or

   2) for which any individual or entity identified within THE INSURED serves or served at the time such advice or services were rendered as an officer, director, partner, manager or employee or as a trustee in bankruptcy;

(d) to any Claim arising out of The Insured's capacity as a public official or an employee of a governmental body, subdivision or agency unless The Insured is deemed to be such solely because The Insured has rendered legal advice or legal services to such governmental body and the remuneration for such legal advice or legal services inures to the benefit of the Firm;

(e) to any Claim for bodily injury, sickness, disease or death of any person, or injury to or destruction of any tangible property or loss of use resulting therefrom;

(f) to any Claim based on or arising out of the rendering of investment advice by any Insured in connection with the purchase or sale of any investment or property, including but not limited to securities, real property, syndications, limited partnerships, commodities or franchises; or to any claim based on or arising out of any Insured's services or capacity as a securities broker, dealer, financial planner, investment advisor, accountant, real estate broker or real estate agent;

(g) to any Claim based upon or arising out of a contract for, or other right relating to, payment of or division of fees or fee apportionment;

(h) to any Claim based on or arising out of discrimination of any kind by any Insured including but not limited to discrimination on the basis of race, national origin, creed, religion, age, sex, sexual orientation, health disability or marital status or to any claim arising out of alleged or actual wrongful termination.

With the exception of THE EXCLUSIONS (a) hereinabove, any fact pertaining to any one or more Insured(s) which determines the applicability of THE EXCLUSIONS hereinabove shall apply to each and every individual or entity identified within THE INSURED and the Company shall not be required to defend or indemnify any Claim arising out of alleged Acts or claim for Damages for which no coverage applies pursuant to THE EXCLUSIONS or any other terms of this Policy.

**TERRITORY**

The insurance afforded applies worldwide.

EIC 1507-3 4/93                    Page 5

**LIMITS OF LIABILITY**

1. **Limit of Liability--Each Claim:**

   The liability of the Company for the combined total of Damages and Claim Expenses for each Claim FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1., shall not exceed the amount stated in the Declarations for "each Claim."

2. **Limit of Liability--Policy Aggregate:**

   Subject to 1. Limit of Liability--Each Claim, the liability of the Company for the combined total of Damages and Claim Expenses shall not exceed the amount stated in the Declarations as "aggregate" as a result of all Claims FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1.

3. **Deductible:**

   Except as set forth in the following paragraph, the deductible amount stated in the Declarations shall be applicable to the combined total of Damages and Claim Expenses for each Claim.

   Deductible payment or portions thereof shall be paid by the Firm within 30 days of demand.

4. **Multiple Insureds, Claims and Claimants:**

   The inclusion of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the limits of liability and deductible. Two or more Claims arising out of a single Act or Personal Injury or a series of related Acts or Personal Injuries shall be treated as a single Claim. All such Claims whenever made shall be considered first made on the date on which the earliest Claim arising out of such Act or Personal Injury was first made and all such Claims are subject to the same limit of liability and deductible.

**CLAIMS**

1. **Insured's Duties in the Event of Claim:**

   As a condition precedent to the availability of coverage under this policy The Insured's duties in the event of a Claim shall be as follows:

   (a)  If suit is brought or arbitration is instituted against The Insured, then The Insured shall immediately forward to the company, directed to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015, every demand, notice, summons or other process received by The Insured or their representative; and

   (b)  If any Claim, other than a suit or arbitration proceeding, is made, then The Insured shall give as soon as practicable, written notice to the Company containing particulars sufficient to identify The Insured and claimant and full information with respect to the time, place and circumstances of the Claim; and

   (c)  In any event any Claim or suit made or arbitration instituted against The Insured during the Policy Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN SIXTY (60) DAYS AFTER THE EXPIRATION OF THE POLICY PERIOD; and

   (d)  In any event any Claim made or suit made or arbitration instituted against The Insured during the purchased Extended Reporting Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN TEN (10) DAYS AFTER THE EXPIRATION OF THE EXTENDED REPORTING PERIOD.

2. **Subrogation and Indemnity:**

   (a)  In the event of payment for Damages or Claim Expenses under the policy, the Company shall be subrogated to all of The Insured's rights of recovery against any person or organization. Any recovery shall be used to pay: first, subrogation expenses; second, payments in excess of the deductible by The Insured; third, payments by an excess insurer; fourth, payments made by a primary insurer; and, last reimbursement of The Insured's deductible.

EIC 1507-3 4/93                          Page 6

(b)   If the Company makes any payment of Claim Expenses or Damages as a result of the final adjudication that an intentionally dishonest or fraudulent Act has been committed, then the Company shall have the right to indemnification of such payments from the individual or entity so adjudged, including any individual or entity identified in THE INSURED section of the policy.

3.   **False or Fraudulent Claims:**

If any individual or entity identified within THE INSURED commits fraud in presenting or maintaining any Claim, the Company at its sole option may void:

(a)   this insurance with respect to such Claim; and/or

(b)   this insurance as to such individual or entity from the date such Claim is presented or maintained; and/or

(c)   this policy in its entirety; and/or

(d)   this insurance from the date such Claim is presented or maintained.

## OTHER CONDITIONS

1.   **Application:**   By acceptance of this policy, The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between The Insured and the Company, or any of its agents, relating to this insurance.

2.   **Firm Changes:**   Any of the following changes in the Firm which occur during the Policy Period must be reported to the Company within sixty (60) days of such change:

(a)   any change of 20% or more in the total number of lawyers in the Firm;

(b)   any new involvement in any single practice specialty anticipated to produce 5% or more of the Firm's gross billable dollars;

A premium adjustment and/or revision of limits, deductible, and/or coverage may be required by the Company as a result of such change. A return of premium due to a mid-term reduction in staff is not available under the policy. Mid-term charges for increase in staff in excess of 20% may apply.

3.   **Changes:**   Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy or stop the Company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

4.   **Non-Payment of Deductible:**   If, within thirty (30) days of demand by the Company, the Insured fails to pay any or all of the Deductible which the Insured has become obligated to pay, the Company has the right to institute binding arbitration against the Insured unless otherwise prohibited by the laws of the state governing the Policy. The arbitration fees and costs of both parties shall be borne by the Insured; however, should the Insured prevail in arbitration, the Company shall pay the fees and costs.

5.   **Assignment:**   Assignment of any interest under this policy shall not bind the Company unless its consent is endorsed hereon.

6.   **Integration of Document:**   All provisions of this policy are intended to be read together as one integrated document. No provision nor any part thereof is intended to be separable from the balance of the policy. The meaning of each provision of this policy is created by what is written in such provision and by what is written in the balance of the policy, and the Company issues this policy to The Insured in contemplation of the foregoing method of giving meaning to the policy.

If any provision of this policy is held to be void by a court of competent jurisdiction, then the balance of this policy shall still be interpreted in accordance with the preceding paragraph.

7.   **Cancellation or Non-Renewal:**   This policy may be cancelled by the Firm by the Firm's mailing of written notice to the Company stating when, thereafter, such cancellation shall be effective and by the Firm's surrender of the policy or a valid lost policy release to the Company.

EIC 1507-3 4/93                                     Page 7

This policy may be cancelled by the Company or by Shand Morahan & Company, Inc. by mailing to the Firm written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective.

Provided, however, if the Firm does not pay the premium or deductible when due, the Company or Shand Morahan & Company, Inc., may cancel the policy giving the Firm at least ten (10) days written notice of cancellation. If no premium has been paid, cancellation for non-payment of premium shall be as of Policy inception. In the event that the policy is cancelled for non-payment of premium, the Company will not be liable for any Claims made against the Firm.

The Company, or Shand Morahan & Company, Inc., if it intends not to renew this policy, must give written notice to the Firm, mailed at least sixty (60) days prior to the expiration date of this policy.

The effective date of cancellation or non-renewal stated in the notice shall become the end of the Policy Period. Delivery of written notice by the Company or by Shand Morahan & Company, Inc., shall be equivalent to mailing. Should the Firm cancel the policy, the short rate proportion of the premium shall be charged. If the Company or Shand Morahan & Company, Inc., cancels the policy, the earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

8. **Service of Suit:** Except with respect to any policy issued to a Firm domiciled in Illinois, or in any state in which the Company is licensed to transact business, it is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of The Firm will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this Clause constitutes nor should be understood to constitute a waiver of the Company's right to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court, as permitted by the laws of the United States or of any state in the United States. In any suit instituted against it upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Lord Bissell & Brook, whose address is 115 South LaSalle Street, Chicago, Illinois 60603, is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Firm they will enter a general appearance upon the Company's behalf in the event such suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereon hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of The Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**IN WITNESS WHEREOF,** the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

_Paul B. Churchel_
Secretary

_Michael A. Rozenberg_
President

EIC 1507-3 4/93                    Page 8

# NUCLEAR ENERGY LIABILITY
# EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies the provisions of this policy.

It is agreed that:

1.  **This policy does not apply:**

    A.  Under any Liability Coverage, to bodily injury or property damage

    (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C.  Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

    (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

    (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2.  **As used in this endorsement:**

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or by-product material;

    "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

    "nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

EIC 1507-3 4/93

Page 9

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

EIC 1507-3 4/93                              Page 10

# Exhibit 4

DORA M. RAMOS
DISTRICT CLERK

CAUSE NO. 6,349

| | | |
|---|---|---|
| GONZALEZ & ASSOCIATES LAW | § | IN THE DISTRICT COURT OF |
| FIRM, P.C. and PRISCILLA DE LOS | § | |
| SANTOS | § | FILED |
| | § | ZAPATA COUNTY, TEXAS |
| vs. | § | BY _MR_ DEPUTY |
| | § | |
| CHRIS PINEDO, MAURICIO CELIS, | § | ZAPATA COUNTY, TEXAS |
| CGT LAW GROUP | § | |
| INTERNATIONAL, LLP, and OWEN | § | |
| & ASSOCIATES, L.L.P., successor-in- | § | |
| interest to VANCE OWEN d/b/a | § | |
| VANCE OWEN & ASSOCIATES | § | |
| | § | 49TH JUDICIAL DISTRICT |

---

## PLAINTIFF'S THIRD AMENDED ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT:

GONZALEZ & ASSOCIATES LAW FIRM, P.C., Plaintiff, complains of CHRIS

PINEDO, MAURICIO CELIS, CGT LAW GROUP INTERNATIONAL, L.L.P., and OWEN

& ASSOCIATES, L.L.P., successor-in-interest to VANCE OWEN d/b/a VANCE OWEN

& ASSOCIATES, files this its Third Amended Original Petition, and would show this Court

as follows:

### I. DISCOVERY LEVEL

1.      Plaintiffs plead that this case should be assigned to Discovery Level Three

pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

### II. PARTIES

2.      Defendant, Chris Pineda ("Pineda"), is a resident of Nueces County, Texas

who has already appeared and answered herein.

3.     Defendant, Mauricio Celis ("Cells"), is a resident of Nueces County, Texas, who has already appeared and answered herein.

4.     Defendant CGT Law Group International, L.L.P. ("CGT Law Group") is a limited liability partnership existing under the laws of the District of Columbia, and registered with the Texas Secretary of State as a foreign limited liability partnership to do business in the State of Texas.  CGT Law Group has already appeared and answered herein.

5.     Defendant Owen & Associates, L.L.P., Successor-in-Interest to Vance Owen d/b/a Vance Owen & Associates is currently housed at the same address as CGT Law Group International, L.L.P., 500 N. Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

### III. JURISDICTION AND VENUE

6.     This Court possesses jurisdiction because the amount in controversy is in excess of the minimum of this Court.

7.     Venue is proper in Zapata County, Texas because the underlying cause of action existed in Zapata County, the matter is pending in Zapata County, the probate matters is pending in Zapata and the matter has been litigated in Zapata County, Texas. Therefore, all or a substantially all of the events or omissions giving rise to the claim occurred in Zapata County, Texas.

### IV. UNDERLYING FACTS

8.     Noe De Los Santos, Sr. is the natural father of Priscilla De Los Santos and

Esther Noemi De Los Santos. Noe De Los Santos, Sr. is also the administrator of the Estate

of Esther Noemi De Los Santos. Esther Noemi De Los Santos, at the time of her untimely

death, was a minor. Priscilla De Los Santos is the natural mother of Carlos Xavier De Los

Santos.

9.     On June 23, 2004, Priscilla De Los Santos, Esther Noemi De Los Santos and

Carlos Xavier De Los Santos were at the home owned by Defendant Mercado at 5412 Davis

Lane, Zapata County, Texas, when a fire began causing the death of Esther Noemi De Los

Santos and severely and permanently burning Priscilla De Los Santos and Carlos Xavier

De Los Santos. The source/cause of the fire was a lamp designed and/or manufactured

by Defendant Ashley.

10.     As a result of the incident, Plaintiff Esther Noemi De Los Santos burned to

death and Plaintiffs Noe De Los Santos, Sr., Priscilla De Los Santos and Carlos Xavier De

Los Santos sustained severe mental and physical injuries.

11.     As a result of the accident, Noe De Los Santos executed a contract on his

behalf and on the behalf of the Priscilla De Los Santos, a minor at the time. A contract was

also signed on behalf of the estate of Ester Noemi De Los Santos and Carlos De Los Santos,

minors. When Priscilla De Los Santos reached majority age, she signed a contract directly

with Plaintiff.

12.     Orders from this Court exist authorizing the Plaintiff to represent all parties.

Furthermore, Orders exists from this Court exist forbidding attorneys and their

investigators from contacting Priscilla De Los Santos, specifically attorney Chris Pineda

who was employed at the time of Order with the Watts Law Firm. At all relevant times

during the underlying litigation, Plaintiff has represented Priscilla De Los Santos.

13.     The underlying case was set for mediation on October 25, 2006.  On October 23, 2006, Plaintiff learned that one or more of the Defendants had made contact with Priscilla De Los Santos at various time during the pendency of the underlying lawsuit in violation of Courts' Order.  Defendants' unlawful solicitation violated the Texas Rules of Professional Conduct and constitutes tortious interference with Plaintiff's contract with his client.

14.     One or more of the Defendants has also initiated litigation against Plaintiff in other venues, and by way of counterclaim in this venue.  Specifically, CGT Law Group, by and through its controlling partner, Mauricio Celis, has asserted an interest in the legal fees generated by Plaintiff from the underlying case.  CGT Law Group does not, and never has had, any written contract with Priscilla De Los Santos.

15.     CGT Law Group is a sham company created for the express purpose of soliciting personal injury cases around the world and referring those cases to real lawyers. GCT Law Group's controlling partner, Mauricio Celis, is not a lawyer, yet he holds himself out to the public and to clients as a licensed lawyer.  This conduct constitutes fraud, and is misleading and deceptive.  Further, Mauricio Celis, who is nothing more than a glorified ambulance chaser, has collected and shared millions of dollars in legal fees off of other people's misery, while engaging in the unauthorized practice of law.  Falsely holding oneself out as a lawyer, as does Mauricio Celis, is a third degree felony in the State of Texas.  The unauthorized practice of law is a Class A misdemeanor in the State of Texas, unless previously convicted, in which case the offense is third degree felony.

## V. CAUSES OF ACTION

16.     Plaintiff had a valid contract with the Priscilla De Los Santos wherein the Defendants willfully and intentionally interfered with the contract.  Such interference has proximately caused Plaintiff great harm.

17.     Defendants have conspired with each other, and possible others, to engage in the unauthorized practice of law, and to steal, extort and illegally obtain attorneys fees from other lawyers including Plaintiff.  Defendants' counterclaim in this case is one example of this civil conspiracy whereby Defendants are attempting to illegally extort attorneys fees when they have no basis to do so. All of the Defendants have committed one or more acts in furtherance of the civil conspiracy. Defendants' conduct has proximately caused Plaintiff  harm.

18.     Defendants' counterclaim constitutes a frivolous pleading in violation of Rule 13, Texas Rules of Civil Procedure, as well as other applicable law.  The counterclaim is groundless, was brought in bad faith, and for purposes of harassment and to extort legal fees from Plaintiff.   Defendants are engaged in the unauthorized practice of law and/or are aiding and abetting Defendant Mauricio Celis and Defendant CGT Law Group in the unauthorized practice of law.  The counterclaim is an act in furtherance of this conduct. Plaintiff seeks all available and appropriate remedies at law and in equity against those Defendants who are responsible for bringing the frivolous counterclaim.

19.     All conditions precedent have occurred or are satisfied.

## PRAYER

WHEREFORE, Plaintiff prays that Defendants be cited to appear and answer herein,

that this cause be set for trial, and that Plaintiff recover a judgment of and from the

Defendants, jointly and severally, for actual damages, special damages, exemplary

damages and attorneys fees, together with prejudgment and post judgment interest at the

maximum rate as provided by law, costs, and such other and further relief to which

Plaintiff may be justly entitled.

Respectfully submitted,

By: _____

RAYMOND L. THOMAS
State Bar No. 19865350
E-Mail: rthomas@ktglawfirm.com
OSCAR O. GOMEZ
State Bar No. 08115425
E-Mail: ogomez@ktglawfirm.com
KITTLEMAN, THOMAS & GONZALES, LLP
4900-B N. 10th Street
McAllen, Texas 78504
(956) 686-8797
(956) 630-5199 (fax)

JAIME A. GONZALEZ, JR.
State Bar No. 08127600
GONZALEZ & ASSOCIATES LAW FIRM, P.C.
Summit Park North
817 E. Esperanza
McAllen, Texas 78501
(956) 664-0100
(956) 664-1529 (fax)

ATTORNEYS FOR PLAINTIFF
GONZALEZ & ASSOCIATES LAW FIRM, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served in accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure to the following parties on May 29, 2007:

Andrew M. Greenwell                          **Via Certified Mail**
HARRIS & GREENWELL, LLP
1700 Wells Fargo Tower
615 North Upper Broadway
Corpus Christi, Texas  78477-0237

Darrell L. Barger                            **Via Certified Mail**
HARTLINE, DACUS, BARGER, DREYER
     & KERN, L.L.P.
800 North Shoreline
Suite 2000, North Tower
Corpus Christi, Texas 78401

J.A. Canales                                 **Via Certified Mail**
CANALES & SIMONSON, PC
2601 Morgan Avenue
P.O. Box 5624
Corpus Christi, Texas 78465-5624


Raymond L. Thomas
Oscar O. Gomez

# Exhibit 5

# IN THE COUNTY COURTS
## OF NUECES COUNTY, TEXAS
### COUNTY COURT AT LAW NUMBER __1__

PALOMA STEELE                          §       CAUSE NO. 07-62218-1
PLAINTIFF                              §
                                       §
VS.                                    §
                                       §
                                       §
CGT LAW GROUP                          §
INTERNATIONAL, L.L.P.,                 §
MAURICIO R. CELIS (CAPITAL             §
PARTNER), T. CHRISTOPHER               §
PINEDO; D.R. GWYTHER, JR. (CC          §
INCOME PARTNER), and RAUL              §
TAPIA (D.C. INCOME PARTNER)            §
DEFENDANTS                             §

### PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, PALOMA STEELE, hereinafter referred to by name or as Plaintiff, and complains of CGT LAW GROUP INTERNATIONAL, L.L.P., MAURICIO R. CELIS (CAPITAL PARTNER), T. CHRISTOPHER PINEDO, D.R. GWYTHER, JR. (CC INCOME PARTNER), AND RAUL TAPIA (D.C. INCOME PARTNER), hereinafter referred to by names or as Defendants, and for cause of action would respectfully show unto the Court as follows:

### I.

1.    Plaintiff intend that discovery be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

### II.

2.    Plaintiff is an individual residing in Nueces County, Texas.

-1-



3.    Defendant, **CGT LAW GROUP INTERNATIONAL, L.L.P.** is a foreign limited liability partnership organized under the law of the District of Columbia and authorized to do business in the State of Texas and may be served with process through its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

4.    Defendant, **MAURICIO R. CELIS** is an individual residing in Nueces County, Texas and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

5.    Defendant, **T. CHRISTOPHER PINEDO** is an individual residing in Nueces County, Texas and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

6.    Defendant, **D.R. GWYTHER, JR. (CC INCOME PARTNER)** is an individual residing in Nueces County, Texas and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

7.    Defendant, **RAUL TAPIA (D.C. INCOME PARTNER)** is an individual doing business in the State of Texas and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

**III.**

8.    Subject matter jurisdiction is proper in this Court because the damages sought are above the minimum jurisdictional limits of this court.

9.    Venue is proper before this Court because the incident which forms the basis of this lawsuit occurred in Nueces County, Texas.

10.    This suit involves multiple defendants. Venue is also proper before this Court under Tex. Civ. Prac. & Rem. Code § 15.005 because all of Plaintiffs' claims against Defendants arise out of

-2-

the same transaction, occurrence, or series of transactions or occurrences. Specifically, Plaintiffs sought legal representation from Defendants in Nueces County, and the actionable conduct occurred in Nueces County.

IV.

11.    On or about January 2007, Plaintiff hired Defendant **CGT LAW GROUP INTERNATIONAL, L.L.P.** to provide legal services. At the time the contract for legal services was signed, Defendant **MAURICIO R. CELIS** represented himself as and held himself out to Plaintiff as an attorney. Furthermore, Plaintiff hired Defendant **CGT LAW GROUP INTERNATIONAL, L.L.P.** with the belief that Defendant **MAURICIO R. CELIS** was an attorney authorized in Texas to represent people. At the time the contract for legal services was signed, Defendants **T. CHRISTOPHER PINEDO, D.R. GWYTHER, JR. (CC INCOME PARTNER),** and **RAUL TAPIA (D.C. INCOME PARTNER)** knew or should have known that Defendant **MAURICIO R. CELIS** was not an attorney licensed or admitted to practice in Texas, but Defendants nevertheless acted in concert with one another to defraud and mislead the Plaintiff into retaining their legal services.

12.    Defendants, **MAURICIO R. CELIS, T. CHRISTOPHER PINEDO, D.R. GWYTHER, JR. (CC INCOME PARTNER),** and **RAUL TAPIA (D.C. INCOME PARTNER)** were, at all relevant times during the course of **CGT LAW GROUP INTERNATIONAL, L.L.P.'s** representation of Plaintiff, officers, directors, agents, employees and shareholders of **CGT LAW GROUP INTERNATIONAL, L.L.P.**

13.    Defendant **MAURICIO R. CELIS, T. CHRISTOPHER PINEDO, D.R. GWYTHER, JR. (CC INCOME PARTNER),** and **RAUL TAPIA (D.C. INCOME PARTNER)** were, at all

-3-

relevant times during the course of CGT LAW GROUP INTERNATIONAL, L.L.P.'s representation of Plaintiff, employees and agents of CGT LAW GROUP INTERNATIONAL, L.L.P. acting in the course and scope of their employment with CGT LAW GROUP INTERNATIONAL, L.L.P.

V.

## COUNT 1 – FRAUD AND MISREPRESENTATION

14.    Plaintiffs would show that the Defendants, jointly and severally, both individually and while acting through their employees, agents, servants, representatives, and/or vice principals, at all times within the course and scope of their employment, committed one or more acts of fraud against the Plaintiffs. More specifically, Defendants knowingly made false representations and knowingly concealed material facts about Defendants' representation of Plaintiffs.

15.    Defendants knowingly made the following misrepresentations to Plaintiffs:

    a.    That Defendants would properly and competently handle Plaintiffs' legal matters;

    b.    That Defendant MAURICIO R. CELIS was an attorney authorized to practice in Texas; and

    c.    That Defendants were adequately trained and supervised to handle Plaintiff's legal matters.

16.    The Defendants knowingly concealed from Plaintiffs the fact that Defendant MAURICIO R. CELIS was not an attorney authorized to practice in Texas and was committing the unauthorized practice of law.

17.    Plaintiff alleges that each and every one of the representations and instances of misrepresentation and fraudulent concealment concern material facts to the cause of action that, if known to Plaintiff, would have caused her to modify her conduct because it involved information that a reasonable person would attach importance to and be induced to act upon in determining a

course of action.

18.   Plaintiff relied on the Defendants' misrepresentations and fraudulent concealments in making her decision to hire Defendants to represent her in her legal matters. Each and every one of the aforementioned misrepresentations was false and Plaintiff relied upon them to her detriment. Such reliance is the proximate cause of Plaintiff's injuries and damages as described in this pleading.

19.   Further, Plaintiff would show that, at the time the misrepresentations and fraudulent concealments were made, Defendants either knew that the representations were false or made the representations recklessly, as a positive assertion, and without knowledge of their truth. Defendants purported to have and, in fact, did have superior knowledge concerning the matters related herein, and made the misrepresentations with the intent that the Plaintiff rely upon them. Specifically, Defendants intended to mislead Plaintiffs through their representations and actions to induce the Plaintiffs to form an attorney/client relationship with Defendants.

20.   Plaintiff, in fact, relied on the Defendants' representation and misrepresentations, omissions and fraudulent concealments of material facts and acquiesced in an attorney/client relationship with Defendants.

21.   The Plaintiff's reliance on Defendants' representations, misrepresentations, omissions and fraudulent concealments was the proximate cause of the damages and injuries suffered by the Plaintiff. Since the Defendants acted knowingly, their actions were willful and malicious and constitute conduct that would entitle Plaintiff to exemplary damages under the law. Due to Defendants' fraudulent conduct, Plaintiff incurred additional expenses, including, but not limited to, attorneys fees, investigation expenses, and other costs related to the prosecution of this action. These additional costs entitle Plaintiff to request that exemplary damages be awarded against Defendants in a sum within the jurisdictional limits of this court.

-5-

## VI.

## COUNT 2 – CONSPIRACY TO DEFRAUD

22.     As stated in the preceding cause, Plaintiff would show that the Defendants, jointly and severally, both individually and while acting through their employees, agents, servants, representatives, and/or vice principals, at all times within the course and scope of their employment, committed one or more acts of fraud against the Plaintiffs which are outlined in the preceding paragraphs.

23.     Further, Plaintiffs would assert that Defendants **MAURICIO R. CELIS**, **T. CHRISTOPHER PINEDO**, **D.R. GWYTHER, JR. (CC INCOME PARTNER)**, and **RAUL TAPIA (D.C. INCOME PARTNER)** were members of a combination of two or more persons whose object was to accomplish an unlawful purpose, namely to defraud Plaintiff and induce her to sign a contract for legal representation.

24.     The Defendants had a meeting of the minds on the object or course of action and one of the members, specifically **MAURICIO R. CELIS**, committed several unlawful, overt acts to further the object or course of action—namely fraudulently representing himself to the Plaintiff as an attorney in order to induce her into signing a contract for legal representation.

25.     As a result of these unlawful acts, Plaintiff suffered injuries and damages.  Since the Defendants acted knowingly, their actions were willful and malicious and constitute conduct that would entitle Plaintiff to exemplary damages under the law. Due to Defendants' fraudulent conduct, Plaintiff incurred additional expenses, including, but not limited to, attorneys fees, investigation expenses, and other costs related to the prosecution of this action. These additional costs entitle Plaintiff to request that exemplary damages be awarded against Defendants in a sum in excess of the minimum jurisdictional limits of this court.

-6-

VII.

## COUNT 3 – BREACH OF FIDUCIARY DUTY

26.     Defendant, CGT LAW GROUP INTERNATIONAL, L.L.P., by and through T. CHRISTOPHER PINEDO, owed a fiduciary duty to the Plaintiff through the attorney-client relationship that formed between them.

27.     Defendants breached their fiduciary duty to the Plaintiff by failing to fully and fairly disclose prior to and after the attorney/client relationship was formed that MAURICIO R. CELIS was not an attorney.  Furthermore, Defendants took advantage of Plaintiff in the most egregious way for an extended period of time by engaging in an elaborate scheme of deception to lull Plaintiff into the belief that MAURICIO R. CELIS was an attorney.

28.     Defendants' breach of their duty to render full and fair disclosure of any and all material facts resulted in both harm to the Plaintiff and a benefit to the Defendants since Defendants collected attorneys fees as a result of their representation of Plaintiff.  This breach of fiduciary duty proximately caused Plaintiff's damages and injuries.

VIII.

## COUNT 4 – BREACH OF CONTRACT

29.     Plaintiff signed a contract with Defendant to provide legal services.  Plaintiffs and Defendants were in privity throughout the course of the legal representation by CGT LAW GROUP INTERNATIONAL, L.L.P. and, during the course of the representation, performed, tendered performance, or were excused from performing their contractual obligations to Defendants.

30.     Defendant CGT LAW GROUP INTERNATIONAL, L.L.P., by and through the actions of its employees, servants, or agents, breached the contract in the following manner:

·7·

a. By failing to provide Plaintiffs with adequate legal services;

b. By misrepresenting to Plaintiff that MAURICIO R. CELIS was an attorney; and

c. By engaging in a deceptive scheme to conceal from the Plaintiffs that MAURICIO R. CELIS was not an attorney;

31. Defendants' breach of contract was the proximate cause of Plaintiffs' injuries and damages.

## IX.

## COUNT 5 – LEGAL MALPRACTICE

32. Defendant, CGT LAW GROUP INTERNATIONAL, L.L.P., by and through the actions of its employees, servants, or agents, owed a duty of care to the Plaintiff.

33. Defendants breached its duty of care to the Plaintiffs by failing to act as reasonable and prudent attorneys would act under the same or similar circumstances. Specifically, Defendants failed to disclose that MAURICIO R. CELIS was not an attorney, and engaged in an elaborate scheme of deception to cover-up their wrongdoing.

34. These negligent acts were the proximate cause of the Plaintiffs' injuries.

## X.

## COUNT 6 – CLAIMS AGAINST DEFENDANT CGT LAW GROUP INTERNATIONAL, L.L.P.

## RESPONDEAT SUPERIOR

35. Plaintiff was injured as a result of the misrepresentations made by MAURICIO R. CELIS, who was acting as an agent and employee for CGT LAW GROUP INTERNATIONAL, L.L.P.

36. The misrepresentation was committed while MAURICIO R. CELIS was acting within the scope of his employment as director, partner, and shareholder in CGT LAW GROUP INTERNATIONAL, L.L.P.; that is, the act was within MAURICIO R. CELIS' authority, in

furtherance of Defendant, CGT LAW GROUP INTERNATIONAL, L.L.P.'s business, and for the accomplishment of the object for which MAURICIO R. CELIS was hired.

## VICE PRINCIPAL LIABILITY

37.    MAURICIO R. CELIS acting in his capacity as director, partner, and shareholder in CGT LAW GROUP INTERNATIONAL, L.L.P. was as an agent for CGT LAW GROUP INTERNATIONAL, L.L.P., a foreign limited liability partnership, at the time he made the misrepresentation to the Plaintiff.

38.    At the time he committed the tortious conduct, MAURICIO R. CELIS was acting as: 1) a corporate officer of CGT LAW GROUP INTERNATIONAL, L.L.P.; 2) a person with the authority to employ, direct, and discharge employees of CGT LAW GROUP INTERNATIONAL, L.L.P.; 3) a person engaged in the performance of nondelegable or absolute duties of CGT LAW GROUP INTERNATIONAL, L.L.P.; or 4) a person to whom CGT LAW GROUP INTERNATIONAL, L.L.P. delegated the management of all or part of its business

39.    MAURICIO R. CELIS' misrepresentation to the Plaintiff was directly related to CGT LAW GROUP INTERNATIONAL, L.L.P.'s business.

## XI.

## DAMAGES

40.    Plaintiff seeks unliquidated damages which are within the jurisdictional limits of this court.

## XII.

## EXEMPLARY DAMAGES

41.    Plaintiff also seeks exemplary damages for harm caused by Defendants' fraud, malice, or gross negligence under Tex. Civ. Prac. & Rem. Code § 41.003(a)(3).

-9-

42.     Plaintiffs also seek exemplary damages for harm resulting from a criminal act under Tex. Civ. Prac. & Rem. Code § 41.005(c) since, as the employer of MAURICIO R. CELIS, CGT LAW GROUP INTERNATIONAL, L.L.P. is liable for punitive damages because: 1) CGT LAW GROUP INTERNATIONAL, L.L.P., by and through its officers, directors, and employees authorized the doing and manner of the act; 2) MAURICIO R. CELIS, acting as an agent for CGT LAW GROUP INTERNATIONAL, L.L.P. was employed in a managerial capacity and was acting in the scope of employment; and 3) CGT LAW GROUP INTERNATIONAL, L.L.P. as employer or manager of MAURICIO R. CELIS, ratified or approved the act.

43.     Furthermore, Plaintiffs seek exemplary damages in excess of the statutory limitations based on the exception presented in Tex. Civ. Prac. & Rem. Code § 41.008(c) which applies to causes of action that seek recovery of exemplary damages based on conduct described as a felony in the following section of the Penal Code: 1) Section 32.46 (securing execution of a document by deception).

## XIII.

### ATTORNEYS FEES

44.     As a further result of Defendants wrongful conduct, it was necessary to retain the undersigned attorneys to prosecute this claim. Pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, Plaintiffs hereby sue for recovery of their reasonable and necessary attorneys fees from the Defendants. In the event of an appeal, Plaintiffs seek the recovery of additional attorneys fees.

## XIV.

### INTEREST

45.     Plaintiffs further request both pre judgment and post judgment interest on all their damages

-10-

as allowed by law.

## XXV.

### DEMAND FOR JURY TRIAL

46.    Plaintiffs demand a jury trial and tender the appropriate fee with this petition.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED.** Plaintiff requests that the Defendants be cited to appear and answer, and on final trial hereafter, the Plaintiff has judgment against Defendants in an amount in excess of the jurisdictional limits of this Court, together with all pre judgment and post judgment interest as allowed by law, costs of Court, and for such other and further relief to which Plaintiffs may be justly entitled by law and equity, including, but not limited to:

1.    Mental anguish in the past;
2.    Mental anguish in the future;
3.    Pre judgment interest;
4.    Post judgment interest;
5.    Exemplary damages;
6.    Attorneys fees;
7.    Court costs;
8.    Forfeiture of attorneys fees;
9.    Disgorgement of profits
10.   All other relief, in law and equity, to which plaintiffs may be entitled.

Respectfully submitted,

**The Law Offices of Thomas J. Henry**
512 Starr Street
Corpus Christi, Texas 78401
Phone: (361) 985-0600
Fax: (361) 985-0601

By:

Thomas J. Henry
State Bar No.: 09484210

-11-

# Exhibit 6

CAUSE NO. _____

| | | |
|---|---|---|
| UNAUTHORIZED PRACTICE OF | § | IN THE DISTRICT COURT |
| LAW COMMITTEE | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | OF NEUCES COUNTY, TEXAS |
| | § | |
| MAURICIO R. CELIS, CGT LAW GROUP | § | |
| INTERNATIONAL, LLP, T. CHRISTOPHER | § | |
| PINEDO, JAMES H. HADA, DOUGLAS | § | |
| RAY GWYTHER, JR., THOMAS | § | |
| GUAJARDO, AND VANCE OWEN | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW, Unauthorized Practice Law Committee (hereinafter "UPLC"), Plaintiff herein, complaining of Maurico Celis (hereinafter "Celis"), CGT Law Group International, LLP (hereinafter "CGT"), T. Christopher Pinedo (hereinafter "Pinedo"), James H. Hada (hereinafter "Hada"), Douglas Ray Gwyther, Jr. (hereinafter "Gwyther"), Thomas Guajardo (hereinafter "Guajardo") and Vance Owen (hereinafter "Owen"), Defendants herein, and for cause of action would respectfully show unto the Court the following:

### I.
### PARTIES

UPLC is a standing committee of the Supreme Court of Texas and a governmental entity created by the Texas legislature pursuant to *Tex. Gov't Code Ann.* § 81.103 and 81.104 (Vernon 2005); the Committee's members are appointed by the Honorable Supreme Court of the State of Texas. The Committee is charged with enforcement of the law in prohibiting the unauthorized practice of law in Texas.

Celis is a Texas resident and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

PLAINTIFF'S ORIGINAL PETITION – PAGE 1

11/29/2007 15:08 FAX  2142194218          TICER/FELL LAW                    ⌀004/012

CGT is an illegal and purported registered Texas Limited Liability Partnership who may be served with process by serving CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

Pinedo is a Texas resident and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

Hada is a Texas resident and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

Gwyther is a Texas resident and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

Guajardo is a nonresident who may be served through the Texas Secretary of State located at 1019 Brazos St., James E. Rudder Bldg., Austin, Texas 78701. Process may then be forwarded to Guajardo at 1001 North Central Avenue No.600, Phoenix, Arizona 85004.

Owen is a Texas resident and may be served with process at 802 North Caranahua Street, Suite 1650, Corpus Christi, Texas 78470.

## II.
## JURISDICTION AND VENUE

The Court has jurisdiction over all the Defendants, except Owen, as each is a member of a partnership doing business in Texas or is registered to do business in Texas. Celis, Pinedo, Hada, Gwyther and Owen are Texas residents.

Venue is proper pursuant to *Tex. Civ. Pract. & Rem Code Ann.* §15.0002(a)(1), (2), and (3).

## III.
## DISCOVERY LEVEL

This is a Level 3 Case.

NOV 29 2007 15:17                              2142194218      PAGE.04

# IV.
## BACKGROUND

Celis is not licensed to practice law in any jurisdiction. Celis formed CGT to engage in the practice of law. CGT was then registered in Texas for the purpose of the practice of law. A copy of partnership agreement is hereto attached as "Exhibit 1".

Celis, as principal partner with absolute actual and financial control of CGT, took on other participating partners in small percentages. These partners were attorneys licensed in various jurisdictions: Pinedo (Texas), Hada (Texas), Gwyther (Texas), and Guajardo (Texas and Arizona). Celis ran CGT as a law firm collecting legal fees by and for CGT with these participating partners. *See Testimony of Maurice Celis* hereto attached as Exhibit 2 pp. 25-30, 34-36, and 40. *See* Affidavit of Raul Tapia hereto attached as Exhibit 3. See e-mail from Chris Pinedo to Mike Dobbs hereto attached as Exhibit 4.

Celis likewise engaged in various acts and practices which constitute the practice of law including representing himself as an attorney, advising persons and law entities of their rights and duties under the law, advising clients to accept and/or reject sums of money for claims they may have, representing himself as a lawyer permitted to practice law in Texas and elsewhere, negotiating and/or making claims on behalf of person and/or entities, charging and receiving fees for legal services, determining which cases to accept or reject and which matters to fund, discussing strategy on legal matters, signing settlement agreements as an attorney, and making demands on others for claims of CGT "clients". Statement of Paloma Steele hereto attached as Exhibit 5. Celis has subsequently been indicted for representing himself as an attorney. Indictments of Celis hereto attached as Exhibit 6.

Pinedo, Hada, Gwyther, and Guajardo shared legal fees with Celis, a nonlawyer, and formed a financial relationship with a nonlawyer to share legal fees and/or practice law in Texas.

PLAINTIFF'S ORIGINAL PETITION – PAGE 3

These Defendants likewise failed to supervise Celis and permitted Celis to control and/or own CGT. *See* Exhibits 1 and 2.

Defendants Celis, CGT, Pinedo, Gwyther, and Hada continue to attempt to circumvent unauthorized practice of law restrictions. Most recently, in a pending lawsuit which was purportedly already settled where CGT had contracted with one or more of the Plaintiffs, Defendants Pinedo, Gwyther, and Hada attempted to have the Plaintiff(s) sign a new fee contract with these three Defendants to avoid an illegal contract and then share legal fees with CGT and/or Celis. Transcript of hearing hereto attached as "Exhibit 7".

Owen formed various financial relationships with Celis for the purpose of sharing legal fees. Owen likewise failed to supervise Celis and consented to Celis practicing law.

## V.
## MAURICIO R. CELIS

UPLC would show that Defendant Celis has engaged and/or continues to engage in acts constituting the unauthorized practice of law.

UPLC would show that Celis is prohibited by the *Tex. Gov't Code Ann.* § 81.101 and 81.102 (Vernon 2005) from engaging in the practice of law in Texas. Nevertheless, Celis has engaged in a pattern of conduct and action which constitutes the practice of law. UPLC says that such acts or practices of Celis of which UPLC complains include:

(1) representing himself as an attorney authorized to practice law in Texas;

(2) contracting with persons to provide legal services, including but not limited to representation of individuals in claims or lawsuits in Texas;

(3) advising, expressly and/or implicitly, persons as to their rights and remedies concerning various matters, claims, and/or lawsuits in Texas;

(4) employing attorneys as employees and/or partners to represent third parties in claims and/or litigation matters;

PLAINTIFF'S ORIGINAL PETITION – PAGE 4

11/29/2007 15:08 FAX 2142194218          TICER/FELL LAW                              007/012

(5) encouraging, advising, and/or offering legal advice expressly or impliedly on pending litigation matters, including discussing litigation strategy;

(6) advising, expressly and/or impliedly, persons of their rights, duties, and privileges under the law in Texas;

(7) generally engaging in the practice of law in Texas;

(8) furnishing legal services to third parties;

(9) collecting and sharing legal fees for matters relating to the practice of law in Texas; and

(10) forming an arrangement with attorneys to share legal fees in Texas.

## VI.
## CGT LAW GROUP INTERNATIONAL L.L.P.

CGT is a purported limited liability partnership created and registered for illegal purposes: the practice of law, the sharing of legal fees, and control of a "lawfirm" by and with a nonlawyer, all in Texas. Celis has acknowledged and admitted he is CGT with complete control. It is Celis through CGT who decides whether to share legal fees with others.

CGT is and/or has engaged in the unauthorized practice of law because of Celis and his conduct. Pinedo, Hada, Gwyther, and Guajardo have aided and abetted CGT's unauthorized practice of law.

## VII.
## OTHER CGT PARTICIPATING PARTNERS

The conduct of Pinedo, Hada, Gywther, and Guajardo demonstrates each has individually and/or collectively aided and abetted the unauthorized practice of law. These attorneys have shared legal fees with Celis.

## VIII.
## OWEN

The conduct of Owen as described above demonstrates aiding and abetting the unauthorized practice of law. Owen has shared legal fees in Texas with Celis.

PLAINTIFF'S ORIGINAL PETITION – PAGE 5

## IX.
## TEMPORARY RESTRAINING ORDER

Plaintiff incorporates all the allegations in Paragraphs I–VIII as if fully set herein.

Plaintiff would show that, but for the immediate intervention by this Court, the consuming public will/have been injured by the acts of the Defendants. In particular, the Defendants have violated statutory provisions which prohibit the unauthorized practice of law and may continue to do so. Additionally, the Defendants will continue to receive monies which are illegal and per se illegal. The violations of these statutes entitle UPLC to a temporary restraining order.

Such evidence in support of the Temporary Restraining Order (hereinafter "TRO") includes but is not limited to:

1.  Celis's testimony that he shares legal fees;

2.  Celis's testimony that he has complete control over CGT;

3.  Celis's indictment for the unauthorized practice of law;

4.  The Defendants attempt to wire around their illegal arrangement by attempting to receive legal fees for a matter already settled by having the "client" sign a new fee contract;

5.  The CGT website which notes that CGT is a lawfirm and all the members are partners. *See* website of the CGT hereto attached as "Exhibit 8";

6.  The claim by CGT to collect legal fees in lawsuits including a matter on appeal. See Appellate Brief of CGT hereto attached as "Exhibit 9";

7.  The evidence that Celis acted as a lawyer; and

8.  CGT and its partners are a purported lawfirm and engaged in the practice of law in Texas.

PLAINTIFF'S ORIGINAL PETITION – PAGE 6

11/29/2007 15:10 FAX  2142194218          TICER/FELL LAW                    ☒009/012

Plaintiff prays the Court enter a TRO pending further hearing and orders by the Court. The TRO should prohibit the Defendants from the following:

    a.    prohibiting CGT from collecting, soliciting, asserting, and/or receiving any fees including legal fees for which it might have any claimed fee interest;

    b.    disbursing any funds from any account of CGT that constitute the receipt of legal fees and/or expenses; however, CGT may disburse purported "client's" share of any monies received.

    c.    Collecting and/or sharing any legal fees with Celis and/or between Celis and any other Defendant regardless of whether it is characterized as any loan and/or expense repayment;

    d.    Destroying, secreting, altering, and/or compromising any financial records of any Defendant including bank account records and income tax records;

    e.    Contracting with persons to represent them with regard to claims and/or causes of action where Celis and/or CGT may receive any financial remuneration regardless of how it is characterized;

    f.    Advising persons as to their rights and advisability of making claims and instituting lawsuits pursue such claims in Texas (Celis and CGT);

    g.    Advising persons of their rights, duties, and privileges under the law in Texas (Celis and CGT);

    h.    Misrepresenting Celis's status and/or authorization to practice law in this State or any other jurisdiction;

    i.    Collecting any legal fees or expenses which will be shared with Celis and/or CGT; and

<u>PLAINTIFF'S ORIGINAL PETITION – PAGE 7</u>

11/29/2007 15:10 FAX  2142194218         TICER/FELL LAW                      @010/012

j.       Creating any arrangement in Texas and/or performable in Texas in which legal

fees and expenses will be shared with nonlawyers.

Said temporary restraining order should also be issued to prohibit Defendants Pinedo,

Hada, Gwyther, Guajardo and Owen from aiding and abetting the unauthorized practice as

referenced above.

## X.
## TEMPORARY AND PERMANENT INJUNCTION

Plaintiff incorporates all paragraphs above as if fully set out herein.

Given the Defendants' statutory violations and the protection of the public, Plaintiff is

entitled to a temporary and permanent injunction against these Defendants for the acts and

practices complained of including those in Paragraph IX above.

## XI.
## DISGORGEMENT

For further cause of action Plaintiff incorporates the allegations above and would show

the Court that the Defendants have derived substantial sums of money from their illegal

activities.  The precise amount is not known at this time.  These activities constitute the

unauthorized practice of law and are illegal per se.  Defendants should be required to account for

such monies and profits because of this illegal activity.  Plaintiff requests this Court appoint a

special master to conduct an accounting of the financial affects of Defendants, and that the Court

require Defendants to account for such monies.  Such monies should then be returned to persons

who paid these Defendants' illegal fees and expenses.

## XII
## REQUEST FOR EXPEDITED DISCOVERY

Because of the Defendants' activities and Plaintiff's request for injunction relief, including

a temporary injunction, which requires certain hearings within a limited time frame, Plaintiff

PLAINTIFF'S ORIGINAL PETITION – PAGE 8

requests that the Court shorten time for discovery, giving each side five (5) days to respond to all

written discovery, five (5) days for deposition on written questions, and oral depositions on three

(3) days notice. UPLC hereby requests that the Court immediately order the depositions of

Celis, Pinedo, Gwyther, and Hada and order these Defendants to produce immediately all

financial records including bank account records, income tax returns, and any settlement

statements of CGT signed by CGT "clients".

WHEREFORE, PREMISES CONSIDERED, UPLC prays the Defendants be cited to

appear and answer herein as requested by law and that, upon final hearing thereof:

(1)    UPLC have judgment of and from the Defendants as hereinabove prayed for;

(2)    the Court grant UPLC a Temporary Restraining Order;

(3)    the Court grant UPLC a Permanent and/or Temporary Injunction;

(4)    costs of court; and

(5)    such other and further relief, whether regular or special, in law or in equity, as UPLC
       shows itself to be justly entitled.

Respectfully submitted,

LAW OFFICE OF MARK A. TICER

By: _____
    Mark A. Ticer
    State Bar #20018900
    3300 Oak Lawn Ave., Suite 700
    Dallas, Texas 75219
    (214) 219-4220
    (214) 219-4220 (FAX)

ATTORNEY FOR PLAINTIFF

PLAINTIFF'S ORIGINAL PETITION – PAGE 9

11/29/2007 15:10 FAX  2142194218          TICER/FELL LAW                    ☎012/012

CAUSE NO. _____

| UNAUTHORIZED PRACTICE OF | § | IN THE DISTRICT COURT |
| LAW COMMITTEE | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | OF NEUCES COUNTY, TEXAS |
| | § | |
| MAURICIO R. CELIS, CGT LAW GROUP | § | |
| INTERNATIONAL, LLP, T. CHRISTOPHER | § | |
| PINEDO, JAMES H. HADA, DOUGLAS | § | |
| RAY GWYTHER, JR., THOMAS | § | |
| GUAJARDO, AND VANCE OWEN | § | _____ JUDICIAL DISTRICT |

**VERIFICATION**

§
§
§

       BEFORE ME, the undersigned authority, on this day personally appeared Mark A. Ticer,

who, after being duly sworn, stated under oath that he is the attorney for Plaintiff in this action

and that he has read the above Plaintiff's Original Petition; and that every statement contained in

the Plaintiff's Original Petition is within his personal knowledge and is true and correct, or

alternatively, is based on information and belief.

_____
Mark A. Ticer

     SUBSCRIBED AND SWORN TO BEFORE ME by the said Affiant this ___ day

of _____, 2007.

VERIFICATION – PLAINTIFF'S ORIGINAL ANSWER - Solo

NOV 29 2007 15:19                                    2142194218          PAGE.12

# Exhibit 7

NO. D-1-GN-07-002272

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
|     Plaintiff, | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| CGT LAW GROUP INTERNATIONAL, | § | |
| L.L.P., and MAURICIO R. CELIS, | § | |
|     Defendants | § | 419th JUDICIAL DISTRICT |

Filed in The District Court
of Travis County, Texas

OCT 2 4 2007

At
Amalia Rodriguez-Mendoza, Clerk

## PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND ASSET FREEZE, TEMPORARY INJUNCTION AND PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF THIS COURT:

The State of Texas, acting through Texas Attorney General Greg Abbott (the "Attorney General"), on behalf of the State of Texas, complains of CGT Law Group International, L.L.P., and Mauricio Rodriguez Celis ("Defendants"), and for cause of action would show the Court as follows:

### DISCOVERY CONTROL PLAN

1. Discovery shall be conducted under Level 2 of rule 190.3 of the Texas Rules of Civil Procedure.

### AUTHORITY

2. The Attorney General sues in the name of the State of Texas under the authority granted by §9.051 (a) (2) of the TEX. BUS. ORG. CODE, whereby the Attorney General is authorized to apply to enjoin a foreign limited liability partnership or its agent from transacting business in Texas if the entity's registration is obtained on the basis of a false or misleading representation. Additionally, the Attorney General sues under §17.47 of the Texas Deceptive Trade Practices – Consumer Protection Act, TEX. BUS. & COM. CODE § 17.41 et seq. (West 2002, Supp. 2007) (the "DTPA"),

permitting the Attorney General to bring an action to restrain the use of any method, act or practice declared to be unlawful by TEX. BUS. & COM. CODE § 17.46, where such proceedings are in the public interest.

## DEFENDANTS

3. Defendant CGT Law Group International, L.L.P., ("CGT") is a foreign limited liability partnership registered with the Texas Secretary of State. Defendant CGT has an office in Corpus Christi, Texas and is doing business in the State of Texas. **Defendant CGT may be served with citation and process through its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.**

4. Defendant Mauricio Celis ("Celis") is an individual residing in Corpus Christi, Texas, and is doing business in the State of Texas under his own name and through the purported law firm of "CGT Law Group International." Defendant Celis is the "Capital Partner" of CGT, and therefore is an agent of the partnership. **Defendant Celis may be served with citation and process at his place of business at 500 North Water Street, Corpus Christi, Texas, or at his place of residence at 5938 Oso Parkway, Corpus Christi, Texas.**

## VENUE

5. Venue of this suit is proper in Travis County, Texas, under §9.053 of the TEX. BUS. ORG. CODE, which provides that a suit under §9.051 of the TEX. BUS. ORG. CODE may be brought in Travis County. Further, pursuant to TEX. BUS. & COM. CODE § 17.47 (b), venue lies in Travis County because events giving rise to this action occurred in Travis County and/or because Defendants have done business in Travis County.

## PUBLIC INTEREST FOR DTPA ACTION

6. The Attorney General has reason to believe that the Defendants have engaged and will continue to engage in the unlawful practices set forth below. Accordingly, there is reason to believe that Defendants have caused and will continue to cause immediate and irreparable injury, loss and damage to the State of Texas and to the public, and will also cause adverse effects to legitimate business enterprises which lawfully conduct trade and commerce in the State of Texas.

## TRADE AND COMMERCE

7. Defendants have, at all times described herein, engaged in conduct constituting "trade" and "commerce," as those terms are defined in §17.45(6) of the DTPA.

## NOTICE BEFORE DTPA SUIT NOT GIVEN

8. There is good cause to believe that Defendants would evade service of process, destroy relevant records, and secrete assets if prior notice of this suit were given. Additionally, there is good cause to believe that immediate and irreparable injury, loss, or damage would occur as a result of a delay in seeking injunctive relief enjoining Defendants from continued violations of the DTPA. Namely, they will continue to engage in the unauthorized practice of law and thereby cause immediate and irreparable injury, loss, or damage to persons who receive their services. Specifically, Defendants will continue to solicit customers, give legal services and/or advice to those consumers, and accept fees for those services when they are either not licensed to practice law in the State of Texas or are prohibited from doing so by Texas law. Accordingly, as authorized by § 17.47(a) of the DTPA, the Attorney General has filed this lawsuit without notice to Defendants.

## FACTUAL ALLEGATIONS

9. Defendant CGT is a foreign limited liability partnership that was formed under the laws of District of Columbia Uniform Partnership Act on or about November 1, 2005. On December 15, 2005, CGT filed for registration with the Texas Secretary of State to transact business in the State of Texas. CGT's application for registration stated that the partnership engages in the "provision of legal services."

10. The CGT partnership agreement states that the partners therein have associated together for the purpose of engaging in "multi-jurisdictional general practice of law." Defendant Mauricio Celis is a founding partner of the purported law firm CGT Law Group International, L.L.P., and is named as the 100% "Capital Partner." However, Celis is not licensed to practice law in any jurisdiction in the United States. Moreover, the partnership agreement states that "[a]ll opportunities for legal representation that arise or are presented to a Partner shall be presented to the Capital Partner for acceptance or consideration." The agreement further provides that "no Partner may participate in any legal matter, opportunity, case or referral fee for compensation without the written consent of the Capital Partner," namely Celis.

11. The CGT partnership agreement further provides that the partnership "will engage in the business of practicing law, and certain of its income will be generated directly from receipts or collections from the settlement, referral, forwarding, or judgments rendered in litigation matters or cases in which the Partnership or any of its Partners have an interest." The partnership agreement also states that the partnership "will distribute net profits to the Capital Partner [Celis] at the time and in the amounts determined by the Capital Partner."

12. CGT violates Texas law by permitting a non-lawyer, Celis, to share legal fees that are

*Plaintiff's Original Petition*
STATE OF TEXAS V. CGT LAW GROUP INTERNATIONAL, L.L.P., AND MAURICIO R. CELIS                                   Page 4

paid to CGT. Additionally, CGT and Celis have referred legal matters to other attorneys in Texas, who in turn have paid referral fees to CGT and Celis. These referral fees have been shared with Celis, which is unlawful.

13. Defendant Celis has represented to the public that he is an attorney or is otherwise authorized to practice law in Texas. Further, Celis solicits prospective clients for legal services and refers clients and prospective clients to other lawyers and law firms. These activities constitute the unauthorized practice of law.

14. The name CGT Law Group International, L.L.P., is not named after any individual persons, and therefore is an unlawful trade name for a purported "law firm."

## ACTION FOR VIOLATION OF BUSINESS ORGANIZATIONS CODE

15. In its application for registration to do business in Texas, CGT stated that the partnership engages in the "provision of legal services." Because CGT was not and has not ever been authorized to engage in the practice of law in Texas, CGT's registration was obtained on the basis of a false or misleading representation. Accordingly, the Attorney General hereby sues to enjoin CGT from transacting business in the State of Texas. Likewise, the Attorney General sues to enjoin defendant Celis, as an agent of CGT, from purporting to engage in the practice of law.

## ACTION FOR VIOLATIONS OF THE DTPA

16. The State of Texas and the Attorney General have reason to believe that Defendants, in the course and conduct of trade and commerce, have engaged in and will continue to engage in false, misleading, and deceptive acts and practices unless enjoined by this Court from doing so. Specifically, Defendants have directly and indirectly engaged in the following false, misleading and deceptive acts and practices declared to be unlawful by the DTPA:

A. advertising, offering or providing a service that constitutes the unauthorized practice of law, and therefore engaging in an act or practice that is false, misleading, or deceptive, in violation of §17.46(a) of the DTPA;

B. causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of services, in violation of § 17.46(b)(2) of the DTPA, by representing that Defendants' services possess the certification or qualifications necessary to provide legal services to Texas consumers and to refer clients to other lawyers and law firms in exchange for referral fees;

C. causing confusion or misunderstanding as to affiliation, connection, or association with another in violation of § 17.46(b)(3) of the DTPA, by falsely representing that Defendants may provide legal services to Texas consumers and to refer clients to other lawyers and law firms in exchange for referral fees;

D. representing that services have sponsorship, approval, or characteristics which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not have, in violation of § 17.46(b)(5) of the DTPA, by falsely representing that Defendants possess the certification or qualifications necessary to provide legal services to Texas consumers and to refer clients to other lawyers and law firms in exchange for referral fees;

E. representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, in violation of § 17.46(b)(12) of the DTPA, by representing to consumers that Defendants are authorized to provide legal services to Texas consumers, when Defendants are prohibited by law from doing so;

F. representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, in violation of § 17.46(b)(12), by

representing that Defendants may refer clients to other lawyers and law firms in exchange for referral fees, when Defendants are prohibited by law from doing so;

G. failing to disclose information concerning services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, in violation of § 17.46(b)(24), by failing to disclose to consumers that Defendants are not licensed or permitted to provide legal services to Texas consumers, with the intention of inducing consumers into transactions which they would not have entered into had this information been disclosed; and

H. failing to disclose information concerning services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, in violation of § 17.46(b)(24), by failing to disclose to consumers that Defendants are not licensed or permitted to refer clients to other lawyers and law firms in exchange for referral fees, with the intention of inducing consumers into transactions which they would not have entered into had this information been disclosed.

17. By means of the foregoing unlawful acts and practices, Defendants have acquired money or other property from identifiable persons to whom such money or property should be restored.

## INJURY TO CONSUMERS

18. Defendants have, by means of unlawful acts and practices, obtained money or other property from identifiable persons to whom such money or property should be restored.

## DISGORGEMENT

19.  The Defendants' assets are subject to the equitable remedy of disgorgement, which is

the forced relinquishment of all benefits that would be unjust for Defendants to retain, including all

ill-gotten gains and benefits or profits that result from Defendants putting fraudulently converted

property to a profitable use. Defendants should be ordered to disgorge all monies fraudulently taken

from individuals and businesses together with all of the proceeds, profits, income, interest and

accessions thereto. Such disgorgement should be for the benefit of victimized consumers and the

State of Texas.

## CONSTRUCTIVE TRUST

20.  A constructive trust should be placed upon all of Defendants' assets in favor of all

consumers victimized by Defendants and in favor of the State of Texas until this Court determines

the appropriate amount of restitution and disgorgement.

## REPATRIATION OF ASSETS

21.  After due notice and a hearing, the court should order that all of Defendants' assets

situated outside the jurisdiction of this Court be deposited or repatriated into an appropriate financial

institution within the jurisdiction of this Court.

## TRIAL BY JURY

22.  Plaintiff herein requests a jury trial pursuant to TEX. R. CIV. P. 216.

## APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION AND PERMANENT INJUNCTION

23.  Defendants' unlawful conduct has caused and will continue to cause immediate and

irreparable injury, loss and damage to the State of Texas and to the public.  Defendants have taken

in large sums of money from consumers in the form of "legal fees" or "attorney's fees." Defendants'

assets are subject to dissipation and secretion and therefore should be frozen pending final trial so

restitution can be made and full and final relief can be awarded at final trial. Accordingly, Plaintiff

requests immediate relief by way of a Temporary Restraining Order and Temporary Injunction to

preserve and protect Defendants' assets from dissipation so that consumers from whom Defendants

illegally took legal fees can receive the restitution to which they are entitled.

24.   In addition, the State brings this action for a temporary restraining order under authority

granted by TEX. BUS. & COM. CODE ANN. § 17.47(a), which states:

> Whenever the consumer protection division has reason to believe that any person is
> engaging in, has engaged in, or is about to engage in any act or practice declared to
> be unlawful by this subchapter, and that the proceedings would be in the public
> interest, the division may bring an action in the name of the state against the person
> to restrain by temporary restraining order, temporary injunction, or permanent
> injunction the use of such method, act or practice.

Accordingly, because the State has shown that the Defendants are engaging in, have engaged in, or

are about to engage in a deceptive trade practice, and that this action is in the public's interest, the

Plaintiff requests immediate relief by way of a Temporary Restraining Order and Temporary

Injunction to enjoin the Defendants from such conduct.

25.   In support of this request for injunctive relief, the State relies upon the attached affidavit

of Mary K. Vinson, and the documents attached thereto. (State's Exhibit 1)

### REQUEST TO CONDUCT DISCOVERY PRIOR TO
### TEMPORARY INJUNCTION HEARING

26.   Plaintiff requests leave of this Court to conduct telephonic, oral, written and other

depositions (containing requests for production) of witnesses prior to any scheduled temporary

injunction hearing and prior to Defendants' answer date. There are a number of consumers and other

witnesses who may need to be deposed prior to any scheduled temporary injunction hearing. Any depositions, telephonic or otherwise, would be conducted with reasonable, shortened notice to Defendants and their attorneys, if known.

## PRAYER

WHEREFORE, because Defendants have engaged in the unlawful acts and practices described above, the Plaintiff prays that Defendants be cited to appear and answer herein, and for the following relief:

A. for civil penalties of $20,000.00 per violation to the State of Texas for violations of the DTPA;

B. for restitution or restoration of all money or other property taken from identifiable persons by means of unlawful acts or practices;

C. for an order from this Court to adjudge that all fines, penalties or forfeitures payable to and for the benefit of the State are not dischargeable under bankruptcy pursuant to 11 U.S.C. §523(a)(7);

D. for attorneys' fees and costs pursuant to TEX. GOV'T CODE ANN. §402.006(c);

E. for pre-judgment interest on all awards of restitution, damages, and civil penalties as provided by law;

F. for an order mandating that Defendants' assets be repatriated into the jurisdiction of this court, that Defendants' assets be subject to disgorgement, and that an equitable lien be placed upon Defendants' property for the benefit of consumer victims;

G. for injunctive relief prohibiting Defendants, Defendants' successors, assigns, officers, agents, servants, employees and attorneys and any other person in active concert or

*Plaintiff's Original Petition*
STATE OF TEXAS V. CGT LAW GROUP INTERNATIONAL, L.L.P., AND MAURICIO R. CELIS                                        Page 10

participation with Defendants from engaging in the following acts or practices:

       1.  transferring, concealing, withholding, destroying, mutilating, altering, falsifying, or removing from the jurisdiction of this Court any books, records, documents, invoices, or other written materials relating to Defendants' business which are in Defendants' possession, custody, or control, except in response to further orders or subpoenas in this cause;

       2.  transferring, hypothecating, concealing, encumbering, depleting, modifying, dissipating, or removing from the jurisdiction of this Court any money, stocks, bonds, assets, notes, equipment, funds, accounts receivable, policies of insurance, trust agreements, or other property, real, personal or mixed, wherever situated, belonging to or owned by, in possession of, or claimed by Defendants;

       3.  giving, providing, or offering advice and counsel to any person legal counsel, until such time as Defendants either become attorneys licensed to practice in the State of Texas, and/or are in compliance with the Texas Disciplinary Rules of Professional Conduct;

       4.  falsely representing to any person, expressly or by implication, that Defendants can or will provide Texas consumers with legal services;

       5.  falsely representing that Defendants Celis and CGT may lawfully refer clients to other lawyers and law firms in exchange for referral fees;

       6.  soliciting, accepting, or contracting with Texas consumers for any type of legal services to consumers, until such time as Defendants are in compliance with the Texas Disciplinary Rules of Professional Conduct;

       7.  referring clients or prospective clients to other attorneys and law firms in exchange for referrals fees of any kind;

8. advertising legal services of any kind via the internet, radio, TV, electronic broadcast or print (i.e., newspapers, magazines, pamphlets, fliers, etc.) until Defendants have been licensed to practice in the State of Texas, and are in compliance with the Texas Disciplinary Rules of Professional Conduct;

9. failing to disclose to consumers that Defendants are not licensed or permitted to provide legal services to Texas consumers, with the intention of inducing consumers into transactions which they would not have entered into had this information been disclosed;

10. failing to disclose to consumers that Defendants are not licensed or permitted to refer clients to other lawyers and law firms in exchange for referral fees, with the intention of inducing consumers into transactions which they would not have entered into had this information been disclosed; and

H. for any other relief to which the State may be justly entitled under the law.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

JEFF L. ROSE
Deputy First Assistant Attorney General



PAUL D. CARMONA
Chief, Consumer Protection and
Public Health Division
State Bar No. 03824020
Post Office Box 12548
Austin, Texas 78711-2548
(512) 936-1479 (telephone)
(512) 473-8301 (facsimile)

MARY T. HENDERSON
Deputy Chief, Consumer Protection and
Public Health Division
State Bar No. 19713750
Post Office Box 12548
Austin, Texas 78711-2548
(512) 475-4185 (telephone)
(512) 473-8301 (facsimile)

PHILLIP LEDBETTER
Assistant Attorney General
State Bar No. 24041316
Post Office Box 12548
Austin, Texas 78711-2548
(512) 936-1666 (telephone)
(512) 473-8301 (facsimile)

**ATTORNEYS FOR STATE OF TEXAS**

10.16

NO. D-1-GV-07-002272

| | | |
|---|---|---|
| THE STATE OF TEXAS,<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§ | TRAVIS COUNTY, TEXAS |
| CGT LAW GROUP INTERNATIONAL,<br>L.L.P., and MAURICIO R. CELIS,<br>Defendants. | §<br>§<br>§ | 419th JUDICIAL DISTRICT |

Filed in The District Court
of Travis County, Texas

OCT 2 6 2007 _____ M.

Amalia Rodriguez-Mendoza, Clerk

**PLAINTIFF'S FIRST AMENDED EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER AND FOR EXPEDITED DISCOVERY**

TO THE HONORABLE JUDGE OF THIS COURT:

The State of Texas, acting through Texas Attorney General Greg Abbott, files this First
Amended Emergency Motion for Temporary Restraining Order and for Expedited Discovery,
complaining of CGT Law Group International, L.L.P., and Mauricio Rodriguez Celis ("Defendants"),
and seeks the entry of a Temporary Restraining Order and Order for Expedited Discovery as set forth
below:

**I. RESTRAINING ORDER IS REQUIRED TO
PROTECT THE PUBLIC FROM DECEPTIVE PRACTICES**

1.      The State of Texas asks this Court to restrain Defendants from the illegal acts of
practicing law without a license.

2.      Defendant Celis has fraudulently solicited clients in personal injury cases, referring
many of these cases for a fee, and has personally profited from these cases even though he is not
licensed to practice law in Texas or anywhere else in the United States. Accordingly, CGT has
operated illegally by allowing Celis, a non-lawyer, to share legal fees.

3.      Due to the deceptive trade practices and unauthorized legal practice of Defendants,
consumers in Texas have been deceived and bilked out of hundreds of thousands, and possibly

millions, of dollars. Consumers who turned to Defendants for legal help were induced to pay legal fees or referral fees that Defendants had no legal authority to collect. To the extent Defendant Celis provided purported legal advice and counsel, people who needed a lawyer's help were tricked into taking advice from a non-lawyer. The consumers of Texas need an Order from this Court prohibiting these Defendants from engaging in any further misrepresentations and deceptive practices, and preserving documents and records that will allow improper fees to be refunded to the consumers from whom they were extracted.

4.    Pursuant to this statutory Deceptive Trade Practices Act ("DTPA") cause of action, the State is not required to show imminent risk of irreparable harm in order to secure injunctive relief. *David Jason West, et al. v. State of Texas,* 212 S.W.3d 513, 519 (Tex. App.-Austin 2006). There is, however, reason to believe that Defendants have caused and will continue to cause irreparable injury, loss and damage to the citizens of the State of Texas, and will also cause adverse effects to legitimate business enterprises which lawfully conduct trade and commerce in the State of Texas.

## II. STATUTORY AUTHORITY

5.    This request for a temporary restraining order is filed pursuant to the provisions of the DTPA, and in the interest of protecting consumers from a continuing pattern of illegal and deceptive practices by Defendants. The Attorney General's Office brought this suit, in part, under §17.47 of the Texas Deceptive Trade Practices – Consumer Protection Act, TEX. BUS. & COM. CODE §17.41, *et seq.* (West 2002, Supp. 2007) (the "DTPA"), permitting the Attorney General's Office to bring an action to restrain the use of any method, act or practice declared to be unlawful by TEX. BUS. & COM. CODE §17.46, where such proceedings are in the public interest.

PLAINTIFF'S FIRST AMENDED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
AND FOR EXPEDITED DISCOVERY                                              Page 2

OCT 26 2007 16:49                          512 320 8677        PAGE.03

## III. TRADE AND COMMERCE

6.      Defendants have, at all times described herein, engaged in conduct constituting "trade" and "commerce," as those terms are defined in §17.45(6) of the DTPA. They have provided legal services, or participated in or facilitated the provision of legal services.

## IV. FACTUAL ALLEGATIONS IN SUPPORT OF TRO

7.      Defendant CGT is a foreign limited liability partnership that was allegedly formed under the laws of District of Columbia Uniform Partnership Act on or about November 1, 2005. On December 15, 2005, CGT filed for registration with the Texas Secretary of State to transact business in the State of Texas. CGT's application for registration stated that the partnership engages in the "provision of legal services."

8.      The CGT partnership agreement states that the partners therein have associated together for the purpose of engaging in "multi-jurisdictional general practice of law." However, even though Defendant Mauricio Celis is not licensed to practice law in any jurisdiction in the United States, he is named as the only "Capital Partner" and is given sole responsibility for directing the firm's activities. The partnership agreement states that "[a]ll opportunities for legal representation that arise or are presented to a Partner shall be presented to the Capital Partner for acceptance or consideration." The agreement further provides that "no Partner may participate in any legal matter, opportunity, case or referral fee for compensation without the written consent of the Capital Partner," namely Celis.

9.      The CGT partnership agreement further provides that the partnership "will engage in the business of practicing law, and certain of its income will be generated directly from receipts or collections from the settlement, referral, forwarding, or judgments rendered in litigation matters or cases in which the Partnership or any of its Partners have an interest." The partnership

agreement also states that the partnership "will distribute net profits to the Capital Partner [Celis] at the time and in the amounts determined by the Capital Partner." Aside from small percentages given to the "Income Partners," all legal fees collected by CGT belong to Celis as Capital Partner.

10.    CGT violates Texas law by permitting a non-lawyer, Celis, to share legal fees that are paid to CGT. Additionally, CGT and Celis have referred legal matters to other attorneys in Texas, who in turn have paid referral fees to CGT and Celis. These referral fees have been shared with Celis, which is unlawful.

11.    Defendant Celis has represented to the public that he is an attorney or is otherwise authorized to practice law in Texas. Further, Celis solicits prospective clients for legal services and refers clients and prospective clients to other lawyers and law firms. These activities constitute the unauthorized practice of law.

12.    According to Celis' sworn testimony in other legal proceedings, the name CGT Law Group International, L.L.P., is not named after any individual persons, and therefore is an unlawful trade name under Texas law for a purported "law firm." This group is illegally operating in Texas, in violation of Texas law and in violation of the Texas Rules of Professional Conduct and relevant caselaw. (*See* Tex. Gov't Code §81.101, Tex. Discip. Rules of Prof. Conduct §7.01(a); *Garcia v. Commission for Lawyer Discipline*, 2007 WL 2141246 (Tex.App. - Austin 2007)(lawyer Garcia who provided legal services to third parties under the name Cristo Vive violated the prohibition against practicing under a trade name in Texas).

13.    Accordingly, the Attorney General's Office seeks to restrain and enjoin Defendant Celis, either independently or as an agent of CGT, from purporting to engage in the practice of law. The Office of the Attorney General seeks to immediately restrain and enjoin CGT and Celis from

deceiving consumers by representing in any way that Celis is authorized to practice law in the state of Texas. Also, the Office of the Attorney General seeks an Order protecting and preserving all documents and records that could assist in identifying improper legal and referral fees and the consumers to whom they might be returned.

14.   Accordingly, because the State has shown that the Defendants are engaging in, have engaged in, or are about to engage in a deceptive trade practice, and that this action is in the public's interest, the Plaintiff requests immediate relief by way of a Temporary Restraining Order to restrain and enjoin the Defendants from such conduct.

15.   In support of this request for injunctive relief, the State relies upon the Affidavit of Mary K. Vinson, attached to the State's Original Petition, and the documents attached thereto. (State's Exhibit 1).

## V. MOTION FOR EXPEDITED DISCOVERY PRIOR TO TEMPORARY INJUNCTION HEARING

16.   Plaintiff requests leave of this Court to conduct telephonic, oral, written and other depositions (containing requests for production) of witnesses prior to any scheduled temporary injunction hearing and prior to Defendants' answer date. There are a number of consumers and other witnesses who may need to be deposed prior to any scheduled temporary injunction hearing. Any depositions, telephonic or otherwise, would be conducted with reasonable, shortened notice to Defendants and their attorneys, if known.

## PRAYER

WHEREFORE, Plaintiff prays that this Court immediately enter a Temporary Restraining Order, and for such other relief to which the State may be justly entitled under the law.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

JEFF L. ROSE
Deputy First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil Litigation

ROBERT O'KEEFE
Chief, General Litigation Division

PAUL D. CARMONA
Chief, Consumer Protection and
Public Health Division

JAMES "BEAU" ECCLES
Texas Bar No. 00793668
ROBERT JOHNSON
Texas Bar No. 10786400
JOHN S. LANGLEY
Texas Bar No. 11919250
Assistant Attorneys General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Phone No. (512) 463-2120
Fax No. (512) 320-0667

**ATTORNEYS FOR STATE OF TEXAS**

OCT 25 2007 16:49                                    512 320 0677      PAGE.27

10/26/2007  16:46   512 320 66..

## CERTIFICATE OF CONFERENCE

On October 24th, 2007, the State presented its Original Ex Parte Application. Following a brief hearing in which counsel for Defendants complained of insufficient notice, the State withdrew its Ex Parte Application. After extensive efforts to confer, in which counsel for Defendants would not agree to any Order at all, Plaintiff now submits this amended request after giving full notice to Defendants, incorporating the prior filing and Plaintiff's Original Petition by reference as if fully set forth.

ROBERT F. JOHNSON III
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, Robert F. Johnson III, hereby certify that a true and correct copy of the foregoing First Amended Emergency Motion for Temporary Restraining Order and for Expedited Discovery has been served upon Defendants, CGT Law Group International, L.L.P., and Mauricio Rodriguez Celis, by and through their counsel of record Stephen E. McConnico at Scott, Douglass & McConnico, 600 Congress Ave., Ste. 1500, Austin, Texas, 78701, via facsimile to (512) 474-0731 on this 26th day of October, 2007.

ROBERT F. JOHNSON III
Assistant Attorney General

OCT 26 2007 16:50                              512 320 0677        PAGE.08

NO.  D-1-GV-07-002272

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| CGT LAW GROUP INTERNATIONAL, | § | |
| L.L.P., and MAURICIO R. CELIS, | § | |
| Defendants | § | 419th JUDICIAL DISTRICT |

### TEMPORARY RESTRAINING ORDER
### AND ORDER FOR EXPEDITED DISCOVERY

On October 24, 2007, Plaintiff, the State of Texas, filed its Original Petition in this cause

seeking a Temporary Restraining Order and Temporary and Permanent Injunction against CGT Law

Group International, L.L.P., and Mauricio R. Celis ("Defendants"). After engaging in efforts to draft

an agreed Order which was rejected by Defendants, Plaintiff reurged its request for a Temporary

Restraining Order by its First Amended Emergency Motion for Temporary Restraining Order and

Motion For Expedited Discovery on October 26, 2007.  The Court finds that counsel for the

Defendants was given adequate notice prior to consideration by the Court, and did / did not appear

to present argument.

The Court, having considered the evidence and arguments of counsel, finds that Defendants

may be violating §§17.46(a) and (b) of the Texas Deceptive Trade Practices-Consumer Protection

Act, TEX. BUS. & COM. CODE §§17.41 et. seq. (DTPA).  Further, the Court finds that under this

statutory DTPA cause of action, the State is not required to show imminent risk of irreparable harm

in order to secure injunctive relief.  *David Jason West, et al. v. State of Texas*, 212 S.W.3d 513, 519

(Tex. App.–Austin 2006.)  This Court nevertheless finds that Defendants' unlawful conduct has

caused and will continue to cause immediate and irreparable injury, loss and damage to the citizens

Page 1

of the State of Texas.

### FACTUAL FINDINGS

It appears to the Court's satisfaction from facts set forth in the Plaintiff's Original Petition and the exhibits and sworn affidavits attached to the original and amended requests for a restraining order, that:

1. Defendant Celis is not licensed to practice law in the State of Texas;

2. On multiple occasions, Defendants have identified Celis as an attorney in documents, stationary, business cards, websites, and other materials distributed in the State of Texas;

3. Defendants have, and unless enjoined will continue to, solicit consumers seeking legal services to enter into contracts wherein Defendants are entitled to a share of legal fees or a referral fee for cases referred to other attorneys, thus harming consumers in the state of Texas;

4. Defendants have, and unless enjoined will continue to, solicit consumers seeking legal services to enter into contracts wherein Defendants are entitled to legal fees for legal services provided by Defendants, thus harming consumers in the state of Texas;

5. By its terms, CGT Law Group International, LLP is a "partnership" in which Celis is the only capital partner entitled to direct the activities of the "partnership" and distribute the legal fees and other funds paid to CGT;

6. Defendant Celis has received, and unless enjoined will continue to receive, referral and other legal fees, even though he is not a licensed attorney;

Unless Defendants are immediately restrained from the prohibited acts described above, Defendants will continue to commit such acts before a hearing can be held on the State of Texas' request for a

Page 2

Temporary Injunction. Furthermore, Defendants will continue to use deceptive tactics and misrepresentations before a Temporary Injunction hearing can be held and a final judgment for restitution can be rendered. Such injury would be irreparable because continued violations of the DTPA may well cause more consumers to lose money through deceptive transactions and injure legitimate, licenced attorneys throughout the state of Texas.

## TEMPORARY RESTRAINING ORDER

1.   IT IS THEREFORE ORDERED that Defendants CGT Law Group International, L.L.P., and Mauricio R. Celis, and their officers, agents, servants, employees, attorneys and any other persons in active concert or participation with them, who receive actual notice of this order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other devise, shall be restrained from engaging in the following acts or practices:

A. Identifying Defendant Celis as an "attorney" or "lawyer" in any document, communication or advertising;

B. Representing to any person, expressly or by implication, that Defendant Celis can or will provide consumers with legal services in the State of Texas;

C. Representing that Defendants CGT and Celis may lawfully refer clients to other lawyers and law firms in exchange for referral fees, if any portion of the referral fee is to be shared, either directly or indirectly, with a non-lawyer;

D. Advertising legal services of any kind via the internet, radio, TV, electronic broadcast or print (i.e., newspapers, magazines, pamphlets, fliers, etc.) until Defendants are in compliance with the Texas Disciplinary Rules of Professional Conduct – in particular those regarding law firm names and sharing of fees with non-attorneys;

Page 3

E.  Failing to disclose to consumers that Defendant Celis is not licensed or permitted to provide legal services to consumers in the State of Texas;

F.  Failing to disclose to consumers that Defendant Celis is not licensed or permitted to refer clients to other lawyers and law firms in exchange for referral fees; and

G.  Transferring, concealing, destroying, or removing from the State of Texas any books, records, documents, invoices, or other written or electronically-stored information relating to the business of Defendants currently or hereafter in Defendants' possession, custody or control except in response to further orders or subpoenas in this cause

2.  IT IS FURTHER ORDERED that Defendant Mauricio R. Celis, whether acting directly or indirectly, shall be restrained from engaging in the unauthorized practice of law, including but not limited to the following acts or practices:

1.  Giving, providing, or offering legal advice and counsel in the State of Texas to any person, until such time as Defendant Celis becomes licensed to practice in the State of Texas;

2.  Soliciting, accepting, or contracting in the State of Texas to provide any type of legal services to consumers, or to receive a share of legal fees in exchange for referring the case to a licensed attorney, until such time as Defendant Celis is in compliance with the Texas Disciplinary Rules of Professional Conduct; or

3.  Referring clients or prospective clients to other attorneys and law firms in exchange for referral fees of any kind; or

4.  Directly or indirectly receiving any legal fee or referral fee, or withdrawing from Defendant CGT any funds that were originally received as legal or referral fees.

Page 4

3. IT IS FURTHER ORDERED that within five (5) business days following service of this Order, Defendants CGT Law Group International, L.L.P., and Mauricio R. Celis shall:

    A. Provide the Office of the Attorney General with a full, complete and accurate accounting of all funds, documents, and assets located within or outside the State of Texas, including the balance of any bank accounts, held: (1) by either Defendant; or (2) under their direct control, jointly or singly; and

    B. Provide the Office of the Attorney General access to Defendants' records and documents held by financial institutions located within or outside of the State of Texas.

4. IT IS FURTHER ORDERED that any financial or brokerage institution, escrow agent, title company, storage facility, commodity trade company, business entity or person maintaining or having custody or control of any account or other assets of either Defendant which receives actual notice of this Order by personal service or otherwise, shall within five (5) business days of the date of service of this Order, provide to counsel for the Plaintiff and Defendant or account holder a statement or letter setting forth:

    A. The identification of each account or asset titled in the name, individually or jointly, of Defendants, or held on behalf of, or for the benefit of, Defendants;

    B. The balance of each such account, or a description and appraisal of the value of such assets, as of the close of business on the day on which the Order is served, and if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other assets were remitted; and

    C. The identification of any safe deposit box or storage facility that is either titled in the

Page 5

name individually or jointly, of Defendants, or is otherwise subject to access or control by Defendants.

5.  IT IS FURTHER ORDERED that the Plaintiff shall be granted leave to take telephonic, video, written, and other depositions which may contain requests for production prior to any scheduled temporary injunction hearing and prior to Defendants' answer date.  Reasonable shortened notice shall be provided to the Defendants and their attorneys.

6.  IT IS FURTHER ORDERED that Defendants in this cause be and hereby are commanded forthwith to comply with this Order from the date of entry until and to the fourteenth (14) day after entry or until further order of this Court, whichever is less.

The Clerk of the above-entitled Court shall forthwith issue a Temporary Restraining Order in conformity with the law and the terms of this Order.  This Order shall be effective without the execution and filing of a bond as Plaintiff, State of Texas is exempt from such bond under TEX. BUS. & COM. CODE ANN. §17.47(b).

Hearing on the State of Texas' Application for a Temporary Injunction is hereby set for the ____ day of _____, 2007, at _____ o'clock ___. M.

SIGNED this _____ day of _____, 2007 at _____o'clock.____m.


_____
JUDGE PRESIDING


Page 6

# Exhibit 8

LM

Filed in The District Court
of Travis County, Texas

FEB 2 6 2008

At_____2:09_____M.
Amalia Rodriguez-Mendoza, Clerk

●7

CAUSE NO. D-1-GV-002272

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT |
| *Plaintiff*, | § | |
| | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| CGT LAW GROUP INTERNATIONAL | § | |
| L.L.P., and MAURICIO R. CELIS, | § | |
| *Defendants*. | § | 419TH JUDICIAL DISTRICT |

## AGREED ORDER STAYING PROCEEDINGS

On this day the Court considered the Plaintiff's Unopposed Motion to Stay Proceedings.

Finding the motion to be meritorious, the Court orders that all proceedings in this case be stayed, including all deadlines and discovery, until the later of (1) ten months from the date of this Order, or (2) the resolution of the criminal proceedings against Mauricio R. Celis in Nueces County, Texas; or until this Court, upon a party's motion and consideration thereof by the Court, reinstates the case to active status.

SIGNED THIS 26th DAY OF February, 2008

_____
Judge Presiding

AGREED:

_____
Stephen E. McConnico
Phyllis Pollard
Scott, Douglass & McConnico, L.L.P.
Attorneys for Defendants

_____
James "Beau" Eccles
Robert Johnson
John S. Langley
Attorneys for the State of Texas

# Exhibit 9

```
TRN:
FBI NO.
DPS NO.
D.O.B.    11/02/1971
DATE OF ARREST:
ARRESTING AGENCY:
BOND:               By:
```

NO. _07-CR-4047-E_

THE STATE OF TEXAS VS. MAURICIO CELIS

CHARGE:  AGGRAVATED PERJURY
STATUTE: TEXAS PENAL CODE 37.03
DEGREE:  THIRD

COURT: _____

* * * * * * * * * * * * * * * * * *

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Nueces County, Texas, presents in the District Court of Nueces County, Texas, that MAURICIO CELIS, defendant,

on or about the 30th day of May 2007, in Nueces County, Texas, did then and there, with intent to deceive and with knowledge of the statement's meaning, make a false statement under oath, namely that he had graduated from the Universidad Regionmontana in Monterrey, Mexico, such sworn statement being then and there required by law to be made under oath, while the said Mauricio Celis was under oath, and such statement was false in that Mauricio Celis never graduated from said university, and such statement was made during or in connection with an official proceeding, to wit: a pretrial hearing in cause No. 6349 in the 49th District Court of Zapata County, Texas, styled Gonzalez &

_Exhibit B_

Associates Law Firm etal vs. Chris Piñedo etal, and said false
statement was then and there material to such proceeding in that
the questions at the hearing involved the qualifications of
Mauricio Celis to practice law in Mexico and the false statement
dealt with his educational qualifications to practice law in
Mexico,

against the peace and dignity of the State.

FOREMAN OF THE GRAND JURY

INF. 07111600945 SID    513261
CELIS, MAURICIO RODRIGUEZ
DOB 11/20/1974
AGGRAVATED PERJURY         F3

TRN:
FBI NO.
DPS NO.
D.O.B. 11/02/1971
DATE OF ARREST:
ARRESTING AGENCY:
BOND:                    BY:

NO. 07-CR-4049-E

THE STATE OF TEXAS VS. MAURICIO CELIS

CHARGE: THEFT
STATUTE: TEXAS PENAL CODE SECTION 31.03
DEGREE: STATE JAIL FELONY

COURT: _____

* * * * * * * * * * * * * * * * * * *

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Nueces County, Texas,
presents in the District Court of Nueces County, Texas, that

MAURICIO CELIS, defendant,

on or about FEBRUARY 14, 2007, in Nueces County, Texas, did then

and there unlawfully appropriate, by acquiring or otherwise

exercising control over, property, to wit: money, of the value of

$1,500.00 or more but less than $20,000.00 from Paloma Steele, the

owner thereof, without the effective consent of the owner and with

intent to deprive the owner of the property,

against the peace and dignity of the State.

FOREMAN OF THE GRAND JURY

1  0^11160949 SID    512261
115. MAURICIO RODRIGUEZ
B 11/02/1971
EFT >=$1,500 <$20K      FS

TRN:
FBI NO.
DPS NO.
D.O.B.    11/02/1971
DATE OF ARREST:
ARRESTING AGENCY:
BOND:              By:

NO.  07-CR-4046-E

THE STATE OF TEXAS VS. MAURICIO CELIS

CHARGE:  COUNTS 1-7: FALSELY HOLDING ONESELF OUT AS LAWYER
STATUTE: TEXAS PENAL CODE 38.122
DEGREE:  THIRD

COURT: _____

* * * * * * * * * * * * * * * * * * * *

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Nueces County, Texas, presents in the District Court of Nueces County, Texas, that

COUNT 1

MAURICIO CELIS, defendant,

on or about November 1, 2005, in Nueces County, Texas, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: by stating on business letterhead that he was licensed in Mexico, and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas and the state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law,

COUNT 2

MAURICIO CELIS, defendant,

on or about November 1, 2005, in Nueces County, Texas, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: by stating on a business card that he was an attorney licensed in Mexico, and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas and the state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law,

COUNT 3

MAURICIO CELIS, defendant,

on or about November 1, 2005, in Nueces County, Texas, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: by stating on a business fax cover sheet that he was licensed in Washington, D.C. and California, and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas and the state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law,

COUNT 4

MAURICIO CELIS, defendant,

on or about November 1, 2006, in Nueces County, Texas, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: by being listed on

a business web page under the heading "Attorneys at Law," and the
defendant was not then and there licensed to practice law in this
state, another state, or a foreign country and was not then and
there in good standing with the State Bar of Texas and the state
bar or licensing authority of any state or foreign country where
the defendant was licensed to practice law,

### COUNT 5

MAURICIO CELIS, defendant,

on or about November 1, 2006, in Nueces County, Texas, did
then and there, with intent to obtain an economic benefit for
himself, hold himself out as a lawyer, to wit: by being described
on a business web page as an attorney at law, and a licensed
attorney in Mexico, and the defendant was not then and there
licensed to practice law in this state, another state, or a
foreign country and was not then and there in good standing with
the State Bar of Texas and the state bar or licensing authority of
any state or foreign country where the defendant was licensed to
practice law,

### COUNT 6

MAURICIO CELIS, defendant,

on or about February 8, 2007, in Nueces County, Texas, did
then and there, with intent to obtain an economic benefit for
himself, hold himself out as a lawyer, to wit: by signing a legal
document in a place designated for an attorney's signature, and
the defendant was not then and there licensed to practice law in
this state, another state, or a foreign country and was not then
and there in good standing with the State Bar of Texas and the

state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law,

### COUNT 7

MAURICIO CELIS, defendant,

on or about January 25, 2007, in Nueces County, Texas, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: by telling Bryan Smith that he was licensed in Mexico, and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas and the state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law,

against the peace and dignity of the State.

FOREMAN OF THE GRAND JURY

INC  0711160959  SID    512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT I//FALSLEY HOLDING  F3

INC  0711160959  SID    512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT II//FALSLEY HOLDING F3

INC  0711160959  SID    512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT III//FALSLEY HOLDIN F3

INC  0711160959  SID    512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT IV//FALSLEY HOLDING F3

INC  0711160959  SID    512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT V//FALSLEY HOLDING  F3

INC  0711160959  SID    512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT VI//FALSLEY HOLDING F3

INC  0711160959  SID    512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT VII//FALSLEY HOLDIN F3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No: 07-02252 |
| v. | ) | (Judge Roberts) |
| | ) | |
| CGT LAW GROUP INTERNATIONAL LLP, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO STAY**

Having considered Defendants' Motion to Stay, this court finds that it is in the interest of justice to stay these proceedings while Defendant Celis faces a criminal prosecution concerning the same factual and legal issues at issue in this case.

IT IS HEREBY ORDERED that Defendants' Motion to Stay is granted. These proceedings shall be stayed until the resolution of the criminal proceedings against Mr. Celis.


Dated: _____, 2008


_____
Honorable Richard W. Roberts
United States District Judge

DC-998525 v1