## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EVANSTON INSURANCE COMPANY,** | : | |
| | : | |
| **Plaintiff/Counterclaim Defendant,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 07-2252** |
| | : | |
| **CGT LAW GROUP INTERNATIONAL LLP,** | : | **Oral Argument Requested** |
| **MAURICIO CELIS, T. CHRISTOPHER** | : | |
| **PINEDO, DOUGLAS RAY GWYTHER, RAUL** | : | |
| **TAPIA, JAMES H. HADA, and THOMAS** | : | |
| **GUAJARDO,** | : | |
| | : | |
| **Defendants/Counterclaim Plaintiffs.** | : | |

## EVANSTON INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS' MOTION TO STAY

Plaintiff Evanston Insurance Company (Evanston) submits this memorandum of points and authorities in opposition to the Defendants' Motion to Stay:

### I.    *Preliminary statement.*

Defendants filed this Motion to Stay Evanston's declaratory judgment action because they believe Defendant Mauricio Celis may be compelled to assert the Fifth Amendment privilege to avoid incriminating himself in pending criminal actions in Texas. As stated below, however, the acts forming the basis of the criminal indictments and this declaratory judgment action are not so similar as to justify the requested stay. Even if they were, Mr. Celis already testified in another matter on subjects that confirm the basic premise of Evanston's claim – that Defendants misrepresented Mr. Celis' qualifications as an attorney in their applications for insurance. Furthermore, a stay would substantially prejudice Evanston and benefit Defendants with a continued defense to ongoing civil litigation at Evanston's expense.

87558.1

II.     _Statement of the facts._

Mauricio Celis formed CGT Law Group International (CGT) as its capital partner in November 2005. (Gwyther Affid. ¶ 2.) Defendants Douglas Gwyther and Raul Tapia were CGT's income partners, and Defendants Christopher Pinedo, James Hada, and Thomas Guajardo were also associated with the company. (Gwyther Affid. ¶ 2.) Although formed under the laws of the District of Columbia, CGT operated primarily out of its offices in Corpus Christi, Texas, handling personal injury litigation. (Compl. Ex. A ¶¶ 2-8.)

Defendants held Mauricio Celis out as an attorney. (CGT Website Ex. B.) According to criminal indictments against Mr. Celis in Nueces County, Texas, the firm's letterhead, business cards, fax cover sheets, and website represented that Mr. Celis was an attorney licensed to practice in Mexico. (Indictments Ex. C.) The firm's applications for insurance from Evanston also represented that Mr. Celis was a member in good standing of the Mexican bar and that he was admitted to the bar in 2000. (CGT Insurance Applications Ex. D.) Relying on these allegations, Evanston issued two Lawyers Professional Liability Insurance Policies to CGT from December 7, 2005, to December 7, 2006, and from December 7, 2006, to December 7, 2007. (Evanston Lawyers Professional Liability Insurance Policies Ex. E.)

Mr. Celis, however, is not an attorney. He is not admitted to practice in any jurisdiction in the United States. (Ex. D.) He claimed to be an attorney in Mexico (CGT Website Ex. B), but previously testified that he did not have a _cedula profesional,_ or a formal license to practice law. (Celis Hearing Testimony Ex. F at 50-51). Notably, a letter from the Mexican Secretary of Public Education confirmed that there were "no records at all" authorizing Mr. Celis to practice as a professional. (Letter from Secretary of Public Education, with translation, dated Nov. 8, 2007, Ex. G.) Mr. Celis also testified that he graduated from Universidad Regiomontana in Monterey,

87558.1

Mexico. (Ex. F at 50-51.) A letter from that institution, however, confirmed only that Mr. Celis was enrolled in its legal sciences program, not that he had ever graduated. (Letter from Universidad Regiomontana, with translation, dated Nov. 8, 2007, Ex. H.)

Four civil lawsuits in Texas arose from, among other things, Defendants' misrepresentations about Mr. Celis' status as an attorney: (1) *Gonzales & Assoc. v. Pinedo* (Zapata County Cause No. 6349); (2) *Steel v. CGT Law Group* (Neuces County Cause No. 07-62218-1); (3) *Unauthorized Practice of Law Committee v. Celis* (Neuces County); and (4) *State of Texas v. CGT Law Group International LLP* (Travis County Cause No. 07-002272). Evanston is currently defending the *Gonzalez & Associates* case under its 2005-2006 Policy and the *Steele* and the *Unauthorized Practice of Law Committee* cases under the 2006-2007 Policy under a reservation of rights.

Messrs. Celis and Tapia were non-suited in the *Steele* case, and the *State of Texas* action was stayed. Nevertheless, Evanston continues to provide defenses to CGT, Christopher Pinedo, and Douglas Gwyther in the *Steele* case. Evanston also continues to provide a defense to CGT, Mauricio Celis, Christopher Pinedo, James Hada, and Raul Tapia in the *Gonzales & Associates* case. Evanston expects that it will also provide a defense to Douglas Gwyther in the *Gonzales & Associates* claim after he receives service of the complaint. Although Evanston expects that a motion to stay will be made in the *Unauthorized Practice of Law Committee* case, Evanston is currently providing a defense to CGT and Mauricio Celis in that matter. To date, Evanston has incurred in excess of $100,000 in defense costs for the Texas civil cases.

Mr. Celis was also the subject of several indictments in Neuces County, Texas. (Ex. C.) The Grand Jury indicted Mr. Celis for making a false statement under oath in the *Gonzales & Associates* matter when he testified that he had graduated from Universidad Regiomontana.

(Aggravated Perjury – Third Degree, Ex. C.) The Grand Jury also indicted Mr. Celis for misappropriating funds from Paloma Steele. (Felony Theft, Ex. C.) Moreover, the Grand Jury indicted Mr. Celis for holding himself out as a lawyer on business letterhead, cards, fax cover sheets, web-sites. (Falsely Holding Oneself Out As Lawyer – Third Degree, Ex. C.) This indictment also accused Mr. Celis of impermissibly signing a document reserved for an attorney and of misstating his qualifications to practice law to others. (Falsely Holding Oneself Out As Lawyer – Third Degree, Ex. C.)

Mr. Celis' indictments did not include CGT's misrepresentation to Evanston that Mr. Celis was a member in good standing of the Mexican bar. (Ex. C.) Instead, the criminal indictments concern Mr. Celis' lies about his qualifications as an attorney to CGT's clients, the public, and the Texas legal community. (Falsely Holding Oneself Out As Lawyer – Third Degree, Ex. C.) These are separate acts with distinct legal consequences. As such, staying Evanston's action for declaratory judgment is unnecessary and would result in substantial prejudice to Evanston, considering its continuing defense of the pending Texas civil actions.

**III.**     ***Defendants' Motion to Stay should be denied.***

**A.**  **The existence of related criminal litigation does not compel a stay of proceedings.**

A pending criminal proceeding does not require the court to stay a related civil action. *Gordon v. Federal Deposit Ins. Corp.*, 427 F.2d 578, 580 (D.C. Cir. 1970); *see also Sec. & Exchange Comm'n v. Dresser Indus. Inc.,* 628 F.2d 1368, 1375 (D.C. Cir. 1980) ("The Constitution … does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings."). A criminal indictment does not give the accused "a blank check to block all civil litigation on the same or related underlying subject matter." *Gordon*, 427 F.2d at 580. In fact, according to *Dresser*, "[i]n the absence of substantial prejudice to the rights of the parties

involved, such parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence." *Dresser*, 628 F.2d at 1374.

If there is "even a fair possibility that the stay … will work damage to someone else," then the party seeking the stay must make out a "clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 254-55. Accordingly, the court's evaluation of whether to stay an action requires a balance of "competing interests" to "maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). Courts in this Circuit consider a variety of factors in conducting this analysis. *Estate of Gaither ex rel. Gaither v. District of Columbia*, Civ. No. 03-1458(CKK), 2005 U.S. Dist. LEXIS 35426, at *8, (D.D.C. Dec. 2, 2005) (citing *Barry Farm Resident Council, Inc. v. U.S. Dep't of the Navy*, Civ. Nos. 96-1450, 96-1700(HHG), 1997 U.S. Dist. LEXIS 2754, at *3-4 (D.D.C. Feb. 18, 1997)). These factors include the interests of and prejudice to the plaintiff and defendant, the public interest in the civil and criminal cases, the interests of persons not parties to the civil case, and the interests of judicial economy. *See Gaither*, 2005 U.S. Dist. LEXIS 35426, at *8.

On balance, these factors show that Defendants' Motion to Stay should be denied. Mr. Celis' perceived need to invoke the Fifth Amendment does not justify a stay because the civil and criminal actions are not as similar as Defendants claim. Even so, Mr. Celis' testimony in the *Gonzales & Associates* case already confirmed Evanston's claim that Defendants' insurance applications contained material misrepresentations. Moreover, a stay may substantially prejudice Evanston by compelling it to pay for a defense that it was not obligated to provide. In the same manner, a stay would reward Defendants for the allegedly criminal conduct that Mr. Celis believes will require him to invoke the Fifth Amendment. Furthermore, the interests of the

5

public, persons not parties to this action, and judicial economy will be best served by denying Defendants' Motion to Stay.

1. _The issues in the criminal and declaratory judgment actions are not so similar as to justify a stay._

Defendants argue that the pending criminal indictments "indisputably involve the same issues" as those presented in Evanston's declaratory judgment action. This comparison is an oversimplification of the two cases. Mr. Celis is under criminal indictment for misrepresenting his qualifications to practice law to CGT's clients, the public, and the Texas legal community. (Ex. C.) The indictment accused Mr. Celis, for example, of lying on letterhead, business cards, fax cover sheets, and web-pages. CGT's statements to Evanston in its insurance application are not the subject of Mr. Celis' criminal indictments. It is the Defendants' misrepresentations to Evanston, however, that are the subject of this declaratory judgment action.

The criminal and declaratory judgment cases share a common misrepresentation – the claim that Mr. Celis is a licensed attorney. The two cases are based, however, on separate acts. This distinction is significant because a stayed civil action typically involves a claim arising from the same criminal offense. For example, in _Gaither_, 2005 U.S. Dist. LEXIS 35426, at *1-6, one wrongful act, the stabbing of a prison inmate, formed the basis of a civil tort claim and a criminal prosecution. Unlike the assault in _Gaither_, Defendants' misrepresentations to Evanston are not the same acts for which the Grand Jury issued indictments against Mr. Celis.

The common element between the indicted acts and those for which Evanston seeks to rescind coverage – the Defendants' false representation that Mr. Celis was a licensed attorney – does not render the criminal and civil actions so identical so as to justify a stay. As indicated in _Horn v. District of Columbia_, the "mere relationship" between civil and criminal proceedings and the "prospect" that discovery in the civil case could prejudice the criminal proceedings "does

87558.1

not establish the requisite good cause for a stay." 210 F.R.D. 13, 15 (D.D.C. 2002) (quoting *United States v. Gieger Transfer Service*, 174 F.R.D. 382, 385 (S.D. Miss. 1997)). As such, the civil and criminal actions are not so similar as to require a stay of Evanston's declaratory judgment action.

 2. *Independent evidence demonstrates that Mauricio Celis misrepresented his qualifications as an attorney.*

 Evanston will be able to establish, regardless of Mr. Celis' assertion of the Fifth Amendment, that Defendants' misrepresented Mr. Celis' qualifications as an attorney. Specifically, Mr. Celis has already testified that he did not have a *cedula profesional*, or a license to practice law in Mexico. (Ex. F at 50-51.) A letter from the Mexican Secretary of Public Education confirmed that there were "no records at all" confirming that Mr. Celis had a license to practice law as a "professional." (Ex. G.) Yet, his two applications for insurance from Evanston each stated that he was a "member in good standing" of the Mexican bar, admitted to the bar in 2000. (Ex. D.) As such, even if Mr. Celis were required to invoke the Fifth Amendment privilege, independent evidence demonstrates CGT's material misrepresentation on its insurance applications.

 3. *If this action were stayed, Evanston would have continuing defense obligations in the Texas actions despite the admittedly false insurance application.*

 Evanston faces substantial prejudice from a stay of the declaratory judgment action. Although the plaintiff non-suited Messrs. Celis and Tapia to avoid a stay in the *Steele* case, and a Texas court stayed the Attorney General's claim, Evanston is continuing to defend the remaining CGT Defendants in the tendered Texas civil cases. (Compl. Ex. A ¶¶ 21-23.) To the best of Evanston's knowledge, however, the remaining CGT Defendants are not seeking a stay of

87558.1

proceedings in the *Steele* and *Gonzales & Associates* cases. The remaining CGT Defendants' failure to seek a stay of the pending Texas civil cases has significant consequences to Evanston.

Plaintiff seeks a declaratory judgment that Defendants are not entitled to their defense and indemnification. If this action were stayed, however, Defendants may continue to be unjustly enriched, at Evanston's expense, for their defense in the tendered Texas civil cases. Evanston has already incurred in excess of $100,000 in defense costs. As such, the longer declaratory judgment is delayed, the more Evanston will incur in defense costs that it may not have been obligated to pay. The more Defendants are unjustly enriched by a defense to which they may not be entitled, the less likely Evanston will be able to recover those amounts from Defendants.

Furthermore, Evanston may have continuing duties to defend and to attempt to resolve the pending Texas civil cases. *See Burlington Ins. Co. v. Okie Dokie*, 398 F . Supp. 2d 147, 158 n.10 (D.D.C. 2005) (insurer owed duty to insured to cover the settlement costs even though insured believed that coverage was voided under the policy); *but see State Farm Fire and Cas. v. Taylor*, 832 S.W.2d 645, 650 (Tex. App. 1992) (insurer had no duty to settle prior to a determination of its declaratory judgment action). As such, the longer declaratory judgment is delayed, the more likely it is the Texas civil cases may resolve at Evanston's expense. Accordingly, Defendants' requested stay would cause substantial prejudice to Evanston, and their motion should be denied.

### 4. *Defendants should not be permitted to benefit from Mr. Celis' need to invoke the Fifth Amendment at Evanston's expense.*

Defendants should not be permitted to take advantage of Mr. Celis' alleged wrongdoing by staying this litigation. The practical effect of staying this litigation would be to reward the Defendants for wrongdoing so extreme that Mr. Celis believes he will be compelled to invoke the Fifth Amendment. Defendants would be unjustly enriched by Evanston's continuing defense

of the ongoing Texas civil actions pending the outcome of the criminal actions against Mr. Celis. Mr. Celis would also benefit from the stay by receiving more protection than he is constitutionally entitled. His alleged criminal acts should not be condoned by granting a stay at his insurer's expense and shielding him from the legal consequences, both civil and criminal, of his misrepresentations.

5. *The interests of the public, non-parties, and judicial economy favor denying Defendant's Motion to Stay.*

Evanston submits that the interests of the public, non-parties, and judicial economy will be best served by denying Defendants' Motion to Stay. First, the public has a substantial interest in being protected from the unauthorized practice of law, and staying Evanston's declaratory judgment action will not serve this objective. Second, the civil plaintiffs in the *Gonzales & Associates* and *Steele* cases have an interest in resolving their claims against the CGT Defendants, and stay of the declaratory judgment action will complicate any efforts to settle those cases. Finally, an expeditious resolution of these coverage issues will serve the interests of judicial economy by facilitating a resolution of both this declaratory judgment action and the pending civil cases in Texas.

**B.  Defendants' cited authority is inapposite.**

Many of the cases that Defendants cite in support of their Motion to Stay are immaterial and distinguishable. Defendants cite *Dresser*, 628 F.2d at 1375-76, to argue that the strongest case for staying a civil action involves a situation "where a party [is] under indictment for a serious offense … involving the same matter." As stated above, however, the Grand Jury did not issue criminal charges against Mr. Celis for the "same matter" because Evanston's declaratory judgment action concerns different acts than those specified in the indictment. Moreover, in *Dresser*, no indictment had been returned, and the weight to be given an indictment was not

applied. *Id.* at 1376. *Dresser* is also distinguishable because it involved a civil action by a government agency and a parallel criminal investigation, as opposed to a declaratory judgment action by or against an insurer. *Id.* at 1370-71.

Defendants' reliance on *Gaither*, 2005 U.S. Dist. LEXIS 35426, is also misplaced. *Gaither* involved civil and criminal cases arising from the stabbing of a prison inmate. *Id.* at *1-2. The parties initially consented to stay the civil action pending the outcome of the criminal case. *Id.* at *2. Two years after the parties agreed to the stay, however, the court requested a status conference. *Id.* at *2-4. The civil plaintiff requested the court to lift the stay. *Id.* The court declined to lift the stay, reasoning that prejudice to the civil plaintiff was minimal because the parties initially agreed to the stay and the criminal trial was three months away. *Id.* at * 9-12. Unlike the situation in *Gaither*, Evanston does not agree to the stay, and it will sustain significant prejudice in terms of its continued defense of the CGT Defendants in the Texas civil cases.

Defendants' reliance on decisions staying an insurer's declaratory judgment action pending the outcome of underlying civil litigation is also mistaken. Many of the cases that Defendants cite concern an insurer's disclaimer of coverage for an intentional act in a civil action asserting both negligence and an intentional tort. Unlike Evanston's declaratory judgment action against the Defendants, these courts granted stays because the declaratory judgment action put the insured in the untenable position of proving its own negligence to defend its coverage. *See Allstate Ins. Co. v. Harris*, 445 F. Supp. 847, 851 (N.D. Cal. 1987); *Hartford Ins. Group v. District Court*, 625 P.2d 1013, 1016 (Colo. 1981); *Nat'l Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1123 (D. Alaska 1998); *Morris v. Farmers Ins. Exch.,* 771 P.2d 1206, 1210-11 (Wyo. 1989); *State Farm Fire & Cas. Co. v. Finney,* 770 P.2d 460, 464-65 (Kan. 1989) (applying Kansas rule regarding availability of declaratory judgment).

87558.1

Defendants also argue that courts are "particularly inclined" to stay insurance coverage actions upon the insured's request. Although the insured's interests are a consideration, none of the cited cases states that a court is to give special deference to an insured's request for a stay. Additionally, unlike Defendants' motion to stay, the cited cases do not concern concurrent civil and criminal litigation. *See Aetna Cas. & Sur. Co. v. PPG Indus., Inc.*, 554 F. Supp. 290, 296 (D. Ariz. 1983); *National Chiropractic Mut. Ins. Co.,* 23 F. Supp. 2d at 1122; *Morris,* 771 P.2d at 1210-11; *Finney*, 770 P. 2d at 464-65. Accordingly, Defendants cannot show that the balance of interests favors staying this litigation, and their cited authority is either immaterial or distinguishable. Evanston respectfully submits, therefore, that Defendants' Motion to Stay should be denied.

*IV.*     ***Conclusion.***

Based on the foregoing, Plaintiff Evanston Insurance Co. respectfully requests this Court to deny Defendants' Motion to Stay and to grant such other and further relief as to this Court may seem just and appropriate.

Respectfully submitted,

By:    */S/ William G. Gandy*
William Gandy (Bar No. 491153)
Jason R. Waters (Bar No. 491066)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22102
Phone: 703-245-9300
Fax: 703-245-9301
E-mail: william.gandy@wilsonelser.com

ATTORNEYS FOR PLAINTIFF
EVANSTON INSURANCE COMPANY

87558.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed and served this 19th day of March, 2008, on:

Philip H. Hecht
KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP
1601 K Street, N.W.
Washington, D.C. 20006
Tel: 202-778-9000
Fax: 202-778-9100
Email: Philip.Hecht@klgates.com

I hereby certify that a true and correct copy of the foregoing was served via U.S. Mail this 19th day of March, 2008, on:

Thomas Guajardo, *Pro Se*
2001 E. Campbell Road, Suite 202
Phoenix, AZ 85016

*/S/ William G. Gandy*_____
William G. Gandy, Esq.

12

87558.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EVANSTON INSURANCE COMPANY**<br>**Ten Parkway North**<br>**Deerfield, Illinois 66015**<br>    **Plaintiff** | §<br>§<br>§<br>§<br>§ | |
| | § | **CIVIL ACTION** |
| **v.** | §<br>§ | |
| **CGT LAW GROUP INTERNATIONAL LLP**<br>**101 Constitution Avenue, NW, Suite 900**<br>**Washington, D.C.** | §<br>§<br>§<br>§ | |
| **MAURICIO CELIS**<br>**500 North Water Street, 8th Floor**<br>**South Tower**<br>**Corpus Christi, Texas 78471** | §<br>§<br>§<br>§<br>§<br>§ | Case: 1:07-cv-02252<br>Assigned To : Roberts, Richard W.<br>Assign. Date : 12/14/2007<br>Description: Contract |
| **T. CHRISTOPHER PINEDO**<br>**500 North Water Street, 8th Floor**<br>**South Tower**<br>**Corpus Christi, Texas 78471** | §<br>§<br>§<br>§ | |
| **DOUGLAS RAY GWYTHER**<br>**500 North Water Street, 8th Floor**<br>**South Tower**<br>**Corpus Christi, Texas 78471** | §<br>§<br>§<br>§<br>§ | |
| **RAUL TAPIA**<br>**101 Constitution Avenue NW, Suite 900**<br>**Washington, D.C.** | §<br>§<br>§<br>§ | |
| **JAMES H. HADA**<br>**500 North Water Street, 8th Floor**<br>**South Tower**<br>**Corpus Christi, Texas 78471** | §<br>§<br>§<br>§<br>§ | |
| **THOMAS GUAJARDO**<br>**1001 North Central Avenue, No. 600**<br>**Phoenix, Arizona 85004**<br>    **Defendants** | §<br>§<br>§<br>§<br>§ | |

## ORIGINAL COMPLAINT

Plaintiff, Evanston Insurance Company ("Evanston"), files its Original Complaint against Defendants, CGT Law Group International LLP, Mauricio Celis, T. Christopher Pinedo, Douglas Ray Gwyther, Raul Tapia, James H. Hada, and Thomas Guajardo, and would respectfully show the Court as follows:

## I.
## PARTIES

1.    Plaintiff, Evanston Insurance Company ("Evanston") is an insurance company incorporated under the laws of the State of Illinois with its principal place of business at Ten Parkway North, Deerfield, Illinois 60015.

2.    Defendant, CGT Law Group International LLP ("CGT"), is a limited liability partnership organized under the law of the District of Columbia with its principal place of business at 101 Constitution Avenue NW, Suite 900, Washington D.C.

3.    Defendant Mauricio Celis, is a Texas resident, and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

4.    Defendant, T. Christopher Pinedo, is a Texas resident, and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

5.    Defendant, Douglas Ray Gwyther, is a Texas resident, and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

6.    Defendant, Raul Tapia is a District of Columbia resident, and may be served with process at 101 Constitution Avenue NW, Suite 900, Washington D.C.

7.    Defendant, James H. Hada is a Texas resident, and may be served with process at 500 North Water Street, 8th Floor, South Tower, Corpus Christi, Texas 78471.

8.    Defendant, Thomas Guajardo is an Arizona resident, and may be served with process at 1001 North Central Avenue, No. 600, Phoenix, Arizona 85004.

## II.
## JURISDICTION AND VENUE

9.    The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because Evanston and Defendants are citizens of different States, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.    This Court has personal jurisdiction over CGT pursuant to D.C. Code § 13-422 because CGT is incorporated and maintains its principal place of business in the District of Columbia.

11.    This Court has personal jurisdiction over Defendants Mauricio Celis, T. Christopher Pinedo, Douglas Ray Gwyther, Raul Tapia, James H. Hada, and Thomas Guajardo because Evanston's claims arise out of business transacted by them in the District of Columbia.

12.    Venue is proper under 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.

## III.
## NATURE OF THE CASE

13.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, et seq. and Rule 57 of the Federal Rules of Civil Procedure. Additionally, Evanston also seeks monetary damages in this action.

14.    Evanston issued two Professional Liability Insurance Policies to CGT (the "Policies") [Exhibits 2 and 4]. Defendant CGT is the named insured under the Policies; Defendant Celis is CGT's principal partner and only "capital" partner; and the other individual Defendants are or were partners or employees of CGT.

15.     CGT has tendered three lawsuits filed against it in Texas State courts to Evanston for a defense under the Policies.  Evanston is currently defending CGT and the individual defendants under the Policies in the three lawsuits that have been tendered to Evanston.  A fourth lawsuit was also filed against CGT and Defendant Celis, which lawsuit has not been tendered to Evanston for a defense.

16.     Evanston seeks to rescind both Policies it issued to CGT, because those Policies were obtained through material misrepresentations in that CGT falsely represented in the application forms for both Policies that Defendant Celis, CGT's principal partner with absolute and financial control over CGT, was a lawyer and admitted to practice in Mexico [Exhibits 1 and 3].  In the alternative, Evanston seeks a judicial determination of its rights and obligations under the Policies with respect to the three lawsuits tendered for coverage and the fourth lawsuit not tendered to Evanston by CGT.  Evanston also asks the Court to order the Defendants to reimburse Evanston for any costs and expenses incurred by Evanston with respect to the defense of any of the Defendants.

## IV.
## BACKGROUND FACTS

17.     CGT, organized under the laws of the District of Columbia, was formed on November 1, 2005 with the purpose to engage in the practice of law.  Defendant Celis is CGT's principal partner and only "capital" partner with absolute and financial control over CGT.  CGT's website referred to Mr. Celis as an "attorney at law," and further stated that he is a "licensed attorney in Mexico."  *See* Exhibits 10 and 11.

18.     During December 2005, CGT submitted a policy application to Evanston, in which application CGT represented that Mr. Celis is a lawyer and had been practicing full time as a lawyer for six years.  *See 2005 Policy Application* hereto attached as Exhibit 1.  Based on

these representations, Evanston issued a Lawyers Professional Liability Insurance Policy to CGT effective December 7, 2005 to December 7, 2006 (the "2005-06 Policy"). *See 2005-06 Policy* hereto attached as Exhibit 2.

19.    During October 2006, CGT submitted another policy application to Evanston, in which application CGT represented that Mr. Celis is a lawyer and had been practicing full time as a lawyer for seven years. *See 2006 Policy Application* hereto attached as Exhibit 3. Based on these representations, Evanston issued a Lawyers Professional Liability Insurance Policy to CGT effective December 7, 2006 to December 7, 2007 (the "2006-07 Policy"). *See 2006-07 Policy* hereto attached as Exhibit 4.

20.    During November 2006, a lawsuit was filed in a Texas State Court against Defendants CGT, Celis, and Pinedo styled as *Cause No: 6,349; Gonzales & Associates et.al.; v. Chris Pinedo et al.;* in the 49th Judicial District Court of Zapata County, Texas (the "Gonzales lawsuit"). *See Third Amended Petition* attached as Exhibit 5. In the Third Amended Petition filed on May 30, 2007, the plaintiffs in the *Gonzales* lawsuit allege that CGT is a sham corporation, and that CGT, Celis, and Pinedo engaged in the unauthorized practice of law. Evanston is currently defending Defendants CGT, Celis, and Pinedo under the 2005-06 Policy in the *Gonzales* lawsuit.

21.    During October 2007, a second lawsuit was filed in a Texas State Court against Defendants CGT, Celis, Pinedo, Gwyther, and Tapia styled as *Cause No: 07-62218-1; Paloma Steele v. CGT Law Group et al.;* in the County Court of Nueces County, Texas (the "Steele lawsuit"). *See Plaintiff's Original Petition* attached as Exhibit 6. The plaintiffs in the *Steele* lawsuit allege that Mr. Celis is not a lawyer and that the Defendants are engaged in the

unauthorized practice of law. Evanston is currently defending Defendants CGT, Celis, Pinedo, Gwyther, and Tapia under the 2006-07 Policy in the *Steele* lawsuit.

22.    On November 29, 2007 a third lawsuit was filed in a Texas State court against Defendants CGT, Celis, Gwyther, Pinedo, Hada, and Guajardo styled as *Unauthorized Practice of Law Committee v. Mauricio Celis et al.;* in the District Court of Nueces County, Texas (the "UPL" lawsuit). *See Plaintiff's Original Petition* attached as Exhibit 7. The *UPLC* lawsuit alleges that Mr. Celis is not a lawyer, and that CGT is an illegal partnership which was formed for an illegal purpose - the unauthorized practice of law. The lawsuit further alleges that CGT and the individual defendants named in the lawsuit engaged in the unauthorized practice of law.

23.    On October 24, 2007, a fourth lawsuit was filed in a Texas State court by the Texas Attorney General against Defendants CGT and Celis in a Texas State court styled as *The State of Texas v. CGT Law Group International LLP et al.,* in the 419th District Court of Travis County, Texas (the "AG" lawsuit). *See Plaintiff's Original Petition and Plaintiff's First Amended Emergency Motion for Temporary Restraining Order* and related documents attached as Exhibit 8. That lawsuit alleges that CGT and Mr. Celis have engaged in the illegal and unauthorized practice of law, and that CGT has permitted a "non lawyer" - Mr. Celis - to share in legal fees and referral fees paid to CGT. That lawsuit has not been tendered to Evanston for a defense.

24.    During a court hearing in the Gonzales case in Texas on May 30, 2007, Mr. Celis testified under oath that he had a law degree from the Universidad Regio Montana in Monterrey, Mexico. *See Testimony of Mauricio Celis* hereto attached as Exhibit 9 at pages 50-51.

25.     During November 2007, a grand jury in Nueces County, Texas, indicted Mr. Celis on 10 criminal charges, including seven counts of holding himself out as a lawyer, and one count of aggravated perjury (relating to Mr. Celis' alleged false evidence under oath at the May 30, 2007 court hearing that he has a law degree).

26.     When Evanston issued the **Lawyers** Professional Liability Policies to CGT, Evanston relied on the information contained in the policy applications, which stated that Defendant Celis, CGT's principal partner with absolute and financial control over CGT, was a <u>lawyer</u>, admitted in Mexico, who had practiced full time for at least six years [Exhibits 1 and 3].

27.     The Defendants knew that Evanston was relying upon the false statements in the policy applications in considering whether to issue the Policies. This information was relevant and material to Evanston's underwriting decisions because it affected the likelihood of litigation and the risk of a loss covered under the Policies.

28.     In reliance upon the false material misrepresentations that Mr. Celis was a lawyer, Evanston issued the Policies to CGT.

29.     Evanston should not be required to defend or indemnify the Defendants for any loss they have incurred or might incur now or in the future. The Policies were issued only as a result of CGT's false representations, and would not have been issued had Evanston known the true facts. As a result, Evanston is entitled to rescind the Policies and to have them declared *void ab initio* due to the false representations made during the underwriting and negotiating process for the Policies.

30.     Evanston thus files this action seeking rescission of the Policies issued by it to CGT, and a declaration that both Policies are *void ab initio*. In the alternative, Evanston seeks an award that the Defendants are not entitled to coverage under the Policies against the

allegations in the *Gonzales, Steele, UPLC,* and *AG* lawsuits. Evanston also seeks an award of the actual damages sustained by Evanston because of the Defendants' misrepresentations.

## V.
## THE INSURANCE POLICIES ISSUED TO CGT

31. Evanston issued a Lawyers Professional Liability Insurance Policy number LA 803756 to CGT effective December 7, 2005 to December 7, 2006 [Exhibit 2]. Evanston also issued a Lawyers Professional Liability Insurance Policy number LA 804111 to CGT effective December 7, 2006 to December 7, 2007 [Exhibit 4]. The Policies each provide for a limit of liability for each Claim of $2,000,000 and in the aggregate. The Policies provide coverage for Acts, which term is defined to mean "the performance of or omission of a duty or obligation by the Insured while rendering legal advice or legal services for others."

## VI.
## THE POLICY APPLICATIONS

### A.    Policy Language Regarding the Policy Applications

32. The Policies each contain a "Condition Precedent" at page 1, which provides that "[a]s conditions precedent to the availability of any coverage under this policy, ...the application attached hereto and made a part hereof and all information in whatever form communicated by the Insured to the company must be accurate." [Exhibits 2 and 4 at page 1]. The Policies also provide in the Other Conditions section that "the Insured agrees that the statements in the policy are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations..." [Exhibits 2 and 4 at page 7].

33. The policy applications form part of the Policies. Both the policy applications contain warranties in which the insured states that "I warrant to the insurer, ...that the information contained herein is true and that it shall be the basis of the policy of insurance and

deemed incorporated therein, should the insurer evidence its acceptance of this application by issuance of a policy." [Exhibits 1 and 3].

**B.**     **The Misrepresentations in the Policy Applications**

34.     In CGT's "Application for Lawyers Professional Liability Insurance" dated December 7, 2005 for the 2005-06 Policy [Exhibit 3 at page 4 and blank CGT letterhead attached to application], CGT made the following representations, which are all false:

- Mr. Celis is a lawyer;
- Mr. Celis is a member in good standing of the Mexico Bar;
- Mr. Celis was admitted to the Mexico Bar in 2000;
- Mr. Celis has practiced as a lawyer on a full time basis for six years;
- Mr. Celis is "licensed in Mexico" [See blank letterhead attached to application].

35.     In CGT's "Application for Lawyers Professional Liability Insurance" dated October 16, 2006 for the 2006-07 Policy [Exhibit 4 at page 4], CGT made the following representations, which are all false:

- Mr. Celis is a lawyer;
- Mr. Celis is a member in good standing of the Mexico Bar;
- Mr. Celis was admitted to the Mexico Bar in 2000;
- Mr. Celis has practiced as a lawyer on a full time basis for seven years.

## VII.
## CAUSES OF ACTION

### Count I

### Request for Declaratory Judgment and Judicial Rescission of Evanston's 2005-06 and 2006-07 Policies

36.     Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

37.     Pursuant to D.C. Code § 31-4314, proof that an application for insurance contains a false statement which was made with intent to deceive or materially affected either the

acceptance of the risk or the hazard assumed by the insurer, is sufficient to defeat a claim under an insurance policy.

38.    CGT's representations in the 2005-06 and 2006-07 policy applications set forth in paragraphs 34 and 35 above, were all false.

39.    The false representations were made with the intent to deceive Evanston and to induce Evanston into issuing the Policies; alternatively the false representations materially affected either the acceptance of the risk or the hazard assumed by Evanston.

40.    The false representations were material to the risk that Evanston assumed in issuing the Policies to CGT.

41.    Evanston relied upon the false representations in deciding whether to issue the Policies to CGT.

42.    Evanston would not have issued the Policies if it had known that one or more of the statements set forth in paragraphs 32 and 33 above were false.

43.    Accordingly, Evanston is entitled to a judicial rescission of the two Evanston Policies.

44.    Evanston is prepared to return the premiums CGT paid for the 2005-06 Policy and the 2006-07 Policy upon rescission of the Policies; alternatively, Evanston is willing to tender the premium amount into the registry of this court while this action is pending.

## Count II

### Request for Declaratory Judgment that the 2006-07 Policy Does Not Provide Coverage For the Defendants Against the Allegations in the Lawsuits

45.    Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

46.    To the extent that the Court does not declare that the 2006-07 Policy is rescinded and *void ab initio*, Evanston seeks in the alternative a declaration that the 2006-07 Policy does not provide coverage for the Defendants against the allegations in the *Gonzales, Steele, UPLC,* and *AG* lawsuits, and that Evanston therefore owes no duty to defend and indemnify the Defendants under the 2006-07 Policy against the allegations in those lawsuits.

47.    The common thread in all four lawsuits is that Defendant CGT was formed in the District of Columbia for illegal purposes: the practice of law and the control of a law firm by a non-lawyer - Defendant Celis; to allow lawyers to conspire with a non-lawyer to engage in a pattern of conduct which constitutes the unauthorized practice of law in Texas and other States; to circumvent unauthorized practice of law restrictions in Texas and other States; and to allow lawyers to accept referrals and share legal fees with a non-lawyer.

48.    Both the 2005-06 and 2006-07 Policies provide that "two or more claims arising out of a single Act ...or a series of related Acts...shall be treated as a single Claim," and that "all such Claims whenever made shall be considered first made on the date on which the earliest Claim arising out of such Act... was first made..." [Exhibit 2 at page 6].

49.    All four of the lawsuits arise out of a single Act or a series of related Acts and should therefore be treated as a single Claim, and considered first to be made on the date on which the earliest Claim arising out of such Act was first made.

50.    The earliest Claim arising out of the Defendants' alleged unauthorized practice of law was made in the *Gonzales* lawsuit, which was made on October 30, 2006 during the 2005-06 Policy period.

51.     Accordingly, the Claims in the *Gonzales, Steele, UPLC,* and *AG* lawsuits are treated as a single Claim (hereinafter referred to as the "Claim"), and considered first to be made during the 2005-06 Policy period.

52.     Evanston is therefore entitled to a declaratory judgment that the 2006-07 Policy does not provide coverage for the Defendants against the allegations in the *Gonzales, Steele, UPLC,* and *AG* lawsuits.

53.     However, even if the Court finds that the Claims in the *Gonzales, Steele, UPLC,* and *AG* lawsuits should not be treated as a single Claim, and that the Claims in the *Steele, UPLC,* and *AG* lawsuits were made during the 2006-07 Policy period, coverage is not available for those lawsuits under the 2006-07 Policy for the same reasons coverage is not available under the 2005-06 Policy, as set forth in Count III below.

### Count III

### Request for Declaratory Judgment that the 2005-06 Policy Does Not Provide Coverage For the Defendants Against the Allegations in the Lawsuits

54.     Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

55.     As stated in paragraph 49 above, the *Gonzales, Steele, UPLC,* and *AG* lawsuits must be treated as a single Claim, and considered first to be made during the 2005-06 Policy period.

56.     To the extent that the Court does not declare that the 2005-06 Policy is rescinded and *void ab initio*, Evanston seeks in the alternative a declaration that the 2005-06 Policy does not provide coverage for the Defendants against the allegations in the *Gonzales, Steele, UPLC,* and *AG* lawsuits – the Claim - and that Evanston therefore owes no duty to defend and indemnify the Defendants under the 2005-06 Policy against the allegations in those lawsuits.

A.     **The Requirements of the 2005-06 Policy's Insuring Agreement Have Not Been Satisfied Relating to the Lawsuits**

57.     The 2005-06 Policy provides coverage for Acts, which term is defined to mean "the performance of or omission of a duty or obligation by the Insured while rendering legal advice or legal services for others."

58.     The *Gonzales, Steele, UPLC,* and *AG* lawsuits do not contain allegations that the Defendants are liable for any malpractice due to their performance of or omissions of duties or obligations by them while rendering legal advice or services for others.  To the contrary, the essence of the allegations in the lawsuits are that Defendant CGT was formed for the illegal practice of law; to allow lawyers to conspire with a non-lawyer to engage in the unauthorized practice of law; to allow a non-lawyer to practice law and to manage a law firm; and to allow lawyers to accept referrals and share legal fees with a non-lawyer.  The primary reasons for the filing of the lawsuits are an attempt to close down CGT and to recover the legal fees CGT received.

59.     Because the requirements of the 2005-06 Policy's insuring agreement have not been satisfied, the 2005-06 Policy does not provide coverage for the Defendants in the *Gonzales, Steele, UPLC,* and *AG* lawsuits.

B.     **The Prior Acts Exclusion Bars Coverage For the Lawsuits**

60.     Even if any of the lawsuits arguably involves an Act, as defined in the 2005-06 Policy, the Policy contains a Prior Acts exclusion, which excludes coverage for <u>any</u> Claim based upon, arising out of, or in <u>any</u> way involving any Act happening prior to December 7, 2005 [Exh. 2, Endorsement 2].

61.     The common theme in all four lawsuits is that Defendant CGT was created and registered for the purpose to engage in the unauthorized practice of law under the complete

control of a non-lawyer and to allow other lawyers to accept referrals and share legal fees with a non-lawyer.

62.    Accordingly, Defendants' wrongful acts commenced when CGT was formed on November 1, 2005.

63.    Because Defendants engaged in the unauthorized practice of law before December 7, 2005, the Claim involves an act happening prior to December 7, 2005, for which the Policy does not provide coverage.

C.    **In the Alternative, the Prior Knowledge Exclusion Bars Coverage For the Lawsuits**

64.    Alternatively to B. above, the 2005-06 Policy does not provide coverage if, prior to the effective date of the Policy, any Insured was aware of any facts or circumstances from which a reasonable person would have anticipated a Claim  [Exhibit 2 at page 2].

65.    The lawsuits allege that Defendant CGT was formed in the District of Columbia for illegal purposes:  the practice of law and the control of a law firm by a non-lawyer - Defendant Celis; to allow lawyers to conspire with a non-lawyer to engage in a pattern of conduct which constitutes the unauthorized practice of law in Texas and other States; to circumvent unauthorized practice of law restrictions in Texas and other States; and to allow lawyers to accept referrals and share legal fees with a non-lawyer.

66.    CGT was formed on November 1, 2005, prior to the inception of the 2005-06 Policy on December 7, 2005. *See CGT Partnership Agreement* attached as Exhibit 1 to the Petition filed in the UPLC lawsuit attached hereto as Exhibit 7.

67.    Because CGT's principal partner, Defendant Celis, is not a lawyer and the Defendants engaged in the unauthorized practice of law before December 7, 2005, the

Defendants were, prior to the effective date of the 2005-06 Policy, aware of facts or circumstances from which a reasonable person would have anticipated a Claim.

68.    Accordingly, the 2005-06 Policy does not provide coverage for the Defendants against the allegations in the *Gonzales, Steele, UPLC, and AG* lawsuits.

**D.    Mr. Celis Does Not Qualify as an Insured and CGT Does Not Qualify as an Insured For Any Liability it May Incur for Mr. Celis' Acts in the Lawsuits**

69.    The 2005-06 Policy affords coverage for any lawyer that is a partner, officer, director, of counsel or employee of CGT, but only for Claims arising out of legal advice or legal services rendered on behalf of CGT.  The Policies also provide coverage for any present or former employee of CGT solely while acting on behalf of CGT.

70.    Because Mr. Celis is neither a lawyer, nor an employee of CGT, Mr. Celis does not qualify as an insured under the 2005-06 Policy.

71.    The 2005-06 Policy affords coverage for CGT, but only for Claims arising out of or legal advice or services provided on behalf of CGT by any other insured.

72.    Because Mr. Celis is not an insured, CGT does not qualify as an insured under the 2005-06 Policy for liability it incurs arising out of legal advice or services provided on behalf of CGT by Mr. Celis.

73.    The 2005-06 Policy therefore does not provide coverage for Mr. Celis against the allegations in the *Gonzales, Steele, UPLC, and AG* lawsuits, and coverage is not provided under that Policy for CGT against any liability it incurs in those lawsuits because of Mr. Celis' acts.

**E.    The Claim Does Not Allege Damages**

74.    The Claim alleges that the Defendants are not entitled to the legal fees and profits they received because the Defendants were engaged in the unauthorized practice of law and shared fees with a non-lawyer.  Accordingly, one of the primary reasons for the filing of the

lawsuits is an attempt to recover the legal fees and profits CGT received. The Claim therefore seeks disgorgement of fees and profits received by the Defendants, punitive damages and civil penalties, and the imposition of a constructive trust, and restraining orders and injunctions.

75.    The 2005-06 Policy provides that the term "Damages" mean "the monetary portion of any judgment, award, or settlement, and does not include the restitution of consideration and expenses paid to the Insured for services or judgments or awards uninsurable by law, and punitive or exemplary damages, or any damages which are a multiple of compensatory damages, statutory treble damages, or fines, penalties or sanctions. [Exhibit 2 at page 1].

76.    Accordingly, the relief sought in the Claim does not constitute "Damages" as that term is defined in the 2005-06 Policy, and that policy therefore does not provide coverage for the Claim.

F.    **Coverage For the Payment of, Division of, or Apportionment of Legal Fees is Excluded**

77.    The 2005-06 Policy excludes coverage for any Claim based upon or arising out of a contract for, or other right relating to, payment of or division of legal fees or fee apportionment.

78.    The Claim alleges that the Defendants have asserted an interest in other lawyers' legal fees, and that the Defendants have attempted to steal, extort, and illegally obtain attorney's fees from other lawyers.

79.    Accordingly, the 2005-06 Policy does not provide coverage for the Claim.

## Count IV

## Request for Declaratory Judgment that CGT is Not Entitled to An Extended Reporting Period

80.    Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

81.    The 2006-07 Policy provides that if Evanston cancels or non-renews the Policy, CGT, for an additional charge, shall have the right to extend the period during which Claims must be first made and reported.  [Exhibit 3 at page 4].

82.    Because Evanston is entitled to the rescission of the 2006-07 Policy, Evanston requests the Court to declare that CGT is not entitled to an Extended Reporting Period under the 2006-07 Policy.

83.    To the extent that the Court does not declare that the 2006-07 Policy is rescinded and *void ab initio*, Evanston asserts that CGT is not entitled to an Extended Reporting Period under the 2006-07 Policy because of its breach of Policy provisions.

84.    The 2006-07 Policy provides that CGT has the right to an Extended Reporting Period if cancellation or non-renewal does not result from CGT's non payment of premium and/or deductible or other non-compliance with the terms and conditions of the Policy.

85.    The 2006-07 Policy contains a "Condition Precedent" at page 1, which provides that "[a]s conditions precedent to the availability of any coverage under this policy, …the application attached hereto and made a part hereof and all information in whatever form communicated by the Insured to the company must be accurate."  [Exhibits 2 and 4 at page 1]. The 2006-07 Policy also provides in the Other Conditions section that "the Insured agrees that the statements in the policy are personal representations, that they shall be deemed material and

that this policy is issued in reliance upon the truth of such representations..." [Exhibits 2 and 4 at page 7].

86.    Evanston's non-renewal of the Policy results from CGT's non-compliance with the above terms and conditions of the Policy in that CGT made misrepresentations to Evanston in the Policy application.  Accordingly, CGT is not entitled to an Extended Reporting Period.

## Count V

## Fraudulent Misrepresentation and Fraudulent Inducement

87.    Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

88.    CGT's representations in the 2005-06 and 2006-07 policy applications set forth in paragraphs 34 and 35 above that Mr. Celis is a lawyer, were all false.

89.    The false representations were material to Evanston's decision to issue the Policies.

90.    At the time the representations were made, Defendants knew that the representations were false or made the representations recklessly, as a positive assertion, without knowledge of their truth.

91.    Defendants made the false representations with the intent to deceive Evanston and to induce Evanston into issuing the Policies.

92.    Evanston actually and justifiably relied on the false representations to its detriment in deciding to issue the Policies.

93.    The false representations were material to the risk underwritten by Evanston, and if Evanston had known the true facts, Evanston would not have issued the Policies.

94.    Accordingly, Evanston is entitled to rescission and/or cancellation of the Policies from their inception.

95.    Evanston has also suffered damages as a result of the Defendants' false representations in the amount of costs and expenses incurred by Evanston with respect to the defense of the Defendants.

96.    Evanston is therefore also entitled to an order that the Defendants is obliged to reimburse Evanston for any and all defense costs and expenses paid by Evanston on behalf of any of the Defendants.

### Count VI

### Negligent Misrepresentation

97.    Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

98.    CGT's representations in the 2005-06 and 2006-07 policy applications set forth in paragraphs 34 and 35 above that Mr. Celis is a lawyer, were all false.

99.    The false representations were material to Evanston's decision to issue the Policies.

100.    In deciding to issue the Policies, Evanston reasonably relied on one or more of the false representations.

101.    The false representations were material to the risk underwritten by Evanston, and if Evanston had known the true facts, Evanston would not have issued the Policies.

102.    The false statements were made in violation of a duty to exercise reasonable care.

103.    Accordingly, Evanston is entitled to rescission and/or cancellation of the Policies from their inception.

104.    Evanston has also suffered damages as a result of the Defendants' false representations in the amount of costs and expenses incurred by Evanston with respect to the defense of the Defendants.

105.    Evanston is therefore also entitled to an order that the Defendants is obliged to reimburse Evanston for any and all defense costs and expenses paid by Evanston on behalf of any of the Defendants.

## Count VII

## Unjust Enrichment

106.    Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

107.    Evanston has, at its own expense, conferred a benefit upon the Defendants, to the extent of costs and expenses incurred on behalf of the Defendants.

108.    By permitting Evanston to pay for the costs associated with its defense and to make the Settlement Payment on its behalf, the Defendants have retained and appreciated these benefits.

109.    For the reasons set forth in this Complaint, the Defendants were not entitled to this benefit.

110.    Under the circumstances, good conscience requires that the Defendants make restitution to Evanston in an amount equivalent to the costs and expenses Evanston has paid or incurred with respect to the defense of any of the Defendants'.

111.    Evanston is therefore entitled to judgment against the Defendants for the amount of the defense costs and expenses that Evanston has paid with respect to any and all Defendants.

## Count VIII

## Attorney's Fees

112.    Evanston incorporates by reference the allegations of all foregoing paragraphs of this complaint.

113.    It has been necessary for Evanston to retain the law firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP to represent its interests in pursuing this action. Accordingly, Evanston is entitled to collect from Defendants its reasonable attorneys' fees and expenses incurred in prosecuting this action. Therefore, Evanston respectfully requests this Court to award to it its reasonable and necessary attorneys' fees, as well as all costs of court, incurred in prosecuting this action.

## IX
## RELIEF REQUESTED

Plaintiff Evanston Insurance Company respectfully requests that judgment be entered in its favor and against the Defendants:

(A)    Declaring that Lawyers Professional Liability Insurance Policy number LA 803756 issued by Evanston Insurance Company to CGT Law Group International LLP effective December 7, 2005 to December 7, 2006 is rescinded and *void ab initio*.

(B)    Declaring that Lawyers Professional Liability Insurance Policy number LA 804111 issued by Evanston Insurance Company to CGT Law Group International LLP effective December 7, 2006 to December 7, 2007 is rescinded and *void ab initio*.

(C)    Alternatively, declaring that:

(1)    the 2005-06 Policy does not provide coverage for Defendants against the allegations in the *Gonzales, Steele, UPLC, and AG* lawsuits and that Evanston therefore

owes no duty to defend and indemnify them under the Policy against the allegations in those lawsuits.

(2) the 2006-07 Policy does not provide coverage for Defendants against the allegations in the *Gonzales, Steele, UPLC, and AG* lawsuits and that Evanston therefore owes no duty to defend and indemnify them under the Policy against the allegations in those lawsuits.

(D)    Declaring that CGT is not entitled to an Extended Reporting Period under the 2006-07 Policy.

(E)    Awarding Evanston Insurance Company reimbursement of all costs it has incurred in connection with the defense of any of the Defendants in this case.

(F)    Awarding Evanston Insurance Company its reasonable and necessary attorney's fees and expenses in prosecuting this lawsuit, court costs, and pre-judgment and post-judgment interest.

(G)    Awarding Evanston Insurance Company such other and further relief, both at law and in equity, to which it may show itself to be justly entitled.

Respectfully submitted,

By: _____

William Gandy (Bar No. 491153)
Jason R. Waters (Bar No. 491066)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22102
Phone: 703-245-9300
Fax: 703-245-9301
E-mail: william.gandy@wilsonelser.com

ATTORNEYS FOR PLAINTIFF
EVANSTON INSURANCE COMPANY

ORIGINAL COMPLAINT
358565.1



# CGT ●
## Law Group International, LLP

TOLL FREE: 1-
FAX 1-

**Eng**

■ Washington D.C. | ■ Corpus Christi | ■ Beverly Hills | ■ Phoenix | ■ Mexico, D.F. | ■ Chihuahua, MX |

■ Attorneys  ■ Referral Opportunities  ■ Resources  ■ News



our team

## Featured Litigation

**Catastrophic Injury and Wrongful Death resulting from;**

- General Automotive Defects
- Roof Crush
- Non-Glazed Automotive Glass
- Stability Defects/Roll Overs
- Tire Defects
- Fuel-Fed Auto Fires
- Child Restraint Litigation
- Trucking Accidents
- Pharmaceutical Litigation
- Aviation Accidents
- Premises Litigation
- Workplace Injuries
- Industrial Accidents
- Refinery/Oil Field Negligence
- Fires & Explosions
- Drill Rig Accidents
- House Fires
- Maritime Accidents
- General Negligence
- House/Apartment Fires
- Nursing Home Negligence

■ ■ ■ **Attorneys at Law**

Mauricio R. Celis

Douglas R. Gwyther

Raul R. Tapia

T. Chris Pinedo

James Hobart Hada

Thomas A. Guajardo

Jose Valenzuela Hernandez

Armando Beteta



EXHIBIT
P2

Back to Home Page

Design & Hosted by: I

5/29/2007

CGT Law Group International, L.L.P. - Mauricio R. Celis - Attorney at Law

Page 1 of 1

# CGT



## Law Group International, LLP

TOLL FREE: 1-
FAX 1-

Eng

■ **Washington D.C.** ■ **Corpus Christi** ■ **Beverly Hills** ■ **Phoenix** ■ **Mexico, D.F.** ■ **Chihuahua, MX**

■ **Attorneys** ■ **Referral Opportunities** ■ **Resources** ■ **News**

our team

**Featured Litigation**

**Catastrophic Injury and Wrongful Death resulting from:**

- General Automotive Defects
- Roof Crush
- Non-Glazed Automotive Glass
- Stability Defects/Roll Overs
- Tire Defects
- Fuel Fed Auto Fires
- Child Restraint Litigation
- Trucking Accidents
- Pharmaceutical Litigation
- Aviation Accidents
- Premises Litigation
- Workplace Injuries
- Industrial Accidents
- Refinery/Oil Field Negligence
- Fires & Explosions
- Drill Rig Accidents
- House Fires
- Maritime Accidents
- General Negligence
- House/Apartment Fires
- Nursing Home Negligence



■ ▓ ▒ **Mauricio R. Celis - Attorney at Law**



Download Vcard

Mauricio R. Celis was born in Mexico, raised in S. holds dual U.S. and Mexican citizenship. He is a Military veteran having served with honor in the mi the U.S. Navy in the Gulf War. He has been continues to be involved with the investigation, in accident reconstruction and pre-litigation discovery cases.

He is a licensed attorney in Mexico and is fluent and spoken Spanish. Mauricio is the founding part Law Group International L.L.P. law firm. He found the intention of providing innocent victims le worldwide. His personal philosophy has always be legal practice to helping those victims involved in catastrophic injury and wrongful death wherever and whenever help is needed. He has been involved in many cases which have resulted significant recoveries for the Firm's cl

Mauricio's service commitment is not limited to only legal matters. He is a known hu has donated hundreds of thousands of dollars to charitable organizations such : McDonald House and Driscoll Children's Hospital. In fact, he was directly responsib young boy's life by advocating the need for a heart surgery on a young boy who did r insurance. He is a Board Member of Catholic Charities and is the acting Civil Right LULAC Council Number One. He is also a member of the G.I. Forum of South Texas.

His message to all prospective clients and existing clients is this; "My staff and I will r diligently, and tirelessly on behalf of your case to ensure that justice is found for you."



EXHIBIT
P 3

Back to Home Page

Design & Hosted by: I

TRN:
FBI NO.
DPS NO.
D.O.B.   11/02/1971
DATE OF ARREST:
ARRESTING AGENCY:
BOND:              By:

NO.  07-CR-4047-E

THE STATE OF TEXAS VS. MAURICIO CELIS

CHARGE:   AGGRAVATED PERJURY
STATUTE: TEXAS PENAL CODE 37.03
DEGREE:   THIRD

COURT: _____

* * * * * * * * * * * * * * * * * * *

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Nueces County, Texas, presents in the District Court of Nueces County, Texas, that MAURICIO CELIS, defendant,

on or about the 30th day of May 2007, in Nueces County, Texas, did then and there, with intent to deceive and with knowledge of the statement's meaning, make a false statement under oath, namely that he had graduated from the Universidad Regionmontana in Monterrey, Mexico, such sworn statement being then and there required by law to be made under oath, while the said Mauricio Celis was under oath, and such statement was false in that Mauricio Celis never graduated from said university, and such statement was made during or in connection with an official proceeding, to wit: a pretrial hearing in cause No. 6349 in the 49th District Court of Zapata County, Texas, styled Gonzalez &

*Exhibit B*

Associates Law Firm etal vs. Chris Piñedo etal, and said false
statement was then and there material to such proceeding in that
the questions at the hearing involved the qualifications of
Mauricio Celis to practice law in Mexico and the false statement
dealt with his educational qualifications to practice law in
Mexico,

against the peace and dignity of the State.



FOREMAN OF THE GRAND JURY

INF: 07111600945 SID    513261
FELIX, MAURICIO RODRIGUEZ
DOB 11/20/1971
AGGRAVATED PERJURY    F3

TRN:
FBI NO.
DPS NO.
D.O.B. 11/02/1971
DATE OF ARREST:
ARRESTING AGENCY:
BOND:                    BY:

NO. 07-CR-4049-E

THE STATE OF TEXAS VS. MAURICIO CELIS

CHARGE: THEFT
STATUTE: TEXAS PENAL CODE SECTION 31.03
DEGREE: STATE JAIL FELONY

COURT: _____

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Nueces County, Texas, presents in the District Court of Nueces County, Texas, that

MAURICIO CELIS, defendant,

on or about FEBRUARY 14, 2007, in Nueces County, Texas, did then and there unlawfully appropriate, by acquiring or otherwise exercising control over, property, to wit: money, of the value of $1,500.00 or more but less than $20,000.00 from Paloma Steele, the owner thereof, without the effective consent of the owner and with intent to deprive the owner of the property,

against the peace and dignity of the State.

FOREMAN OF THE GRAND JURY

0-11160949 SID    512261
IIS. MAURICIO RODRIGUEZ
B 11/02/1971
EFT >=$1.500 <$20K    FS

TRN:
FBI NO.
DPS NO.
D.O.B.   11/02/1971
DATE OF ARREST:
ARRESTING AGENCY:
BOND:                    By:

NO.   07 - CR - 4046 - E

THE STATE OF TEXAS VS. MAURICIO CELIS

CHARGE:   COUNTS 1-7: FALSELY HOLDING ONESELF OUT AS LAWYER
STATUTE:  TEXAS PENAL CODE 38.122
DEGREE:   THIRD

COURT: _____

* * * * * * * * * * * * * * * * * * * * * *

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Nueces County, Texas,
presents in the District Court of Nueces County, Texas, that

COUNT 1

MAURICIO CELIS, defendant,

on or about November 1, 2005, in Nueces County, Texas, did
then and there, with intent to obtain an economic benefit for
himself, hold himself out as a lawyer, to wit: by stating on
business letterhead that he was licensed in Mexico, and the
defendant was not then and there licensed to practice law in this
state, another state, or a foreign country and was not then and
there in good standing with the State Bar of Texas and the state
bar or licensing authority of any state or foreign country where
the defendant was licensed to practice law,

COUNT 2

MAURICIO CELIS, defendant,

on or about November 1, 2005, in Nueces County, Texas, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: by stating on a business card that he was an attorney licensed in Mexico, and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas and the state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law,

COUNT 3

MAURICIO CELIS, defendant,

on or about November 1, 2005, in Nueces County, Texas, did then and there, with intent to obtain an economic benefit for himself, Hold himself out as a lawyer, to wit: by stating on a business fax cover sheet that he was licensed in Washington, D.C. and California, and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas and the state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law,

COUNT 4

MAURICIO CELIS, defendant,

on or about November 1, 2006, in Nueces County, Texas, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: by being listed on

a business web page under the heading "Attorneys at Law," and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas and the state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law,

### COUNT 5

MAURICIO CELIS, defendant,

on or about November 1, 2006, in Nueces County, Texas, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: by being described on a business web page as an attorney at law, and a licensed attorney in Mexico, and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas and the state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law,

### COUNT 6

MAURICIO CELIS, defendant,

on or about February 8, 2007, in Nueces County, Texas, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: by signing a legal document in a place designated for an attorney's signature, and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas and the

state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law,

COUNT 7

MAURICIO CELIS, defendant,

on or about January 25, 2007, in Nueces County, Texas, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: by telling Bryan Smith that he was licensed in Mexico, and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas and the state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law,

against the peace and dignity of the State.

_____
FOREMAN OF THE GRAND JURY

INC   0711160959 SID   512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT I//FALSLEY HOLDING  F3

INC  0711160959 SID   512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT II//FALSLEY HOLDING F3

INC  0711160959 SID   512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT III//FALSLEY HOLDIN F3

INC  0711160959 SID   512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT IV//FALSLEY HOLDING F3

INC  0711160959 SID   512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT V//FALSLEY HOLDING  F3

INC  0711160959 SID   512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT VI//FALSLEY HOLDING F3

INC  0711160959 SID   512261
CELIS, MAURICIO  RODRIGUEZ
DOB 11/03/1971
COUNT VII//FALSLEY HOLDIN F3

**SHAND MORAHAN & COMPANY, INC.**
Ten Parkway North, Deerfield, IL 60015
(847) 572-6000 Fax (847) 572-6177
Underwriting Manager
A Markel Company

□ **DEERFIELD INSURANCE COMPANY**
□ **EVANSTON INSURANCE COMPANY**
□ **ESSEX INSURANCE COMPANY**
□ **MARKEL AMERICAN INSURANCE COMPANY**
□ **MARKEL INSURANCE COMPANY**

## APPLICATION FOR LAWYERS PROFESSIONAL LIABILITY INSURANCE
(Claims Made and Reported Basis)

**APPLICANT'S INSTRUCTIONS:**
1. Answer all questions. If more details are required, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.
(PLEASE TYPE OR PRINT)

1. **APPLICANT INFORMATION**

   a. Full name of applicant: CGT LAW GROUP INTERNATIONAL, LLP

   b. Principal business premise address: 101 CONSTITUTION AVENUE NW, SUITE 900 (Street)
   WASHINGTON D.C. (City) ___ (State) ___ (Country)  20001 (Zip)

   c. Please list any secondary locations on a separate sheet and include number of lawyers at each location.
   COMPLETE THE INSURED SUPPLEMENT

   d. (i) Number of attorneys _4_

   (ii) Number of Paralegals or law clerks _____

   (iii) Number of clerical or support staff _3_

   (iv) Other-please describe
   1 - CPA /CONTROLLER

   e. Specify if: [ ✓ ] Partnership    [ ] Corporation    Year established: Limited Liability Partnership - 2005

2. **BUSINESS OPERATIONS**

   a. List on separate attachments the names of all predecessor firms whose assets and liabilities the Firm assumed during the past 10 years, include the name(s) of the firm(s), the year established, the number of lawyers, and the location NONE

   b. Does the firm share or lease space with any other firm or entity? ............................ [ ] Yes [ ✓ ] No
   If so, please advise of the entity' name and the specific circumstances on a separate attachment.
   c. Please advise of any foreign affiliated or associated firms and provide a detailed narrative of the name of the relationship on a separate attachment.

   d. Provide corporate brochure(s) and/or firm resume.

   e. (i) Does any member of the Firm while rendering legal services also provide investment counselor services or provide tax opinions on tax shelters? ............................ [ ] Yes [ ✓ ] No
   If yes, please describe the nature of the services provided and the types of clients to which such services are provided on separate attachment.

   (ii) Does any member of the firm on behalf of its clients perform legal services involving the formation or sale of syndications or limited partnerships? ............................ [ ] Yes [ ✓ ] No
   If yes, on separate attachment, describe services performed and details, including number of formed during the past two years, total dollar amount of each and the nature of the investment.

SM 4115.01 1/02

No.3 SuiteRAHouse      Phone: Dom Caines 949-672-8229      The Lisa Stringer

Date: 7/18/2003 Time: 9:30:54 AM

f.   Indicate the approximate percentage of gross billable dollars from practice devoted to

| | | | | |
|---|---|---|---|---|
| Admiralty/Maritime | ___ % | Corporate (general) | | Real Estate |
| Anti-Trust/Trade Reg | ___ % | Corp. Mergers/Acquisitions ___ % | | Closings ___ % |
| Banking | ___ % | Criminal ___ % | | Escrow/Title ___ % |
| Bankruptcy | ___ % | Domestic Relations ___ % | | Syndication/Development ___ % |
| BI/PI Defendants | ___ % | Entertainment ___ % | | Securities Law*: |
| BI/PI Plaintiffs | ___ % | Estate/Probate/Trust ___ % | | Federal SEC ___ % |
| Anticipated fees per case | | International Law ___ % | | State ___ % |
| less than $25,000 | ___ % | Labor ___ % | | Private Placements ___ % |
| Anticipated fees per case | | Litigation: | | Bonds ___ % |
| greater than or equal to | | Plaintiff ___ % | | Taxation ___ % |
| $25,000 | _100_ % | Defense ___ % | | Preparation ___ % |
| Collection/ | | Municipal ___ % | | Opinions ___ % |
| Repossession | ___ % | Oil and Gas ___ % | | Other** ___ % |
| Communications | ___ % | Public Utilities ___ % | | ___ % |
| Copyright/Patent/TM | ___ % | | | ___ % |

* Complete Securities Supplement.
** Over 5% Specify.

TOTAL INCOME:      100%

g.   Are any major changes foreseen in the percentage shown in question (f) for the current fiscal year? ..... [ ] Yes [✓] No
     If yes, please provide narrative details on a separate attachment.

h.   Specify the firm's total gross revenues:

Last fiscal year      From _____ to _____

NEXT YEAR
i.   Estimate current fiscal year:   From _01/01/06_ to _12/31/06_   Gross Revenues $ NA - NEW FIRM
                                                                     Gross Revenues $ 3,000,000

i.   Is any lawyer listed in the Insured Supplement serving as a director, officer or partner of or
     exercising any fiduciary control over any entity other than the firm? .............................. [✓] Yes [ ] No
     If yes, complete the Outside Interests Supplement

     REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

j.   Other than those positions referenced in question (i), does the firm or any lawyer or employee of
     the firm ever invest in the business of a client? .................................................. [ ] Yes [✓] No
     If yes, please provide on separate attachment full details of such relationship.

     REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

k.   Except as listed in question i and j, does the firm or any of its members engage in any occupation,
     business or profession other than the practice of law? ............................................. [ ] Yes [✓] No
     If yes, please provide narrative details on a separate attachment.

l.   (i)  Are custodial accounts (i.e., money, securities and other property held on behalf of clients)
          audited by an independent, outside auditor? .................................................... [ ] Yes [✓] No

     (ii) Are two signatures required for all withdrawals of funds from custodial accounts? ............... [ ] Yes [ ] No

m.   With respect to the total of all custodial accounts other than retainer fees, what is the average dollar amount and the
     maximum dollar amount held or maintained on behalf of the firm's clients?
     Average: $ 1000                              Maximum: $ 250,000

n.   Does the firm maintain a fidelity bond covering all employees? ..................................... [✓] Yes [ ] No

o.   (i)  Please describe by separate attachment the firm's procedures for the acceptance of new
          business including conflict of interest checks and who has the authority to accept new
          business. ...................................................................................... [ ] Yes [✓] No
                                                                                                         Applied For

     (ii) Does the firm make use of engagement letters with its new clients? ............................ [✓] Yes [ ] No

SM 4115-01  1/02

File: [illegible]    [illegible] Calls: 617-572-5329    To: Lisa Stringer    Date: 7/15/2009 Time: 8:25:34 AM    Page 6 of 17

**3.  HISTORY**

a   Over the past five years, has the Firm opened or closed any branch office or had a single loss of 25% or more of the lawyers of the Firm? __ N/A - NEW FIRM __  [ ] Yes [ ] No
    If yes, please provide details by separate attachment.

b   (i)  Has the firm or any predecessor firm or any lawyer listed in the Insured Supplement ever had any insurance company or Lloyd's decline, cancel, refuse to renew or accept only on special terms any professional liability insurance? _____  [ ] Yes [✓] No
    If yes, please explain: _____

    (ii)  Has any lawyer listed in the Insured Supplement ever been the subject of a reprimand or disciplinary action or refused admission to the Bar? _____  [ ] Yes [✓] No
    If yes, please explain on a separate attachment.

    (iii)  During the past seven years, has any professional liability claim or suit been made against any lawyer listed in the Insured Supplement or against the firm or any predecessor firm? ___  [ ] Yes [✓] No
    If yes, a SUPPLEMENTAL CLAIM INFORMATION form must be completed for each claim.

    (iv)  After inquiry, does the firm or any person proposed for the insurance have knowledge of any incident, circumstance, act, error, omission or personal injury which may give rise to a claim? ___  [ ] Yes [✓] No
    If yes, provide a complete description of each on a separate attachment.  It is agreed that if there be knowledge of any such incident, circumstance, error, omission or personal injury, any claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance.

c   Please provide a list by separate attachment of all clients that represent 5% or more of the firm's total billable dollars or contribute $1,000,000 or more to the firm's income annually. __ N/A __

d   List lawyers professional liability insurance carried for each of the past five years.  IF NONE, STATE NONE.

| Inception From | Expiration To | Insurance Company | Policy No. | Limit of Liability | Deductible | Premium |
|---|---|---|---|---|---|---|
| From___ | To___ | | | | | |
| From___ | To___ | N/A - NEW FIRM | | | | |
| From___ | To___ | | | | | |
| From___ | To___ | | | | | |
| From___ | To___ | | | | | |

NOTICE TO APPLICANT: The coverage applied for is SOLELY AS STATED IN THE POLICY, which provides coverage on a "CLAIMS MADE" basis for ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD unless the extended reporting period option is exercised in accordance with the terms of the policy.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information or conceals, for the purpose of misleading, information concerning any fact thereto commits a fraudulent insurance act, which is subject to criminal and civil penalties.

WARRANTY: I warrant to the Insurer, that I understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Insurer make acceptance of this application by issuance of a policy.  I authorize the release of claim information from any prior insurer to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015.

CGT Law Group International, LLP
Name of Applicant

PARTNER
Title (Officer, partner, etc.)

Signature of Applicant

12-7-05
Date

SIGNING this application does not bind the Applicant or the Insurer or the Underwriting Manager to complete the insurance but one copy of this application will be attached to the policy, if issued.

SM 4115-01  1/02

Date: 7/18/2008 Time: 9:23:34 AM

Page 7 of 12

**INSURED SUPPLEMENT**

## APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE

Indicate the names of all lawyers who are presently officers, partners, employed lawyers, of counsels or retired partners of the Firm and complete the requested information for each lawyer. Please note that coverage responds only for acts performed on behalf of the firm.

| Name of Lawyers | Designation O - Officer P - Partner E - Employed Lawyers OC - Of Counsel RP - Retired Partner | Member of Management Committee or Governing Body (Yes/No) | Your Admitted to Bar | Years of Full-Time Practice | Specialty, if any | Member in Good Standing of the Following State Bar(s) |
|---|---|---|---|---|---|---|
| Maurilio Celis | Partner | Yes | 2000 | 6 | | Mexico |
| Douglas Gwyther | Partner | Yes | 1998 | 7 | | Texas |
| Raul Tapia | Partner | Yes | 1977 | 29 | | Washington D.C |
| Thomas A. Guajardo | Employed Lawyer | No | 1977 | 29 | | Washington D.C, California, Texas, Arizona |

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT Law Group International, LLP
Name of Applicant

PARTNER
Title

Signature of Applicant

12-7-05
Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01 1/02

Page 4 of 8

**OUTSIDE INTERESTS SUPPLEMENT**
**APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE**

FIRM: CGT Law Group International, LLP

| Name of Lawyer | Name of Business | Position Held | Nature of Business | % of Equity Interest Individual | Firm & All Lawyers and Their Spouses and Immediate Family Members Combined | Client of Applicant (Yes/No) | D&O Insurance (Yes/No) |
|---|---|---|---|---|---|---|---|
| Maurico Celis | Tapatio I | Owner | Air Charter | 50% | — | No | Yes |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

CGT Law Group International, LLP
Name of Applicant*                          Title: PARTNER

Signature of Applicant*                      Date: 12-7-05

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02

Date: ?/??/2004 Time: 9:22:34 AM

**SECURITIES SUPPLEMENT**
**APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE**

(Complete Only if the Firm does Securities Offerings, Private Placements or Bond Work)

FIRM  **CGT LAW GROUP INTERNATIONAL, LLP**

1   Indicate the approximate amount of billable dollars derived from securities (exempt and non-exempt) work including federal SEC, state securities, private placements and bonds: $ _____ *N/A*

2   Briefly describe your SEC practice qualifications including whether any lawyers of the Firm involved in such activities have in the past been SEC staff members, practiced before the SEC or been cautioned or disqualified by the SEC. Provide narrative by separate attachment.

3   (a) indicate by a check those procedures employed by the Firm in security (exempt and non-exempt) matters including private placements and bonds: *N/A*

| | | | |
|---|---|---|---|
| Investigate client | | Check on federal reporting systems | |
| convictions | | | for prior criminal |
| Investigate other participants | _____ | Court/regulatory investigation | _____ |
| Investigate other professionals | _____ | SEC filings filed and in order | _____ |
| Checklist | _____ | Check on tax opinion | _____ |
| On-site inspections | _____ | Render tax opinion | _____ |
| Review of corporate character | _____ | Check on prior injunctive actions in the SEC | _____ |
| Check on feasibility study | _____ | | |

(b) If the firm uses procedures other than those listed in 3(a) above, please describe by separate attachment.

4.   Using the chart on the following page, list securities offerings (exempt and non-exempt), private placements and bond offerings handled in the past two years including the year, name of insurer, type of transaction, type of business, underwriter, accountant, dollar size of offering and party represented by Firm.

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

**CGT LAW GROUP INTERNATIONAL LLP**
Name of Applicant*

Title   **PARTNER**

Signature of Applicant*

Date   **12-7-05**

*MUST BE SIGNED BY A MEMBER OF THIS FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

HET SHERWOOD    From: Ben Gales 817-572-2228    To: Lisa Swinger

Date: 7/19/2006 Time: 8:22:34 AM

Page 13 of 13



| Year | Name of Issuer | Type of Transaction Indicate: P = Private Placement F = Federal Securities S = State Securities B = Bond | Indicate: Primary Offering = 1 Subsequent Offering = 2 | Type of Business | Underwriter | Accountant | Dollar Size of Offering and Description of Security | Indicate Party Represented by Firm: I = Insurer U = Underwriter L = Lender IC = Insurance Co. P = Purchaser Others - specify |
|---|---|---|---|---|---|---|---|---|
|  |  | N/A |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |

*Indicate by an Asterisk if acting as Bond Counsel.

SM 4115-01  1/02

From: Ron Oales 847-678-0229    Tel Line Stringer    Date: 7/18/2008 Time: 8:29:24 AM    Page 11 of 12

**SHAND MORAHAN & COMPANY, INC.**
Fen Parkway North, Deerfield, IL 60015
(847) 372-5000  Fax (847) 572-5137
Underwriting Manager
A Markel Company

○ **DEERFIELD INSURANCE COMPANY**
○ **EVANSTON INSURANCE COMPANY**
○ **ESSEX INSURANCE COMPANY**
○ **MARKEL AMERICAN INSURANCE COMPANY**
○ **MARKEL INSURANCE COMPANY**

## SUPPLEMENTAL CLAIM INFORMATION FOR LAWYERS' PROFESSIONAL LIABILITY INSURANCE
### (Claims Made and Reported Basis)

**APPLICANT'S INSTRUCTIONS:**
1. Answer all questions. If more details are required, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. This form is to be completed by Applicant who has been involved in any claim or suit or aware of an incident which may give rise to a claim.
4. Complete one form for each claim or incident.
5. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.

(PLEASE TYPE OR PRINT)

**APPLICANT INFORMATION**

a. Firm Name: _____ N/A _____

b. Claimant Name: _____

c. Name of Individual(s) at Firm Involved in Claim: _____

d. Indicate whether _____

e. Date of alleged error: _____ Claim/Suit, or _____ Incident

f. Additional defendants: _____ Date of claim: _____

g. IF CLOSED: Total Loss Paid including Deductible: $ _____
  Indicate whether _____ Court judgment, or _____ Out of court settlement
  IF PENDING: Claimant's settlement demand?  $ _____
    Defendant's offer for settlement?  $ _____
    Insurer's loss reserve?  $ _____
    Deductible?  $ _____
  Is claim in Suit?  [ ] Yes [ ] No  If yes, Amount asked in summons? $ _____

h. Name of Insurer: _____

i. Description of claim: (Provide enough information to allow evaluation, and use reverse side if additional space is required.)
  (i) Alleged act, error or omission upon which Claimant bases claim: _____
  _____

  (ii) Description of case and events: _____
  _____

  (iii) Description of the type and extent of injury or damage allegedly sustained: _____
  _____

j. Firm's evaluation of likelihood of liability: _____

k. Explain what action has been taken by the firm to prevent recurrence of the same type of claim _____

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT LAW GROUP INTERNATIONAL, LLP    PARTNER
Name of Applicant*    Title (Officer, partner, etc.)

_____    12-7-05
Signature of Applicant*    Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02    Page 8 of 8

## CGT LAW GROUP INTERNATIONAL, LLP

Question 2  O (I)

New Clients and conflict of interest checks:

The firm maintains a management committee. There are three partners on this committee. All new clients are subject to approval by the firms management committee. Any lawyer generating new business is required to associate with a partner with specific expertise in the matter prior to proposing new business to the management committee.

The firm maintains a conflict of interest system on computer. All cases are maintained on a computer database. Conflict checks are reviewed at inception of all new cases. The conflict of interest systems reviews the following information: client name, opposing party, client subsidiaries, client principals, opposing counsel, outside interests of firm personnel and names of parties whose representation was declined.

All lawyers in the firm, regardless of practice area or geographical location are able to access all conflict data held by the firm in their conflict search. All potential conflicts are always referred to the management committee.

Where representation is continued subject to conflict waivers, the firm maintains a written Policy requiring the waiver to clearly show (1) the conflicting parties the nature of the conflict (2) show how it could affect the representation and (3) show how the client was advised to consider consulting another Law Firm either about the conflict and/or the original matter prior to signing the waiver.



Law Group International, LLP

Mauricio R. Celis
Licensed in Mexico

D. R. Gwyther, Jr.
Licensed in Texas

Raul R. Tapia
Licensed in
Washington, D.C.
& California

T. Anthony
Guajardo
Licensed in Arizona
& Texas

CORPUS CHRISTI OFFICE
500 N. Water Street
5th Floor South Tower
Corpus Christi, Texas 78471
361.884.6791 | 361.884.6207 Fax
info@cgtlaw.com | www.cgtlaw.com
800.368.5004 Toll Free

WASHINGTON OFFICE
101 Constitution Ave., NW
Suite 903
Washington, D.C. 20091
202.742.4440 | 202.742.4422 Fax
info@cgtlaw.com | www.cgtlaw.com
800.368.5004 Toll Free

**SHAND MORAHAN & COMPANY, INC.**
Two Parkway North, Deerfield, IL 60015
(847) 572-6000 Fax (847) 572-6157
Underwriting Manager
A Markel Company

○ DEERFIELD INSURANCE COMPANY
○ EVANSTON INSURANCE COMPANY
○ ESSEX INSURANCE COMPANY
○ MARKEL AMERICAN INSURANCE COMPANY
○ MARKEL INSURANCE COMPANY

## BI PLAINTIFF FIRMS
### PERTINENT INFORMATION NEEDED

1. Use of engagement/retention letter - send sample. - <del>between</del> *See Attached Engisl version -*

2. Procedure used if firm declines services to client. Do they advise of statute? *By letter/Sent Certified Mail and Regular mail). Telephone call by attorney, followed of Delaware statute of Limitations aunt/or statutes of repose (if applicable)*

3. Percentage of settlement firm takes as fees. *(25-50%) Varies depending on value of case, Venue, Appeal.*

4. Types of cases - i.e., medical malpractice, asbestos, personal injury, wrongful death. *Wrongful death, product Liability, Automotive defects, Personal injury, Trucking accidents, Limited Business Litigation, commercial.*

5. Docket - request narrative describing controls.
   a) New File - How does initial answer data get on system? By whom? *Attorney notifies paralegal or clerk who enters it on case Master information sheet in Computer and paper files.*
   b) What control (or who) checks to see if suit is filed? *Attorney in charge of case and paralegal.*

6. Does the firm advertise? ☒ Yes [ ] No. If so, in what medium? *Yellowpages, website, office brochure, Limited direct mailings to clients, former clients.*

7. Does the firm take referral cases in state, out of state? ☒ Yes [ ] No. If so, approximately how many per year? *New firm - Expect 10-20 referred cases in first year.*

8. Does the firm refer cases to other firms? ☒ Yes [ ] No. Approximately how many per year? *New firm - Expect to refer 40-70 cases out to other firms in first year.*

I/We understand that the information submitted herein becomes part of my/our professional liability application and is subject to the same representations and conditions.

*D. R. Gustother, Jr.*
Name of Applicant

*[signature]*
Signature of Applicant

MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM8265 3/02

*Partner*
Title (Officer, partner, etc.)

*12/27/05*
Date

NET SatisFAXtion    From: Ben Galee 847-572-0229    To: Lisa Stringer    Date: 7/18/2008 Time: 9:29:28 AM    Page 7 of 12

### INSURED SUPPLEMENT
### APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE

Indicate the names of all lawyers who are presently officers, partners, employed lawyers, of counsels or retired partners of the Firm and complete the requested information for each lawyer. Please note that coverage responds only for acts performed on behalf of the firm.

| Name of Lawyers | Designation<br>O - Officer<br>P - Partner<br>E - Employed Lawyers<br>OC - Of Counsel<br>RP - Retired Partner | Member of Management Committee or Governing Body (Yes/No) | Year Admitted to Bar | Years of Full-Time Practice | Specialty, if any | Member in Good Standing of the Following State Bar(s) |
|---|---|---|---|---|---|---|
| Thomas Christopher Pinedo | E | No | 1988 | 18 | | Texas, Michigan, California |
| NOTE: Mr Pinedo is an employed lawyer Added to our firm. | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT Law Group International, LLP
Name of Applicant*

Title: PARTNER

Signature of Applicant

Date: 6-26-06

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02

Page 4 of 8

OCT/09/2007/TUE 04:59 PM    CGT LAW GROUP LLP    FAX No. 1-361-882-6701    P. 016

NET SalesFAXtion    From: Natalie Heydon 847-572-0229    To: FINAL APP 3598263

Date: 12/12/2008 Time: 10:55:58 AM

Page 1 of 10

NET SalesFAXtion    From: Sen Oelse 847-572-0229    Yot Lisa Sshyder

Date: 7/18/2008 Time: 9:22:24 AM

Page 4 of 12

**SHAND MORAHAN MARKEL & COMPANY, INC.**
(a Parkway North, Deerfield, IL 60015
(847) 572-6000 Fax (847) 572-6137
Underwriting Manager
A Markel Company

- **DEERFIELD INSURANCE COMPANY**
- **EVANSTON INSURANCE COMPANY**
- **ESSEX INSURANCE COMPANY**
- **MARKEL AMERICAN INSURANCE COMPANY**
- **MARKEL INSURANCE COMPANY**

## APPLICATION FOR LAWYERS PROFESSIONAL LIABILITY INSURANCE
### (Claims Made and Reported Basis)

**APPLICANT'S INSTRUCTIONS**
1. Answer all questions. If more details are required, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.
(PLEASE TYPE OR PRINT)

1. **APPLICANT INFORMATION**

   a. Full name of applicant: CGT LAW GROUP INTERNATIONAL LLP

   b. Principal business premises address: 101 CONSTITUTION AVENUE NW SUITE 900
   (Street)
   WASHINGTON D.C.          20001
   (City)          (State)          (Zip)          (County)

   c. Please list any secondary locations on a separate sheet and include number of lawyers at each location.

   COMPLETE THIS INSURED SUPPLEMENT

   d. (i) Number of attorneys ___6___
      (ii) Number of Paralegals or law clerks ___1___
      (iii) Number of clerical or support staff ___4___
      (iv) Other, please describe CPA/Comptroller, Pilots

   e. Specify if: [✓] Partnership  [ ] Corporation  Year established: _____

2. **BUSINESS OPERATIONS**

   a. List on separate attachments the names of all predecessor firms whose assets and liabilities the Firm assumed during the past 10 years. Include the name(s) of the firm(s), the year established, the number of lawyers, and the location

   b. Does the firm share or lease space with any other firm or entity? .......................................... [ ] Yes [✓] No
   If so, please advise of the entity' name and the specific circumstances on a separate attachment.

   c. Please advise of any foreign affiliated or associated firms and provide a detailed narrative of the name of the relationship on a separate attachment.

   d. Provide corporate brochure(s) and/or firm resume.

   e. (i) Does any member of the Firm while rendering legal services also provide investment counselor services or provide tax opinions on tax shelters? ........................................................................... [ ] Yes [✓] No
   If yes, please describe the nature of the services provided and the types of clients to which such services are provided on separate attachment.

   (ii) Does any member of the firm on behalf of its clients perform legal services involving the formation or sale of syndications or limited partnerships? ........................................................ [ ] Yes [✓] No
   If yes, on separate attachment, describe services performed and details, including number of formed during the past two years, total dollar amount of each and the nature of the investment.

SM 4115-01 1/02

Page 1 of 6

OCT/09/2007/TUE 04:59 PM   CGT LAW GROUP LLP      FAX No. 1-361-882-6701      P. 017

NET-SalsFAXlon   From: Natalie Heydon 847-572-6229   To: FINAL APP 8533263      Date: 12/12/2009 Time: 10:55:59 AM      Page 2 of 19

From: use Dave 847-572-6229   To: Lisa Slinger      Date: 7/18/20xx Time: 9:22:04 AM      Page 8 of 13

f. Indicate the approximate percentage of gross billable dollars from practice devoted to:

| | |
|---|---|
| Admiralty/Maritime ___% | Corporate (general) ___% |
| Anti-Trust/Trade Reg. ___% | Corp. Mergers/Acquisitions ___% |
| Banking ___% | Criminal ___% |
| Bankruptcy ___% | Domestic Relations ___% |
| BVPI Defendants ___% | Entertainment ___% |
| BVPI Plaintiffs: ___% | Estate/Probate/Trust ___% |
| Anticipated fees per case less than $25,000 ___% | International Law ___% |
| Anticipated fees per case greater than or equal to $25,000  100 % | Labor ___% |
| Collection/ Repossession ___% | Litigation: |
| Communications ___% | Plaintiff ___% |
| Copyright/Patent/TM ___% | Defense ___% |
| | Municipal ___% |
| | Oil and Gas ___% |
| | Public Utilities ___% |

Real Estate
- Closings ___%
- Escrow/Title ___%
- Syndication/Development ___%
- Securities Law*:
  - Federal SEC ___%
  - State ___%
  - Private Placements ___%
  - Bonds ___%
- Taxation
  - Preparation ___%
  - Opinions ___%
- Other** ___%
___%
___%

* Complete Securities Supplement.
** Over .5% Specify.

TOTAL INCOME:      100%

g. Are any major changes foreseen in the percentage shown in question (f) for the current fiscal year?...... [ ] Yes [✓] No
If yes, please provide narrative details on a separate attachment.

h. Specify the firm's total gross revenues: __
Last fiscal year:      From 01/01/06 to 12/31/06   Gross Revenues $ 500,000 ESTIMATE
Estimate current fiscal year:   From 01/01/07 to 12/31/07   Gross Revenues $ 5,000,000

i. Is any lawyer listed in the insured Supplement serving as a director, officer or partner of or exercising fiduciary control over any entity other than the firm?....................................................... [✓] Yes [ ] No
If yes, complete the Outside Interests Supplement

REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

j. Other than those positions referenced in question (i), does the firm or any lawyer or employee of the firm ever invest in the business of a client?.................................................................... [ ] Yes [✓] No
If yes, please provide on separate attachment full details of such relationship.

REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

k. Except as listed in question i and j, does the firm or any of its members engage in any occupation, business or profession other than the practice of law?................................................................. [ ] Yes [✓] No
If yes, please provide narrative details on a separate attachment.

l. (i)  Are custodial accounts (i.e., money, securities and other property held by behalf of clients) audited by an independent, outside auditor?.................................................................... [ ] Yes [✓] No
(ii) Are two signatures required for all withdrawals of funds from custodial accounts?.................. [ ] Yes [✓] No

m. With respect to the total of all custodial accounts other than retainer fees, what is the average dollar amount and the maximum dollar amount held or maintained on behalf of the firm's clients?
Average: $ 1,500      Maximum: $ 1,000,000

n. Does the firm maintain a fidelity bond covering all employees?.............................................. [ ] Yes [✓] No

o. (i)  Please describe by separate attachment the firm's procedures for the acceptance of new business including conflict of interest checks and who has the authority to accept new business. ........................................................................ [ ] Yes [✓] No

(ii) Does the firm make use of engagement letters with its new clients?.................................. [✓] Yes [ ] No

SM 4115-01 1/02

NET 3adsFAXIIon    From: Natalie Hoyden 647-572-6229    To: FINAL APP 3533283    Date: 12/12/2006 Time: 10.55:59 AM    Page 3 of 10

From: 0an Ulaer 917-572-6229    To: Lisa 21/nger    Date: 3/10/2006 Time: 9:28:24 AM    Page 4 of 1-

3. **HISTORY**

a. Over the past five years, has the Firm opened or closed any branch office or had a single loss of 25% or more of the lawyers of the Firm?
If yes, please provide details by separate attachment. ................................................................. [ ] Yes [✓] No

b. (i) Has the firm or any predecessor firm or any lawyer listed in this Insured Supplement ever had any insurance company or Lloyd's decline, cancel, refuse to renew or accept only on special terms any professional liability insurance?
If yes, please explain. ................................................................................................... [ ] Yes [✓] No

(ii) Has any lawyer listed in the Insured Supplement ever been the subject of a reprimand or disciplinary action or refused admission to the Bar? ................................................................. [ ] Yes [✓] No
If yes, please explain on a separate attachment.

(iii) During the past seven years, has any professional liability claim or suit been made against any lawyer listed in the Insured Supplement or against the firm or any predecessor firm? .................... [ ] Yes [✓] No
If yes, a SUPPLEMENTAL CLAIM INFORMATION form must be completed for each claim.

(iv) After inquiry, does the firm or any person proposed for this insurance have knowledge of any incident, circumstance, act, error, omission or personal injury which may give rise to a claim? .... [ ] Yes [✓] No
If yes, provide a complete description of each on a separate attachment. It is agreed that if there be knowledge of any such incident, circumstance, error, omission or personal injury, any claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance.

c. Please provide a list by separate attachment of all clients that represent 5% or more of the firm's total billable dollars or contribute $1,000,000 or more to the firm's income annually.   N/A

d. List lawyers professional liability insurance carried for each of the past five years. IF NONE, STATE NONE.

| Inception From | Expiration To | Insurance Company | Policy No. | Limit of Liability | Deductible | Premium |
|---|---|---|---|---|---|---|
| From 10/05 | To 12/06 | Evanston | LA-803756 | $2,000,000 | $25,000 | $48,360 |
| From | To | | | | | |
| From | To | | | | | |
| From | To | | | | | |
| From | To | | | | | |

NOTICE TO APPLICANT: The coverage applied for is SOLELY AS STATED IN THE POLICY, which provides coverage on a "CLAIMS MADE" basis for ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD unless the extended reporting period option is exercised in accordance with the terms of the policy.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information or conceals, for the purpose of misleading, information concerning any fact therein commits a fraudulent insurance act, which is subject to criminal and civil penalties.

WARRANTY: I warrant to the insurer, that I understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the insurer evidence its acceptance of this application by issuance of a policy. I authorize the release of claim information from any prior insurer to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015.

CGT LAW INTERNATIONAL LLP
Name of Applicant

PARTNER
Title (Officer, partner, etc.)

Signature of Applicant

10-16-06
Date

SIGNING this application does not bind the Applicant or the insurer or the Underwriting Manager to complete the insurance, but one copy of this application will be attached to the policy, if issued.

SM 4116-01 1/02

Page 3 of 8

From: Natalie Heydon 847-572-8229    To: Lisa Stringer    Date: 1/18/2001 Time: 0:25:34 AM    Page 7 of 10

**INSURED SUPPLEMENT**

**APPLICATION FOR LAWYERS PROFESSIONAL LIABILITY INSURANCE**

Indicate the names of all lawyers who are presently officers, partners, employed lawyers, of counsels or retired partners of the Firm and complete the requested information for each lawyer. Please note that coverage responds only for acts performed on behalf of the firm.

| Name of Lawyer | Designation<br>O - Officer<br>P - Partner<br>E - Employed Lawyers<br>OC - Of Counsel<br>RP - Retired Partner | Member on Management Committee/ Governing Body (Yes/No) | Year Admitted to Bar | Years of Full-Time Practice | Specialty, if any | Member in Good Standing of the Following State Bar(s) |
|---|---|---|---|---|---|---|
| Mauricio Celis | Partner | Yes | 2000 | 7 | | Mexico |
| Douglas R. Gwyther Jr. | Partner | Yes | 1998 | 8 | | Texas, Washington DC |
| Raul R. Tapia | Partner | Yes | 1977 | 29 | | Washington DC & California |
| Thomas A. Gwinner | Employed Lawyer | No | 1977 | 29 | | Arizona & Texas |
| Thomas C. Pinedo | Employed Lawyer | No | 1988 | 18 | | Texas, Michigan & California |
| Jose Valenzuela Hernandez | E | No | 1988 | 18 | | Mexico |
| James Hada | Partner | No | 1989 | 17 | | Texas |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

I/We understand information submitted herein becomes part of my/our professional liability application and is subject to the same representations and conditions.

CGT Law Group International LLP
Name of Applicant                                         Title  Partner

Signature of Applicant                                    Date  10-16-06

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115.01 1/02

Page 4 of 8

OCT/09/2007/TUE 05:00 PM    CGT LAW GROUP LLP                FAX No. 1-361-882-6701                    P. 020

NET SatisFAXtion    From: Natalia Hoyden 847-572-8229    To: FINAL APP 9589263          Date: 12/12/2006 Time: 10:55:50 AM          Page 6 of 10



OUTSIDE INTERESTS SUPPLEMENT
APPLICATION FOR LAWYERS PROFESSIONAL LIABILITY INSURANCE

FIRM: CGT LAW GROUP INTERNATIONAL, LLP

| Name of Lawyer | Name of Business | Position Held | Nature of Business | % of Equity Interest | | Client of Applicant (Yes/No) | D&O Insurance (Yes/No) |
| | | | | Individual | Firm & All Lawyers and Their Spouses and Immediate Family Members Combined | | |
| Marelio Celis | Tapatio, Inc. | Owner | Agriculture | 100% | | No | Yes |

Name of Applicant*: CGT LAW GROUP INTERNATIONAL LLP    Title: PARTNER

Signature of Applicant*                              Date: 10-16-06

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01  1/02                        Page 3 of 8

OCT/09/2007/TUE 05:00 PM    CGT LAW GROUP LLP    FAX No. 1-361-882-6701    P. U21

NET SatisFAXtion    From: Natalie Heyden 847-572-8229    To: FINAL APP 9533203    Date: 12/12/2006 Time: 10:55:50 AM    Page 6 of 10

Date 7/10/2006 Time: 8:23:44 AM    Page 9 of 12

## SECURITIES SUPPLEMENT
## APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE

(Complete Only if the Firm does Securities Offerings, Private Placements or Bond Work)

FIRM  CGT LAW GROUP INTERNATIONAL LLP

1   Indicate the approximate amount of billable dollars derived from securities exempt and non-exempt work including federal
    SEC, state securities, private placements and bonds $_____ NONE

2   Briefly describe your SEC practice qualifications including whether any lawyers of the Firm involved in such activities have  N/A
    in the past been SEC staff members, practiced before the SEC or been cautioned or disqualified by the SEC. Provide
    narrative by separate attachment.

3   (a) Indicate by a check those procedures employed by the Firm in security (exempt and non-exempt) matters including
        private placements and bonds:  NONE

    Investigate client                                    Check on federal reporting systems

    convictions                                                                              for prior criminal
    Investigate other participants                        Court/regulatory investigation     _____
    Investigate other professionals                       SEC filings filed and in order     _____
    Checklist                                             Check on tax opinion               _____
    On-site inspections                                   Render tax opinion                 _____
    Review of corporate character
    Check on feasibility study                            Check on prior injunctive actions in the SEC  _____

    (b) If the firm uses procedures other than those listed in 3(a) above, please describe by separate attachment.

4   Using the chart on the following page, list securities offerings (exempt and non-exempt), private placements and bond
    offerings handled in the past two years including the year, name of Insurer, type of transaction, type of business,
    underwriter, accountant, dollar size of offering and party represented by Firm.

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the
same representations and conditions.

CGT LAW GROUP INTERNATIONAL LLP                          PARTNER :
Name of Applicant*                                       Title

                                                         10-16-06
Signature of Applicant*                                  Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01 1/02                          Page 6 of 8

OCT/09/2007/TUE 05:00 PM   CGT LAW GROUP LLP        FAX No. 1-361-882-6701          P. 022

NET SatisFAXtion   From: Natalie Heyden 847-572-0229   To: FINAL APP #588203        Date: 12/12/2006 Time: 10:56:59 AM        Page 7 of 10



OCT/09/2007/TUE 05:01 PM    CGT LAW GROUP LLP    FAX No. 1-361-882-6701    P. 023

NET SatisFAXtion    From: Natalie Heydon 847-572-0229    To: FINAL APP 3533269    Date: 12/12/2000 Time: 10:55:59 AM    Page 8 of 10

## CGT LAW GROUP INTERNATIONAL LLP

Question 2  O (I)

New Clients and conflict of interest checks:

The firm maintains a management committee. There are three partners on this committee. All new clients are subject to approval by the firms management committee. Any lawyer generating new business is required to associate with a partner with specific expertise in the matter prior to proposing new business to the management committee.

The firm maintains a conflict of interest system on computer. All cases are maintained on a computer database. Conflict checks are reviewed at inception of all new cases. The conflict of interest systems reviews the following information: client name, opposing party, client subsidiaries, client principals, opposing counsel, outside interests of firm personnel and names of parties whose representation was declined.

All lawyers in the firm, regardless of practice area or geographical location are able to access all conflict data held by the firm in their conflict search. All potential conflicts are always referred to the management committee.

Where representation is continued subject to conflict waivers, the firm maintains a written Policy requiring the waiver to clearly show (1) the conflicting parties the nature of the conflict (2) show how it could affect the representation and (3) show how the client was advised to consider consulting another Law Firm either about the conflict and/or the original matter prior to signing the waiver.

OCT/09/2007/TUE 05:01 PM    CGT LAW GROUP LLP    FAX No. 1-361-882-6701    P. 024

NET SalsFAXion    From: Natalie Hoyden 847-572-6229    To: FINAL APP 3533268    Date: 12/12/2006 Time: 10:56:58 AM    Page 9 of 10

NET SalsFAXion    From: Sam Oates 047-578-6228    To: Lisa Schwall    Date: 7/18/2006 Time: 9:23:34 AM    Page 11 of 13

**SHAND MORAHAN & COMPANY, INC.**
1a Parkway South, Deerfield, Il 60015
(347) 572-6600 Fax (847) 572-6137
Underwriting Manager
A Markel Company

- DEERFIELD INSURANCE COMPANY
- EVANSTON INSURANCE COMPANY
- ESSEX INSURANCE COMPANY
- MARKEL AMERICAN INSURANCE COMPANY
- MARKEL INSURANCE COMPANY

## SUPPLEMENTAL CLAIM INFORMATION FOR
### LAWYERS PROFESSIONAL LIABILITY INSURANCE
#### (Claims Made and Reported Basis)

**APPLICANT'S INSTRUCTIONS:**
1. Answer all questions. If more details are required, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. This form is to be completed by Applicant who has been involved in any claim or out of aware of an incident which may give rise to a claim.
4. Complete one form for each claim or incident.
5. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.
(PLEASE TYPE OR PRINT)

**APPLICANT INFORMATION**

a. Firm Name: _____
b. Claimant Name: _____
c. Name of Individual(s) at Firm involved in Claim: _____
d. Indicate whether: _____
e. Date of alleged error: _____  Claim/Suit, or _____  Incident
f. Additional defendants _____  Date of claim: _____
g. IF CLOSED: Total Loss Paid including Deductible $ _____
   Indicate whether _____ Court Judgment, or _____ Out of court settlement
   IF PENDING: Claimant's settlement demand? _____
   Defendant's offer for settlement? _____
   Insurer's loss reserve? _____
   Deductible? _____
   Is claim in Suit? _____
h. Name of Insurer _____ [ ] Yes [ ] No If yes, Amount asked in summons? $ _____
i. Description of claim: (Provide enough information to allow evaluation, and use reverse side if additional space is required.)
   (i). Alleged act, error or omission upon which Claimant bases claim: _____

   (ii) Description of case and events: _____

   (iii) Description of the type and extent of injury or damage allegedly sustained: _____

j. Firm's evaluation of likelihood of liability: _____
k. Explain what action has been taken by the firm to prevent recurrence of the same type of claim.

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

CGT LAW GROUP INTERNATIONAL LLP
Name of Applicant*

PARTNER
Title (Officer, partner, etc.)

10-16-06
Date

Signature of Applicant*

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

SM 4115-01 1/02    Page 6 of 9



# EVANSTON INSURANCE COMPANY

**MARKEL®**

| | |
|---|---|
| Policy No. | LA-803756 |
| Prev. No. | NEW |
| Prod. No. | 21235 |

## DECLARATIONS - LAWYERS PROFESSIONAL LIABILITY INSURANCE

Claims Made and Reported policy. This policy provides coverage for only those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE TERMS OF THIS POLICY. Please review the policy carefully.

THIS POLICY MAY CONTAIN PROVISIONS THAT REDUCE THE LIMITS OF LIABILITY STATED IN THE POLICY BY THE COSTS OF LEGAL DEFENSE AND PERMIT CLAIM EXPENSES TO BE APPLIED AGAINST THE DEDUCTIBLE.

1. **NAMED INSURED:** CGT LAW GROUP INTERNATIONAL, LLP

2. **ADDRESS OF NAMED INSURED:**
   101 CONSTITUTION AVENUE, NW, SUITE 900,
   Washington, DC 20001

3. **POLICY PERIOD:** From December 7, 2005 To December 7, 2006
   12:01 A.M. Standard Time at address of Named Insured stated above.

4. **LIMITS OF LIABILITY:**

   Each Claim:

   Policy Aggregate:  $ 2,000,000

   $ 2,000,000

5. **DEDUCTIBLE:**

   Each Claim:

6. **PREMIUM:**  $  25,000

   $  48,360.00

7. If the Firm meets the eligibility requirements of THE COVERAGE 4., the PREMIUM FOR THE EXTENDED REPORTING PERIOD FOR A 12 MONTH PERIOD IS 150% of the applicable full annual premium hereunder.

8. **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

   1. EIC 4115-01   25% Minimum Earned Premium Endorsement
   2. EIC 4436      Prior Acts Exclusion
   3. ZZ-44003-02   Certified Acts of Terrorism Exclusion

ALL CLAIMS TO BE REPORTED DIRECTLY TO

Shand Morahan & Company, Inc.
Ten Parkway North, Suite 100
Deerfield, Illinois 60015
Phone: (847) 572-6000, Fax (847) 572-6338

*Michael A. Rozenberg*
Authorized Representative

Policy Form: EIC 1507-3 4/93
Dec: EIC1507-2 8/02
Date Printed: December 21, 2005



# EVANSTON INSURANCE COMPANY

## Endorsement

Named Insured:
CGT LAW GROUP INTERNATIONAL, LLP

Policy No.:  LA-803756
Endorsement No.:  1
Effective Date:  December 7, 2005

### 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other provisions of the policy shall apply and remain unchanged.

EIC 4115-01 2/03

_Michael A. Rozenberg_
Authorized Representative



## EVANSTON INSURANCE COMPANY

### Endorsement

Named Insured:
CGT LAW GROUP INTERNATIONAL, LLP

Policy No.:  LA-803756
Endorsement No.:  2
Effective Date:  December 7, 2005

### PRIOR ACTS EXCLUSION
(use with EIC 1507)

In consideration of the premium paid, it is hereby understood and agreed that Section THE EXCLUSIONS is amended by the addition of the following exclusion:

to any Claim based upon, arising out of, or in any way involving any Act or Personal Injury happening prior to December 7, 2005.

All other provisions of the policy shall apply and remain unchanged.

EIC 4436 5/04

*Michael A. Rozenberg*
Authorized Representative



## EVANSTON INSURANCE COMPANY

### Endorsement

Named Insured:
CGT LAW GROUP INTERNATIONAL, LLP

Policy No.: LA-803756
Endorsement No.: 3
Effective Date: December 7, 2005

## CERTIFIED ACTS OF TERRORISM EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any claim or portion thereof based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance of Act of 2002 (Pub.L. 107-297) or any amendments thereto or any regulations promulgated thereunder. The federal Terrorism Risk Insurance of Act of 2002 sets forth the following criteria for a Certified Act of Terrorism:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rosenberg*
Authorized Representative

ZZ-44003-02



# EVANSTON INSURANCE COMPANY

## Endorsement

| | |
|---|---|
| Named Insured:<br>CGT LAW GROUP INTERNATIONAL, LLP | Attached to and forming<br>a part of Policy No.:     LA-803756<br>Endorsement No.:     4<br>Effective Date of Endorsement:   July 26, 2006 |

### ADDITIONAL INSURED ENDORSEMENT

In consideration of $4,137 additional premium, it is hereby understood and agreed that effective July 26, 2006, Thomas Christopher Pinedo is hereby added as an Insured under this policy.

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rozenberg*
Authorized Representative



# EVANSTON INSURANCE COMPANY

**Endorsement**

Named Insured:
CGT LAW GROUP INTERNATIONAL, LLP

Attached to and forming
a part of Policy No.:                LA-803756
Endorsement No.:                     5
Effective Date of Endorsement:       June 26, 2006

## ADDITIONAL INSURED ENDORSEMENT

It is hereby understood and agreed that Endorsement No. 4 is deleted in its entirety and replaced as follows:

In consideration of $5,062 additional premium, it is hereby understood and agreed that effective June 26, 2006, Thomas Christopher Pinedo is hereby added as an Insured under this policy.

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rosenberg*
Authorized Representative

## Lawyers Professional Liability Insurance Policy

### CONDITIONS PRECEDENT

As conditions precedent to the availability of any coverage under this policy, the payment of the premium must be made when due, and the application attached hereto and made a part hereof and all information in whatever form communicated by The Insured to the Company must be accurate. Subject to this policy's Declarations and all the terms of this insurance, the Company and The Insured agree as follows:

### DEFINITIONS

Wherever used in this policy the following words and phrases shall be defined as set forth below:

**Act:** The performance of or omission of a duty or obligation by The Insured while rendering legal advice or legal services for others.

**Claim:** A demand received by The Insured for Damages.

**Claim Expenses:** Subject to Company approval which shall not be unreasonably withheld, all reasonable fees, costs and expenses resulting directly from the investigation, adjustment, defense and appeal of a Claim. Provided, however, Claim Expenses do not include: salary charges of regular employees or officials of the Company; fees and expenses of supervisory counsel retained by the Company; salaries or compensation of any individual or entity identified within THE INSURED.

**Damages:** The monetary portion of any judgment, award or settlement and does not include:

    (a)   punitive or exemplary damages, any damages which are a multiple of compensatory damages, statutory treble damages, or fines, penalties or sanctions including, but not limited to, fines awarded pursuant to Rule 11 of the Federal Rules of Civil Procedure; or

    (b)   the restitution of consideration and expenses paid to The Insured for services or goods; or

    (c)   judgments or awards deemed uninsurable by law.

**Of Counsel:** Any lawyer or professional corporation or any lawyer who is an employee of such professional corporation who is specifically identified on the application as "Of Counsel," but solely with respect to acts on behalf of The Firm.

**The Firm:** The entity listed in the Declarations as "Named Insured".

**Personal Injury:** False arrest, false imprisonment, malicious prosecution, malicious abuse of process, wrongful detention, wrongful entry or eviction or other invasion of private occupancy, libel, slander or breach of privacy by The Insured all while rendering legal advice or legal services for others.

**Policy Period:** The period from the inception date of this policy to the policy expiration date as stated in the Declarations or the policy's earlier termination date, if any.

**Extended Reporting Period:** Whenever used in this policy means the period of coverage described in THE COVERAGE 4., which if purchased, incepts on the effective date of cancellation or non-renewal of this policy and expires upon the completion of the number of months indicated in the Declarations as "Policy Period" or at any earlier termination date effected pursuant to THE COVERAGE 4. (e).

**Predecessor Firm:** Any legal entity which was engaged in the practice of law to whose financial assets and liabilities the Firm is the majority successor in interest and which is designated in the application as a predecessor firm.

### COMPANY DESIGNEE

With respect to notices required to be given to the Company as provided for in INSURED DESIGNEE, THE COVERAGE 3. and 4., CLAIMS 1. and OTHER CONDITIONS 2. and 6., the Company has appointed Shand Morahan and Company, Inc., Ten Parkway North, Deerfield, Illinois 60015 to be the exclusive representative of the Company for the purpose of receiving such notices. All notices required by this Policy shall be made in writing to the Company Designee.

EIC 1507-3 4/93

**INSURED DESIGNEE**

The attorney signing the application which is attached to the Policy shall be deemed the Insured Designee. The Insured Designee for this policy shall be the sole representative of The Insured.

The Firm or the Insured Designee may change the Insured Designee at any time. The Company must be advised in writing of any change in the Firm's Designee as soon as practicable after such change. In the event of the failure of the Firm to advise the Company, any notice or communication transmitted by the Company to the attorney signing the attached application shall be sufficient notice and shall be deemed notice to the Firm.

**THE INSURED**

Insured, wherever used in this policy means:

1.  The entity listed in the Declarations as "Named Insured", such entity to be known as the "Firm" but only for Claims arising out of legal advice or legal services provided on behalf of the Firm or any Predecessor Firm by any other Insured; and

2.  Any lawyer or professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

3.  Any lawyer who is an employee of a professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

4.  Any lawyer or professional corporation who is a former partner, officer, director, Of Counsel or employee of the Firm or any Predecessor Firm or of any professional corporation but only for Claims arising out of the legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

5.  Any other present or former employee of the Firm or any Predecessor Firm or of any professional corporation Insured by this policy solely while acting on behalf of the Firm or any Predecessor Firm; and

6.  As respects the liability of The Insured as otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of The Insured as defined in Items 1. through 5. above in the event of death, incapacity or bankruptcy.

**THE COVERAGE**

1.  **Professional Liability Claims Made and Reported Coverage:**

    The Company shall pay on behalf of The Insured, subject to the limits of liability, sums in excess of the deductible amount which The Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE PROVISION OF CLAIMS 1:

    (a)  because of any Act; or

    (b)  because of any Personal Injury,

    PROVIDED ALWAYS THAT such Act or Personal Injury happens,

    (aa)  during the Policy Period; or

    (bb)  prior to the Policy Period provided that, on or prior to the effective date of this policy, no Insured was aware of any facts or circumstances from which a reasonable person would have anticipated a Claim;

    PROVIDED FURTHER THAT no other policy which provides insurance for such liability or Claim resulting from such Act or Personal Injury is available to the Insured whether or not the available limits of liability of any such other insurance are sufficient to pay any such liability or claim or whether or not the deductible provisions and amount of any such other insurance are different from

EIC 1507-3 4/93

this policy, unless such other insurance is written only as specific excess insurance over the limits of liability provided by this policy.

Subject to all other terms and conditions of this policy, when The Insured renders services as an administrator, conservator, executor, guardian, trustee, The Insured's Acts in such capacity shall be deemed for the purpose of this section to be the performance of legal services for others, provided that this coverage shall not apply to any loss sustained by The Insured as the beneficiary or distributee of any trust or estate.

2.    Defense, Investigation and Settlement of Claims:

The Company shall investigate and defend any Claim to which coverage under this policy applies pursuant to the following provisions:

(a)    Claim Expenses incurred in investigating and defending such Claim shall be included within the per claim policy limit of liability set forth in the Declarations and shall not be in addition thereto. Such Claim Expenses shall reduce the available limit of liability. THE COMPANY SHALL NOT BE OBLIGATED TO PAY ANY DAMAGES OR TO DEFEND OR TO CONTINUE TO DEFEND ANY CLAIM OR TO PAY CLAIM EXPENSES AFTER THE LIMIT OF THE COMPANY'S LIABILITY HAS BEEN TENDERED TO THE INSURED OR INTO THE COURT OR EXHAUSTED BY PAYMENT(S) OF DAMAGES AND/OR CLAIM EXPENSES.

(b)    Selection of defense counsel shall be made by the Company. Provided, however, that if the law of the state of the Firm's domicile (as designated on the Declarations page) allows the Insured to control the selection of counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which The Insured may designate counsel who shall act solely in the interest of The Insured, and The Insured agrees to direct such defense counsel to cooperate with the Company. Such cooperation shall include:

(1)    Providing on a regular basis, not less frequently than every six months, written reports on claimed Damages potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

(2)    Providing any other reasonable information requested and fully itemized billing on a periodic basis;

(3)    Cooperating with the Company and The Insured in resolving any discrepancies;

and the fees and costs incurred by such counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be included within the policy limit of liability and not in addition thereto. Such Claim Expenses shall reduce the available limit of liability.

(c)    The Insured shall cooperate with the Company in the defense, investigation and settlement of any Claim. The Insured will assist the Company in effecting any rights of indemnity, contribution or apportionment available to The Insured or the Company. Upon the Company's request, The Insured shall: (i) submit to examination and interview by a representative of the Company, under oath if required; (ii) attend hearings, depositions and trials; (iii) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (iv) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without charge to the Company.

(d)    The Insured shall not, with respect to any Claim covered under this policy, except at The Insured's personal cost, make any payment, admit liability, settle Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without prior written Company approval. Any costs and expenses incurred by The Insured prior to The Insured giving written notice of the Claim to the Company shall be borne by The Insured and will not constitute satisfaction of the deductible either in whole or in part.

(e)    The Company shall not settle any Claim without the consent of the Insured Designee. If, however, the Insured Designee shall refuse to consent to any settlement recommended by

the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company shall not be obligated to pay Claim Expenses incurred subsequent to such refusal. Furthermore, the Company's liability for such Claim shall not exceed the amount for which the Claim could have been so settled and Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of the section LIMITS OF LIABILITY.

3.  **Discovery of Potential Claims:**

If, during the Policy Period, The Insured first becomes aware of any Act or Personal Injury for which a Claim might reasonably be expected to be made for which insurance is otherwise provided by this policy and gives written notice of such Act or Personal Injury which is received by the Company during the Policy Period, then any Claim subsequently made arising out of that Act or Personal Injury shall be considered to have been made on the date such written notice is received by the Company.

Such written notice shall include a description of:

1)  the specific Act or Personal Injury; and

2)  the injury or damage that has or may reasonably result from 1) above; and

3)  the circumstances by which The Insured first became aware of 1) and 2) above.

The Insured shall cooperate fully with the Company as set forth in THE COVERAGE 2., Defense, Investigation and Settlement of Claims, and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in this policy as applicable to a Claim.

4.  **Extended Reporting Period:**

If the Company cancels or non-renews this policy, the Firm, for an additional premium charge, shall have the right to extend the period during which Claims must be first made and reported to apply to CLAIMS FIRST MADE AGAINST THE INSURED DURING THE PERIOD OF MONTHS INDICATED IN THE DECLARATIONS immediately following the effective date of such cancellation or non-renewal and REPORTED IN ACCORDANCE WITH CLAIMS 1., provided:

(a)  The Extended Reporting Period applies only to Acts or Personal Injuries committed prior to the effective date of cancellation or non-renewal of this policy which are otherwise covered by this policy; and

(b)  Cancellation or non-renewal does not result from the Firm's non-payment of premium and/or deductible or other non-compliance with the terms and conditions of the policy; and

(c)  Written notice of intent to exercise this option and the premium for the Extended Reporting Period is received by the Company from the Firm within ten (10) days of the effective date of cancellation or non-renewal. This premium shall be calculated at the percentage stated in the Declarations of the full annual premium of the policy; and

(d)  The full annual premium of this policy and any deductibles that are due have been paid by the Firm; and

(e)  The coverage afforded by this Extended Reporting Period shall terminate immediately when the Firm purchases a lawyers professional liability policy providing coverage in whole or in part for Acts or Personal Injuries committed prior to the end of the Policy Period. If coverage is so terminated, the Company shall refund pro rata any unearned premium charged for the Extended Reporting Period coverage; otherwise, the premium for the Extended Reporting Period shall be fully earned at the time of payment; and

(f)  The quotation of a different premium and/or deductible and/or limits of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this policy provision; and

(g)  The exercise of this Extended Reporting Period Option shall not in any way increase or be in addition to the limits of liability set forth in the Declarations.

EIC 1507-3 4/93

## THE EXCLUSIONS

**The policy does not apply:**

(a)   to payment of Damages arising out of a judgment or award against an individual or entity identified in THE INSURED section of the policy who has been finally adjudicated to have committed an intentionally dishonest or fraudulent Act; however, notwithstanding the forgoing, the Company, subject to the Limits of Liability and other terms and conditions, will pay Claim Expenses for any such Claim, and shall not exclude coverage to the Firm or to any other Insured who is not so adjudged to have committed such Act as described above. This policy shall then pay only in excess of the deductible and in excess of the full extent of the capital and assets in the Firm of any such individual or entity who was so adjudged to have committed such Act as described above, and any other personal assets of such individual or entity recovered by the Firm shall inure, to the extent of the amount paid by this policy, to the benefit of the Company.

(b)   to any Claim made by an Insured or any individual or entity acting on behalf of any Insured.

(c)   to any Claim resulting from the rendering of legal advice or legal services for any individual or entity where such individual or entity either holds an ownership interest in or is considering acquiring an ownership interest in a business enterprise, pension, profit sharing, mutual or investment fund or trust;

   1)   which, at the time such advice or services were rendered, was more than 5% owned, controlled, managed or operated by any single individual or entity or any combination of individuals or entities within THE INSURED, alone or in conjunction with any spouse or any other immediate family member of any individual or entity identified within THE INSURED; or

   2)   for which any individual or entity identified within THE INSURED serves or served at the time such advice or services were rendered as an officer, director, partner, manager or employee or as a trustee in bankruptcy;

(d)   to any Claim arising out of The Insured's capacity as a public official or an employee of a governmental body, subdivision or agency unless The Insured is deemed to be such solely because The Insured has rendered legal advice or legal services to such governmental body and the remuneration for such legal advice or legal services inures to the benefit of the Firm;

(e)   to any Claim for bodily injury, sickness, disease or death of any person, or injury to or destruction of any tangible property or loss of use resulting therefrom;

(f)   to any Claim based on or arising out of the rendering of investment advice by any Insured in connection with the purchase or sale of any investment or property, including but not limited to securities, real property, syndications, limited partnerships, commodities or franchises; or to any claim based on or arising out of any Insured's services or capacity as a securities broker, dealer, financial planner, investment advisor, accountant, real estate broker or real estate agent;

(g)   to any Claim based upon or arising out of a contract for, or other right relating to, payment of or division of fees or fee apportionment;

(h)   to any Claim based on or arising out of discrimination of any kind by any Insured including but not limited to discrimination on the basis of race, national origin, creed, religion, age, sex, sexual orientation, health disability or marital status or to any claim arising out of alleged or actual wrongful termination.

With the exception of THE EXCLUSIONS (a) hereinabove, any fact pertaining to any one or more Insured(s) which determines the applicability of THE EXCLUSIONS hereinabove shall apply to each and every individual or entity identified within THE INSURED and the Company shall not be required to defend or indemnify any Claim arising out of alleged Acts or claim for Damages for which no coverage applies pursuant to THE EXCLUSIONS or any other terms of this Policy.

## TERRITORY

The Insurance afforded applies worldwide.

EIC 1507-3 4/93

## LIMITS OF LIABILITY

**1.    Limit of Liability--Each Claim:**

The liability of the Company for the combined total of Damages and Claim Expenses for each Claim FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1., shall not exceed the amount stated in the Declarations for "each Claim."

**2.    Limit of Liability--Policy Aggregate:**

Subject to 1. Limit of Liability--Each Claim, the liability of the Company for the combined total of Damages and Claim Expenses shall not exceed the amount stated in the Declarations as "aggregate" as a result of all Claims FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1.

**3.    Deductible:**

Except as set forth in the following paragraph, the deductible amount stated in the Declarations shall be applicable to the combined total of Damages and Claim Expenses for each Claim.

Deductible payment or portions thereof shall be paid by the Firm within 30 days of demand.

**4.    Multiple Insureds, Claims and Claimants:**

The inclusion of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the limits of liability and deductible. Two or more Claims arising out of a single Act or Personal Injury or a series of related Acts or Personal Injuries shall be treated as a single Claim. All such Claims whenever made shall be considered first made on the date on which the earliest Claim arising out of such Act or Personal Injury was first made and all such Claims are subject to the same limit of liability and deductible.

## CLAIMS

**1.    Insured's Duties in the Event of Claim:**

As a condition precedent to the availability of coverage under this policy The Insured's duties in the event of a Claim shall be as follows:

(a)    If suit is brought or arbitration is instituted against The Insured, then The Insured shall immediately forward to the company, directed to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015, every demand, notice, summons or other process received by The Insured or their representative; and

(b)    If any Claim, other than a suit or arbitration proceeding, is made, then The Insured shall give as soon as practicable, written notice to the Company containing particulars sufficient to identify The Insured and claimant and full information with respect to the time, place and circumstances of the Claim; and

(c)    In any event any Claim or suit made or arbitration instituted against The Insured during the Policy Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN SIXTY (60) DAYS AFTER THE EXPIRATION OF THE POLICY PERIOD; and

(d)    In any event any Claim made or suit made or arbitration instituted against The Insured during the purchased Extended Reporting Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN TEN (10) DAYS AFTER THE EXPIRATION OF THE EXTENDED REPORTING PERIOD.

**2.    Subrogation and Indemnity:**

(a)    In the event of payment for Damages or Claim Expenses under the policy, the Company shall be subrogated to all of The Insured's rights of recovery against any person or organization. Any recovery shall be used to pay: first, subrogation expenses; second, payments in excess of the deductible by The Insured; third, payments by an excess insurer; fourth, payments made by a primary insurer; and, last reimbursement of The Insured's deductible.

(b)    If the Company makes any payment of Claim Expenses or Damages as a result of the final adjudication that an intentionally dishonest or fraudulent Act has been committed, then the Company shall have the right to indemnification of such payments from the individual or entity so adjudged, including any individual or entity identified in THE INSURED section of the policy.

3.    **False or Fraudulent Claims:**

If any individual or entity identified within THE INSURED commits fraud in presenting or maintaining any Claim, the Company at its sole option may void:

(a)    this insurance with respect to such Claim; and/or

(b)    this insurance as to such individual or entity from the date such Claim is presented or maintained; and/or

(c)    this policy in its entirety; and/or

(d)    this insurance from the date such Claim is presented or maintained.

## OTHER CONDITIONS

1.    **Application:**  By acceptance of this policy, The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between The Insured and the Company, or any of its agents, relating to this insurance.

2.    **Firm Changes:**  Any of the following changes in the Firm which occur during the Policy Period must be reported to the Company within sixty (60) days of such change:

(a)    any change of 20% or more in the total number of lawyers in the Firm;

(b)    any new involvement in any single practice specialty anticipated to produce 5% or more of the Firm's gross billable dollars;

A premium adjustment and/or revision of limits, deductible, and/or coverage may be required by the Company as a result of such change. A return of premium due to a mid-term reduction in staff is not available under the policy. Mid-term charges for increase in staff in excess of 20% may apply.

3.    **Changes:**  Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy or stop the Company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

4.    **Non-Payment of Deductible:**  If, within thirty (30) days of demand by the Company, the Insured fails to pay any or all of the Deductible which the Insured has become obligated to pay, the Company has the right to institute binding arbitration against the Insured unless otherwise prohibited by the laws of the state governing the Policy. The arbitration fees and costs of both parties shall be borne by the Insured; however, should the Insured prevail in arbitration, the Company shall pay the fees and costs.

5.    **Assignment:**  Assignment of any interest under this policy shall not bind the Company unless its consent is endorsed hereon.

6.    **Integration of Document:**  All provisions of this policy are intended to be read together as one integrated document. No provision nor any part thereof is intended to be separable from the balance of the policy. The meaning of each provision of this policy is created by what is written in such provision and by what is written in the balance of the policy, and the Company issues this policy to The Insured in contemplation of the foregoing method of giving meaning to the policy.

If any provision of this policy is held to be void by a court of competent jurisdiction, then the balance of this policy shall still be interpreted in accordance with the preceding paragraph.

7.    **Cancellation or Non-Renewal:**  This policy may be cancelled by the Firm by the Firm's mailing of written notice to the Company stating when, thereafter, such cancellation shall be effective and by the Firm's surrender of the policy or a valid lost policy release to the Company.

EIC 1507-3 4/93

This policy may be cancelled by the Company or by Shand Morahan & Company, Inc. by mailing to the Firm written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective.

Provided, however, if the Firm does not pay the premium or deductible when due, the Company or Shand Morahan & Company, Inc., may cancel the policy giving the Firm at least ten (10) days written notice of cancellation. If no premium has been paid, cancellation for non-payment of premium shall be as of Policy inception. In the event that the policy is cancelled for non-payment of premium, the Company will not be liable for any Claims made against the Firm.

The Company, or Shand Morahan & Company, Inc., if it intends not to renew this policy, must give written notice to the Firm, mailed at least sixty (60) days prior to the expiration date of this policy.

The effective date of cancellation or non-renewal stated in the notice shall become the end of the Policy Period. Delivery of written notice by the Company or by Shand Morahan & Company, Inc., shall be equivalent to mailing. Should the Firm cancel the policy, the short rate proportion of the premium shall be charged. If the Company or Shand Morahan & Company, Inc., cancels the policy, the earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

8. **Service of Suit:** Except with respect to any policy issued to a Firm domiciled in Illinois, or in any state in which the Company is licensed to transact business, it is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of The Firm will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this Clause constitutes nor should be understood to constitute a waiver of the Company's right to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court, as permitted by the laws of the United States or of any state in the United States. In any suit instituted against it upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Lord Bissell & Brook, whose address is 115 South LaSalle Street, Chicago, Illinois 60603, is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Firm they will enter a general appearance upon the Company's behalf in the event such suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereon hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of The Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

_____
Secretary

_____
President

EIC 1507-3 4/93

# NUCLEAR ENERGY LIABILITY
## EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies the provisions of this policy.

It is agreed that:

1. **This policy does not apply:**

   A. Under any Liability Coverage, to bodily injury or property damage

   (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

   C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

   (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

   (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

   (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2. **As used in this endorsement:**

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means source material, special nuclear material or by-product material;

   "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

   "nuclear facility" means

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

EIC 1507-3 4/93

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

EIC 1507-3 4/93

 **EVANSTON INSURANCE COMPANY**

| | |
|---|---|
| Policy No. | LA-804111 |
| Prev. No. | LA-803756 |
| Prod. No. | 21235 |

## DECLARATIONS - LAWYERS PROFESSIONAL LIABILITY INSURANCE

Claims Made and Reported policy. This policy provides coverage for only those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE TERMS OF THIS POLICY. Please review the policy carefully.

THIS POLICY MAY CONTAIN PROVISIONS THAT REDUCE THE LIMITS OF LIABILITY STATED IN THE POLICY BY THE COSTS OF LEGAL DEFENSE AND PERMIT CLAIM EXPENSES TO BE APPLIED AGAINST THE DEDUCTIBLE.

1. NAMED INSURED: CGT LAW GROUP INTERNATIONAL, LLP

2. ADDRESS OF NAMED INSURED:

   101 CONSTITUTION AVENUE, NW, SUITE 900
   WASHINGTON, DC 20001

3. POLICY PERIOD: From December 7, 2006 To December 7, 2007
   12:01 A.M. Standard Time at address of Named Insured stated above.

4. LIMITS OF LIABILITY:

   Each Claim:

   Policy Aggregate:                                                    $ 2,000,000
                                                                        $ 2,000,000

5. DEDUCTIBLE:

   Each Claim:

6. PREMIUM:                                                            $    25,000
                                                                        $    51,791.00

7. If the Firm meets the eligibility requirements of THE COVERAGE 4., the PREMIUM FOR THE EXTENDED REPORTING PERIOD FOR A 12 MONTH PERIOD IS 150% of the applicable full annual premium hereunder.

8. ENDORSEMENTS ATTACHED AT POLICY INCEPTION:

   1. EIC 4436        Prior Acts Exclusion
   2. EIC 4115-01     25% Minimum Earned Premium Endorsement

ALL CLAIMS TO BE REPORTED DIRECTLY TO

Shand Morahan & Company, Inc.
Ten Parkway North, Suite 100
Deerfield, Illinois 60015
Phone: (847) 572-6000, Fax: (847) 572-6338

Policy Form: EIC 1507-3 4/93
Dec: EIC1507-2 8/02
Date Printed: December 12, 2006

*Michael A. Rosenberg*
Authorized Representative



**MARKEL** EVANSTON INSURANCE COMPANY

## Endorsement

Named Insured:
CGT LAW GROUP INTERNATIONAL, LLP

Attached to and forming
a part of Policy No.:            LA-804111
Endorsement No.:                 1
Effective Date of Endorsement:   December 7, 2006

### PRIOR ACTS EXCLUSION
### (use with EIC 1507)

In consideration of the premium paid, it is hereby understood and agreed that Section THE EXCLUSIONS is amended by the addition of the following exclusion:

to any Claim based upon, arising out of, or in any way involving any Act or Personal Injury happening prior to December 7, 2005.

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rozenberg*
Authorized Representative

EIC 4436 5/04



# EVANSTON INSURANCE COMPANY

## Endorsement

Named Insured:
CGT LAW GROUP INTERNATIONAL, LLP

Attached to and forming
a part of Policy No.:                        LA-804111
Endorsement No.:                            2
Effective Date of Endorsement:    December 7, 2006

### 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other provisions of the policy shall apply and remain unchanged.

_Michael A. Rozenberg_
Authorized Representative

EIC 4115-01 2/03

# Lawyers Professional Liability Insurance Policy

## CONDITIONS PRECEDENT

As conditions precedent to the availability of any coverage under this policy, the payment of the premium must be made when due, and the application attached hereto and made a part hereof and all information in whatever form communicated by The Insured to the Company must be accurate. Subject to this policy's Declarations and all the terms of this insurance, the Company and The Insured agree as follows:

## DEFINITIONS

Wherever used in this policy the following words and phrases shall be defined as set forth below:

**Act:** The performance of or omission of a duty or obligation by The Insured while rendering legal advice or legal services for others.

**Claim:** A demand received by The Insured for Damages.

**Claim Expenses:** Subject to Company approval which shall not be unreasonably withheld, all reasonable fees, costs and expenses resulting directly from the investigation, adjustment, defense and appeal of a Claim. Provided, however, Claim Expenses do not include: salary charges of regular employees or officials of the Company; fees and expenses of supervisory counsel retained by the Company; salaries or compensation of any individual or entity identified within THE INSURED.

**Damages:** The monetary portion of any judgment, award or settlement and does not include:

(a) punitive or exemplary damages, any damages which are a multiple of compensatory damages, statutory treble damages, or fines, penalties or sanctions including, but not limited to, fines awarded pursuant to Rule 11 of the Federal Rules of Civil Procedure; or

(b) the restitution of consideration and expenses paid to The Insured for services or goods; or

(c) judgments or awards deemed uninsurable by law.

**Of Counsel:** Any lawyer or professional corporation or any lawyer who is an employee of such professional corporation who is specifically identified on the application as "Of Counsel," but solely with respect to acts on behalf of The Firm.

**The Firm:** The entity listed in the Declarations as "Named Insured".

**Personal Injury:** False arrest, false imprisonment, malicious prosecution, malicious abuse of process, wrongful detention, wrongful entry or eviction or other invasion of private occupancy, libel, slander or breach of privacy by The Insured all while rendering legal advice or legal services for others.

**Policy Period:** The period from the inception date of this policy to the policy expiration date as stated in the Declarations or the policy's earlier termination date, if any.

**Extended Reporting Period:** Whenever used in this policy means the period of coverage described in THE COVERAGE 4., which if purchased, incepts on the effective date of cancellation or non-renewal of this policy and expires upon the completion of the number of months indicated in the Declarations as "Policy Period" or at any earlier termination date effected pursuant to THE COVERAGE 4. (e).

**Predecessor Firm:** Any legal entity which was engaged in the practice of law to whose financial assets and liabilities the Firm is the majority successor in interest and which is designated in the application as a predecessor firm.

## COMPANY DESIGNEE

With respect to notices required to be given to the Company as provided for in INSURED DESIGNEE, THE COVERAGE 3. and 4., CLAIMS 1. and OTHER CONDITIONS 2. and 6., the Company has appointed Shand Morahan and Company, Inc., Ten Parkway North, Deerfield, Illinois 60015 to be the exclusive representative of the Company for the purpose of receiving such notices. All notices required by this Policy shall be made in writing to the Company Designee.

**INSURED DESIGNEE**

The attorney signing the application which is attached to the Policy shall be deemed the Insured Designee. The Insured Designee for this policy shall be the sole representative of The Insured.

The Firm or the Insured Designee may change the Insured Designee at any time. The Company must be advised in writing of any change in the Firm's Designee as soon as practicable after such change. In the event of the failure of the Firm to advise the Company, any notice or communication transmitted by the Company to the attorney signing the attached application shall be sufficient notice and shall be deemed notice to the Firm.

**THE INSURED**

Insured, wherever used in this policy means:

1.  The entity listed in the Declarations as "Named Insured", such entity to be known as the "Firm" but only for Claims arising out of legal advice or legal services provided on behalf of the Firm or any Predecessor Firm by any other Insured; and

2.  Any lawyer or professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

3.  Any lawyer who is an employee of a professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

4.  Any lawyer or professional corporation who is a former partner, officer, director, Of Counsel or employee of the Firm or any Predecessor Firm or of any professional corporation but only for Claims arising out of the legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

5.  Any other present or former employee of the Firm or any Predecessor Firm or of any professional corporation Insured by this policy solely while acting on behalf of the Firm or any Predecessor Firm; and

6.  As respects the liability of The Insured as otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of The Insured as defined in Items 1. through 5. above in the event of death, incapacity or bankruptcy.

**THE COVERAGE**

1.  **Professional Liability Claims Made and Reported Coverage:**

    The Company shall pay on behalf of The Insured, subject to the limits of liability, sums in excess of the deductible amount which The Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE PROVISION OF CLAIMS 1:

    (a)  because of any Act; or

    (b)  because of any Personal Injury,

    PROVIDED ALWAYS THAT such Act or Personal Injury happens,

    (aa)  during the Policy Period; or

    (bb)  prior to the Policy Period provided that, on or prior to the effective date of this policy, no Insured was aware of any facts or circumstances from which a reasonable person would have anticipated a Claim;

    PROVIDED FURTHER THAT no other policy which provides insurance for such liability or Claim resulting from such Act or Personal Injury is available to the Insured whether or not the available limits of liability of any such other insurance are sufficient to pay any such liability or claim or whether or not the deductible provisions and amount of any such other insurance are different from

EIC 1507-3 4/93

this policy, unless such other insurance is written only as specific excess insurance over the limits of liability provided by this policy.

Subject to all other terms and conditions of this policy, when The Insured renders services as an administrator, conservator, executor, guardian, trustee, The Insured's Acts in such capacity shall be deemed for the purpose of this section to be the performance of legal services for others, provided that this coverage shall not apply to any loss sustained by The Insured as the beneficiary or distributee of any trust or estate.

2.    Defense, Investigation and Settlement of Claims:

The Company shall investigate and defend any Claim to which coverage under this policy applies pursuant to the following provisions:

(a)    Claim Expenses incurred in investigating and defending such Claim shall be included within the per claim policy limit of liability set forth in the Declarations and shall not be in addition thereto. Such Claim Expenses shall reduce the available limit of liability. THE COMPANY SHALL NOT BE OBLIGATED TO PAY ANY DAMAGES OR TO DEFEND OR TO CONTINUE TO DEFEND ANY CLAIM OR TO PAY CLAIM EXPENSES AFTER THE LIMIT OF THE COMPANY'S LIABILITY HAS BEEN TENDERED TO THE INSURED OR INTO THE COURT OR EXHAUSTED BY PAYMENT(S) OF DAMAGES AND/OR CLAIM EXPENSES.

(b)    Selection of defense counsel shall be made by the Company. Provided, however, that if the law of the state of the Firm's domicile (as designated on the Declarations page) allows the Insured to control the selection of counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which The Insured may designate counsel who shall act solely in the interest of The Insured, and The Insured agrees to direct such defense counsel to cooperate with the Company. Such cooperation shall include:

(1)    Providing on a regular basis, not less frequently than every six months, written reports on claimed Damages potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

(2)    Providing any other reasonable information requested and fully itemized billing on a periodic basis;

(3)    Cooperating with the Company and The Insured in resolving any discrepancies;

and the fees and costs incurred by such counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be included within the policy limit of liability and not in addition thereto. Such Claim Expenses shall reduce the available limit of liability.

(c)    The Insured shall cooperate with the Company in the defense, investigation and settlement of any Claim. The Insured will assist the Company in effecting any rights of indemnity, contribution or apportionment available to The Insured or the Company. Upon the Company's request, The Insured shall: (i) submit to examination and interview by a representative of the Company, under oath if required; (ii) attend hearings, depositions and trials; (iii) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (iv) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without charge to the Company.

(d)    The Insured shall not, with respect to any Claim covered under this policy, except at The Insured's personal cost, make any payment, admit liability, settle Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without prior written Company approval. Any costs and expenses incurred by The Insured prior to The Insured giving written notice of the Claim to the Company shall be borne by The Insured and will not constitute satisfaction of the deductible either in whole or in part.

(e)    The Company shall not settle any Claim without the consent of the Insured Designee. If, however, the Insured Designee shall refuse to consent to any settlement recommended by

EIC 1507-3 4/93

the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company shall not be obligated to pay Claim Expenses incurred subsequent to such refusal. Furthermore, the Company's liability for such Claim Expenses shall not exceed the amount for which the Claim could have been so settled and Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of the section LIMITS OF LIABILITY.

3.    **Discovery of Potential Claims:**

If, during the Policy Period, The Insured first becomes aware of any Act or Personal Injury for which a Claim might reasonably be expected to be made for which insurance is otherwise provided by this policy and gives written notice of such Act or Personal Injury which is received by the Company during the Policy Period, then any Claim subsequently made arising out of that Act or Personal Injury shall be considered to have been made on the date such written notice is received by the Company.

Such written notice shall include a description of:

1)    the specific Act or Personal Injury; and

2)    the injury or damage that has or may reasonably result from 1) above; and

3)    the circumstances by which The Insured first became aware of 1) and 2) above.

The Insured shall cooperate fully with the Company as set forth in THE COVERAGE 2., Defense, Investigation and Settlement of Claims, and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in this policy as applicable to a Claim.

4.    **Extended Reporting Period:**

If the Company cancels or non-renews this policy, the Firm, for an additional premium charge, shall have the right to extend the period during which Claims must be first made and reported to apply to CLAIMS FIRST MADE AGAINST THE INSURED DURING THE PERIOD OF MONTHS INDICATED IN THE DECLARATIONS immediately following the effective date of such cancellation or non-renewal and REPORTED IN ACCORDANCE WITH CLAIMS 1., provided:

(a)    The Extended Reporting Period applies only to Acts or Personal Injuries committed prior to the effective date of cancellation or non-renewal of this policy which are otherwise covered by this policy; and

(b)    Cancellation or non-renewal does not result from the Firm's non-payment of premium and/or deductible or other non-compliance with the terms and conditions of the policy; and

(c)    Written notice of intent to exercise this option and the premium for the Extended Reporting Period is received by the Company from the Firm within ten (10) days of the effective date of cancellation or non-renewal. This premium shall be calculated at the percentage stated in the Declarations of the full annual premium of the policy; and

(d)    The full annual premium of this policy and any deductibles that are due have been paid by the Firm; and

(e)    The coverage afforded by this Extended Reporting Period shall terminate immediately when the Firm purchases a lawyers professional liability policy providing coverage in whole or in part for Acts or Personal Injuries committed prior to the end of the Policy Period. If coverage is so terminated, the Company shall refund pro rata any unearned premium charged for the Extended Reporting Period coverage; otherwise, the premium for the Extended Reporting Period shall be fully earned at the time of payment; and

(f)    The quotation of a different premium and/or deductible and/or limits of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this policy provision; and

(g)    The exercise of this Extended Reporting Period Option shall not in any way increase or be in addition to the limits of liability set forth in the Declarations.

## THE EXCLUSIONS

**The policy does not apply:**

(a)    to payment of Damages arising out of a judgment or award against an individual or entity identified in THE INSURED section of the policy who has been finally adjudicated to have committed an intentionally dishonest or fraudulent Act; however, notwithstanding the forgoing, the Company, subject to the Limits of Liability and other terms and conditions, will pay Claim Expenses for any such Claim, and shall not exclude coverage to the Firm or to any other Insured who is not so adjudged to have committed such Act as described above. This policy shall then pay only in excess of the deductible and in excess of the full extent of the capital and assets in the Firm of any such individual or entity who was so adjudged to have committed such Act as described above, and any other personal assets of such individual or entity recovered by the Firm shall inure, to the extent of the amount paid by this policy, to the benefit of the Company.

(b)    to any Claim made by an Insured or any individual or entity acting on behalf of any Insured.

(c)    to any Claim resulting from the rendering of legal advice or legal services for any individual or entity where such individual or entity either holds an ownership interest in or is considering acquiring an ownership interest in a business enterprise, pension, profit sharing, mutual or investment fund or trust;

   1)    which, at the time such advice or services were rendered, was more than 5% owned, controlled, managed or operated by any single individual or entity or any combination of individuals or entities within THE INSURED, alone or in conjunction with any spouse or any other immediate family member of any individual or entity identified within THE INSURED; or

   2)    for which any individual or entity identified within THE INSURED serves or served at the time such advice or services were rendered as an officer, director, partner, manager or employee or as a trustee in bankruptcy;

(d)    to any Claim arising out of The Insured's capacity as a public official or an employee of a governmental body, subdivision or agency unless The Insured is deemed to be such solely because The Insured has rendered legal advice or legal services to such governmental body and the remuneration for such legal advice or legal services inures to the benefit of the Firm;

(e)    to any Claim for bodily injury, sickness, disease or death of any person, or injury to or destruction of any tangible property or loss of use resulting therefrom;

(f)    to any Claim based on or arising out of the rendering of investment advice by any Insured in connection with the purchase or sale of any investment or property, including but not limited to securities, real property, syndications, limited partnerships, commodities or franchises; or to any claim based on or arising out of any Insured's services or capacity as a securities broker, dealer, financial planner, investment advisor, accountant, real estate broker or real estate agent;

(g)    to any Claim based upon or arising out of a contract for, or other right relating to, payment of or division of fees or fee apportionment;

(h)    to any Claim based on or arising out of discrimination of any kind by any Insured including but not limited to discrimination on the basis of race, national origin, creed, religion, age, sex, sexual orientation, health disability or marital status or to any claim arising out of alleged or actual wrongful termination.

With the exception of THE EXCLUSIONS (a) hereinabove, any fact pertaining to any one or more Insured(s) which determines the applicability of THE EXCLUSIONS hereinabove shall apply to each and every individual or entity identified within THE INSURED and the Company shall not be required to defend or indemnify any Claim arising out of alleged Acts or claim for Damages for which no coverage applies pursuant to THE EXCLUSIONS or any other terms of this Policy.

## TERRITORY

The Insurance afforded applies worldwide.

EIC 1507-3 4/93

## LIMITS OF LIABILITY

**1.    Limit of Liability--Each Claim:**

The liability of the Company for the combined total of Damages and Claim Expenses for each Claim FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1., shall not exceed the amount stated in the Declarations for "each Claim."

**2.    Limit of Liability--Policy Aggregate:**

Subject to 1. Limit of Liability--Each Claim, the liability of the Company for the combined total of Damages and Claim Expenses shall not exceed the amount stated in the Declarations as "aggregate" as a result of all Claims FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1.

**3.    Deductible:**

Except as set forth in the following paragraph, the deductible amount stated in the Declarations shall be applicable to the combined total of Damages and Claim Expenses for each Claim.

Deductible payment or portions thereof shall be paid by the Firm within 30 days of demand.

**4.    Multiple Insureds, Claims and Claimants:**

The inclusion of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the limits of liability and deductible. Two or more Claims arising out of a single Act or Personal Injury or a series of related Acts or Personal Injuries shall be treated as a single Claim. All such Claims whenever made shall be considered first made on the date on which the earliest Claim arising out of such Act or Personal Injury was first made and all such Claims are subject to the same limit of liability and deductible.

## CLAIMS

**1.    Insured's Duties in the Event of Claim:**

As a condition precedent to the availability of coverage under this policy The Insured's duties in the event of a Claim shall be as follows:

(a)    If suit is brought or arbitration is instituted against The Insured, then The Insured shall immediately forward to the company, directed to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015, every demand, notice, summons or other process received by The Insured or their representative; and

(b)    If any Claim, other than a suit or arbitration proceeding, is made, then The Insured shall give as soon as practicable, written notice to the Company containing particulars sufficient to identify The Insured and claimant and full information with respect to the time, place and circumstances of the Claim; and

(c)    In any event any Claim or suit made or arbitration instituted against The Insured during the Policy Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN SIXTY (60) DAYS AFTER THE EXPIRATION OF THE POLICY PERIOD; and

(d)    In any event any Claim made or suit made or arbitration instituted against The Insured during the purchased Extended Reporting Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN TEN (10) DAYS AFTER THE EXPIRATION OF THE EXTENDED REPORTING PERIOD.

**2.    Subrogation and Indemnity:**

(a)    In the event of payment for Damages or Claim Expenses under the policy, the Company shall be subrogated to all of The Insured's rights of recovery against any person or organization. Any recovery shall be used to pay: first, subrogation expenses; second, payments in excess of the deductible by The Insured; third, payments by an excess insurer; fourth, payments made by a primary insurer; and, last reimbursement of The Insured's deductible.

EIC 1507-3 4/93

(b)   If the Company makes any payment of Claim Expenses or Damages as a result of the final adjudication that an intentionally dishonest or fraudulent Act has been committed, then the Company shall have the right to indemnification of such payments from the individual or entity so adjudged, including any individual or entity identified in THE INSURED section of the policy.

3.   **False or Fraudulent Claims:**

If any Individual or entity identified within THE INSURED commits fraud in presenting or maintaining any Claim, the Company at its sole option may void:

(a)   this insurance with respect to such Claim; and/or

(b)   this insurance as to such individual or entity from the date such Claim is presented or maintained; and/or

(c)   this policy in its entirety; and/or

(d)   this insurance from the date such Claim is presented or maintained.

## OTHER CONDITIONS

1.   **Application:**   By acceptance of this policy, The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between The Insured and the Company, or any of its agents, relating to this insurance.

2.   **Firm Changes:** Any of the following changes in the Firm which occur during the Policy Period must be reported to the Company within sixty (60) days of such change:

(a)   any change of 20% or more in the total number of lawyers in the Firm;

(b)   any new involvement in any single practice specialty anticipated to produce 5% or more of the Firm's gross billable dollars;

A premium adjustment and/or revision of limits, deductible, and/or coverage may be required by the Company as a result of such change. A return of premium due to a mid-term reduction in staff is not available under the policy. Mid-term charges for increase in staff in excess of 20% may apply.

3.   **Changes:** Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy or stop the Company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

4.   **Non-Payment of Deductible:** If, within thirty (30) days of demand by the Company, the Insured fails to pay any or all of the Deductible which the Insured has become obligated to pay, the Company has the right to institute binding arbitration against the Insured unless otherwise prohibited by the laws of the state governing the Policy. The arbitration fees and costs of both parties shall be borne by the Insured; however, should the Insured prevail in arbitration, the Company shall pay the fees and costs.

5.   **Assignment:** Assignment of any interest under this policy shall not bind the Company unless its consent is endorsed hereon.

6.   **Integration of Document:** All provisions of this policy are intended to be read together as one integrated document. No provision nor any part thereof is intended to be separable from the balance of the policy. The meaning of each provision of this policy is created by what is written in such provision and by what is written in the balance of the policy, and the Company issues this policy to The Insured in contemplation of the foregoing method of giving meaning to the policy.

If any provision of this policy is held to be void by a court of competent jurisdiction, then the balance of this policy shall still be interpreted in accordance with the preceding paragraph.

7.   **Cancellation or Non-Renewal:** This policy may be cancelled by the Firm by the Firm's mailing of written notice to the Company stating when, thereafter, such cancellation shall be effective and by the Firm's surrender of the policy or a valid lost policy release to the Company.

EIC 1507-3 4/93

This policy may be cancelled by the Company or by Shand Morahan & Company, Inc. by mailing to the Firm written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective.

Provided, however, if the Firm does not pay the premium or deductible when due, the Company or Shand Morahan & Company, Inc., may cancel the policy giving the Firm at least ten (10) days written notice of cancellation. If no premium has been paid, cancellation for non-payment of premium shall be as of Policy inception. In the event that the policy is cancelled for non-payment of premium, the Company will not be liable for any Claims made against the Firm.

The Company, or Shand Morahan & Company, Inc., if it intends not to renew this policy, must give written notice to the Firm, mailed at least sixty (60) days prior to the expiration date of this policy.

The effective date of cancellation or non-renewal stated in the notice shall become the end of the Policy Period. Delivery of written notice by the Company or by Shand Morahan & Company, Inc., shall be equivalent to mailing. Should the Firm cancel the policy, the short rate proportion of the premium shall be charged. If the Company or Shand Morahan & Company, Inc., cancels the policy, the earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

8.  **Service of Suit:** Except with respect to any policy issued to a Firm domiciled in Illinois, or in any state in which the Company is licensed to transact business, it is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of The Firm will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this Clause constitutes nor should be understood to constitute a waiver of the Company's right to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court, as permitted by the laws of the United States or of any state in the United States. In any suit instituted against it upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Lord Bissell & Brook, whose address is 115 South LaSalle Street, Chicago, Illinois 60603, is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Firm they will enter a general appearance upon the Company's behalf in the event such suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereon hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of The Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

_Paul B. Churchel_
Secretary

_Michael A. Rozenberg_
President

EIC 1507-3 4/93

Page 8

# NUCLEAR ENERGY LIABILITY
# EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies the provisions of this policy.

It is agreed that:

1.  **This policy does not apply:**

    A. Under any Liability Coverage, to bodily injury or property damage

    (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

    (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

    (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2.  **As used in this endorsement:**

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or by-product material;

    "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

    "nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

EIC 1507-3 4/93

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

1

1          REPORTER'S RECORD

2          TRIAL COURT CAUSE NO. 6349

3   GONZALEZ & ASSOCIATES LAW        )IN THE DISTRICT COURT
    FIRM, P.C. AND PRISCILLA DE LOS)
4   SANTOS                           )
                                     )
5          VS.                       )ZAPATA COUNTY, TEXAS
                                     )
6   CHRIS PINEDO, MAURICIO CELIS,    )
    CGT LAW GROUP                    )
7   INTERNATIONAL, LLP, AND OWEN &   )
    ASSOCIATES, LLP, SUCCESSOR-IN-   )
8   INTEREST TO VANCE OWEN D/B/A     )
    VANCE OWEN & ASSOCIATES          )49TH JUDICIAL DISTRICT
9

10

11          * * * * * * * * * * * * * * * *
             STATUS CONFERENCE AND PLAINTIFF'S
12          MOTION TO COMPEL DEFENDANT'S RESPONSE
               TO DISCOVERY AND FOR SANCTIONS
13          * * * * * * * * * * * * * * * * *

14

15

16          On the 30th day of May 2007, the Hearing

17   on Status Conference and Plaintiff's Motion to Compel

18   Defendant's Response to Discovery and for Sanctions

19   Hearing came on to be heard outside the presence of a

20   jury, in the above-entitled and numbered cause; and

21   the following proceedings were had before the

22   Honorable Gus Strauss, Judge presiding, held in

23   Zapata, Zapata County, Texas:

24

25          Proceedings reported by COMPUTERIZED
    STENOTYPE MACHINE.

COPY

24

1    get it out, and we'll deal with that.

2         But we're certainly entitled to the

3    discovery because CGT Law Firm is the one claiming a

4    certain claim against us to recover millions of

5    dollars in legal fees out of my client, yet they don't

6    want us to do any discovery so he can either prove or

7    disprove that they are, in fact -- that they, in fact,

8    have a legal right to even assert a claim in the first

9    place, or whether they are committing a felony before

10   this Court.

11        THE COURT:  All right.  So what do we

12   need to go -- where do we need to go next?  You-all

13   talk about evidence, talk about further argument, talk

14   about --

15        MR. THOMAS:  We call Mauricio Celis to

16   the stand.

17        THE COURT:  All right.  Mr. Celis,

18   before you sit down, if I can ask you to raise your

19   right hand, please.

20             MAURICIO CELIS,

21   having been first duly sworn, testified as follows:

22             DIRECT EXAMINATION

23   BY MR. THOMAS:

24      Q.  State your name, please.

25      A.  Mauricio R. Celis.

1    recognize that?

2        A.  Yes, I do.

3        Q.  And this is sort of a bio on you?

4        A.  That is correct.

5        Q.  And here you claim that you are a licensed

6    attorney in Mexico, yet you do not have a cedula; is

7    that correct?

8        A.  That is correct, sir.

9        Q.  All right.  You don't list on here what

10   university you attended, do you?

11       A.  No, I don't, sir.

12       Q.  By the way, what is the law school that you

13   claim that you attended --

14       A.  Universidad Regio Montana.

15       Q.  -- to obtain your law degree?

16       A.  Universidad Regio Montana.  Universidad Regio

17   Montana, Monterrey, Nuevo Leon.

18       Q.  Universidad Autonoma?

19       A.  No.  Regio Montana, Regio Montana.

20       Q.  Regional mountain?

21       A.  You can translate it that way.  I don't think

22   it's --

23       Q.  Regio Montana --

24       A.  Mountainous region, I guess, would be the

25   proper translation, but it's Universidad Regio

51

1    Montana.

2        Q.    Of Monterrey?

3        A.    Of Monterrey, yeah.

4        Q.    And the years of attendance?

5        A.    '97 to '99.  And I'm back in school right now

6    also.

7        Q.    Where?

8        A.    In the same university.

9        Q.    For what?

10       A.    For a masters.

11       Q.    When did you re-enroll?

12       A.    About a year-and-a-half ago.

13       Q.    So that would have been --

14       A.    December of 2005.

15       Q.    And you received your degree in what month of

16   '99?

17       A.    I think the fall of 1999.

18       Q.    And what is the degree that you claim you

19   received?

20       A.    Licenciado en ciencias jurídicas.  Bachelor

21   of judicial science.

22       Q.    You don't have any of your schooling

23   information on your bio, do you?

24       A.    No, I don't, sir.

25       Q.    Every other lawyer that is featured on your

135

1    THE STATE OF TEXAS )

2    COUNTY OF ZAPATA )

3                I, Leticia Murillo Escamilla, Deputy

4    Official Court Reporter in and for the 49th District

5    Court of Zapata County, Texas, do hereby certify that

6    the foregoing contains a true and correct

7    transcription of all portions of evidence and other

8    proceedings requested in writing by counsel for the

9    parties to be included in this volume of the

10   Reporter's Record, in the above-styled and numbered

11   cause, all of which occurred in open court or in

12   chambers and were reported by me.

13               I FURTHER CERTIFY that this Reporter's

14   Record of the proceedings truly and correctly reflects

15   the exhibits, if any, offered into evidence.

16               I FURTHER CERTIFY that the total cost

17   for the preparation of this Reporter's Record is

18   $639.50 and will be paid by Petitioner.

19               WITNESS MY OFFICIAL HAND this the 2nd

20   day of July 2007.

21

22   Leticia Murillo Escamilla, Texas CSR No. 4307
     Certification Expires 12/31/07
23   Deputy Court Reporter, 49th District Court
     Bexar County, Texas
24   1903 Harness Lane
     San Antonio, TX 78227   (210) 452-3516
25

**SUBSECRETARÍA DE EDUCACIÓN SUPERIOR**
**DIRECCIÓN GENERAL DE PROFESIONES**

**DEPARTAMENTO DE AUTORIZACIONES**

SECRETARÍA DE
EDUCACIÓN PÚBLICA

DAEP/4344/07    S/F

México, D. F., a 8 de Noviembre del 2007

**LIC. MYRNA GUTIÉRREZ ELIZONDO**
**SUBDELEGADA ESTATAL**
**DIRECCIÓN GENERAL DE DELEGACIONES**
**OFICIALIA MAYOR**
**DELEGACIÓN NUEVO LEÓN**
**SECRETARÍA DE RELACIONES EXTERIORES**
**AV. LOMA REDONDA 2702, PISO 2**
**COL. LOMAS DE SAN FRANCISCO**
**C.P. 64710, MONTERREY, N.L.**

En atención a su **fax** citado en antecedentes y con fundamento en lo previsto por el artículo 25 del Reglamento de la Ley Reglamentaria del Artículo 5º. Constitucional, relativo al ejercicio de las profesiones en el Distrito Federal, informo a Usted que de acuerdo con la consulta formulada al Centro de Cómputo y al Archivo General de esta Unidad Administrativa, resultó que no se tiene antecedente alguno al día 5 de noviembre del año en curso del **C. MAURICIO CELIS RODRÍGUEZ** que lo faculte para ejercer como **PROFESIONISTA**.

La anterior información no prejuzga sobre los conocimientos y calidad de los estudios que la persona tenga o haya realizado.

Es importante señalar que la persona de la cual se solicitó información puede tener su título profesional o bien haber realizado sus estudios en el extranjero y no haber solicitado aún a esta Dirección General de Profesiones, el registro de título y expedición de cédula personal con efectos de patente.

En caso de que esta persona se ostente como profesionista con la respectiva cédula profesional, será necesario se nos proporcione el número de la misma para proceder, en su caso de la validación y confirmación de la información.

Es importante mencionar que la Dirección General de Profesiones pone a su disposición la consulta preliminar del Registro Nacional de Profesionistas en la siguiente dirección electrónica www.sep.gob.mx/wb2/sep/sep_Consulta_de_Cedulas_Profesionales

**ATENTAMENTE**
**SUFRAGIO EFECTIVO. NO REELECCIÓN**
**EL DIRECTOR DE AUTORIZACIÓN**
**Y REGISTRO PROFESIONAL**

S. E. P.
DIRECCIÓN GENERAL DE PROFESIONES
DIRECCIÓN DE AUTORIZACIÓN Y
REGISTRO PROFESIONAL

**Lic. José Luis Lobato Espinosa**

SECRETARIA DE RELACIONES
EXTERIORES
RECIBIDO
NOV 28 2007
DELEGACIÓN NUEVO LEÓN

Insurgentes Sur No. 23  87, Col. San Ángel, Delegación Álvaro Obregón, C.P. 01000, México, D.F.

(Seal)
United States
of México
Secretary of
Public Education

Subsecretariat of Upper Education
General Directorship of Professions
DEPARTMENT OF AUTHORIZATIONS
DAEP/4344/07      S/F

México, D.F., on the 8th of November of 2007

ATTY. MYRNA GUTIERREZ ELIZONDO
ASSISTANT STATE DELEGATE
GENERAL DIRECTORSHIP OF DELEGATIONS
DISTRICT CLERKSHIP
NUEVO LEON DELEGATION
SECRETARY OF EXTERIOR RELATIONS
LOMA REDONDA AV. 2702, 2nd FLOOR
COL. LOMAS DE SAN FRANCISCO
C.P. 64710, MONTERREY, N.L.

In relation to your **fax** mentioned previously and with foundation
in that which is provided by article 25 of the Rule of the Rule of
Law of the 5th Constitutional Article, relative to the practice of
professions in the Federal District, I inform You that in accordance
to the consultation formulated to the Computer Center and General
Archives of this Administrative Unit, resulting that there are no
records at all on the 5th day of November of the current year of
the C.(itizen) MAURICIO CELIS RODRIGUEZ that would authorize him
to practice as a **PROFESSIONAL**.

The anterior information does not prejudge about the knowledge and
quality of studies that the person has or may have effected.

It is important to indicate that the person of whom information was
requested may have his professional license or perhaps have performed
his studies abroad and has not yet requested from this General
Directorship of Professions, the registry of the degree and the
expediting of a personal license with evidentiary effects.

In case this person purports himself as a professional with the
respective professional license, it would be necessary to provide
us with the number of the same (license) to proceed, in his case,
to validate and confirm the information.

It is important to mention that the General Directorship of Professions
makes avaialble to you the preliminary consultation of the National
Registry of Professionals at the following web adress  www.sep.gob.mx/
wb2/sep/sep_Consultation_of_Professional_Licenses.

**ATTENTIVELY**

EFFECTIVE SUFFRAGE  NO RE-ELECTION
DIRECTOR OF AUTHORIZATION
AND PROFESSIONAL REGISTRY

(Signature)
**Atty. José Luis Lobato Espinosa**

(Seal)
United States
of México
SECRETARY OF EXTERIOR
RELATIONS

RECEIVED
Nov. 28 2007
NUEVO LEON DELEGATION

South Num. 23 87, Col. San Angel, Alvaro Obregón Delegation,
C.P. 01000, México, D.F.

**Regiomontana**

Noviembre 29 de 2007

**Oficialía Mayor**
**Dirección General de Delegaciones**
**Delegación Nuevo León**
**Departamento de Protección**
**Lic. Sandra Pamanes Ortiz**
**P r e s e n t e**

En relación a su solicitud según oficio No: **NLE-07209/2007**, sobre el joven **MAURICIO CELIS RODRÍGUEZ**, me permito informarle que el señor **CELIS RODRÍGUEZ** está inscrito en esta Institución con el número de matrícula **682453** en la carrera de **LICENCIADO EN CIENCIAS JURÍDICAS**.

Por política institucional la información sobre el registro académico de los alumnos se brinda al propio alumno, a la autoridad educativa o a solicitud de autoridades judiciales. A otras instancias sólo brindamos el servicio de verificación de documentos. En caso de contar con algún documento de dicho alumno con gusto lo verificamos.

Esperando que lo anterior cumpla con la información solicitada, estoy a sus órdenes para cualquier aclaración o duda al respecto.

**A T E N T A M E N T E**
**"SCIENTIA ET CULTURA PRO HOMINE"**

**ING. GERARDO GONZÁLEZ GARZA**
**JEFE DE SERVICIOS ESCOLARES**

SERVICIOS
ESCOLARES

SECRETARIA DE RELACIONES

RECIBIDO
DIC. 7 2007
DELEGACIÓN NUEVO LEON

GGG/lfh*

UNIVERSIDAD REGIOMONTANA
DEPARTAMENTO DE SERVICIOS ESCOLARES
Rayón 480 Sur, Monterrey, N.L., México, C.P. 64000
Tel: (81) 8220-4801 Fax: (81) 8220-4804 http://www.ur.mx

Escuela Libre Universitaria autorizada por acuerdo del Ejecutivo del Estado de fecha 8 de julio de 1969, registrada con el expediente número No. 1900038 en la Dirección General de Profesiones en el libro 71(I) Foja 44 de la Sección del Registro de Escuelas Profesionales.

(Seal)                    **Regiomontana**
Regiomontana              **UNIVERSITY**
University

29th of November of 2007

District Clerkship
General Management of Delegations
Nuevo León Delegation
Department of Protection
Atty. Sandra Pamanes Ortiz
P r e s e n t.-

In relation to your request according to Case Num. **NLE-07209/2007**, about the gentleman **MAURICIO CELIS RODRIGUEZ**, I would permit myself to inform you that Mr. **CELIS RODRIGUEZ** is enrolled in this Institution with registration 682453 in the career of **ATTORNEY OF LEGAL SCIENCES.**

Because of institutional rules, the information about the academic enrollment of the students is given to the student, to the educational authority or at the request of judicial authorities. In other instances, we only provide the service of verification of documents. In case we may have some document about the aforementioned student, we will gladly verify it.

In hopes that the aforementioned complies with the requested information, I am at your service for whatever clarification or doubt to that respect.

                    **A T T E N T I V E L Y**
                **"SCIENTIA ET CULTURA PRO HOMINE"**
                          (Signature)                    (Seal)
                    **ENG. GERARDO GONZALEZ GARZA**       University
                    **CHIEF OF SCHOLASTIC SERVICES**      Regiomontana
SECRETARY OF EXTERIOR                                     SCHOLASTIC
    RELATIONS                                             SERVICES
  R E C E I V E D
    Dec. 7, 2007
    NUEVO LEON
    DELEGATION

    REGIOMONTANA UNIVERSITY
    Department of Scholastic Services
    Rayón 480 South, Monterrey, N.L., México, C.P.64000        GGG/lfh*
    Tel:(81) 8220-4801 Fax: (81) 8220-4804 http://www.ur.mx

    Free University School authorized by agreement of the State Executive dated the 8th of July of 1969, registered with File number Num. 1900038 in the General Directorship of Professions in Book 71(1) Page 44 of the Section of Registry of Professional Schools.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **EVANSTON INSURANCE COMPANY,** | : | |
| | : | |
| **Plaintiff/Counterclaim Defendant,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 07-2252** |
| | : | (Judge Roberts) |
| **CGT LAW GROUP INTERNATIONAL LLP,** | : | |
| **MAURICIO CELIS, T. CHRISTOPHER** | : | |
| **PINEDO, DOUGLAS RAY GWYTHER, RAUL** | : | |
| **TAPIA, JAMES H. HADA, and THOMAS** | : | |
| **GUAJARDO,** | : | |
| | : | |
| **Defendants/Counterclaim Plaintiffs.** | : | |
| _____ | : | |

**[PROPOSED] ORDER DENYING DEFENDANTS' MOTION TO STAY**

Having considered Defendants' Motion to Stay and Plaintiff's Opposition thereto, it is

hereby ORDERED that the Motion to Stay is DENIED in its entirety.

Dated: _____, 2008.

_____
Honorable Richard W. Roberts
United States District Judge

Copies to:    Thomas Guajardo, *Pro Se*
2001 E. Campbell Road, Suite 202
Phoenix, AZ 85016

Philip H. Hecht
Kirkpatrick & Lockhart Preston Gates Ellis, LLP
1601 K Street, N.W.
Washington, D.C. 20006

William Gandy
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22102

87824.1