## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EVANSTON INSURANCE COMPANY )
     Plaintiff, )
     )
v. )
     )    Civil Action No: 07-02252
CGT LAW GROUP INTERNATIONAL LLP, *et* )    (Judge Roberts)
*al.*, )
     )
     Defendants. )

### MOTION TO DISQUALIFY PLAINTIFF'S EXPERT WITNESS

Defendants CGT Law Group International, LLP ("CGT"), Mauricio Celis ("Celis"), T.

Christopher Pinedo ("Pinedo"), Douglas Ray Gwyther ("Gwyther"), Raul Tapia ("Tapia"), and

James H. Hada ("Hada") (collectively "Defendants"), by and through undersigned counsel,

hereby respectfully move this Court for entry of an order disqualifying Plaintiff Evanston

Insurance Company's ("Evanston") designated expert witness Stephen Zamora ("Zamora").

Pursuant to Local Civil Rule 7 (m), Defendants' undersigned counsel wrote a letter to Evanston's

counsel on September 2, 2008, explaining Defendants' intent to file this motion, and Defendants'

counsel spoke by phone with counsel Evanston's counsel on September 4, 2008, in a good-faith

effort to determine whether there is any opposition to the relief sought herein. Based on that

telephone conversation, Defendants' counsel anticipates that Evanston will oppose this motion.

### PROCEDURAL BACKGROUND

Evanston filed its Original Complaint on December 14, 2007, seeking, *inter alia*, to

rescind two professional liability insurance policies issued to the Defendants on the grounds

that the policies were obtained through material misrepresentations, *viz.*, CGT falsely

represented in the policy applications that Celis was a lawyer and admitted to practice in

Mexico. On April 7, 2007, this Court stayed all discovery to and from Celis pending the

resolution of pending criminal proceedings against him but permitted discovery as to the other

Defendants to proceed. On August 4, 2008, Evanston filed Plaintiff Evanston Insurance

Company's Expert Disclosure of Stephen Zamora ("Expert Disclosure"), attached hereto as

Exhibit 1, which stated that Zamora would testify that Celis is not an attorney admitted to

practice in Mexico.

## FACTUAL BACKGROUND

One or more of the Defendants are or were defendants in four pending or recently settled

actions in Texas state courts. In November, 2006, a lawsuit captioned *Gonzales & Associates, et*

*al. v. Chris Pinedo, et al.;* Cause No: 6,349 (49th Judicial Dist. Ct., Zapata Cty., Texas)

("*Gonzales*") was filed against CGT, Celis, and Pinedo, alleging that CGT is a sham corporation

and that CGT, Celis and Pinedo engaged in the unauthorized practice of law.[1] In October, 2007,

a lawsuit captioned *Paloma Steele v. CGT Law Group, et al.*, Cause No: 07-62218-1 (Cty. Ct.,

Nueces Cty., Texas) ("*Steele*") was filed against CGT, Celis, Pinedo, Gwyther, and Tapia,

alleging that Celis is not a lawyer and that the Defendants are engaged in the unauthorized

practice of law. On November 29, 2007 a lawsuit captioned *Unauthorized Practice of Law*

*Committee v. Mauricio Celis, et al.* (Dist. Ct., Nueces Cty., Texas) ("*UPLC*") was filed against

CGT, Celis, Gwyther, Pinedo, Hada, and another party, alleging that Celis is not a lawyer

and that CGT is an illegal partnership which was formed for an illegal purpose, *viz.*, the

unauthorized practice of law. *UPLC* further alleges that CGT and the defendants engaged

---

[1] *Gonzalez* was settled and has been dismissed with prejudice by order dated August 8, 2008.

in the unauthorized practice of law. On October 24, 2007, a lawsuit captioned *The State of Texas v. CGT Law Group International LLP, et al.* (419th Dist. Ct., Travis Cty., Texas) ("*AG*") was filed by the Texas Attorney General against CGT and Celis, alleging that CGT and Celis have engaged in the illegal and unauthorized practice of law and that CGT has permitted a "non lawyer," Celis, to share in legal fees and referral fees paid to CGT.[2]

In October 2006, Celis retained attorney Andrew Greenwell ("Greenwell") of Harris & Greenwell, Corpus Christi, Texas, as counsel to pursue claims on behalf of CGT against various parties, including Gonzalez & Associates Law Firm PLLC and others ("Gonzalez parties"). The Gonzalez parties, however, filed suit before CGT could pursue its claims. After it had notice of *Gonzalez*, CGT and the other defendants provided notice to Evanston, CGT's professional liability insurer, and arrangements were made to retain Greenwell to defend Evanston's insureds in *Gonzalez*. Affidavit of Andrew Greenwell, dated September 2, 2008, ¶ 3 ("Greenwell Aff. ¶ __"), attached hereto as Exhibit 2.

As part of his representation, on October 8, 2007, Greenwell contacted the offices of Haynes & Boone in Houston, Texas, to speak with Zamora about the possibility of being an expert for Celis and CGT in *Gonzalez*, but Zamora was not in and Greenwell left a message. Greenwell Aff. ¶ 4. On October 9, 2008, Greenwell spoke with Zamora by phone and discussed the facts and circumstances surrounding CGT and Celis in significant depth. Greenwell explained the facts and circumstances to obtain advice as the legal issues confronting the parties

---

[2] Celis also is the subject of three separate indictments filed on November 16, 2007, in Nueces County, Texas. One indictment alleges that Celis falsely held himself out as an attorney. The second indictment alleges that Celis committed theft against the plaintiff in *Steele*. The third indictment alleges that Celis committed perjury by testifying that he had graduated from a college in Mexico. *See* Complaint ¶ 25.

under Mexican law, and to inquire whether Zamora would serve as an expert witness regarding Celis' status as an attorney in the Republic of Mexico and/or Celis' ability to practice law under the law governing the practice of law in Mexico. Greenwell also discussed the interplay of Mexican law and Texas law as it related to the allegations in *Gonzalez* against Celis and CGT. Greenwell Aff. ¶ 5.

During his telephone conversation with Zamora, Greenwell explained at some depth the background of the allegations against CGT and Celis, and Greenwell provided Zamora with what he regarded as certain confidential facts about Celis' education and career. Greenwell shared some of his defensive strategies for CGT and Celis in *Gonzalez*. In particular, Greenwell would have discussed the claims being made against Celis, and discussed some theories and strategies based on the distinctions between a common law jurisdiction, such as Texas, and a civil law jurisdiction, such as Mexico in the area of the practice of law. At no point did Zamora, whom Greenwell understood to be not only a lawyer but an expert on various areas of legal practice, including Mexican law, object to his disclosure of this confidential information. Greenwell Aff. ¶ 6. When Greenwell finished his explanation, Zamora was unable to render a specific opinion as to the status of Celis to practice law based on the information Greenwell had provided to him. Greenwell Aff. ¶ 7.

Based on the circumstances of his conversation with Zamora, and the tenor of the conversations, Greenwell believed that the substance of his conversation with Zamora would remain confidential and would be treated as such because: (1) Zamora was a lawyer, (2) because of Zamora's inability to give a clear opinion at that time, it was not certain whether Zamora could be employed as a testifying expert or would be retained as a consulting-only expert. Under the Texas Rules of Civil Procedure, both the identity and opinions of a consulting-only expert, if

not reviewed by a testifying expert, are exempt from discovery. *See* TEX. R. CIV. P. 192.3(e). In

Texas, information obtained by a lawyer which is not privileged may still be considered

confidential, and should not be disclosed without client consent. *See* TEX. DISCIPLINARY R.

PROF'L CONDUCT 1.05(a), (b). Greenwell Aff. ¶ 8.

Greenwell believed that, as a lawyer licensed in Texas and as a prospective expert that

had not committed to an opinion, Zamora would have understood the exempt and confidential

nature of both the conversation they had and the information that Greenwell had provided, and

that Greenwell expected this conversation to remain confidential, and not to be used against CGT

or Celis. Because it was clear that confidential information was being shared, and the possibility

of being retained as an expert was specifically discussed, Greenwell believed there was an

expectancy of confidentiality with respect to his discussions with Zamora, at least up until the

time it was determined that Zamora would be designated a testifying expert. Greenwell Aff. ¶ 9.

Greenwell also believed that Zamora's identity would be exempt from discovery until a

determination was made that he would be a testifying expert. Greenwell Aff. ¶ 10.

After Greenwell had provided all of the information about the case and explained the

schedule in the *Gonzalez* Case, Zamora informed him that he did not have the time in his

schedule to serve as an expert on CGT's and Celis' behalf. Zamora provided Greenwell with

recommendations of other potential experts, including members of the Mexican branch of

Haynes & Boone and its Mexican affiliates and other experts. Greenwell Aff. ¶ 11. Given that

Greenwell believed that Zamora could not testify as an expert in *Gonzalez*, he did not take

further steps to retain Zamora as an expert. Greenwell Aff. ¶ 12.

## ARGUMENT

This Court has the power to disqualify expert witnesses. *Mayer v. Dell*, 139 F.R.D. 1 (D.D.C. 1991). "This power exists in furtherance of the judicial duty to protect the integrity of the adversary process and to promote public confidence in the fairness and integrity of the legal process." *Ames-Serono, Inc. v. Organon International*, 153 F.R.D. 4, 6 (D. Mass. 1993); *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991). Clearly, if an attorney actually retains an expert, that expert must be disqualified from providing testimony for an adverse party. *Wang Laboratories, Inc.*, 762 F.Supp. at 1248. Even in situations, however, where "the expert in question had not been retained by the defendant . . . 'the law will imply a relationship of confidence when it is just to do so.'" *Paul By and Through Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 277 (S.D. Ohio 1988) (quoting *Conforti & Eisele, Inc. v. Division of Building and Construction*, 405 A.2d 487 (N.J. Super. 1979)).

The test for determining if a relationship of confidence has been created with a potential expert has two parts. "'First, was it objectively reasonable for the first party who claims to have retained the [expert] to conclude that a confidential relationship existed? Second, was any confidential or privileged information disclosed by the first party to the [expert]?" *Mayer*, 139 F.R.D. at 3 (quoting *Wang Laboratories, Inc.*, 762 F.Supp. at 1248). Furthermore, "consultants with doubts about their desire to be retained should express these doubts clearly and unequivocally to the inquiring lawyer and decline to accept any disclosures unless and until the doubts are resolved." *Wang Laboratories, Inc.*, 762 F.Supp. at 1248. Significantly, the experts in *Mayer* and *Wang Laboratories, Inc.* were never retained by the parties who later moved to disqualify them.

Zamora is an attorney and a professor of law and has served as an expert on at least one other occasion, *see* Expert Disclosure at 2, Exh. B, and therefore can be presumed to know the rules that apply to the retention of experts.  When he contacted Zamora, Greenwell explained that he wished to discuss retaining Zamora as a testifying or consulting expert for Celis and CGT with specific regard to Celis' status as an attorney in the Republic of Mexico.  When discussing with Zamora the matters surrounding *Gonzalez*, Greenwell shared information with Zamora, including facts, defensive strategies, and work product which any reasonable lawyer would have recognized as confidential.  Greenwell objectively believed that the material he shared with Zamora regarding his clients was confidential in nature.  *See Wang Laboratories, Inc.*, 762 F.Supp. at 1248 n.3 ("in more ambiguous circumstances, the disclosure of confidential information may serve to support the inference that the lawyer was objectively reasonable in assuming the existence of a confidential relationship.").

Like the disqualified expert in *Wang*, however, Zamora did not object or otherwise screen himself from the confidential information that Greenwell disclosed.  *Wang*, 762 F.Supp. at 1249 (finding that the expert's "silence in the face of receiving this information reenforces [sic] the reasonableness of [the] assumption that a confidential relationship existed.")  Like the disqualified expert in *Conforti & Eisele*, Zamora was made privy to "a substantial amount of trial strategy," as well as the "strengths and weaknesses" of CGT's and Celis' case.  *Conforti & Eisele*, 405 A.2d at 488.  Zamora's expert report designated by Evanston in this case expresses an opinion on precisely the same issues as Greenwell disclosed and discussed with Zamora less than a year ago, notwithstanding the fact that Zamora was unable to reach that opinion during his conversation with Greenwell.  *Cf. Wang*, 762 F.Supp. at 1247 (disqualified expert retained by

opposing party to testify regarding the same issues as disclosed and discussed by counsel moving for disqualification).

## CONCLUSION

Based on the foregoing facts and legal precedent, Defendants respectfully request that this Court enter an Order disqualifying Zamora as an expert on behalf of Evanston.

Respectfully submitted,

/s/ Philip H. Hecht
Philip H. Hecht (DC Bar No. 33286)
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 778-9000
Facsimile: (202) 778-9100
E-mail: philip.hecht@klgates.com

Counsel for Defendants CGT Law Group International LLP, Mauricio Celis, T. Christopher Pinedo, Douglas Ray Gwyther, Raul Tapia and James H. Hada

## CERTIFICATE OF SERVICE

I certify that on September 4, 2008, a copy of the foregoing Motion to Disqualify Plaintiff's Expert was filed via electronic case filing system of the United States District Court for the District of Columbia and, accordingly, that the Court will send notice of this filing electronically to:

William Gandy
Jason R. Waters
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22102
Phone: 703-245-9300
Fax: 703-245-9301
E-mail: william.gandy@wilsonelser.com
Attorneys for Plaintiff


        /s/  Philip H. Hecht
Philip H. Hecht
K& L GATES LLP
1601 K Street, N.W.
Washington, D.C.  20006
Telephone:  (202) 778-9000
Facsimile: (202) 778-9100
E-mail: philip.hecht@klgates.com

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**EVANSTON INSURANCE COMPANY,**

          **Plaintiff/Counterclaim Defendant,**

    **v.**

**CGT LAW GROUP INTERNATIONAL LLP, MAURICIO CELIS, T. CHRISTOPHER PINEDO, DOUGLAS RAY GWYTHER, RAUL TAPIA, JAMES H. HADA, and THOMAS GUAJARDO,**

          **Defendants/Counterclaim Plaintiffs.**

**Civil Action No. 07-2252**
(Judge Roberts)

---

## PLAINTIFF EVANSTON INSURANCE COMPANY'S
## EXPERT DISCLOSURE OF STEPHEN ZAMORA

Plaintiff Evanston Insurance Company, by its counsel, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, and pursuant to Fed. R. Civ. P. 26(a)(2), and this Court's Scheduling Order, submits the following as its expert disclosure:

    1.    Plaintiff Evanston Insurance Company may call Professor Stephen T. Zamora as an expert witness at trial.

    2.    A copy of Professor Zamora's signed, written report is attached as Exhibit "A." Professor Zamora's report contains a statement of his opinions, the reasons for his opinions, and the data and information he used in forming his opinions.

    3.    Plaintiff reserves the right to use Professor Zamora's report and any documents referenced therein as exhibits to summarize and/or support Professor Zamora's opinions.

    4.    A copy of Professor Zamora's *curriculum vitae,* stating his qualifications and a list of all of his publications within the last ten years, is attached as Exhibit "B."

- 1 -

5.     Professor Zamora gave deposition testimony in *Licona v. Honda Motor Company, Ltd.* (Superior Court, Los Angeles County, California, Case No. BC338143) in April 2008. He has not testified at deposition or trial in any other matters in the preceding four years.

6.     Professor Zamora's compensation for his services is described in Exhibit "C."

7.     Plaintiff reserves the right to supplement this response.

Respectfully submitted,

By: _____

William G. Gandy (Bar No. 491153)
Jason R. Waters (Bar No. 491066)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22102
Phone: 703-245-9300
Fax: 703-245-9301
E-mail: william.gandy@wilsonelser.com

ATTORNEYS FOR PLAINTIFF
EVANSTON INSURANCE COMPANY

- 2 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Expert Disclosure of Jorge Vargas was served via Federal Express this 4th day of August, 2008, on:

Philip H. Hecht
KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP
1601 K Street, N.W.
Washington, D.C. 20006
Tel: 202-778-9000
Fax: 202-778-9100
Email: Philip.Hecht@klgates.com

William G. Gandy, Esq.

**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Evanston Insurance Company | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION |
| | § | |
| VS. | § | |
| | § | |
| CGT Law Group International LLP | § | Case: 1:07-cv-02252 |
| Mauricio Celis | § | Assigned to: Roberts, Richard W. |
| T. Christopher Pinedo | § | Assign. Date: 12/14/2007 |
| Doublas Ray Gwyther | § | Description: Contract |
| Raul Tapia | § | |
| James H. Hada | § | |
| Thomas Guajardo | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DECLARATION OF STEPHEN T. ZAMORA

My name is Stephen T. Zamora. I am a resident of Harris County, Texas. I am over eighteen years of age and am fully competent and qualified to make this declaration.

1.    I am a tenured Professor of Law at the University of Houston Law Center, where I have been a member of the faculty since 1978. From 1995 to 2000, I served as Dean of the University of Houston Law Center. From 1978 to 1994, and again in 2001, I served as the Director of the University of Houston's Mexican Legal Studies Program, a summer program for law students that is held each year in Mexico City. I have also taught introductory courses in Mexican Law at the University of Houston Law Center, and have lectured on numerous occasions to U.S. lawyers about aspects of Mexican law. I have been a Fulbright Professor at the National Autonomous University of Mexico (UNAM) (in 1982-83), and have been a visiting research fellow at UNAM's Institute of Legal Studies on two occasions, in 1992-93 and in 2000-2001. I am the founding director of the North American Consortium on Legal Education (NACLE), which promotes legal exchanges among Canadian, Mexican and U.S. law professors and law students. I am a member of the Board of Directors of the U.S. - Mexico Law Institute, and I am a member of the Board of Editors of the Boletín Mexicano de Derecho Comparado, a law journal published by UNAM. I am the lead author of a treatise, entitled Mexican Law, published in 2004 by Oxford University Press, which includes a chapter on legal education and the

legal profession in Mexico. I have published articles on Mexican law as well as on U.S. - Mexican relations. I have served on an advisory committee of the Mexico-United States Judicial Cooperation Project, funded by USAID, and I have also been consulted by the World Bank on issues of Mexican legal and judicial reform. I have served as an expert witness on Mexican law and on international law, in both state and federal courts in the United States.

2.  I have been asked to provide an opinion regarding the application of Mexican law to certain facts relevant to the request by plaintiff Evanston Insurance Company for declaratory relief and monetary damages arising out of the application for lawyers professional liability insurance by defendant CGT Law Group International, of which defendant Mauricio Celis is allegedly a principal partner. My opinion is based on the following documents that have been provided to me by counsel for the plaintiff Evanston Insurance Company:

> A.  Plaintiff's Original Complaint, and Exhibits 1 through 11 attached thereto;
> B.  Defendants' Answer, with Affirmative Defenses and Counterclaim, filed with the Court on February13, 2008;
> C.  Plaintiff's Answer to Defendants' Counterclaim;
> D.  Plaintiff's Rule 26(a)(1) Initial Disclosures, and attachments thereto, including reports and translations from the Universidad Regiomontana and the Mexican Secretary of Public Education, as well as Plaintiff's underwriting file ;
> E.  Certified copies of Plaintiff's insurance policies issued to Defendant CGT, as well as applications for these policies;
> F.  Testimony by Defendant Mauricio Celis in the case of Gonzalez & Associates Law Firm, et al., v. Chris Pinedo, et al.;
> G.  A letter signed by Lic. José Luis Lobato Espinosa of the General Directorate of Professions of the Mexican Secretary of Public Education, dated November 8, 2007, and English translation thereof;
> H.  A letter signed by Ing. Gerardo González Garza, Director of Scholastic Services of the Universidad Regiomontana, dated November 29, 2007;
> I.  And the legal opinion of Maestro Bruno Refugio Carrillo Medina, Academic Coordinator of Postgraduate Education at the Universidad Autónoma de Nuevo León, dated October 14, 2007, and accompanying copies of certain provisions of the Mexican Constitution and certain Mexican laws, as well as English translations thereof.

3.  Plaintiff Evanston Insurance Company alleges that it issued two policies of lawyers professional liability insurance pursuant to two separate applications made by CGT Law Group International, one on December 7, 2005 and one on October 6, 2006. The two applications were virtually identical, covering separate policies of professional liability insurance. In supplements to the applications, which appear to be signed (illegibly) by a partner of the CGT Law Group International, Mauricio Celis is listed as a Partner of the applicant law firm. Both applications include a column in which the applicant can provide the "Year Admitted to Bar." In both applications, in the space corresponding

with the name Mauricio Celis, a hand-written entry of the date 2000 is inserted in this space. In another column, under "Years of Full—Time Practice," the number 6 is entered for Mauricio Celis (the number 7 appears in the 2006 application). Finally, in the column marked "Member in Good Standing of the Following State Bar[s]", the space corresponding to the name Mauricio Celis includes the hand-written word "MEXICO."[1]

4. Evanston Insurance Company seeks, among other things, to rescind the insurance policies, on the grounds that the policies were issued to CGT Law Group International in reliance on material misrepresentations concerning the qualifications of Mauricio Celis as a lawyer who was admitted to practice in Mexico at the time the representations were made. (Original Complaint, para. 16) I have been asked by the Plaintiff to give an opinion, based on the documents listed in Paragraph 2 above, concerning whether Mauricio Celis is authorized to practice law in Mexico, and whether he is a lawyer in good standing in Mexico.

5. Before examining Mr. Celis' record, it is useful to set out the general requirements for a person to become licensed to practice law in Mexico.[2] Article 5 of the Mexican Constitution states: "The Law shall determine in each State those professions that shall require a degree for their exercise, the conditions that must be fulfilled to obtain it, and the authorities that should grant the degree." Pursuant to this article, each of the Mexican states has adopted a Law of Professions to regulate the practice of professional activities within each state. The state laws of professions are quite similar; I will make reference to the Law of Professions of the State of Nuevo León, since Mr. Celis claims to have received a law degree from a university within that state. However, the Court should be aware that, unlike in the United States, in Mexico the Constitution mandates that professional degrees issued under the authority of one state must be recognized in all other Mexican states and territories.[3] Thus, Mexico has a national bar – lawyers may practice in any state of the nation.

6. Article 5 of the Law of Professions of the State of Nuevo León states that "The professions that require a degree for their exercise, in addition to those that are taught or come to be taught by universities or institutions of higher learning legally authorized in the State, that are officially recognized as final degrees, are the following: * * * - Lic. in Law or Juridical Sciences." In Mexico, the term "Lic." refers to *licenciado*, that is, a person who has fulfilled the requirements of the first university degree in law, which is called a *licenciatura*. Each Mexican law school provides its own terms for the granting of the *licenciatura*, in accordance with accreditation standards, which are very lax by comparison with U.S. accreditation requirements for law schools.

---

[1] In addition, Exhibit 1 to the Original Complaint filed by Evanston Insurance Company includes a copy of the letterhead of CGT Law Group International, which lists Mauricio R. Celis as "Licensed in Mexico." The web site of CGT Law Group International,appears to have listed Mauricio R. Celis as an "Attorney at Law" (Exhibit 10 to the Original Complaint) and his personal page on the web site states that he is "a licensed attorney in Mexico" (Exhibit 11 to Original Complaint).

[2] On legal education and preparation for the bar in Mexico, *see generally* Stephen Zamora, et al., <u>Mexican Law</u> (Oxford University, 2004), at pages 43 – 63.

[3] *See id.* at page 62, and authority cited therein.

7.      Once the student receives the law degree, or *licenciatura*, from a licensed academic institution,[4] he or she must then apply to the General Directorate for Professions, within the federal Secretariat of Public Education, to receive the *cédula*, or professional certificate to practice law.[5]  The granting of the *cédula* is virtually automatic: there is no exit exam, either at a national or state level.  Once the *cédula* is received, the law graduate may practice law in any state of the Mexican Republic.

8.      In regards to the record of Mr. Celis, I have already noted in paragraph 3 the representations that were made, in 2005 and 2006, that Mauricio Celis was a "member in good standing" of the bar in Mexico, that he was admitted to the bar in 2000, and that in 2005 he had 6 years of experience (7 in 2006) of full-time practice – in the context of the application, the natural assumption being a representation of this number of years of law practice.  A review of the documents sent to me, however, shows that Mr. Celis lacks two necessary qualifications to represent himself as a licensed lawyer in Mexico.

9.      First, there is no evidence that Mr. Celis has ever obtained a law degree, or *licenciatura en derecho* – a uniform requirement throughout Mexico before a person can become licensed to practice law.  (See paragraph 6, *supra*)  In a hearing held in a separate lawsuit, before Judge Gus Strauss, of Zapata County, Texas, on May 30, 2007, Mr. Celis testified that he had attended the Universidad Regiomontana, in Monterrey, Mexico from 1997 to 1999.[6]  He stated that he thinks he received the degree of *licenciado en ciencias jurídicas*, or bachelor of juridical science, in the Fall of 1999, but he has provided no documentation that would support a conclusion that he has received a law degree.  (See Paragraph 2, Document F, *supra,* at pages 50 - 51)   To the contrary, in a letter dated November 29, 2007, the Director of Scholastic Services at the Universidad Regiomontana, Ing. Gerado González Garza, states that Mauricio Celis Rodriguez "is enrolled in this Institution with registration 682453 in the career [i.e., specialization] of ATTORNEY OF LEGAL SCIENCES." (See Paragraph 2, Document H *supra*)  It goes without saying that Mr. Celis would not be enrolled in the year 2007 in a program designed to receive a law degree from the same institution from which, if his testimony referred to above were correct, he had already received a law degree in 1999.

10.     Second, as noted above, the receipt of a law degree does not, by itself, qualify a person to practice law in Mexico.  In addition, one must apply to the General Directorate for Professions of the Secretariat of Public Education to receive a *cédula*, or certificate to practice law.  (See Paragraph 7, *supra.)*  The only document that I have seen in this regard is a letter from Lic. José Luis Lobato Espinosa, the Director of Authorization and

---

[4] In Mexico, only institutions of higher education that are registered with state or federal education agencies may grant a law degree.  The accreditation requirements for law schools are set by state and federal laws.  By comparison with the United States, the requirements for establishing a law school in Mexico are quite low.  *See* Luis Fernando Pérez Hurtado, "El Marco Jurídico de las Instituciones Particulares que Ofrecen la Licenciatura en Derecho en México," available at  http://www.educacionjuridica.org/PDF/Artículo_Marco_Jurídico_de_LED_Privadas.pdf .

[5] Stephen Zamora, *supra* note 2 at 62.  *See also* Luis Fernando Pérez Hurtado, The Next Generation of Mexican Lawyers: A Study of Mexico's System of Legal Education and Its Law Students, at p. 29 (doctoral dissertation, Stanford University, May 2008, available at http://www.stanford.edu/~luisph/publico ).

[6] Mexican legal education is generally five years in length, and while some law schools have reduced the length of study, a two-year program is virtually unheard of.

H-740043.1

Professional Registry of the General Directorate of Professions of the Secretariat of Public Education, dated November 8, 2007, in which Lic. Lobato Espinosa states that "there are no records at all on the 5th day of November of the current year of the C.(itizen) MAURICIO CELIS RODRIGUEZ that would authorize him to practice as a PROFESSIONAL." (Paragraph 2, Document G)

11.    As the previous two paragraphs point out, Mr. Celis appears to lack the degree – *licenciatura* – that is required to practice law as a professional in Mexico. In addition, even if he did have a law degree, Mr. Celis lacks the professional certification, or *cédula*, which must be obtained by an attorney before he or she will be allowed to practice law in Mexico.

12.    In his legal opinion (see Paragraph 2, Document I) Maestro Bruno Refugio Carrillo Medina, Academic Coordinator of Postgraduate Education at the Universidad Autónoma de Nuevo León, reviews a number of broad precepts of Mexican law to support the conclusion that Mexican law permits "the possibility of carrying out the practice of law by individuals who do not have the title or degree of attorney at law and those having or not having a professional certificate, and even those who have as yet not completed their legal studies. In that same vein, in no way and under no circumstances shall it be considered, for example, that an illegal act has been committed by the simple act of association between degreed attorneys and attorneys with no degree." (Document I, English translation, page 8)  I agree with this statement, but I also note that it is of little consequence in this case. It is true that, in Mexico, persons who are not lawyers can undertake to perform legal acts – non-lawyers can draft contracts for themselves, or for others, and they can even purport to give advice of a legal nature.[7] The same is generally true in the United States. What cannot be done, however, is what Mauricio Celis appears to have done here – to represent that he is a lawyer when he lacks that status. Maestro Carrillo Medina fails to point out that in the State of Nuevo León, as in other states of the Mexican Republic, the Law of Professions sets out the rules by which a person can be authorized to represent himself or herself as a professional, by registering with state or federal authorities and by conforming to the rules of professional behavior set forth in the Law of Professions. (Law of Professions of the State of Nuevo León, Articles 13 to 24, and 50 to 62.) Article 54, Section 1, of the Law of Professions of Nuevo León calls for administrative sanctions of anyone who exercises a profession without registering with state or federal authorities within 180 days of having received the required degree.

13.    In addition to the sanctions applied by the Law of Professions of the State of Nuevo León, the Penal Code of the State of Nuevo León provides that representing oneself as a professional without having the requisite professional degree constitutes the crime of usurpation of professional functions. This crime, called usurpation of profession, is set forth in Articles 255 and 256 of the Penal Code of Nuevo León, which state as follows:

---

[7] The same is true of other professions – a folk doctor, or *curandero,* can purport to cure people of illness. The *curandero* will only be guilty of violating the law if he represents that he is a licensed medical doctor, because this misrepresents his training and qualifications.

"USURPATION OF PUBLIC OR PROFESSIONAL FUNCTIONS, AND UNAUTHORIZED USE OF DECORATIONS OR UNIFORMS

Article 255.  The crime of usurpation of public or professional functions, or unauthorized use of decorations or uniforms, is committed by:

I.      * * *

II.     One who characterizes himself as a professional without having the requisite legal or academic degree, and who undertakes acts that are proper for the profession or the degree.

III.    * * *

Article 256.  Those who are guilty of the crime described in this chapter shall be sanctioned by imprisonment from one month to three years, and with a fine of from one to ten thousand cuotas."

14.    Mexican courts have interpreted the crime of usurpation of profession as requiring two elements – the misrepresentation that one has the requisite professional standing, and the exercise of professional acts.[8]  Federal law is even more strict:  Article 250 of the Federal Penal Code makes it a federal crime to represent that one has a professional license to practice a profession without having the right to do so.  Violation of Article 250 can result in imprisonment for a period of one to 6 years, and a fine of from one to three hundred times the daily minimum wage.[9]

---

[8] USURPACIÓN DE PROFESIÓN. CASO EN QUE NO SE CONFIGURA LA CONDUCTA TÍPICA PREVISTA EN LA FRACCIÓN II DEL ARTÍCULO 258 DEL CÓDIGO DE DEFENSA SOCIAL DEL ESTADO DE PUEBLA, SEGUNDO TRIBUNAL COLEGIADO EN MATERIA PENAL DEL SEXTO CIRCUITO.
VI.2o.P.78 P
Amparo en revisión 493/2006. 30 de noviembre de 2006. Unanimidad de votos. Ponente: Tarcicio Obregón Lemus. Secretaria: Nérida Xanat Melchor Cruz.
Instancia: Tribunales Colegiados de Circuito. Fuente: Semanario Judicial de la Federación y su Gaceta, Novena Epoca. Tomo XXV, Marzo de 2007. Pág. 1829. Tesis Aislada.

USURPACION DE PROFESION.
1a.Amparo directo 6208/61. Héctor Toledo Torres. 30 de enero de 1964. Unanimidad de 4 votos. Ponente: Juan José González Bustamante.
Instancia: Primera Sala. Fuente: Semanario Judicial de la Federación, Sexta Epoca. Volumen LXXIX, Segunda Parte. Pág. 48. Tesis Aislada.

[9] Article 250 states as follows: "A sanction of imprisonment for one to six years and a fine of from one to three hundred days [of daily minimum wage] shall be levied:
* * * II. On any person who, without having a professional degree or authorization to practice a regulated profession, duly granted by authorities or agencies legally entitled to do so, in accordance with the regulatory provisions of article 5 of the Constitution –
    a)  Represents that he holds the position of a professional;
    b)  Undertakes acts that are appropriate to a professional activity . . . ;
    c)  Publicly offers his services as a professional;
    d)  Uses a degree or authorization to exercise a professional activity without having the right to do so;
    e)  For the purpose of private gain, joins with professionals legally authorized to undertake professional activities or administer a professional association.
Mexican courts made it clear that the violation of any one of the paragraphs of Article 250 constitutes the crime of usurpation of profession – it is not necessary to show that the accused has committed acts that violate all of the paragraphs of Article 250. See:

H-740043.1

15.  By representing that he is a duly licensed lawyer in Mexico, Mauricio Celis would appear to have violated Article 250 of the Mexican Penal Code. Even though the representations were made outside of Mexico – presumably, in the United States of America – they may be punishable under Mexican law. Article 4 of the Federal Penal Code[10] provides that criminal acts committed in foreign territory by a Mexican citizen may be punished in Mexico, under federal law, if the accused is present in Mexican territory, if the accused has not already been convicted in another country, and if the infraction with which he is accused is a crime both in the country where he committed the act, and in the Mexican Republic. If Mr. Celis were to be present in Mexico, he could be prosecuted for a crime – misrepresentation that he is a licensed attorney – that is a criminal act in both the United States and Mexico.[11]

16.  From the above analysis, I conclude that, on the basis of the documents provided to me and listed in Paragraph 2 above, Mauricio Celis was not admitted to the bar – that is, was not licensed to practice law – in the year 2000, as the insurance applications had represented. (See paragraph 3 supra) Mr. Celis has not fulfilled 6 or 7 years of full time law practice, as was represented in the two applications. At the time the insurance applications were submitted, Mr. Celis was not a lawyer in good standing in Mexico, as represented in the applications, and he appears not to be a lawyer in good standing in

---

**USURPACION DE PROFESION, DELITO DE. LAS HIPOTESIS PREVISTAS EN LOS DIVERSOS INCISOS DE LA FRACCION II DEL ARTICULO 250 DEL CODIGO PENAL FEDERAL, TIENEN VIDA JURIDICA AUTONOMA.**
El artículo 250 del Código Penal Federal, en su fracción II, prevé diversas hipótesis en las que se puede actualizar el delito de usurpación de profesión, supuestos que entre sí son autónomos; es decir, basta que se materialicen los elementos de cualquiera de ellos para la integración del delito, y por tanto no se requiere su conjunción.
SEGUNDO TRIBUNAL COLEGIADO EN MATERIA PENAL DEL TERCER CIRCUITO. III. 2o. P. 43
P Amparo en revisión 108/94. Andrés Guillermo Barba Núñez, Edmundo Enrique Orozco Bañuelos, Adolfo Javier Chávez Ruiz Velasco y Elia Yolanda Beas Jiménez. 13 de septiembre de 1994. Unanimidad de votos. Ponente: Homero Ruiz Velázquez. Secretario: Juan Manuel Villanueva Gómez. **Instancia:** Tribunales Colegiados de Circuito. **Fuente:** Semanario Judicial de la Federación, Octava Epoca. Tomo XIV, Noviembre de 1994. Pág. 546. **Tesis Aislada.**

[10]  Artículo 4. Los delitos cometidos en territorio extranjero por un mexicano contra mexicanos o contra extranjeros, o por un extranjero contra mexicanos, serán penados en la República, con arreglo a las leyes federales, si concurren los requisitos siguientes:
- I. Que el acusado se encuentre en la República;
- II. Que el reo no haya sido definitivamente juzgado en el país en que delinquió; y
- III. Que la infracción de que se le acuse tenga el carácter de delito en el país en que se ejecutó y en la República.

[11]  I note that the letterhead and promotional literature of CGT Law Group International lists a Corpus Christi address for the firm's offices. Representations made by Mauricio Celis from an office in Texas that he was licensed to practice law in Mexico may have violated Texas criminal laws as well.
　　　Article 38.122 of the Texas Penal Code states as follows:
§ 38.122. FALSELY HOLDING ONESELF OUT AS A LAWYER. (a) A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person holds himself or herself out as a lawyer, unless he or she is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed. (b) An offense under Subsection (a) of this section is a felony of the third degree. (c) Final conviction of falsely holding oneself out to be a lawyer is a serious crime for all purposes and acts, specifically including the State Bar Rules.

H-740043.1

Mexico at least as of November 5, 2005, in accordance with the information provided in Document . Furthermore, he is not a licensed attorney in Mexico, as represented in the CGT Law Group International's promotional materials listed in footnote 1, supra. is not a lawyer in good standing in Mexico. The statements made concerning Mr. Celis' status as an attorney therefore amount to misrepresentations of his professional qualifications. In addition, by representing himself as a Mexican lawyer, Mauricio Celis may have violated provisions of Mexican criminal law, in particular, Article 250 of the Federal Penal Code, and Articles 255 and 256 of the Penal Code of the State of Nuevo León. He may also have violated Article 38.122 of the Texas Penal Code.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON AUGUST 1, 2008, IN HOUSTON, TEXAS

_____
STEPHEN ZAMORA

H-740043.1

**Exhibit B**

# Stephen Zamora
University of Houston Law Center, Houston, Texas  77204-6060
Phone: (713) 743-2137
Fax: (713) 743-0597
e-mail: szamora@uh.edu

**Teaching Experience**:

Leonard B. Rosenberg Professor of Law, University of Houston Law Center
    Associate Professor, 1978-1982;  Professor of Law since 1982

Dean, University of Houston Law Center, 1995-2000

**Courses:**    International Business Transactions, International Trade, NAFTA, Contracts, International Banking Law, Mexican Law, Conflicts of Law

**Professional Associations and Recognitions**:

Member of the California and District of Columbia Bars
Order of the Aztec Eagle (highest recognition by Mexican government to a foreign citizen)
American Law Institute
Of Counsel, Haynes and Boone, L.L.P.
Houston World Affairs Council (Director, 1997-98)
American Society of International Law (Executive Council, 1987-1990)
    ASIL International Economic Law Interest Group (Chairman, 1991-1993)
American Society of Comparative Law
American Bar Association, International Law Section (Counselor, 1995-1997)
U.S.-Mexico Law Institute, Board of Directors
Assoc. of American Law Schools (Chair, Section on North-American Cooperation, 1995, 2002)
U.S. - Mexico Bar Association
Hispanic Bar Association of Houston, founding member
Houston Bar Association, International Law Section

**Professional Activities:**

Wing Tat Lee Lecture in International Law, Loyola Chicago Law School, 2008
Visiting Professor, Yale Law School, Spring 1994; Fordham Law School, 2005
Lecturer, Academy of American and Int'l Law, Center for American and Int'l Law, 1989-2008
Director, Mexican Legal Studies Program, University of Houston, 1978-1994, 2001
Panel member, U. S. v. Canada, "Tariffs Applied by Canada to Certain U.S.-Origin Agricultural Products," initial NAFTA Chapter 20 dispute (decision

dated December 2, 1996)
**Professional Activities (continued):**

Academic Adviser, USAID Project on U.S. – Mexico Judicial Cooperation (1996-
1998)
Fulbright Professor, Universidad Nacional Autónoma de México (UNAM), 1982-1983
Visiting Research Fellow, Instituto de Investigaciones Jurídicas (UNAM), 1982-83,
1992-93, 2000-01
Academic Visitor, Faculty of Law, London School of Economics, London, England,
1985-1986
Lecturer, International Banking Law, University of San Diego Summer Program,
London, 1991
USIA Amparts Lecturer, Lima, Peru, 1988 (lectures in Spanish on U.S. judicial system)
Academic Adviser, USAID Project on Judicial Cooperation between the United
States and Mexico, 1992 - 1994

**Legal Education:**

J.D., 1972, Boalt Hall School of Law, University of California, Berkeley

**Academic Honors in Law School:**

Graduated first in class (highest three-year average in class of 280 students)
Order of the Coif
California Law Review (Chief Articles and Book Review Editor, 1971-1972)
National Defense Foreign Language Fellowship, 1971-1972
Bartley Cavanaugh Crum Scholarship, 1970-1971 (awarded to the student with the
highest academic average at the end of the first year)

**Undergraduate Education:**

B.A., 1966, Stanford University (Political Science); Stanford University Scholarship,
California State Scholarship

**Previous Employment:**

1976 to 1978 Attorney, Legal Department, The World Bank, Washington, D.C.
1974 to 1976 Associate Attorney, Cleary, Gottlieb, Steen & Hamilton, Washington,
D.C.
1973 to 1974 Postgraduate Fellow, University Consortium for World Order Studies,
Geneva, Switzerland
1972 to 1973 Law Clerk to Justice Raymond Sullivan, California Supreme Court

1971 to 1971 Summer Intern, Office of the Legal Adviser, United States Department of State

1967 to 1969 Peace Corps Volunteer, Colombia, South America

## Publications

**Books**:

Mexican Law (with Cossio, Pereznieto, Roldán and López) (Oxford University Press, 2004).

Basic Documents of International Economic Law (General editor and contributor, with Prof. Ronald Brand; Commerce Clearing House, 1990). Two-volume reference work with documents and commentary.

**Computer Database**:

Founding editor, Database on International Economic Law (General editor, with Ronald Brand). This on-line database, available on LEXIS and WESTLAW, contains the major international agreements dealing with international economic law.

**Articles and Book Chapters**:

"A Proposed North American Regional Development Fund: The Next Phase of North American Integration Under NAFTA," Loyola (Chicago) Law Journal, forthcoming, December, 2008 (delivered as Wing Tat Lee Lecture in International Law, April 2008).

"Mexican constitutionalism after *presidencialismo*," in Vol. 4 (No. 2), International Journal of Constitutional Law 411 – 437 (2006) (Oxford University).

"Introduction -- Judicial Review in Latin America," Southwestern Journal of Law and Trade in the Americas (2001)

"NAFTA at Seven Years," Ars Iuris, Universidad Panamericana, 2002. An updated and revised version of this article is included as Chapter 1A, "Assessing NAFTA", in Doing Business in Mexico (Mark Wojcik, ed., 2008).

"El Derecho Internacional y la Economica Mundial a Finales del Siglo XX," in La Ciencia del Derecho Durante el Siglo XX 229-249 (1998)

"Allocating Legislative Competence in the Americas: The Early Experience Under NAFTA and the Challenge of Hemispheric Integration," in Vol. 19, Houston Journal

of International Law 615-642 (1997).

"International Economic Law," in Vol. 17, University of Pennsylvania Journal of Economic Law 63-67 (1996).

**Publications (continued):**

"NAFTA and the Harmonization of Domestic Legal Systems: The Side Effects of Free Trade," in Vol. 12, Arizona Journal of International and Comparative Law 401-428 (1995).

"Economic Relations and Development," in Vol. I, The United Nations Legal Order 503-576 (O. Schachter and C. Joyner, eds.; Cambridge U Press, 1995).

"Regulating the Global Banking Network -- What Role (If Any) for the IMF?," 62 Fordham Law Review 1201-1221 (1994).

"The Americanization of Mexican Law: Non-Trade Issues in the North American Free Trade Agreement," 24 Law and Policy in International Business 391-459 (1993).

"Comments on the Regulation of Financial Services in Mexico Under NAFTA," 1 U.S.-Mex. Law.Journal. 77-80.  (1993).

"Foreword:  Searching for the Mexican Model of Government," 12 Houston Journal of International Law 181-189 (1990).

"Is There Customary International Economic Law?," 32 German Yearbook of International Law 9-42 (1990).

"Sir Joseph Gold and the Development of International Monetary Law," 23 The International Lawyer 1009-1026 (1989), reprinted in Festschift for Sir Joseph Gold 439 (Verlag Recht und Wirtschaft, 1990).

"El Poder Presidencial y la Economia de los Estados Unidos," Vol. II, Derecho Constitucional Comparado México-Estados Unidos, 841-875 (J. Smith, ed., 1990; UNAM, Mexico City).

"Exchange Control in the Spanish Empire, XVIth to XVIIIth Centuries," Essays in Honor of Guillermo Margadant (Universidad Nacional Autónoma de México, 1989).

"Exchange Controls and the Global Financial Market," Chapter 8 in Vol. III,

Prospects for International Lending and Rescheduling (J. Norton, ed.; SMU Institute on International Finance, Matthew Bender, 1988).

"Recognition of Foreign Exchange Controls in International Creditors' Rights Cases: The State of the Art," 21 The International Lawyer 1055-1082 (1987).

**Publications (continued):**

"Mexico and the Global Financial Market:  Capital Flight as a Factor in National Economic Policymaking," 18 California Western Journal of International Law 35-52 (1987).

"Mexican Exchange Controls:  A Case Study in the Application of IMF Rules," 7 Houston Journal of International Law 103-135 (1984).

"Peso-Dollar Economics and the Imposition of Foreign Exchange Controls in Mexico," 32 American Journal of Comparative Law 99-154 (1985), reprinted in Doing Business in Mexico  (S. Lefler, ed.; Matthew Bender, 1984).  A Spanish translation appears in the Revista del Tribunal Fiscal de la Federación, 2A. Epoca, Ano V., Num. 52 (April, 1984).

"Common Law," in Diccionario Jurídico Mexicano, published by Instituto de Investigaciones Juridicas, Universidad Nacional Autonoma de Mexico.

"Regulating Foreign Bank Operations in Texas," 19 Houston Law Review 427-499 (1982).

"Voting in International Economic Organizations," 74 American Journal of International Law 566-608 (1980).  Translations published in Japan (Nihon Hogaku Journal of Law, Vol. 48, Nos. 1 & 2 (Oct. 1982 & Jan. 1983), and in Mexico (Instituto de Investigaciones Juridicas, UNAM, Derecho Internacional Económico, Vol. 3 (1984).

"Carrier Liability for Damage or Loss to Cargo in International Transport," 23 American Journal of Comparative Law 391-450 (1975).

"UNCTAD III:  The Question of Shipping," 7 Journal of World Trade Law 91-115 (1973).

"Filing Fees for Indigents:  Ferguson v. Keays," 60 California Law Review 785-794 (1972).

"Rate Regulation in Ocean Transport: Developing Countries Confront the Liner Conference System," 59 <u>California Law Review</u> 1299-1332 (1971).

**Book Reviews**:

<u>Adjudication of International Trade Disputes in International and National Economic Law</u>, by E. Petersmann and G. Jaenicke, eds., reviewed in the <u>American Journal of Comparative Law</u> 755 (1992).

<u>United States Foreign Trade Law,</u> by Bruce E. Clubb, reviewed in 14 <u>Houston Journal of International Law</u> 79 (1992).

**Book Reviews (continued)**:

<u>International Monetary Collaboration</u>, by Richard W. Edwards, Jr., reviewed in 34 <u>American Journal of Comparative Law</u> 400 (1986).

<u>Emerging Financial Centers: Legal and Institutional Framework</u>. Ed. By Robert Effros, reviewed in 79 <u>American Journal of International Law</u> 224 (1985).

<u>International Encyclopedia of Comparative Law, Vol. XVII, Ch. 25: Universal Economic Organizations</u>, by Petersmann, et al., reviewed in 31 <u>American Journal of Comparative Law</u> 377 (1983).

<u>The Legal Framework of UNCTAD in World Trade</u>, by A.M. Koul, reviewed in 26 <u>American Journal of Comparative Law</u> 665 (1978).

<u>Global Reach: The Power of the Multinational Corporations</u>, by R. Barnet and R. Muller; <u>International</u>

<u>Regulation of Multinational Corporations</u>, by D. Wallace; and <u>U.S. Power and the Multinational Corporation</u>, by R. Gilpin, reviewed in 26 <u>Catholic University Law Review</u> 449 (1977). This review has been reprinted in E. Owens, <u>International Aspects of U.S. Income and Taxation</u>, Vol. I at pp. 15-22 (1980; Harvard Law School International Tax Program).

**Academic Papers Published:**

"Exchange Control and External Indebtedness: The Case of Mexico," published in American Society of International Law, Proceedings of the 78th Annual Meeting (1984), at 246-250.

"International Reaganomics and the IFI's," published in American Society of International Law, Proceedings of the 76th Annual Meeting (1982), at 215-227

"Basic Human Needs: The International Law Connection," published in American Society of International Law, Proceedings of the 72nd Annual Meeting (1978), at p. 33.

"New Frontiers in the Regulation of International Money Movement in the Wake of BCCI," published in American Society of International Law, Proceedings of the 86th Annual Meeting (1992), at 201-204.

## Unpublished Reports:

Final Report to the U.S. Agency for International Development, "The Role of Law in Social Change in Latin America and the Caribbean" (1978). (As Rapporteur of the American Society of International Law Panel on the above subject, I cooperated with other panel members in writing the final report to USAID, which funded the project. The report deals with legal aid, law reform and public interest law programs in the region.)

**Foreign Languages:**      Spanish (fluent), French.

**Personal:**

Born June 26, 1944. Married to Lois Parkinson Zamora, Professor of English and Comparative Literature, University of Houston; two children (born 1971 and 1973), one grandchild. Home address: 1707 Milford Street, Houston, Texas 77098, (713) 526-1937.

**Exhibit C**

**TERMS OF COMPENSATION FOR
PROFESSOR STEPHEN ZAMORA
TO SERVE AS EXPERT ON MEXICAN LAW
IN THE MATTER OF EVANSTON INSURANCE COMPANY V. MAURICIO CELIS**


**HOURLY RATE:  STEPHEN ZAMORA, OF COUNSEL
590 DOLLARS PER HOUR**

**RAUL JIMENEZ, MEXICO CITY ASSOCIATE
200 DOLLARS PER HOUR**

**SIGNED:** _____

**STEPHEN ZAMORA**

**DATE:  AUGUST 1, 2008**

H-740043.1

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EVANSTON INSURANCE COMPANY     )
     Plaintiff,     )
     )
v.     )
     )     **CIVIL ACTION No: 07-02252**
CGT LAW GROUP INTERNATIONAL LLP, *et*  )
*al.*,     )
     )
     Defendants.     )

## AFFIDAVIT OF ANDREW GREENWELL

ANDREW GREENWELL, being duly sworn, deposes and says upon penalty of perjury thereof:

1.     My name is Andrew Greenwell. I am over eighteen years of age, and I am competent to make this affidavit. The facts herein are of my personal knowledge and are true and correct. I make this affidavit in support of Defendants' Motion to Disqualify Plaintiff's Expert Witness.

2.     I am currently employed as the managing partner of Harris & Greenwell, L.L.P., a law firm in Corpus Christi, Texas. I am licensed to practice law in the state of Texas. I have been licensed to practice law in Texas since November 6, 1992, and have practiced law continuously since that time until the present. I have had a civil trial and appellate practice, have litigated cases in both federal and district court, and have retained numerous experts for those cases.

3.     In October 2006, I was retained by Mauricio Celis, partner of CGT Law Group International, L.L.P. ("GCT"), as counsel to pursue claims on behalf of CGT against various parties, including the law firm of Gonzalez & Associates Law Firm PLLC and others ("Gonzalez parties"). The Gonzalez parties, however, filed suit before CGT could pursue its claims, thus acquiring what in Texas is called dominant jurisdiction. The case filed by the Gonzalez parties is styled *Gonzalez & Associates, et al. v. Chris Pinedo, et al.* Cause No: 6,349 in the 49th Judicial

District Court of Zapata County, Texas) ("*Gonzalez* Case"). After it had notice of the *Gonzalez* Case, CGT and the other defendants provided notice to Evanston, CGT's professional liability insurer, and arrangements were made wherein our firm was retained to defend Evanston's insureds in the *Gonzalez* Case.

4.      As part of that representation, on October 8, 2007, I contacted the offices of Haynes & Boone in Houston Texas, to speak with Professor Stephen Zamora ("Zamora") about the possibility of being an expert for Celis and CGT, both of whom were defendants in the *Gonzalez* Case. Zamora was not in the office, so I left a message.

5.      On October 9, 2007, I spoke with Zamora by telephone. We discussed the facts and circumstances surrounding CGT and Celis in the *Gonzalez* Case in significant depth. I explained these facts and circumstances to obtain advice as to the legal issues confronting the parties under Mexican law, and to inquire whether Zamora would serve as an expert witness regarding Celis' status as an attorney in the Republic of Mexico and/or his ability to practice law under the law governing the practice of law in Mexico. We also discussed the interplay of Mexican law and Texas law as it related to the allegations in that case against Celis and CGT.

6.      During this telephone conversation, I explained at some depth the background of the allegations against CGT and Celis, and I provided to Zamora what I regarded certain confidential facts about Celis' education and career. I also found it necessary to share some of my defensive strategies for CGT and Celis in the *Gonzalez* Case. In particular, I would have discussed the claims being made against Celis, and discussed some theories and strategies based on the distinctions between a common law jurisdiction, such as Texas, and a civil law jurisdiction, such as Mexico in the area of the practice of law. At no point did Zamora, who I understood to be not

only a lawyer but an expert on various areas of legal practice, including Mexican law, object to my disclosure of this confidential information.

7.      When I finished my explanation of the case, Zamora was, at that point, unable to render a specific opinion as to the status of Celis to practice law based on the information I had provided to him.

8.      Based on the circumstances of the conversation the topics involved, and the tenor of the conversations, I believed that the substance of the conversation between Zamora and me would remain confidential.  I believed the conversation would be treated as confidential because (1) Zamora was a lawyer, and (2) because of Zamora's inability to give a clear opinion at that time, it was not certain whether Zamora could be employed as a testifying expert or would be retained as a consulting-only expert.  Under the Texas Rules of Civil Procedure, both the identity and opinions of a consulting-only expert, if not reviewed by a testifying expert, are exempt from discovery.  *See* TEX. R. CIV. P. 192.3(e).  In Texas, information obtained by a lawyer which is not privileged may still be considered confidential, and should not be disclosed without client consent.  *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(a), (b).

9.      I believed that, as a lawyer licensed in Texas and as a prospective expert that had not committed to an opinion, Zamora would have understood the exempt and confidential nature of both the conversation we had and the information I had provided, and that I expected this conversation to remain confidential, and not be used against CGT or Celis.  Because it was clear that confidential information was being shared, and the possibility of being retained as an expert was specifically discussed, I believed there was an expectancy of confidentiality with respect to my discussions with Zamora, at least up until the time it was determined that Zamora would be designated a testifying expert.

10.    I also believed that Zamora's identity would be exempt from discovery until a determination was made that he would be a testifying expert.

11.    After I had provided all of the information about the case, I explained the schedule in the *Gonzalez* Case.  At that time, Zamora informed me that he did not have the time in his schedule to serve as an expert on CGT's and Celis' behalf.  He provided me with recommendations of other potential experts, including members of the Mexican branch of Haynes & Boone and its Mexican affiliates and other experts.

12.    Given that I believed that Zamora could not testify as an expert in *Gonzalez* Case, I did not take further steps to retain Zamora as an expert.  I contacted at least one of the persons recommended by Zamora.

FURTHER, AFFIANT SAYETH NOT.

_____
Andrew Greenwell

Sworn to, before me, this 2__ day of _September_ 2008.

_____
Notary Public
My Commission Expires  5-21-2010

CINDI ALLEN
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
05-21-2010

- 4 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EVANSTON INSURANCE COMPANY,     )
     )
Plaintiff,     )
     )     Civil Action No: 07-02252
v.     )     (Judge Roberts)
     )
CGT LAW GROUP INTERNATIONAL LLP,     )
et al.,     )
     )
     Defendants.     )

### [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S EXPERT

Having considered Defendants' Motion to Disqualify Plaintiff's Expert, this court finds that it is in the interest of justice to disqualify Plaintiff Evanston Insurance Company's designated expert witness Stephen Zamora.

IT IS HEREBY ORDERED that Defendants' Motion to Disqualify Plaintiff's Expert is granted. Stephen Zamora is disqualified from testifying as an expert on behalf of Plaintiff.

Dated: _____, 2008

_____
Honorable Richard W. Roberts
United States District Judge